UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID BAILEY, MARVIN RAY YATES, KEITH COLE, and NICHOLAS DIAZ individually and on behalf of those similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>BRAD LIVINGSTON, in his official capacity, ROBERTO HERRERA, in his official capacity, and TEXAS DEPARTMENT OF CRIMINAL JUSTICE,<br><br>     Defendants. | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO.<br>4:14-cv-1698 |

**PLAINTIFFS' STATUS REPORT OF ISSUES FOR SCHEDULING CONFERENCE**

Plaintiffs' counsel have spoken to defense counsel and the parties were unable to resolve the following issues:

1. **Pack Internal Temperatures**

Plaintiffs believe, based on numerous independent and specific reports from inmates at the Pack Unit, that TDCJ personnel at the Pack Unit took and recorded internal temperatures for quite some time prior to the filing of this lawsuit, and that after Plaintiffs filed this lawsuit, Defendants stopped doing so.  Plaintiffs have asked for these internal temperature records but TDCJ has not produced them.   To the extent Defendants destroyed these documents, Plaintiffs seek to know when they were destroyed, by whom, under whose authority, and why.   As this Court has already indicated, internal temperature records are undoubtedly relevant, and we request that the Court order the Defendants to produce the records or provide a thorough response regarding their destruction.

1

2. **Consolidation**

In light of the MDL Panel's order, the parties are conferring about whether to move to consolidate the various heat-death cases to this Court. The parties seek guidance from the Court about the Court's ability to hear the cases pending in other districts to promote judicial economy and prevent inconsistent rulings. Plaintiffs do not believe that this class-action case for injunctive relief should be consolidated in whole or in part with the individual heat-death cases.

3. **ESI Issues**

   a. *TDCJ's Search on its O365 Email System*

The Court is familiar with the briefing in the *Martone* case related to Defendants' failure to produce documents in the heat-death cases (Doc. 63, *Martone v. Livingston*, CV-4:13-cv-03369). Plaintiffs will not repeat that briefing here, as it remains the subject of a pending motion for sanctions in the *McCollum* case.[1]

To summarize the present issue, beginning in May of 2014, Plaintiffs' counsel had discussions with defendants' counsel after Defendants admitted that they had responsive emails but had not yet looked for them and produced them despite Plaintiffs' counsel requesting these documents over a year prior in related litigation. Plaintiffs' counsel offered to confer about search terms that would be applied to TDCJ email accounts to uncover responsive emails. TDCJ ignored Plaintiffs' counsels' repeated requests. Plaintiffs even sent a list of proposed search terms and email users to be searched in order to begin a discussion. TDCJ ignored this list. TDCJ also did nothing to search for and produce documents beyond producing a paucity of emails from only six custodians in May 2014. This Court on June 10, 2014, during a hearing in the *Martone* case, stated that conferring about search terms happens in "every case" and

---

[1] *McCollum v. Livingston*, 3:12-cv-02037-L (N.D. Tex.) (Doc. 164.1).

conveyed to the parties that it expected the parties to confer. Still, TDCJ effectively ignored Plaintiffs' counsels' requests and this Court's explicit expectation and acted unilaterally.[2]

Then, on September 19, 2014, counsel for TDCJ informed Plaintiffs that TDCJ had begun an ESI search. The search appears as though it was done so that Defendants could make the *argument* that they have done an exhaustive search. *See* Doc. 112 ("The search includes sixty different terms related to the relevant issues in the overall heat related cases.") But the details paint a very different picture.

In litigation involving extremely hot prison conditions, TDCJ's search did not include key words like "heat," "hot," "AC," "cool,"[3] etc. but included dozens of terms unlikely to lead to many responsive documents. Further, the search that was done was only performed on one of the two email systems TDCJ employees use to correspond with each other. After learning that TDCJ began an ESI search on its 0365 system, Plaintiffs proposed the following additional terms be applied to the list of custodians being searched:

- Heat
- Hot
- Temp! (we assume 0365 can do a root-word search. If it cannot, "temperature" and "temps" should be included.)
- AC
- Air-condition
- A/C
- Cool!
- Psychotropic
- Antipsychotic
- Ventilation
- Fan

---

[2] In stark contrast to TDCJ, UTMB engaged King & Spalding to conduct its electronic searches and has assured Plaintiffs' counsel that it will produce documents.

[3] In a classic example of Defendants intransigence, Defendants searched for "air condition" but did not search for "AC," "A/C," or "air-condition" despite TDCJ's 30(b)(6) witness testifying in June of this year that if the goal is to obtain documents about air conditioning, it would be "inadequate" to just search for one variation of that term. See **Exhibit A.**

- Diuretic
- Finke (the name of an inmate known to die from heat stroke)
- Lopez and Ansalmo (the name of an inmate to die from heat stroke)

Plaintiffs also asked that TDCJ also include Balden Polk, Louis Williams, Matthew Seda, and Dennis Miller (individual defendants in other cases) in the search.

TDCJ refuses to modify its search to include these common-sense terms. Instead, TDCJ wishes to further delay even a discussion about its willingness to do this search until the current production is produced and the parties re-assess what additional words need to be searched. Plaintiffs believe this is yet another example of delay and bad faith and reflects TDCJ's continuing misunderstanding of its discovery obligations.

### b. *TDCJ's has Done Nothing to Search its Mainframe Email System*

Despite the likelihood of serious sanctions in *McCollum* (and TDCJ's admitted wrongdoing to that court), TDCJ has not yet done any searches on its Mainframe email system. Defendants have said that doing so would be expensive but provided no meaningful evidence to support this conclusion and no explanation why the system has *never* been searched in any prior litigation. Defendants have also not provided any compromise position or been willing to engage in any discussion about what searches it would do on the Mainframe system.

It is essential to understand the nature of the Mainframe email system. Probably to reduce the amount of emails available to opponents in litigation and/or in response to any Public Information Act requests, TDCJ's Mainframe email system has an automatic deletion policy. Emails are deleted 15 days after they are read. Emails that are unread automatically delete after only 30 days. Users, however, can affirmatively select to save emails in archive folders. Without a TDCJ employee taking this affirmative step for each email, TDCJ automatically deletes the email. Each month, however, TDCJ takes a snapshot of emails on the system older

than 120 days (and necessarily in the archives). In light of the foregoing and in response to Defendants' refusal to do a search, Plaintiffs proposed a compromise position as an initial search. Plaintiffs proposed that TDCJ do a search on the archive tapes for three months—**September 2011**, **April 2012**, and **September 2014**. Plaintiffs proposed the following terms:

- Heat
- Hot
- Temperature
- Temp
- Air condition
- Air-condition
- AC
- A/C
- Cool
- Psychotropic
- Antipsychotic
- Ventilation
- Fan
- Hyperthermia
- Ice water

Plaintiffs believe this search would be a good starting point. But TDCJ has refused to do this search. In response, Defendants claim that doing so would be "expensive" because a TDCJ employee (or employees) would have to spend time doing the searches. This is a disingenuous objection, however, because Plaintiffs offered to travel to the computer terminal to examine the documents without any cost to Defendants but they still refuse.

**4.     Intervenors**

There are 30 pending motions to intervene by inmates at TDCJ facilities other than Pack, including Hutchins and Terrell. While the parties oppose intervention, Plaintiffs are extremely sympathetic to the proposed intervenors' desire to understand the suit and keep up to date. Plaintiffs believe that TDCJ should establish a pleadings file at the law library at each unit where prisoners have sought to intervene, where all prisoners can view the pleadings. Defendants state

that they will check with TDCJ. To the extent the Court wishes, Plaintiffs are happy to brief the matter.[4]

**5.    Trial Date**

Plaintiffs continue to request a trial date prior to the Spring of 2015. Defendants remain opposed but for disingenuous reasons. Defendants have told Plaintiffs' counsel that they do not want a trial during the Texas Legislative Session, which occurs every two years beginning in January and usually ending in June. The Legislative Session is scheduled to begin in January of 2015.

**6.    Protective Order**

The parties agree that a protective order is appropriate. Plaintiffs have proposed that Defendants enter into the form Western District of Texas protective order available on that court's website or a slightly modified version of that order. (This Court does not have a form available on its website.) This is the form counsel for both parties have used in numerous other heat-death cases.[5] Defendants refuse. The parties disagree about two specifics.

First, Defendants insist on redacting all personally identifiable information from the records. Redacting all identifying information from medical records will make it logistically difficult and confusing to match two separate medical records to the same person. For example, if person X was diagnosed with schizophrenia in May, prescribed antipsychotics in June, and

---

[4] Plaintiffs have been serving all proposed intervenors with all pleadings in this case as Plaintiffs' counsel believe it is their duty to do so. During our conference with Defendants, it became apparent that Defendants are not and that Defendants thought it was inappropriate for Plaintiffs to be doing so.

[5] *McCollum v. Livingston*, No. 3:12-cv-02307 (N.D. Tex.—Dallas) (Lindsey, J.) (Doc. 52); *Webb v. Livingston*, No. 6:13-cv-711 (E.D. Tex) (Love, J.) (Doc. 47); *Martone v. Livingston*, No. 4:13-CV-03369 (S.D. Tex.—Houston) (Ellison, J.) (Doc. 50); *Hinojosa v. Livingston*, 2:13-CV-319 (S.D. Tex.—Corpus Christi) (Ramos, J.) (Doc. 51).

taken to the hospital due to a heat stroke in July, it will be difficult to match the three events to person X without the records reflecting person X's identity. Defendants claim that redaction is needed to satisfy HIPAA. Redaction is unnecessary, however, as a protective order will satisfy HIPPA's requirements. *See* 45 CFR 164.512(a); 45 CFR 164.502(b)(2). Redaction will only cause confusion and will prejudice Plaintiffs unfairly because Defendants have access to the un-redacted medical records but Plaintiffs would not. Further, it will result in making Plaintiffs' job harder, more time-consuming, and will prevent Plaintiffs from identifying additional class members and witnesses who suffered from heat-related incidents. Importantly, redaction will also make it difficult for Plaintiffs to identify potential witnesses for trial because the identity of those witnesses will be kept from Plaintiffs.

Second, Defendants seek an unusual procedure whereby documents would be presumptively designated as confidential, and Plaintiffs would bear the burden of moving the Court to have the designation removed. The custom in the United States is for the party seeking protection of any given document to seek court intervention once the non-producing party has challenged a confidential designation. The *Manual of Complex Litigation* recommends that courts adopt orders that permit a disclosing-party to mark documents it produces as "confidential." The parties must treat the documents as confidential until an opposing party contests the designation in writing.[6] Once confidentiality is contested, the disclosing-party must request permission from the Court to keep the documents confidential. MCL 4th § 11.432 at n. 140 ("The burden remains on the party seeking protection…").

---

[6] Defendants' also cite the *Manual of Complex Litigation*. They are correct that under the MCL standard the non-producing party contests the confidential designation. What Defendants misunderstand is that the non-party's notifying the producing party that it contests the confidential designation then shifts the burden to the party wishing to keep the document secret to petition the court to keep it secret.

7

"It is correct that the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order; any other conclusion would turn Rule 26(c) on its head." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986).[7] *See also In re Alexander Grant & Co. Litigation*, 820 F.2d 352 (11th Cir. 1987) ("Under the provisions of umbrella orders, the burden of proof justifying the need for the protective order remains on the movant; only the burden of raising the issue of confidentiality with respect to individual documents shifts to the other").

Here, Defendants wish to switch the default to make documents secret unless Plaintiffs seek court intervention to make the documents public. This is unnecessary. Further, in a case of public importance and human rights, the default should be openness, not secrecy.

Further, Defendants articulate that the reason they do not want the standard protective order is that they do not want medical records of one inmate being shared with another. Plaintiffs have stipulated, however, that Plaintiffs will not share an inmate's records with other inmates unless the inmate whose records are being shared has first agreed to the disclosure.[8] Thus, Defendants' articulated argument is baseless.

---

[7] Under this approach, the umbrella order would initially protect all documents that the producing party designated in good faith as confidential. After the documents [are] delivered under this umbrella order, the opposing party could indicate precisely which documents it believed to be not confidential, and the movant would have the burden of proof in justifying the protective order with respect to those documents. The burden of proof would be at all times on the movant; only the burden of raising the issue with respect to certain documents would shift to the other party."

*Cipollone*, 785 F.2d at 1122.

[8] Defendants state that "Plaintiffs insist that the named Plaintiffs in this litigation be allowed to have copies of and review each other's medical records via consents signed by the four named Plaintiffs." (Doc. 112, p. 4). This is not so.

Respectfully submitted,

EDWARDS LAW
The Haehnel Building
1101 East 11th Street
Austin, TX 78702
Tel.    512-623-7727
Fax.    512-623-7729

By:    /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Lead Counsel
Scott Medlock
State Bar No. 24044783
Sean Flammer
State Bar No. 24059754

Brian McGiverin
State Bar No. 24067760
James C. Harrington
State Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Dr.
Austin, TX 78741
(512) 474-5073 [phone]
512 474-0726 [fax]

Ranjana Natarajan
Texas State Bar: 24071013
THE UNIVERSITY OF TEXAS
SCHOOL OF LAW
Civil Rights Clinic
727 E. Dean Keeton Street
Austin, TX 78705
Tel: 512-232-7222
Fax: 512-232-0800

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case File System of the Southern District of Texas, and on all pro se parties through the US Postal Service:

Jason Bridges
# 1816679
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

Jay Yoon Chung
# 1876067
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

Virgil Wright
# 1834264
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

James Camarata
# 1830434
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

Lazaro Perez
# 19190655
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

Christopher King
# 1695857
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

Ronnie Armstrong
# 1897849
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

Rudy Molina
# 1877909
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

Tashumbr'e Jones
# 1876080
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

DeMarcus Franklin
# 01902289
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

Thomas Byron
# 1897531
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

Casey Kofnovel
# 1829587
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

Clifford Fairfax
# 418151
Terrell Unit
1300 FM 655
Rosharon, TX 77583

David Robert Veazy Jr.
# 1921831
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

Mark Smith
# 491892
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

Blaine Elder
# 1925497
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

Merrill Haskell
# 1918463
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

Robert King
# 01889308
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

Christopher King
# 1695857
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

James Stephens
# 1890872
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

Dennis Pickard
# 1838141
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

Emery Smith
# 687002
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

Jorge Jones
# 1934436
Hutchins State Jail
1500 E. Langdon Rd.
Dallas, TX 75241

Rudy Garza Molina
# 1877909
Hutchins Unit
1500 East Langdon Road
Dallas, TX 75241

Marcus Natt
# 1827898
# 134167
Hutchins Unit
1500 East Langdon Road
Dallas, TX 75241

Charles Taylor
# 134167
Hutchins Unit
1500 East Langdon Road
Dallas, TX 75241

Tony Ray Mitchell
# 1875728
Hutchins Unit
1500 East Langdon Road
Dallas, TX 75241

John Cloud
# 749521
Terrell Unit
1300 FM 65
Rosharon, TX 77583

Leo Motte
# 1910822
Hutchins Unit
1500 East Langdon Road
Dallas, TX 75241

Michael Broadnax
#1900407
Hutchins Unit
1500 East Langdon Road
Dallas, TX 75241

/s/ Jeff Edwards
Jeff Edwards