UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID BAILEY, MARVIN RAY | § | |
| YATES, KEITH COLE, and | § | |
| NICHOLAS DIAZ, individually and | § | |
| on behalf of those similarly situated, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | No. 4:14-cv-1698 |
| | § | |
| BRAD LIVINGSTON, in his official | § | |
| capacity, ROBERTO HERRERA, in his | § | |
| official capacity, and TEXAS | § | |
| DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, | § | |
|     Defendants. | § | |

DEFENDANTS' ORIGINAL ANSWER
TO PLAINTIFFS' FIRST AMENDED
CLASS ACTION COMPLAINT

**NOW COME** Brad Livingston in his Official Capacity as the Executive Director, Robert Herrera in his Official Capacity as the Warden of Pack Unit, and the Texas Department of Criminal Justice by and through their attorneys, the Office of the Attorney General of Texas.  Defendants incorporate herein by this reference and re-urge, Defendants' Motion to Dismiss Warden Herrera (Doc. No. 158) as if fully set forth herein.   Defendants submit the following Original Answer to Plaintiffs' First Amended Class Action Complaint.

## I.  GENERAL DENIAL

Pursuant to FED. R. CIV. P. 8(b) and for the express purpose of requiring Plaintiffs to meet their burden of proof herein, Defendants deny each and every allegation contained in Plaintiffs' First Amended Class Action Complaint except those expressly admitted herein.

## II. DEFENDANTS' ANSWER TO
## PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

1.      Plaintiffs, on behalf of themselves and those similarly situated, bring this lawsuit because the Texas Department of Criminal Justice (TDCJ) refuses to cool inmate housing areas, despite the cruel and dangerously hot indoor temperatures prisoners are forced to live in.

 **ANSWER:**

**Defendants admit Plaintiffs bring this lawsuit but deny the remainder of the allegations set forth in ¶1 of Plaintiffs' First Amended Class Action Complaint.**

2.      TDCJ operates the Wallace Pack Unit ("Pack Unit"). The Pack Unit is a medical and geriatric prison where the indoor inmate housing areas are not climate controlled with refrigerated air (commonly called "air conditioning"). As a result, during the hot Texas summers the apparent temperatures routinely exceed 100 degrees inside inmate housing areas, threatening the health and welfare of all inmates living there, especially the elderly, sick, and disabled.

 **ANSWER:**

**Defendants admit the TDCJ operates the Pack Unit.  Defendants deny that the Pack Unit is a "medical" prison but admit it is a Type I Geriatric facility.  Defendants admit that the indoor inmate housing areas, with the exception of the administrative segregation and infirmary housing are not air conditioned.  Defendants deny the remainder of the allegations set forth in ¶2 of Plaintiffs' First Amended Class Action Complaint.**

3.      TDCJ knowingly subjects Plaintiffs and the Class to extremely hot apparent temperatures inside prisoners' housing areas in violation of the Eighth and Fourteenth Amendments to the Constitution.

**ANSWER:**

**Defendants deny the allegations set forth in ¶3 of Plaintiffs' First Amended Class Action Complaint.**

4.     TDCJ is acutely aware of the health risk that extreme heat poses, especially to prisoners with heat-sensitive medical conditions and disabilities. Nevertheless, TDCJ refuses to make reasonable accommodations for these prisoners with disabilities, in violation of the Americans with Disabilities Act and Rehabilitation Act.

**ANSWER:**

**Defendants admit that they are aware of summer heat conditions and that the TDCJ has policies, procedures, and practices related to summer heat conditions.  Defendants deny the remainder of the allegations set forth in ¶4 of Plaintiffs' First Amended Class Action Complaint.**

5.     Injunctive and declaratory relief are the only means to address TDCJ's studied indifference to the fact that extremely hot, indoor apparent temperatures constitute cruel and unusual punishment to prisoners. Plaintiffs ask the Court to order Defendants to keep indoor apparent temperatures below dangerous levels, and mechanically lower the indoor apparent temperatures to a safe level (such as 88 degrees or lower).

**ANSWER:**

**Defendants deny the allegations set forth in ¶5 of Plaintiffs' First Amended Class Action Complaint and ask the Court to deny the Plaintiffs' requested relief.**

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question), §1343 (civil rights), and §2201 (Declaratory Judgment Act).

3

**ANSWER:**

**Defendants admit that this Court has federal question jurisdiction.  Defendants assert Eleventh Amendment Immunity to all applicable claims.  Defendants deny that the facts and circumstances of this case give rise to the relief requested.**

7.      Venue is proper in this Court, pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

**ANSWER:**

**Defendants admit that venue is proper in this Court.**

8.      Keith Cole is a 61-year-old prisoner incarcerated at the Pack Unit. He is not expected to be released from custody.

**ANSWER:**

**Defendants admit that Plaintiff Keith Cole is a 61-year-old prisoner. Defendants admit that Cole is incarcerated at the Pack Unit.  Defendants admit Keith Cole is an offender serving a life sentence and is not parole eligible until 1-26-2024.**

9.      Jackie Brannum is a 61-year-old prisoner incarcerated at the Pack Unit. He will not be eligible for parole until 2017.

**ANSWER:**

**Defendants admit that Plaintiff Jackie Brannum is a 61-year-old prisoner. Defendants admit that Brannum is incarcerated at the Pack Unit. Defendants admit that Brannum is currently eligible for parole on 4-25-2017.**

10.      Richard Elvin King is a 68-year-old prisoner incarcerated at the Pack Unit. He is not expected to be released from custody.

**ANSWER:**

**Defendants admit that Plaintiff Richard Elven King is a 69-year-old prisoner. Defendants admit that King is incarcerated at the Pack Unit. Defendants can neither admit nor deny whether he is not expected to be released from custody.**

11.     Dean Anthony Mojica is a 48-year-old prisoner incarcerated at the Pack Unit. He is not expected to be released from custody until 2017.

**ANSWER:**

**Defendants admit that Plaintiff Dean Anthony Mojica is a 48-year-old prisoner. Defendants admit that Mojica is incarcerated at the Pack Unit. Defendants can neither admit nor deny whether he is not expected to be released from custody until 2017 because he is currently parole eligible and has a discretionary mandatory eligibility date of 3-26-2017 with a current maximum discharge date of 2-22-2025.**

12.     Ray Wilson is a 78-year-old prisoner incarcerated at the Pack Unit. He is not expected to be released from custody.

**ANSWER:**

**Defendants admit that Plaintiff Ray Wilson is a 78-year-old prisoner. Defendants admit that Wilson is incarcerated at the Pack Unit. Defendants can neither admit nor deny whether he is not expected to be released from custody.**

13.     Fred Wallace is a 72-year-old prisoner incarcerated at the Pack Unit. He is not expected to be released from custody.

**ANSWER:**

**Defendants admit that Plaintiff Fred Wallace is a 72-year-old prisoner. Defendants admit that Wallace is incarcerated at the Pack Unit. Defendants can neither admit nor deny whether he is not expected to be released from custody.**

14.     Marvin Ray Yates is a 69-year-old prisoner incarcerated at the Pack Unit. He is not expected to be released from custody until 2019.

**ANSWER:**

**Defendants admit that Plaintiff Marvin Ray Yates is 69 years old. Defendants admit that Yates is incarcerated at the Pack Unit. Defendants can neither admit nor deny that Yates is not expected to be released from custody until 2019 because he has a mandatory eligibility date of May 16, 2019 with a maximum date of October 28, 2033.**

15.     Brad Livingston is the executive director of the Texas Department of Criminal Justice. As such, Livingston is the commanding officer of all TDCJ correctional officers, guards, and TDCJ employees and contractors, and is responsible for their training, supervision, and conduct. By law, he is responsible for protecting the constitutional rights of all persons held in TDCJ custody. At all times described herein, he was acting under color of state law. He is sued in his official capacity for declaratory and injunctive relief.

**ANSWER:**

**Defendants admit that Brad Livingston is the executive director of the TDCJ. Defendants deny that Livingston is the "commanding officer." Defendants admit that under TEX. GOV'T CODE §493.006, the executive director is responsible for the administration and enforcement of all laws relating to the department including rules, implemented by the department; but, the executive director may delegate those responsibilities as permitted by**

board rule or general law. Defendants admit that Livingston is sued in his official capacity for declaratory and injunctive relief.

16.     Robert Herrera is the warden of the TDCJ Pack Unit. At all times described herein, he was acting under color of state law. As the warden of the Pack Unit, he is responsible for ensuring constitutional conditions of confinement exist at the Pack Unit. He is sued in his official capacity for declaratory and injunctive relief.

**ANSWER:**

**Defendants admit Defendant Robert Herrera is the Warden of the Pack Unit. Defendants admit that Plaintiffs sue Herrera in his official capacity for declaratory and injunctive relief.**

17.     Texas Department of Criminal Justice is the state prison system, an agency of the State of Texas. TEX. GOV'T CODE § 493.004. At all relevant times, it operated the Pack Unit, a public facility with programs and services Plaintiffs and other prisoners with disabilities were otherwise qualified for. TDCJ is a recipient of federal funds.

**ANSWER:**

**Defendants admit that the TDCJ is an agency of the State of Texas. The TDCJ admits it operates the Pack Unit and receives federal funds.  Defendants deny that the Pack Unit is a public facility. Defendants are unable to admit or deny at this time what programs and services Plaintiffs and other prisoners with disabilities were "otherwise qualified for." Defendants deny all remaining allegations contained in ¶17 of Plaintiffs' First Amended Class Action Complaint.**

18.     The Pack Unit is a TDCJ prison complex located in Navasota, Texas, in Grimes County.

**ANSWER:   Defendants admit that the Pack Unit is a TDCJ prison located in Navasota, Texas, in Grimes County.**

19.     Most prisoners assigned to the Pack Unit are minimum-custody inmates.

**ANSWER:**

**Defendants object to the term "minimum custody" as ambiguous, and admit that usually the prisoners assigned to Pack Unit must have a custody level of G-1, G-2, or G-3.**

20.     The Pack Unit began operating in September 1983. It presently has the capacity to house 1,478 inmates. The prison typically operates at or near capacity.

**ANSWER:**

**Defendants admit the Pack Unit began operating in September 1983. Defendants admit the Pack Unit has the capacity to house 1,478 inmates. Defendants admit that as of July 30, 2015 the Pack Unit housed a total of 1,412 inmates.**

21.     Like most prisons, the population of the Pack Unit is fluid, as new prisoners arrive and prisoners who have completed their sentences are released. Likewise, prisoners are frequently transferred between TDCJ prisons.

**ANSWER:**

**Defendants admit that there are some new prisoners who arrive and some who leave. Similarly, the TDCJ admits that prisoners are transferred among the TDCJ prisons for reasons related to prison management.**

22.     Despite the frequent transfer of prisoners in to and out of the Pack Unit, the population's general characteristics (such as average age, percentage with disabilities, and percentage with heat-sensitive medical conditions) remains fairly consistent.

**ANSWER:**

**Defendants deny that they have analyzed statistically whether the percentages alleged "remain fairly consistent." Defendants, therefore, lack knowledge or information sufficient to admit or deny the allegations contained in ¶22 of Plaintiffs' First Amended Class Action Complaint.**

23.     The Pack Unit is a medical facility, and houses many geriatric prisoners, prisoners with disabilities, and prisoners with chronic medical problems.

**ANSWER:**

**Defendants deny that the Pack Unit is a medical facility; it is a Type I Geriatric facility. Defendants admit that the Pack Unit houses some geriatric patients. Defendants admit that the Pack Unit houses some prisoners with disabilities and that it is wheel-chair accessible. Defendants admit that the Pack Unit houses some prisoners with chronic medical problems.**

24.     The Pack Unit is one of the few TDCJ facilities that has wheelchair-accessible housing.

**ANSWER:**

**Defendants admit that the Pack Unit has wheel-chair accessible housing.**

25.     As of October 2014, the Pack Unit housed 188 men over the age of 65, 335 men over the age of 60, and 514 men over the age of 55.  Approximately half the men at the Pack Unit are over the age of 50. These numbers are a typical age distribution for the Pack Unit.

**ANSWER:**

**Defendants admit that the statistics cited for the dates in question but deny that Plaintiffs can demonstrate the element of "typicality" for the purposes of class certification.**

26.     The majority of prisoners at the Pack Unit, including Plaintiffs, are housed in inmate dormitories. The dorms do not have air conditioning, or any other form of climate control technology that mechanically lowers the indoor temperatures or humidity during the summer.

**ANSWER:**

**Defendants admit the majority of prisoners at the Pack Unit are housed in inmate dormitories, with the remainder housed at the trusty camp.  Defendants admit the dormitories do not operate with refrigerated air conditioning. Defendants deny the remainder of the allegations set forth ¶26 of Plaintiffs' First Amended Class Action Complaint.**

27.     The ventilation system at the Pack Unit cannot lower the indoor heat index below the outdoor heat index, and cannot ensure that temperatures inside the housing areas are safe and do not exacerbate numerous prisoners' serious medical conditions. Rather, the ventilation system just brings in "fresh" hot air from outside, while pumping out "stale" hot air from the inside, much the same way a vent system in a car does not provide any comfort and does not lower the temperature when it is run without the car's air conditioning.

**ANSWER:**

**Defendants admit that the inmate housing areas do not have refrigerated air conditioning. Defendants lack knowledge or information sufficient to admit or deny statements regarding a vague and hypothetical car. Defendants deny the remaining allegations contained in ¶27 of Plaintiffs' First Amended Class Action Complaint.**

28.     Upon information and belief, TDCJ chose not to air condition the Pack Unit with refrigerated air for political and financial reasons.

**ANSWER:**

10

**Defendants deny the allegations contained in ¶28 of Plaintiffs' First Amended Class Action Complaint.**

29.     As a consequence of the lack of air conditioning, TDCJ Executive Director Brad Livingston has admitted "during the summer months there sometimes is not a large difference between the indoor and outdoor temperatures at TDCJ facilities."

**ANSWER:**

**Defendant Livingston admits ¶29 of Plaintiff's First Amended Class Action Complaint.**

30.     TDCJ's top physicians have noted that indoor apparent temperatures can actually be dramatically higher than the outdoor temperatures: "A few years ago, [a top TDCJ executive] found that when the temperature was 98 degrees outside, we had dorms with temps up to 110 inside. It seems like the [prisoners] in that case were better off outside."

**ANSWER:**

**Defendants admit that an email written by a TDCJ employee states "A few years ago, Mr. Quarterman found that when the outdoor temperature was 98 outside, we had dorms with temps up to 110 inside. It seems like the offenders in that case were better off outside." Defendants are unable admit or deny the substance of the quote, including where or when such an observation was made, whether it was accurately measured, or accurately quoted in the email. Defendants deny that such conditions exist at the Pack Unit.**

31.     Upon information and belief, Dr. Lannette Linthicum, M.D., the head of TDCJ's Health Services Division, and Brad Livingston were aware of this at the time the observation was made. Moreover, they are certainly aware the indoor summer temperatures can be hotter than the outdoor summer temperatures now.

11

**ANSWER:**

**As a matter of common knowledge, Defendants admit that it is possible for indoor summer temperatures to be hotter than outdoor summer temperatures, but deny specific knowledge of any specific instances within TDCJ prisons where this is so. The remainder of the allegation is so ambiguous and confusing, it is not capable of answer.**

32.     Some inmates routinely sleep on the concrete floor because the concrete is marginally cooler than laying in their bunks.

**ANSWER:**

**Defendants deny the allegations contained in ¶32 of Plaintiffs' First Amended Class Action Complaint.**

33.     The windows in some of the inmate dormitories are sealed shut.

**ANSWER:**

**Defendants admit that windows in the expansion dorm are sealed shut as part of the ventilation and fan system in the expansion dorm. Defendants deny windows in the other dormitory areas are sealed shut.**

34.     In the dorms where the windows do open, the temperature is not appreciably cooler when the windows are open in the summer.

**ANSWER:**

**Defendants object to the allegation as overbroad and vague as to time and place. Further, Defendants object to being required to answer argumentative, subjective, and conclusory opinions. Subject to these objections, Defendants deny the allegations contained in ¶34 of Plaintiff's First Amended Class Action Complaint, please see unit description set forth above.**

35.     Moreover, in the dormitories where the windows do open, opening the windows allows biting insects, like mosquitos, into the dormitories. Thus, as a practical matter, they often remain closed.

**ANSWER:**

**Defendants admit that prisoners who live in a cubicle closest to the windows sometimes close or open windows and staff will have to make sure the windows are in proper position depending on weather conditions. Defendants are unable to admit or deny the reason an offender might open or close a particular window at any given time. Defendants admit that the window screens are designed for air flow and security and could let insects like mosquitoes into the facility; however, there are other ways that these insects might enter. Defendants deny that there is a major mosquito problem inside the facility.**

36.     As a result, and as TDCJ and its officials well know, there is little difference between the indoor and outdoor temperatures at the Pack Unit.

**ANSWER:**

**Defendants admit that at times the indoor temperatures at the Pack Unit are similar to the outdoor temperatures. Defendants deny the remainder of ¶36 of Plaintiffs' First Amended Class Action Complaint.**

37.     Defendants also know very few parts of the prison accessible to prisoners have air conditioning, and inmates' time in these places is strictly limited. The law library, for example, has air conditioning, but inmates can only go there a few times per week, and the law library is only large enough to hold a few dozen inmates. The education building has air conditioning, but only inmates enrolled in educational programming can go there, and it is only large enough to accommodate 25-30 prisoners at any time. The visitation building is also air conditioned, but

inmates can only go to visitation one time per week, and only if they have a visitor there to see them, and only if they are eligible to receive visitors.

**ANSWER:**

**Defendants admit that the locations listed above have air conditioning with refrigerated air. Defendants admit access to the locations listed above is not unlimited. Defendants deny the remaining allegations contained in ¶37 of Plaintiffs' First Amended Class Action Complaint.**

38.     Thus, Plaintiffs are rarely allowed to go to air-conditioned portions of the prison during the summer.

**ANSWER:**

**Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶38 of Plaintiffs' First Amended Class Action Complaint.**

39.     In stark contrast, Warden Herrera's office is air conditioned, as are all the administrative offices in the prison, and even the prison's armory.

**ANSWER:**

**Except for the term "stark contrast," which Defendants deny; Defendants admit the remainder of the allegations contained in ¶39 of Plaintiffs' First Amended Class Action Complaint.**

40.     In fact, though TDCJ imprisons over 150,000 prisoners system-wide, there are only 551 beds available with air conditioning for inmates with medical conditions system-wide. These extremely limited beds are reserved for the patients at the most extreme risk of heat-related illness (such as advanced-stage cancer patients), and are not available even for patients with multiple conditions that make them more susceptible to heat-related illness, injury, or death – like Plaintiffs

Cole, Wilson, King, Brannum, Wallace, and Yates. TDCJ's medical providers have testified before the Texas Legislature that these beds are filled by inmates who are so sick that they will never recover, and will likely die in them.

**ANSWER:**

**Defendants object to allegations being directed to them that require the specific knowledge and experience of the TDCJ's prisoner medical providers, UTMB and Texas Tech. Defendants admit that there are approximately 150,000 prisoners at the TDCJ system-wide.  Defendants admit that there is a limited number of refrigerated air conditioned prisoner infirmary beds available system-wide. After a reasonable inquiry, Defendants lack knowledge and information sufficient to admit or deny that the TDCJ's medical providers have testified before the Texas Legislature and, therefore, deny same. Defendants deny the remaining allegations to the extent any of the remaining allegations are properly directed to Defendants in ¶40 of Plaintiffs' First Amended Class Action Complaint.**

41.     TDCJ's medical provider, the University of Texas Medical Branch, has testified there simply are not enough beds system-wide to accommodate even the prisoners with serious medical conditions who are at greater risk of heat-related illness, injury, or death.

**ANSWER:**

**Defendants deny the characterization and substance of prior testimony.**

42.     Dr. Glenda Adams, one of the senior medical providers at UTMB who has been designated as an expert witness in the heat stroke wrongful death litigation, testified as follows:

Q: So that Utilization Review Committee is really performing some sort of triage situation, is that right?

A: Pretty much. That's a fair description.

Q: Do you know how many of those triage beds or cells you're talking about?

A: How many are there?

Q: Yeah.

A: Absolutely … there were 471 [in 2011]. We now have 481.[1]

Q: Well, do you think that's enough to protect the prisoners who are susceptible to extreme heat or are especially vulnerable to extreme heat?

A: No, but it's all we have.

Q: I understand that. And what you're telling me is 'look, this is an impossible situation. We have to evaluate really serious conditions on down and perform almost like a M.A.S.H. unit would in war to determine who gets these 481 beds,' right?

A: Essentially, yes.

**ANSWER:**

**Defendant TDCJ admits that the quoted testimony is from the deposition of Dr. Glenda Adams who was testifying regarding the number of beds available to the University of Texas Medical Branch within the TDCJ's prison buildings. Defendants deny that those are the only medical beds located in areas with refrigerated air-conditioning available to UTMB's medical providers. Defendants further admit that Dr. Adams was a senior medical provider at UTMB and that she has been designated as an expert witness for University of Texas Medical Branch in other litigation. Defendants deny that Dr. Adams is an employee of the TDCJ.**

43.     In other words, TDCJ knows it does not have enough air-conditioned beds to safely house prisoners at risk of heat-related illness, injury or death.

---

[1] Dr. Adams testified about the beds available to the University of Texas Medical Branch, which

**ANSWER:**

**Defendants deny the allegations contained in ¶43 of Plaintiffs' First Amended Class Action Complaint.**

44.     At the Pack Unit, there are only twelve air-conditioned beds available for prisoners with serious medical conditions. These beds are located in the infirmary, and are typically reserved for inmates who are very sick.

**ANSWER:**

**Defendants admit that there are 14 refrigerated air-conditioned beds available in the Pack Unit infirmary; according to Dr. Avila these beds are assigned on a permanent or non-permanent basis as determined by the medical treatment providers.**

45.     In other litigation, TDCJ has admitted it "knows of the high temperatures within its prisons and regard[s] it as a potential risk to the health and safety" of prisoners.

**ANSWER:**

**TDCJ admits it "knows of the high temperatures within its prisons and regard[s] it as a potential risk to the health and safety" of prisoners; however, TDCJ denies that such risk is a substantial risk within the meaning of the Eighth Amendment of the Constitution of the United States.**

46.     Likewise, Livingston has admitted knowing "TDCJ ha[s] no written [policy] to address high temperatures in prisoner housing areas."

**ANSWER:**

**In other litigation, Livingston responded "admit" to a request for admission which stated: "You knew in 2011 TDCJ had no written *administrative directive* to address high temperatures in housing areas." (emphasis added)  Defendant Livingston objects the term**

17

**"administrative directive," (a specific type of policy at TDCJ) being replaced by Plaintiffs with the term "policy." Defendants admit that witnesses have testified that a directive is sent each summer regarding mitigation measures. Defendants deny that there is no written policy to address high temperatures and mitigating measures in prisoner housing areas, please see Exs. A-D.**

47.    There is no penological purpose behind refusing to provide prisoners with climate controlled housing.

**ANSWER:**

**Defendants admit that the lack of refrigerated air conditioning in certain of the living areas of TDCJ prisons is not a punishment for non-compliant offenders, but are unable to admit or deny the remainder of the allegations contained in ¶47 of Plaintiffs' First Amended Class Action Complaint.**

48.    In fact, the State of Texas requires county jails to keep indoor temperatures between 65 and 85 degrees. *See*  37 TEX. ADMIN. CODE § 259.160.

**ANSWER:**

**Defendants admit that county jails are regulated under a different statute.**

49.    Indeed, TDCJ even air conditions limited portions of inmate housing areas – including administrative segregation and solitary confinement cells, including Death Row, at other TDCJ prisons. In fact, the 22 administrative segregation cells at the Pack Unit (which are mostly used for protective custody) are air conditioned. But decisions to place prisoners in these cells are made for security, not medical, reasons.

**ANSWER:**

**Defendants admit the allegations contained in ¶49 of Plaintiffs' First Amended Class Action Complaint subject to the qualification that decisions to place prisoners in administrative segregation are generally made for security, not medical reasons.**

50.    The only doctor who works at the Pack Unit has testified that air conditioning inmate living areas "would be beneficial" to protect inmates from the dangers of extreme temperatures.

**ANSWER:**

**Defendants admit that Dr. Fausto Avila has previously testified as follows:**

**Q.    Okay. If - - and I know they don't, but if the housing areas in the prison was all air-conditioned, that would be beneficial for the prisoners, especially the prisoners with heat-sensitive medical conditions, right?**

**A.    It would be beneficial, yes, sir.**

**(Deposition of Fausto Avila, M.D., 3/5/2015, pg. 85 ln. 14-18)**

51.    The doctor also specifically acknowledged that extreme heat – like that commonly experienced at the Pack Unit – placed Plaintiffs Cole and Yates (as well as former Plaintiffs David Bailey and Nicholas Diaz)[2] at increased risk of harm. It is anticipated Dr. Avila will testify consistently as to all the Plaintiffs.

**ANSWER:**

**Defendants admit that Dr. Fausto Avila has previously testified as follows:**

**Q.    Do you agree with this policy, that these types of medications listed in Attachment A put a person at increased risk for heat-related illness?**

**A.    That's correct.**

**Q.    Do you agree that the types of conditions listed in Attachment B to that exhibit put a person at increased risk for heat-related illness?**

---

[2] Bailey and Diaz have been released from TDCJ custody during the pendency of this case.

**A.      Yes, I am.**

**Q.      Does morbid obesity also put a person at risk for heat-related illness during extremely high temperatures?**

**A.      Yes, it does.**
**(Deposition of Fausto Avila, M.D., 3/5/2015, pg. 98 ln. 5-15)**

**Defendants deny the remainder of allegations contained in ¶51 of Plaintiffs' First Amended Class Action Complaint.**

52.      Most maximum-security federal prisons in hot climates, like Texas, are routinely air conditioned. Even the prison housing terrorism suspects in Guantanamo Bay, Cuba, is air conditioned.

**ANSWER:**

**Defendants lack sufficient knowledge or information regarding the federal prisons and Guantanamo Bay, Cuba with which to admit or deny the allegations in ¶52 of Plaintiffs' First Amended Class Action Complaint.**

53.      In fact, the comment to the American Correctional Association standards instructs prisons to be able to "mechanically lower" temperatures in inmate housing areas. TDCJ deliberately violates this instruction as indoor apparent temperatures at the Pack Unit cannot be mechanically lowered.

**ANSWER:**

**Defendants deny that Pack Unit is in violation of applicable, *mandatory* ACA standards regarding air flow.  Defendants, therefore, deny the remainder of the allegations in ¶53.**

54.      Most TDCJ prisons, including the Pack Unit, were built after air conditioning became common in public buildings in Texas.

20

**ANSWER:**

**Defendants deny that the Pack Unit is properly characterized as a building meant for the "public." Rather, the Pack Unit is a prison which has met or exceeded mandatory ACA accreditation standards for air-flow and ventilation since 2007.**

55.    Indeed, TDCJ officials made an intentional decision not to air condition the prisoner housing areas at the Pack Unit. And, upon information and belief, they did so for political and financial reasons.

**ANSWER:**

**The Pack Unit has met or exceeded mandatory ACA accreditation standards for air-flow and ventilation since 2007 and was specifically included in the standards established in the *Ruiz* litigation; therefore, Defendants deny that the decision not to provide refrigerated air conditioning was based upon "political and financial reasons."**

56.    Moreover, despite their knowledge of numerous heat-related injuries occurring indoors, all of which would be prevented with air conditioning, TDCJ, including Brad Livingston and the Texas Board of Criminal Justice, has intentionally decided to continue exposing prisoners to extremely high indoor apparent temperatures at the Pack Unit despite acknowledging these high indoor apparent temperatures put inmates at risk of heat-related illness, injury, and death.

**ANSWER:**

**Defendants deny the allegations contained in ¶56 of Plaintiff's First Amended Class Action complaint.**

57.    TDCJ routinely records the outdoor apparent temperatures at the Pack Unit during the summer. According to TDCJ's own records, the outdoor apparent temperatures at the Pack Unit routinely exceed 100 degrees during the summer.

| Year | # Days: High Over 100 | # Days: High 90-99 | # Days: High 80-89 | # Days: High Below 80 |
|------|----------------------|--------------------|--------------------|-----------------------|
| 2011 | 75 | 16 | 1 | 0 |
| 2012 | 45 | 43 | 2 | 0 |
| 2013 | 73 | 16 | 3 | 0 |
| 2014 | 34 | 47 | 9 | 2 |

**ANSWER:**

**Defendants admit that the employees at the Pack Unit routinely record the outdoor temperatures at the Pack Unit during the summer months.  Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in ¶57 of Plaintiffs' Amended Class Action Complaint because the chart sets forth a summary compiled by Plaintiffs.**

58.     This comes as no surprise to Texans, given the brutal summer temperatures and high humidity in the Houston area.

**ANSWER:**

**Paragraph 58 of Plaintiffs' Amended Class Action Complaint contains conclusory and opinion allegations. Defendants, therefore, deny the allegations contained in ¶58 of Plaintiffs' First Amended Class Action Complaint.**

59.     Pursuant to TDCJ policy and practice, Warden Herrera reviews this data daily during the summer, and knows that apparent temperatures at the Pack Unit are dangerous.

**ANSWER:**

**Defendants admit that during the summer months the outdoor temperature readings are monitored and recorded at the Pack Unit on a daily basis in accordance with the TDCJ's policies, practices and procedures.  Defendants deny the remainder of the allegations in ¶59 of Plaintiffs' First Amended Class Action Complaint.**

60.     Despite this, Warden Herrera has not even looked into costs associated with ways to cool even a single indoor housing area.

**ANSWER:**

**Defendants admit the allegations contained in ¶60 of Plaintiffs' First Amended Class Action Complaint; however, Defendants deny that Warden Herrera has authority to purchase or install the equipment necessary to provide refrigerated air conditioning to the indoor housing areas, please see Defendants' (re-urged) Motion to Dismiss Warden Herrera at Doc. No. 158.**

61.     Likewise, Director Livingston is aware that apparent temperatures inside TDCJ prisons are hazardous during the summer. Even so, Director Livingston and the Health Services Division took no steps to bring the dangerous temperatures down in any TDCJ facility. They did not even order a study to determine the cost before several heat-related deaths in 2011 and 2012, and being sued for injunctive and declaratory relief in this case.

**ANSWER:**

**Defendants admit that no cost study was ordered prior to 2011.  Defendants deny the remaining allegations in paragraph 61.**

62.     According to the National Weather Service (NWS), summer temperatures in the future will not be lower than temperatures from 2011–2014. In fact, temperatures will likely increase in the future.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case.  Defendants, therefore, lack knowledge or information sufficient to admit or deny the allegations contained in ¶62 of Plaintiffs' First Amended Class Action Complaint.**

63.     According to the NWS, "heat is the number one weather-related killer in the United States." Over a hundred people die from exposure to extreme heat each year, and thousands are injured.  On average, heat kills more people in the United States each year than hurricanes, tornadoes, floods, or lightning combined.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case.  Defendants, therefore, lack knowledge or information sufficient to admit or deny the allegations contained in ¶63 of Plaintiffs' First Amended Class Action Complaint.**

64.     According to the NWS, the American Medical Association, the Environmental Protection Agency (EPA), and the Center for Disease Control and Prevention (CDC), "[m]aintaining a consistent internal body temperature, generally 98.6° [Fahrenheit], is essential to normal physical functioning." Excessive heat can "stress the body's ability to maintain this ideal internal temperature. If individuals fail or are unable to take steps to remain cool and begin to

experience increasing internal temperatures, they increase their risk of experiencing a range of potential adverse health outcomes."

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case.  Defendants, therefore, lack knowledge or information sufficient to admit or deny the allegations contained in ¶64 of Plaintiffs' First Amended Class Action Complaint.**

65.     When exposed to heat, the heart will beat faster to increase blood flow to the skin, in order to dissipate heat and keep the internal organs from overheating. As the blood circulates to the skin, excess heat escapes into the cooler air. With so much blood pumped to the skin, the body struggles to maintain its normal functions.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. Defendants, therefore, lack knowledge or information sufficient to admit or deny the allegations contained in ¶65 of Plaintiffs' Amended Class Action Complaint.**

66.     Likewise, the body also cools itself through sweating. The body produces sweat, which evaporates to cool the body. But when the humidity is high, the sweat cannot evaporate, preventing the body from cooling. In addition, continued exposure to heat causes the body to lose water and become dehydrated. When the body loses enough water, it also loses oxygen.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. Defendants, therefore, lack knowledge or information sufficient to admit or deny the allegations contained in ¶66 of Plaintiffs' Amended Class Action Complaint.**

67.    Thus, when exposed to high heat and humidity, the body cannot cool itself through sweating and circulation, the body's temperature rises, and heat-related illnesses may develop.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. Defendants, therefore, lack knowledge or information sufficient to admit or deny the allegations contained in ¶67 of Plaintiffs' Amended Class Action Complaint.**

68.    Indeed, the doctor who cares for all prisoners at the Pack Unit has testified that ambient temperatures above 85 degrees Fahrenheit can be hazardous to prisoners' health.

**ANSWER:**

**Defendants admit that Dr. Fausto Avila has previously testified as follows:**

**Q.    Do you agree that ambient temperatures of 85 degrees can be hazardous at times?**

**A.    Yes.**
**(Deposition of Fausto Avila, M.D., 3/5/2015, pg. 101 ln. 7-9)**

69.    Continued exposure to high heat and humidity can cause permanent injuries to the body, including heat stroke and death. High temperatures can also cause less deadly, but still painful, heat-related illnesses, including heat exhaustion and heat cramps.

**ANSWER:**

**Defendants admit and incorporate by this reference TDCJ's Administrative Directive, AD-10.64 (Rev. 7) dated Mar. 17, 2015 attached hereto as "Exhibit A," Correctional Health Care Policy Manual "Heat Stress," Number 27.2 as "Exhibit B"; 2015 Heat Precaution Email as "Exhibit C"; and Heat Precaution 2015 – Reminder as "Exhibit D." In accordance with its policies, Defendants admit that continued exposure to high heat and humidity can cause permanent injuries to the body, including heat stroke and death, but deny that there is substantial risk of this occurring at the Pack Unit with the implementation of mitigation measures. Defendants deny any portion of the allegation that does not comport with the language in TDCJ's polices, Ex. A-D.**

70. **Heat Exhaustion:** Symptoms of heat exhaustion, according to the federal National Institute for Occupational Safety and Health (NIOSH), include fatigue; heavy sweating; nausea; dizziness; elevated body temperature; and fast, shallow breathing.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. Defendants, therefore, lack knowledge or information sufficient to admit or deny the allegations contained in ¶70 of Plaintiffs' Amended Class Action Complaint with regard to NIOSH. Defendants admit and incorporate by this reference TDCJ's Administrative Directive, AD-10.64 (Rev. 7) dated Mar. 17, 2015 attached hereto as "Exhibit A" which states the symptoms of heat exhaustion are: profuse perspiration, weakness, rapid pulse, dizziness, and headaches; cool skin, sometimes pale and clammy, with perspiration; normal or subnormal body temperature;**

**and possible nausea, vomiting, and unconsciousness.  Defendants deny any portion of the allegation that does not comport with the language in TDCJ's polices, Ex. A-D.**

71.     According to the Mayo Clinic and TDCJ's own training materials, heat exhaustion can quickly progress to heat stroke if the person does not cool down quickly.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. Defendants, therefore, lack knowledge or information sufficient to admit or deny allegations regarding information in the knowledge or experience of the Mayo Clinic.  Defendants admit and incorporate by this reference TDCJ's Administrative Directive, AD-10.64 (Rev. 7) dated Mar. 17, 2015 attached hereto as "Exhibit A," Correctional Health Care Policy Manual "Heat Stress," Number 27.2 as "Exhibit B"; 2015 Heat Precaution Email as "Exhibit C"; and Heat Precaution 2015 – Reminder as "Exhibit D."   Defendant TDCJ admits that TDCJ training materials do indicate that heat stroke can be preceded by heat exhaustion and its onset can be sudden. Defendants deny any portion of the allegation that does not comport with the language in TDCJ's polices, Ex. A-D.**

72.     The doctor who cares for all prisoners at the Pack Unit has testified that heat exhaustion by itself is a serious health condition that puts prisoners at a serious health risk.

**ANSWER:**

**Defendants admit that Dr. Fausto Avila has previously testified as follows:**

**Q.     Do you agree that heat exhaustion is a serious medical condition?**

**A.     Yes.**
**(Deposition of Fausto Avila, M.D., 3/5/2015, pg. 100 ln. 11-13)**

**Q.     Do you agree that heat exhaustion puts prisoners at a serious health risk?**

**A.      Yes.**
**(Deposition of Fausto Avila, M.D., 3/5/2015, pg. 100 ln. 21-23)**

73.      **Heat Cramps:** Heat cramps can consist of "[m]uscle pain or spasms usually in the abdomen, arms, or legs," according to NIOSH.

**ANSWER:**

**Although, the information in this allegation is from a third party, Defendants admit that the information is contained in TDCJ's policies, please see Exs. A-D. Defendants deny any portion of the allegation that does not comport with the language in TDCJ's polices, Ex. A-D.**

74.      Heat cramps are extremely painful. The doctor who cares for all prisoners at the Pack Unit has testified that heat cramps can result in severe pain.

**ANSWER:**

**Defendants deny the allegation that "heat cramps are extremely painful" as over-inclusive in that they can be minor or just uncomfortable for brief periods. Defendants deny any portion of the allegation that does not comport with the language in TDCJ's polices, Ex. A-D.**

**Defendants admit that Dr. Fausto Avila has previously testified as follows:**

**Q.      Do you agree that heat cramps, frankly, is a serious medical condition that you need to provide treatment for?**

**A.      Well, it's not a serious medical condition. You need to provide treatment and prevent the exhaustion.**
**(Deposition of Fausto Avila, M.D., 3/5/2015, pg. 100 ln. 14-17)**

**Q.      Do you agree that heat cramps can result in severe pain?**

**A.      Can? Yes.**
**(Deposition of Fausto Avila, M.D., 3/5/2015, pg. 99 ln. 10-12)**

75.     Even TDCJ's own medical policy recognizes that pain from heat cramps "may be quite severe."

**ANSWER:**

**Defendants admit that the allegation contained in ¶75 of Plaintiffs' Amended Class Action Complaint contains a quote from TDCJ's policies.  Defendants deny any portion of the allegation that does not comport with the language in TDCJ's polices, Ex. A-D.**

76.     **Heat Stroke:** NIOSH describes heat stroke as "the most serious heat-related disorder," in which "the body temperature can rise to 106 degrees Fahrenheit or higher within 10 to 15 minutes." Symptoms often include hot, dry skin; hallucinations; chills; headaches; confusion; and slurred speech. "Heat stroke can cause death or permanent disability if emergency treatment is not given." According to resources published online by the Mayo Clinic, "[i]n a period of hours, untreated heatstroke can cause damage to your brain, heart, kidneys and muscles."

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. Defendants, therefore, lack personal knowledge or information sufficient to admit or deny the allegations from NIOSH and Mayo Clinic contained in ¶76 of Plaintiffs' Amended Class Action Complaint. Defendants admit and incorporate by this reference TDCJ's Administrative Directive, AD-10.64 (Rev. 7) dated Mar. 17, 2015 attached hereto as "Exhibit A," Correctional Health Care Policy Manual "Heat Stress," Number 27.2 as "Exhibit B"; 2015 Heat Precaution Email as "Exhibit C"; and Heat Precaution 2015 – Reminder as "Exhibit D."   Defendants deny any portion of the allegation that does not comport with the language in TDCJ's polices, Ex. A-D.**

77.     In extreme temperatures, heat-related illnesses can arise and exacerbate quickly to cause death. According to NIOSH, "[t]he different forms of heat-related illness … increase in severity as heat strain increases. This allows for a quick, deadly progression from heat exhaustion to heat stroke."

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. Defendants, therefore, lack personal knowledge or information sufficient to admit or deny the allegations contained in ¶77 of Plaintiffs' Amended Class Action Complaint with regard to NIOSH.  Defendants admit and incorporate by this reference TDCJ's Administrative Directive, AD-10.64 (Rev. 7) dated Mar. 17, 2015 attached hereto as "Exhibit A," Correctional Health Care Policy Manual "Heat Stress," Number 27.2 as "Exhibit B"; 2015 Heat Precaution Email as "Exhibit C"; and Heat Precaution 2015 – Reminder as "Exhibit D."  Defendants deny any portion of the allegation that does not comport with the language in TDCJ's polices, Ex. A-D.**

78.     The doctor who cares for all prisoners at the Pack Unit has testified that heat stroke can come on suddenly, and heat stroke is possible at apparent temperatures as low as 90 degrees.

**ANSWER:**

**Defendants admit the allegation set forth in ¶78 of Plaintiffs' First Amended Class Action Complaint.**

79.     Indeed, even TDCJ's own medical policies and training materials recognize heat stroke is "a medical emergency," that "the onset is often sudden," and that "death may occur."

**ANSWER:**

**Defendants admit that TDCJ policies and procedures recognize heat stroke as a serious condition.  Defendants admit and incorporate by this reference TDCJ's Administrative Directive, AD-10.64 (Rev. 7) dated Mar. 17, 2015 attached hereto as "Exhibit A," Correctional Health Care Policy Manual "Heat Stress," Number 27.2 as "Exhibit B"; 2015 Heat Precaution Email as "Exhibit C"; and Heat Precaution 2015 – Reminder as "Exhibit D."  Defendants deny any portion of the allegation that does not comport with the language in TDCJ's polices, Ex. A-D.**

80.     Upon information and belief, virtually all prisoners at the Pack Unit, regardless of underlying medical conditions, suffer at least some symptoms of heat-related illness or injury caused by or exacerbated by the high indoor apparent temperatures each summer. Typical symptoms include: headaches, dizziness, nausea, lightheadedness, elevated temperature, and heavy sweating.

**ANSWER:**

**Defendants deny the allegations in ¶80 of Plaintiffs' First Amended Class Action Complaint.**

B.     *People with Medical Conditions that Impair Cooling are at Additional Risk*

81.     Though all people suffer in the heat, people with physiological conditions that impair their bodies' ability to cool are at increased risk of suffering heat-related illness, injury, or death.

**ANSWER:**

**Defendants admit and incorporate by this reference TDCJ's Administrative Directive, AD-10.64 (Rev. 7) dated Mar. 17, 2015 attached hereto as "Exhibit A," Correctional Health Care Policy Manual "Heat Stress," Number 27.2 as "Exhibit B"; 2015**

Heat Precaution Email as "Exhibit C"; and Heat Precaution 2015 – Reminder as "Exhibit D."  Defendants deny any portion of the allegation that does not comport with the language in TDCJ's polices, Ex. A-D.

82.     TDCJ policy recognizes inmates with certain "underlying medical condition[s] … place them at increased risk," including: "cardiovascular disease, cirrhosis of the liver, chronic obstructive pulmonary disease, asthma, cystic fibrosis, diabetes, psychiatric conditions, Sjogren's syndrome, sweat gland dysfunction, [and] thyroid dysfunction." Heat tolerance weakens, and the risk of heat-related illness increases, for people who suffer from these conditions. TDCJ policies and procedures recognize prisoners with these conditions are at greater risk of heat-related illness, injury, and death.

**ANSWER:**

**Defendants admit and incorporate by this reference TDCJ's Administrative Directive, AD-10.64 (Rev. 7) dated Mar. 17, 2015 attached hereto as "Exhibit A," Correctional Health Care Policy Manual "Heat Stress," Number 27.2 as "Exhibit B"; 2015 Heat Precaution Email as "Exhibit C"; and Heat Precaution 2015 – Reminder as "Exhibit D."  Defendants deny any portion of the allegation that does not comport with the language in TDCJ's polices, Ex. A-D.**

83.     Similarly, TDCJ's policies state the risk of heat-related illness increases for individuals who use "anticonvulsants, anticholinergics, antihistamines, antipsychotics, antidepressants, beta blockers, [and] diuretics." Typically, these drugs impair the body's ability to cool itself. These medications are used to treat a wide range of illnesses and disabilities common to prisoners at the Pack Unit, including hypertension, allergies, depression, and bipolar disorder. TDCJ policies and procedures also recognize these medications increase prisoners' risk of heat

related illness and death, and that these prisoners "should not be allowed to work or recreate in environments where the apparent temperature is 95 degrees or higher." Brad Livingston and Lannette Linthicum are actually aware of these policies and the risks they identify.

**ANSWER:**

**Defendants admit and incorporate by this reference TDCJ's Administrative Directive, AD-10.64 (Rev. 7) dated Mar. 17, 2015 attached hereto as "Exhibit A," Correctional Health Care Policy Manual "Heat Stress," Number 27.2 as "Exhibit B"; 2015 Heat Precaution Email as "Exhibit C"; and Heat Precaution 2015 – Reminder as "Exhibit D." Defendants admit they are aware of the policies attached as Exhibits A-D. Defendants deny any portion of the allegation that does not comport with the language in TDCJ's polices, Ex. A-D.**

84.     TDCJ also acknowledges people with the following medical conditions and disabilities are at heightened risk of heat-related illness: obesity, diabetes, hypertension, cardiovascular disease, cirrhosis of the liver, chronic obstructive pulmonary disease, cystic fibrosis, asthma, Sjogren's syndrome, sweat gland dysfunction, and thyroid dysfunction.

**ANSWER:**

**Defendants admit and incorporate by this reference TDCJ's Administrative Directive, AD-10.64 (Rev. 7) dated Mar. 17, 2015 attached hereto as "Exhibit A," Correctional Health Care Policy Manual "Heat Stress," Number 27.2 as "Exhibit B"; 2015 Heat Precaution Email as "Exhibit C"; and Heat Precaution 2015 – Reminder as "Exhibit D." Defendants admit they are aware of the policies attached as Exhibits A-D. Defendants deny any portion of the allegation that does not comport with the language in TDCJ's polices, Ex. A-D.**

85.     UTMB, the medical provider at the Pack Unit, has informed TDCJ of this dangerous on numerous occasions.

**ANSWER:**

**Defendants deny the allegation contained in ¶85 of Plaintiffs' First Amended Class Action Complaint.**

86.     TDCJ identifies approximately 418 prisoners at the Pack Unit as having medical conditions that prohibit them from working in "extreme temperatures." The prisoners' medical conditions place them at increased risk of heat-related illness, injury, or death, or are prescribed the medications TDCJ identifies as putting people at increased risk of heat-related illness, injury, or death.

**ANSWER:**

**Defendants admit that as of September 17, 2014, approximately 418 inmates at the Pack Unit were listed on the Medical Heat Restriction List for the Pack I Unit. Defendants deny the remaining allegations contained in ¶86 of Plaintiffs' First Amended Class Action Complaint as to the specifics of each inmate.**

87.     This list is under-inclusive, as it does not include Plaintiffs Cole, King, and Wilson, even though they also take many of the medications and suffer from heat-related disabilities TDCJ recognizes put inmates at increased risk of heat-related injury. Likewise, upon information and belief, it does not include other prisoners who suffer from heat-sensitive medical conditions, or take prescription medications that increase their risk of heat-related illness, injury, or death.

**ANSWER:**

**Defendants admit that Keith Cole's classification restriction include "no temperature extremes," "no work in direct sunlight," and "no humidity extremes" and that he is**

35

medically unassigned.  Defendants admit that King and Wilson's classification restrictions do not include heat restrictions.  Defendants admit that decisions about suitability of work assignments and recreation areas are made by facility medical staff. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in ¶87 of Plaintiffs' First Amended Class Action Complaint.  Please see Defendants Ex. A-D.

88.     TDCJ also acknowledges other factors that increase the risk of heat-related illness, such as age (particularly for people over 65).

**ANSWER:**

**Defendants admit the allegations contained in ¶88 of Plaintiffs' First Amended Class Action Complaint, please see Ex. A-D.**

89.     According to the CDC, heat stroke mortality rate increases with age. For example, the rate of heat stroke deaths doubles between ages 35 and 55. The CDC also recognizes that people over the age of 65 are more prone to heat stress.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. Defendants, therefore, lack personal knowledge or information sufficient to admit or deny the allegations contained in ¶89 of Plaintiffs' First Amended Class Action Complaint.**

90.     Yet no accommodations are made relating to the extreme heat for prisoners based on age, even though it is known to be associated with increased risk of heat-related illness, injury, and death.

**ANSWER:**

36

**Defendants deny the allegations in ¶90 of Plaintiffs' First Amended Class Action Complaint.**

91.     TDCJ is well-aware that it houses inmates with disabilities (like Plaintiffs Cole, Wallace, Brannum, King, Wilson, and Yates) who require reasonable accommodations because their disabilities are impacted by exposure to extremely high indoor apparent temperatures. As TDCJ's policies identify these prisoners as being at additional risk of heat-related illness, injury, or death, their need for an accommodation is obvious.

**ANSWER;**

**Defendants admit that TDCJ houses inmates with disabilities; but deny the remaining allegations set forth in ¶90 of Plaintiffs' First Amended Class Action Complaint.**

92.     Upon information and belief, prisoners at the Pack Unit with these heat-sensitive disabilities experience symptoms of heat-related illness more frequently or more intensely than able-bodied prisoners. These prisoners with disabilities are also at greater risk of heat-related illness, including heat exhaustion, heat cramps, and heat stroke.

**ANSWER:**

**After a reasonable inquiry Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶92 of Plaintiffs' First Amended Class Action Complaint.**

C.     *Heat in Texas Prisons is Deadly*

93.     Since 1998, at least twenty TDCJ prisoners in facilities around Texas have died of hyperthermia, or heat stroke, as set forth in the table below.

| Name | Age | Prison | Date of Death | Body Temp. | TDCJ Region | Facts |
|------|-----|--------|---------------|------------|-------------|-------|
|      |     |        |               |            |             |       |

| Archie White | 48 | Robertson | June 29, 1998 | 104.2 | V | Obese, hypertensive, schizophrenic, prescribed tricyclic antidepressants and other medications known to increase risk of heat-stroke |
|---|---|---|---|---|---|---|
| Anselmo Lopez | 41 | Eastham | July 14, 1998 | Unk | I | Prescribed psychotropic medications for schizophrenia |
| James Moore | 47 | Unk | July 30, 1998 | 104.1 | Unk | History of paranoid schizophrenia and hypertension, prescribed psychotropic medications, beta-blockers and diuretics |
| Charles Finke, Jr. | 38 | Huntsville | Aug. 8, 1999 | 106 | I | Prescribed anti-depressants, recently arrived from air-conditioned facility |
| John Cardwell | 39 | Allred | Aug. 4, 2001 | 108.5 | V | Prescribed diurectics and psychotropics, spent 2 weeks in ICU, recently arrived |
| Ricky Robertson | 37 | Darrington | July 16, 2004 | 108 | III | Bipolar with depression, prescribed psychtropic medications |
| James Shriver | 47 | Byrd | Aug. 8, 2007 | Unk | I | History of hypertension, prescribed psychotropics |
| Dionicia Robles | 54 | Byrd | Aug. 13, 2007 | Unk. | I | Prescribed psychotropics, incarcerated less than one month |
| Douglas Hudson | 62 | Gurney | July 25, 2011 | 105 | II | History of hypertension, prescribed medication "known to interfere with heat dissipation," died after 5 days |
| Larry McCollum | 58 | Hutchins | July 28, 2011 | 109.4 | II | Diabetic, prescribed diuretic, found 2:00 am, died 1 week after arrival |
| Thomas Meyers | 46 | Coffield | Aug. 3, 2011 | 105.6 | II | History of hypertension, prescribed psychotropics |
| Robert Webb | 50 | Hodge | Aug. 4, 2011 | Unk. | II | Developmentally disabled, prescribed psychotropics, found unresponsive 3:30 am |
| Alexander Togonidze | 44 | Michael | Aug. 8, 2011 | 106+ | II | Diabetic, prescribed psychotropics, previously complained of heat-related illnesses, collapsed 8:00 am |
| Charles Cook | 53 | Hodge | Aug. 8, 2011 | 107.9 | II | Developmentally disabled, prescribed psychotropics, found unresponsive at 3:00 am |
| Michael Martone | 57 | Huntsville | Aug. 8, 2011 | 106.5 | I | Prescribed psychotropics |
| Kelly Marcus | 36 | Connally | Aug. 12, 2011 | Unk. | IV | Obese, prescribed diuretic, found 3:30 am |
| Kenneth Wayne James | 52 | Gurney | Aug. 13, 2011 | 108 | II | Prescribed diuretic, died 3 days after arrival |
| Daniel Alvarado | 44 | Beto | Aug. 20, 2011 | 105.2 | II | HIV+, prescribed psychotropics, found unresponsive at 9:20 am, incarcerated nine days |

| Rodney Adams | 45 | Gurney | Aug. 3, 2012 | 109.9 | II | Prescribed psychotropics, died 1 day after arrival |
| Albert Hinojosa | 44 | Garza West | Aug. 27, 2012 | Unk. | IV | Died at transfer facility shortly after arrival, found after midnight |

**ANSWER:**

 **Defendants admit that records show that the prisoners listed on Plaintiffs' chart died while in custody and the autopsies indicated hyperthermia.  With regard to the column titled "facts," the "facts" column is a summary of medical opinions and records prepared by Plaintiffs and lacks complete information. Defendants, therefore, based  upon information and belief, deny the "fact" summary on the chart in ¶93 of Plaintiffs' First Amended Class Action Complaint.**

94.     Moreover, it is likely far more TDCJ prisoners were actually killed by heat because hyperthermia is an underreported cause of death by medical examiners.

**ANSWER:**

 **After a reasonable inquiry Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶94 of Plaintiffs' First Amended Class Action Complaint.**

95.     The twenty men in the chart above all shared certain characteristics. As TDCJ knew, they all suffered underlying medical conditions and heat-sensitive disabilities that put them at much greater risk of heat stroke, including taking psychotropic drugs to treat a mental illness, suffering from diabetes or hypertension, or taking diuretics to treat hypertension.[3]

---

[3] Six wrongful death lawsuits brought by the families of eight of these men are currently pending. *See McCollum v. Livingston*, No. 4:14-cv-3253 (S.D. Tex.); *Adams v. Livingston*, 4:14-cv-3326 (S.D. Tex.); *Webb v. Livingston*, 4:14-cv-3302 (S.D. Tex.); *Togonidze v. Livingston*, 4:14-cv-3324 (S.D. Tex.); *Martone v. Livingston*, 4:13-CV-3369 (S.D. Tex.); *Hinojosa v. Livingston*, 4:14-cv3311 (S.D. Tex.).

**ANSWER:**

**Defendants deny that it can be demonstrated that the characteristics alleged would put every individual at "much greater risk." Defendants do admit, however, that some of the underlying medical conditions alleged might place certain individuals, under certain conditions, at greater risk for heat related illness or injury and that such a determination requires an individualized review of each offender's medical condition and records. Defendants deny the remainder of the allegations contained in ¶95 of Plaintiffs' First Amended Class Action Complaint.**

96.     Unsurprisingly, in a 2012 email, two of TDCJ's top physicians discussed how "the majority of heat-related deaths involve prescription drugs known to increase the risk."

**ANSWER:**

**Defendants admit that this statement was made to the recipient, Dr. Adams (who is not a TDCJ doctor), in the context of an email chain discussing, *inter alia*, that offender HSM-18's be kept up to date so as to better identify and protect offenders taking those medications.**

97.     Many prisoners at the Pack Unit, including each of the Plaintiffs (except for Mojica) suffer from one or more of the above conditions, or take one or more of the heat-sensitive medications.

**ANSWER:**

**The Plaintiffs and their medical records would have to be evaluated by a medical expert which is beyond the scope of Defendants' knowledge at this time; therefore, Defendants lack sufficient knowledge or information with which to admit or deny that**

40

**"Plaintiffs suffer from one or more of the above conditions, or take one or more of the heat-sensitive medications." Defendants lack sufficient knowledge or information with which to admit or deny the remaining allegations contained in ¶97 of Plaintiffs' First Amended Class Action Complaint.**

98.     Heat can also cause or aggravate other illnesses, even triggering medical emergencies such as heart attacks. According to the World Health Organization (WHO), "heat increases death rates from cardiovascular and respiratory disease by placing extra stress on an already stressed system." Similarly, NIOSH warns that there is substantial evidence that extreme heat is a risk factor for cardiovascular disease and death.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. Defendants, therefore, lack knowledge or information sufficient to admit or deny the allegations contained in ¶98 of Plaintiffs' First Amended Class Action Complaint.**

99.     The CDC, NWS, and EPA recognize that sudden exposure to heat contributes to a variety of illnesses, including cardiovascular disease, and increases the likelihood of illness and death.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. Defendants, therefore, lack knowledge or information sufficient to admit or deny the allegations contained in ¶99 of Plaintiffs' First Amended Class Action Complaint.**

100.    As all Texans know, however, it is not just the temperature but also the humidity that contributes to heat. The heat index is a measure of "apparent temperature," based on ambient temperature and humidity, which the NWS says closely approximates how air temperature is "felt" by the human body. The NWS publishes a chart which illustrates how exposure to high heat indexes increases the risk of heat-related illnesses:

**ANSWER:**

**After a reasonable inquiry, Defendants lack knowledge or information sufficient to admit or deny whether the heat index or "apparent temperature" closely approximates how air temperature is "felt" in the human body. Defendants admit the NWS publishes a chart. Defendants admit the chart shows heat index with temperatures that rate the level of "danger." The Defendants deny the remaining allegations with regard to what "all Texans know" in ¶100 of Plaintiffs' First Amended Class Action Complaint.**

## NOAA's National Weather Service
### Heat Index
#### Temperature (°F)

| Relative Humidity (%) | 80 | 82 | 84 | 86 | 88 | 90 | 92 | 94 | 96 | 98 | 100 | 102 | 104 | 106 | 108 | 110 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 40 | 80 | 81 | 83 | 85 | 88 | 91 | 94 | 97 | 101 | 105 | 109 | 114 | 119 | 124 | 130 | 136 |
| 45 | 80 | 82 | 84 | 87 | 89 | 93 | 96 | 100 | 104 | 109 | 114 | 119 | 124 | 130 | 137 | |
| 50 | 81 | 83 | 85 | 88 | 91 | 95 | 99 | 103 | 108 | 113 | 118 | 124 | 131 | 137 | | |
| 55 | 81 | 84 | 86 | 89 | 93 | 97 | 101 | 106 | 112 | 117 | 124 | 130 | 137 | | | |
| 60 | 82 | 84 | 88 | 91 | 95 | 100 | 105 | 110 | 116 | 123 | 129 | 137 | | | | |
| 65 | 82 | 85 | 89 | 93 | 98 | 103 | 108 | 114 | 121 | 128 | 136 | | | | | |
| 70 | 83 | 86 | 90 | 95 | 100 | 105 | 112 | 119 | 126 | 134 | | | | | | |
| 75 | 84 | 88 | 92 | 97 | 103 | 109 | 116 | 124 | 132 | | | | | | | |
| 80 | 84 | 89 | 94 | 100 | 106 | 113 | 121 | 129 | | | | | | | | |
| 85 | 85 | 90 | 96 | 102 | 110 | 117 | 126 | 135 | | | | | | | | |
| 90 | 86 | 91 | 98 | 105 | 113 | 122 | 131 | | | | | | | | | |
| 95 | 86 | 93 | 100 | 108 | 117 | 127 | | | | | | | | | | |
| 100 | 87 | 95 | 103 | 112 | 121 | 132 | | | | | | | | | | |

**Likelihood of Heat Disorders with Prolonged Exposure or Strenuous Activity**

☐ Caution    ☐ Extreme Caution    ☐ Danger    ☐ Extreme Danger

101.    The NWS correlates heat index ranges to risk levels:

a.      Caution (light yellow; heat index 80-90º F) - "Fatigue possible with prolonged exposure and/or physical activity."

b.      Extreme Caution (mustard yellow; heat index 91-104º F) - "Sunstroke, muscle cramps, and/or heat exhaustion possible with prolonged exposure and/or physical activity."

c.      Danger (orange; heat index 105-125º F) - "Sunstroke, muscle cramps, and/or heat exhaustion likely. Heatstroke possible with prolonged exposure and/or physical activity."

d.      Extreme Danger (red; heat index >126º F) - "Heat stroke likely."

**ANSWER:**

**Defendants admit the NWS chart shows heat index with temperatures that rate the level of "danger."**

102.    The NWS warns that exposure to heat index greater than 105º F "may cause increasingly severe heat disorders with continued exposure or physical activity."

**ANSWER:**

**Defendants admit that the NWS publishes a chart.  Defendants admit the NWS chart shows heat index with temperatures that rate the level of "danger."**

103.    TDCJ incorporates a version of the NWS chart into its policies and training materials, and is well aware of the facts described by the NWS. That chart is included as an Appendix to the TDCJ policy entitled "Temperature Extremes in the TDCJ Workplace," dated November 10, 2008. The policy and chart are made available to every TDCJ warden, including Warden Herrera.

43

**ANSWER:**

**Defendants admit that a version of the NWS chart is used in TDCJ documents, please see Exhibit A.  Defendants admit that Warden Herrera has access to the policy and chart.**

104.    Like the NWS chart, TDCJ's version recognizes that as the heat index increases, the risk of increasingly severe heat-related illnesses goes up. When the heat index exceeds 90 degrees (a typical occurrence inside the Pack Unit during the summer), according to TDCJ, "heat exhaustion" becomes "possible." Above 105 degrees, "heat stroke" becomes "possible." Above 130 degrees, heat stroke is "imminent."

**ANSWER:**

**Defendants admit that a version of the NWS chart is used in TDCJ policy, see Exhibit A.  Defendants admit Exhibit A is an official policy of TDCJ.**

105.    Importantly, the NWS and TDCJ charts are designed to predict the risk to people who *do not* suffer from medical conditions that increase their susceptibility to heat-related injuries. These charts predict the risk to "healthy" people (like Plaintiff Mojica), not people who have an increased risk of heat-related illness or injury due to medical conditions, medications or age.

**ANSWER:**

**Defendants admit that a version of the NWS chart is used in TDCJ documents, please see Exhibit A.  Defendants admit Exhibit A is an official policy of TDCJ.**

106.    Both the NWS and TDCJ charts show that prisoners living in the Pack Unit are exposed to indoor heat indexes that put inmates at risk of heat exhaustion, and heat cramps virtually every day of the summer.

**ANSWER:**

**Defendants deny the allegations contained in ¶106 of Plaintiffs' First Amended Class Action Complaint.**

107.    Though TDCJ's policies recognize that escalating extreme temperatures put prisoners at increased danger, TDCJ's policies do nothing to provide additional protections to inmates in the extremely hot housing areas as apparent temperatures go up.

**ANSWER:**

**Defendants deny the allegations contained in ¶107 of Plaintiffs' First Amended Class Action Complaint.**

108.    In fact, TDCJ has no formal, written policy to protect prisoners from extreme temperatures in the indoor inmate housing areas.

**ANSWER:**

**Defendants deny the allegations contained in ¶108 of Plaintiffs' First Amended Class Action Complaint.**

109.    TDCJ has no policy to lower indoor temperatures in inmate housing areas.

**ANSWER:**

**Defendants deny the allegations contained in ¶109 of Plaintiffs' First Amended Class Action Complaint, please see Exhibits A-D.**

110.    No mitigation measures short of climate control or a policy to re-locate inmates to cooler housing areas can adequately protect people from these extreme temperatures. So long as housing areas are dangerously hot, prisoners will inevitably suffer heat-related illnesses and injuries, and be placed at increased risk of death.

**ANSWER;**

**Defendants deny the allegations contained in ¶110 of Plaintiffs' First Amended Class Action Complaint.**

111.    Indeed, TDCJ's primary mitigation measure – water intake – creates a new hazard at the Pack Unit. The Environmental Protection Agency has found the arsenic levels in the water at the Pack Unit are more than twice the recommended level under federal law and regulations. The doctor treating inmates at the Pack Unit testified arsenic in drinking water can cause bladder cancer, skin cancer, and harm the nervous system.

**ANSWER:**

**Defendants deny the allegation that the water at Pack Unit creates a new hazard. (See generally, Doc. Index no. 166, Bailey Case Document Index) In January 2006, the EPA changed standards for the allowed arsenic levels from 50 parts to 10 parts per billion.** *Id.* **The TDCJ has entered into a contract to install a new water filtration system to meet the new standard.** *Id.* **In a notice dated Jan. 18, 2014, the Texas Commission on Environmental Quality sent a public notice that Pack Unit must display which states,** *inter alia***, that that the status of the water is "not an emergency" and that "you do not need to use an alternative water supply." (** *Id.* **at Bates no. 50930.)**

**Defendants admit that Dr. Fausto Avila has previously testified as follows:**

**Q.    Do you know if arsenic in drinking water can cause bladder cancer?**

**A.    Yes.**

**Q.    It can, can't it?**

**A.    Yes.**
**(Deposition of Fausto Avila, M.D., 3/5/2015, pg. 186 ln. 8-12)**

**Q.    Okay. Do you know if arsenic in drinking water can cause skin cancer?**

**A.    Yes.**

**Q.     It can, correct?**

**A.     That's correct.**
**(Deposition of Fausto Avila, M.D., 3/5/2015, pg. 186 ln. 18-22)**

**Q.     Okay. Do you know if arsenic in drinking water can harm the central nervous and peripheral nervous systems?**

**A.     Yes.**
**(Deposition of Fausto Avila, M.D., 3/5/2015, pg. 187 ln. 8-10)**

112.    Dr. Charles Adams, M.D., the medical director supervising medical care provided at multiple TDCJ prisons, stated what should be obvious to anyone: "they need cooling."

**ANSWER:**

**Defendants admit that Dr. Adams wrote an email which contained the quoted language set forth in ¶112 of Plaintiffs' First Amended Class Action Complaint.**

113.    TDCJ ignored this observation, and still has not provided any "cooling" at the Pack Unit.

**ANSWER:**

**Defendants deny the allegations contained in ¶113 of Plaintiffs' First Amended Class Action Complaint.**

114.    Every summer, inmates at the Pack Unit suffer heat-related injuries.

**ANSWER:**

**Defendants admit that on occasion a limited number of offenders have sought medical treatment for heat conditions at the unit infirmary at Pack Unit. Defendants lack sufficient information or knowledge as to whether this has happened "every summer" or how many have sought treatment from the infirmary "every summer."**

115.     Internal emails from July 2012 state that, at the Pack Unit, "the trend has been noted that the [inmates suffering from heat-related illness] are primarily in housing" – as opposed to prisoners working outside.

**ANSWER:**

**Defendants admit that the quoted language appears in an email authored by a UTMB employee.  Defendants deny the substance of the quote as it was made in 2012, and deny the substance of the quote as applied to the summers of 2013 and 2014.**

116.     TDCJ's medical provider has admitted being "particularly concerned" about the conditions at the Pack Unit. In a four-day period in 2012, twelve prisoners were seen in the prison's infirmary for heat-related illnesses. Seven of these prisoners were taking medications that placed them at increased risk of heat-related illnesses.

**ANSWER:**

**Defendants admit that a UTMB employee sent an email with the quoted language, but deny that his comment was only directed at the Pack Unit.  Defendants admit that 12 offenders received medical treatment during a four day period in 2012, but deny that all were diagnosed with heat related illness, and deny that any offenders diagnosed with a heat related illness required treatment beyond a brief period of rest and hydration.  Defendants are unable to admit or deny the remainder of the allegations contained in ¶116 of Plaintiffs' First Amended Class Action Complaint.**

117.     Upon information and belief, three of the prisoners treated for heat-related illness in June 2012 at the Pack Unit were *not* taking any medication that put them at increased risk, and did *not* have any medical condition that put them at increased risk of heat-related illness. Despite

the absence of any additional heat-related risk factors, these prisoners were still injured by the high apparent temperatures.

**ANSWER:**

**At this time, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶117 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

118.    Each summer, inmates at the Pack Unit are treated by medical staff for heat-related illnesses and injuries caused by the hot indoor apparent temperatures.

**ANSWER:**

**Defendants admit that on occasion offenders have sought medical treatment for heat conditions at the unit infirmary at Pack Unit. Defendants lack sufficient information or knowledge as to whether this happened "each summer" or how many have sought treatment from the infirmary "each summer." Defendants lack sufficient information or knowledge as to whether this was "caused by the hot indoor apparent temperatures." Defendants admit that offenders receive treatment by medical staff at the Pack Unit.**

119.    Upon information and belief, it is likely that many additional prisoners are not reporting their heat-related illnesses.

**ANSWER:**

**This allegation is based upon pure speculation and opinion and, therefore, Defendants obviously lack sufficient knowledge and information with which to admit or deny the allegation contained in ¶119 and, as such, should not be required to answer.**

120.    Because of the miserable conditions created by the heat, many prisoners simply languish during the summer. Many spend their summer days avoiding any exertion that could bring

on heat-related illness (including walking to the chow hall for meals), drinking arsenic-laced water, and spraying themselves with water to endure the incessant heat.

**ANSWER:**

**Defendants deny the allegations contained in ¶120 of Plaintiffs' First Amended Class Action Complaint.**

121.    Even prisoners without medical conditions that make them more vulnerable to the heat, like Mojica, suffer intensely during the summer because of the high indoor apparent temperatures.

**ANSWER:**

**Defendants deny the allegations contained in ¶121 of Plaintiffs' First Amended Class Action Complaint.**

122.    Likewise, correctional officers who work in the inmate housing areas also routinely suffer in the heat. Officers routinely sweat through their uniforms, and have to towel sweat off their faces when leaving the inmate dormitories.

**ANSWER:**

**Defendants admit that correctional officers sweat but deny that "correctional officers" as a group "routinely" suffer in the heat.**

123.    In fact, during a recent summer a 57-year-old correctional officer at the Pack Unit was taken to the emergency room after becoming dizzy. She was diagnosed with heat exhaustion and dehydration.

**ANSWER:**

**Defendants admit that, during the summer of 2013, a 57-year old correctional officer at the Pack Unit was taken to the emergency room for being hot, dizzy, and sweaty. Defendants admit that the officer was treated for heat exhaustion and dehydration. Defendants admit that the temperature in her assigned area was 80.4 degrees Fahrenheit at the time of the incident. Defendants admit the officer was able to return to work the next day without any restrictions.**

124.     Thus, in a rare development, the correctional officer's union has found common cause with the prisoners, and publicly supported the extreme temperature lawsuits brought against TDCJ.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by Defendants and is incomplete; and, therefore, it is improper and incapable of answer. Defendants admit that the correctional officers' union has supported refrigerated air conditioning. Defendants deny the remaining allegations contained in ¶124 of Plaintiffs' First Amended Class Action Complaint.**

125.     The correctional officer's union has made numerous public requests for the prison housing areas to be air conditioned, but TDCJ routinely ignores these requests for safe working conditions.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by Defendants and is incomplete; and, therefore, it is improper and incapable of answer. Defendants admit that the correctional officers' union has supported refrigerated air conditioning. Defendants deny that TDCJ routinely ignores their requests for safe working conditions. Defendants lack personal knowledge or information sufficient to admit or deny the remaining allegations contained in ¶125 of Plaintiffs' First Amended Class Action Complaint.**

126.   Major newspapers, including the *New York Times*, *Houston Chronicle*, and *Austin American-Statesman*, have editorialized that TDCJ should end the practice of failing to air condition inmate housing areas.

**ANSWER:**

**Defendants object to allegations that contain hearsay information in the knowledge and experience of entities or persons who are not parties to this case. Defendants, therefore, lack personal knowledge or information sufficient to admit or deny the allegations contained in ¶126 of Plaintiffs' First Amended Class Action Complaint.**

127.   While TDCJ knows about and ignores the hazards to prisoners and correctional officers, TDCJ officials (including Brad Livingston) approved installing climate controlled hog barns to protect the welfare of TDCJ's agricultural products. TDCJ's detailed policies require that pigs live in a "comfortable environment with ventilation. Animals shall never be handled or housed in a manner that does not provide these essentials." Misters begin to cool the pigs when the temperature goes above 74 degrees to keep the pigs "comfortable." TDCJ policy requires

temperatures be kept no higher than 85 degrees to ensure "pig comfort." TDCJ policies even establish an "upper critical limit" for pigs at 95 degrees because temperatures above 95, according to TDCJ policies, negatively affect pigs' "health," and "some form of cooling" is required above this "critical limit." High-ranking TDCJ officials even told the press these climate-controlled barns were necessary to protect vulnerable pigs from heat stroke. TDCJ has no similar policies to protect humans.

**ANSWER:**

**TDCJ admits that it operates six single-wide trailer swine farrowing barns at the Eastham Unit that have some measure of mechanical cooling. This mechanical cooling comes from a fan system that passes air over a wet cardboard grate. These structures are used for approximately nine weeks after the pigs are born, and the remainder of the pigs' lives are spent in open air structures. No other parts of the swine operation have mechanical cooling, but instead utilize air flow and water. TDCJ admits that its agricultural program has policies governing swine husbandry. Defendants deny the remaining allegations contained in ¶127 of Plaintiffs' First Amended Class Action Complaint.**

128.    Even former TDCJ Institutional Division Director Rick Thaler acknowledged this is unacceptable, and that human prisoners deserve more protections than swine raised for slaughter.

**ANSWER:**

**Defendants deny the characterization of previous testimony.**

129.    Keith Cole suffers from several medical conditions and/or disabilities that increase his risk of heat-related injury or death. For example, he suffers from diabetes and hypertension. He also has a history of chronic cardiovascular disease, and has had two stents placed in his body.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶129 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

130.   Cole's diabetes requires treatment with Glipizide. He takes a diuretic (hydrochlorothiazide), a beta blocker (Metoprolol), a calcium channel blocker (Amlodipine), an angiotensin receptor blocker (Losartan), and a statin (Atorvastatin), to control his hypertension and cardiovascular disease. He is also prescribed Nitrostat tablets to use "as needed" should he feel any chest pains.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶130 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

131.   These disabilities and medications impair Cole's thermoregulatory system.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶131 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

132.    Cole's diabetes causes his body to constantly fight to stay hydrated. He cannot pump enough blood to his skin to cool his body, and his ability to sweat is extremely limited.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶132 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

133.    Cole has other major life activities that are impaired as well by his disabilities, and which become more severely limited by heat. He cannot stand, walk, lift, or otherwise exert himself physically without feeling chest pain and fatigue, especially during the summer when the indoor apparent temperatures are very high.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶133 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

134.    Because of his diabetes, the heat will make Cole feel dizzy and he cannot walk or stand properly—on some days, he can have difficulty concentrating, thinking, or reading. His diabetes also interferes with the operation of several of his major bodily systems, including his circulatory system, endocrine system and digestive system.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶134 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

135.   When his cardiovascular disease is uncontrolled, Cole suffers from difficulty breathing and chest pains in the high temperatures. His cardiovascular disease and hypertension impair his respiratory, circulatory, and cardiovascular systems.

**ANSWER:**

**This Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶135 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

136.   Cole has been treated for heat exhaustion at the Pack Unit. Officers have had to take Cole to the infirmary in a wheelchair because heat illness prevented him from walking there on his own to receive treatment during the heart of the summer.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶136 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

56

137.    During previous summers, Cole has tried to spend extra time in the air-conditioned infirmary after receiving treatment for his disabilities. On at least one occasion, although nurses encouraged him to spend extra time in the infirmary, Warden Herrera ordered him out of the infirmary and to return to his blazing hot dormitory.

**ANSWER:**

**Defendants deny the characterization of the dormitory as "blazing hot."  Defendant Herrera denies evicting any offenders from the medical department who had not been released by the medical providers to return to their housing locations.  Defendants are unable to admit or deny the remainder of the allegations contained in ¶137 of Plaintiffs' First Amended Class Action Complaint.**

138.    Jackie Brannum suffers from several medical conditions and/or disabilities that increase his risk of heat-related injury or death. For example, he has hypertension and diabetes, and is prescribed antidepressant and psychotropic drugs to treat schizoaffective disorder, a serious mental illness.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶138 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

139.    Brannum takes Amlodipine (a calcium channel blocker), Lisinopril (an ACE inhibitor), Pravastatin (a statin), and Propranolol (a beta blocker) to treat his hypertension and coronary artery disease.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶139 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

140.    Brannum is an insulin-dependent diabetic, and receives insulin injections twice a day to control his blood sugar levels.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶140 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

141.    Brannum suffers from chronic back pain, and takes Carbamazepine and Nortriptyline to treat his pain. (Nortriptyline is an antidepressant that also has pain-relieving properties.) He uses a walker to assist with mobility.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶141 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

142.    To control his schizoaffective disorder, Brannum takes Prozac (an antidepressant), and Risperidone (a psychotropic drug). When he is not taking his psychiatric medications, Brannum hears voices, and has thoughts of hurting himself. In the summer, his psychiatric medications make him feel dizzy and lightheaded because of the heat.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶142 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

143.    These disabilities impair Brannum's thermoregulatory system. Heat aggravates hypertension, and has caused Brannum to experience extreme fatigue and dizziness in the past during the summer. He often feels fatigue and nausea over the summers, and he has become lightheaded many times. Brannum has also felt his heart race and had difficulty breathing when he has to move in the heat.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶143 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

144.    On more than one occasion during the summer, Brannum has told medical providers at the Pack Unit he fell due to dizziness.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶144 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

145.    Brannum has been treated in the infirmary at the Pack Unit during the summer for symptoms like severe dizziness. In September 2014, for example, Brannum had to be taken to the infirmary in a wheelchair when he "over did it" while "cleaning his dorm." A physician at the Pack Unit stopped his prescription for a diuretic medication used to treat his hypertension because it caused him to become dizzy during the summer.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶145 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

146.    In May 2015, Brannum was taken to the infirmary in a wheelchair after experiencing dizziness and shortness of breath.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations**

contained in ¶146 of Plaintiffs' First Amended Class Action Complaint, investigation continues.

147.    Brannum has also experienced blurred vision and "excessive sweating" during the summer, requiring treatment in the infirmary.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶147 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

148.    On several occasions, Brannum has experienced severe headaches during the summer months, and been treated in the infirmary.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶148 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

149.    Though Brannum tries to stay hydrated by drinking extra water during the summer, he has required treatment in the infirmary due to dehydration. In May 2014, he became painfully constipated and suffered from serious dizziness because he could not stay hydrated in the extreme indoor temperatures at the Pack Unit.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶149 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

150.    During the summer, Brannum has great difficulty sleeping due to the heat and his disabilities. The headaches caused by the heat and his disabilities cause him to have problems concentrating and thinking. Though he used to perform forced labor in the prison's kitchen, due to his heat-sensitive disabilities, he is no longer allowed to work in the prison.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶150 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

151.    Richard King suffers from several medical conditions and/or disabilities that increase his risk of heat-related injury or death. King has hypertension, obesity, and diabetes.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶151 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

152.    King takes hydrochlorothiazide (a diuretic), Atenolol (a beta blocker), Lisinopril (an ACE inhibitor), and Terozsin to treat his hypertension. He receives insulin injections twice a day and takes Metformin to control his diabetes.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶152 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

153.    King's conditions impair his ability to regulate his body temperature, which, in turn, interferes with his basic, everyday activities.  The heat makes it difficult for King to sleep; specifically, he gets so hot at night that his mattress always seems soaked through with sweat. Compounding the strain from sleepless nights, the oppressive daytime heat taxes his body even further, leaving him exhausted.  King feels so exhausted in the heat that he is unable to perform simple tasks like standing or walking for long periods of time. The short walk to the chow hall becomes so unbearable he will skip meals.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶153 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

154.   The heat will make King feel dizzy. He has difficulty walking during the summer, and feels like he will lose his coordination and fall over.

**ANSWER:**

**Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶154 of Plaintiffs' First Amended Class Action Complaint.**

155.   King also feels he is unable to perform basic tasks during the summer due to exhaustion from the heat and discomfort from excessive sweating. In fact, TDCJ's medical provider has determined that King cannot perform forced labor at the prison due to his medical conditions. Yet he gets no protection from the indoor heat or humidity.

**ANSWER:**

**Defendants admit that King's Health Summary for Classification lists that he has a restriction for sedentary work only. Defendants deny that King gets not protection from the heat. Defendants lack knowledge or information sufficient to admit or deny that King suffers from the heat and experiences discomfort from excessive sweating.  Defendants deny the remaining allegations contained in ¶155 of Plaintiffs' Amended Class Action Complaint.**

156.   Ray Wilson suffers from several medical conditions and/or disabilities that increase his risk of heat-related injury or death including chronic obstructive pulmonary disease (COPD), emphysema, chronic bronchitis, coronary artery disease, and hypertension. In addition, Wilson has a hip replacement due to severe arthritis, and requires the use of a walker or wheelchair to move about.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts,**

**Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶156 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

157.   Wilson takes hydrochlorothiazide (a diuretic), Pravastatin (a statin), Isosorbide (a nitrate), and Metoprolol (a beta blocker), to control his hypertension. He takes Atrovent (an anticholinergic), and uses inhalers to treat his asthma.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶157 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

158.   Wilson's medications are a necessity for normal respiratory function, especially in hot and humid weather. During the summer, he uses his "rescue" inhaler much more frequently due to the heat and humidity. His medications are also needed to prevent heart failure. However, his conditions and medications make him more sensitive to the heat.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶158 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

159.    On hot summer days, Wilson often feels that he can barely move. His COPD especially makes breathing difficult in the heat.

**ANSWER:**

**Defendants lack knowledge or information sufficient to admit or deny that Wilson often feels that he can barely move and that his COPD especially makes breathing difficult in the heat.**

160.    In past summers, Wilson has developed an itchy and unpleasant heat rash due to the extreme temperatures in the inmate housing areas.

**ANSWER:**

**Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶160 of Plaintiffs' First Amended Class Action Complaint.**

161.    During previous summers, Wilson has also been seen in the infirmary for spotty vision.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶161 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

162.    Although Wilson tries to drink as much water as he can during each summer day, he still feels dehydrated from the heat.

**ANSWER:**

**Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶162 of Plaintiffs' First Amended Class Action Complaint.**

163.    Fred Wallace suffers from several medical conditions and/or disabilities that increase his risk of heat-related injury or death. For example, he has hypertension, obesity, and major depression.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶163 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

164.    Wallace takes an antidepressant (Prozac) to treat his major depression, an antihistamine (Diphenhydramine), and several medications to treat his hypertension (Gemfibrozil, Lisinopril (an ACE inhibitor), and Terazosin (an alpha blocker)).

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶164 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

165.    These disabilities and medications impair the function of Wallace's thermoregulatory system. TDCJ's medical provider determined Wallace cannot perform forced labor in "extreme temperatures" or "direct sunlight" due to his disabilities and/or prescriptions.

**ANSWER:**

**Defendants admit that Wallace's Health Summary for Classification lists his restrictions as "no work in direct sunlight," "no temperature extremes," and he is "medically unassigned." Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in ¶165 of Plaintiffs' Amended Class Action Complaint.**

166.    Likewise, Wallace's depression prevents him from engaging in multiple major life activities. Before he went to prison (and began taking Prozac), he would not leave his house or go to work when he was depressed. His depression prevents him from sleeping, causes him to have "low energy," and suffer from thoughts like "I'd be better off dead." Thus, his depression impaired his major life activities or working, thinking, concentrating, and caring for himself.

**ANSWER:**

**Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶166 of Plaintiffs' First Amended Class Action Complaint.**

167.    His obesity and hypertension also interfere with major life activities. Wallace cannot climb into a top bunk due to his obesity, and TDCJ has been instructed by doctors to only assign him a lower bunk. He has been seen in TDCJ's sleep clinic for chronic insomnia related to his obesity and depression.

**ANSWER:**

**Defendants admit that Wallace's Health Summary for Classification lists his restrictions as lower bunk only. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in ¶167 of Plaintiffs' Amended Class Action Complaint.**

168.    During previous summers, Wallace has been taken to the infirmary in a wheelchair when suffering from dizziness and dehydration.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.  Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶168 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

169.    Marvin Yates suffers from several medical conditions and/or disabilities that increase his risk of heat-related injury or death. For example, he has hypertension, chronic obstructive pulmonary disease (COPD), coronary artery disease, asthma, diabetes, arthritis, and is a cancer survivor. His body mass index is also over thirty, making him medically obese.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.  Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶169 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

170.    Yates takes a calcium channel blocker (Amlodipine), a blood thinner (Clopidogrel), an ACE inhibitor (Enalapril), a diuretic (Furosemide), a statin (Pravastain), and a beta blocker (Metoprolol) to treat his hypertension. His COPD requires treatment with albuterol, a steroid inhaler, and a nebulizer treatment for infections.  His coronary artery disease requires treatment with a beta blocker, pravastatin, Plavix, and stents in his heart. Finally, his asthma requires

treatment with medications including albuterol and a nebulizer for severe attacks, and antihistamines to control his allergies (which exacerbate his asthma).

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.  Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶170 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

171.    These disabilities and medications impair Yates's thermoregulatory system. He cannot sweat normally to cool himself down, and the blood flow to his skin is limited. It is also difficult for Yates to perform any manual task. He cannot lift objects, perform work, walk, or even stand for an extended period of time. Yates's blood sugar regulation is impaired by his diabetes. He needs to carry candy with him at all times to treat himself when his blood sugar level drops, and his diabetes ultimately impairs his ability to stay hydrated. His breathing is impaired: he becomes short of breath after walking short distances, like from his dormitory to the chow hall. He avoids outdoor recreation because his arthritis makes it too painful to undress and dress as fast as the guards require for the "shakedown" before he can go outside. Yates's medications also impair his ability to think and concentrate, because they cause him to get nervous very easily. Anxiety, exhaustion, or sometimes lying down to sleep cause his bronchial tubes to constrict, making it hard to breathe. Yates's breathing problems generally make it more difficult to get food, recreate, and sleep at the prison—and they are worsened by hot temperatures.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records. Subject to further investigation by Defendants' medical experts and further investigation in discovery, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶171 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

172.    These impairments are aggravated in the summer due to high indoor apparent temperatures at the Pack Unit. During previous summers at the Pack Unit, he has experienced several symptoms of heat-related illnesses, including dizziness, painful muscle cramps, fatigue, blurred vision, and headaches. He has trouble sleeping in the extreme heat because he cannot catch his breath.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records. Subject to further investigation by Defendants' medical experts and further investigation in discovery, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶172 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

173.    Cole, Wallace, Brannum, King, Wilson, and Yates's medical conditions are typical of other inmates at the Pack Unit. Like these Plaintiffs, many other prisoners at the Pack Unit suffer from physiological conditions that place them at increased risk of heat-related illness, injury, or death. Like these Plaintiffs, many other prisoners at the Pack Unit are prescribed anticonvulsants, anticholinergics, antipsychotics, antihistamines, antidepressants, beta blockers, and diuretics. And, like King, Wilson, and Yates, many other prisoners at the Pack Unit are over age 65.

**ANSWER:**

**Defendants lack knowledge or information sufficient to admit or deny that "many" other prisoners at the Pack Unit are prescribed anticonvulsants, anticholinergics, antipsychotics, antihistamines, antidepressants, beta blockers, and diuretics. Defendants admit that other prisoners are over age 65.  Defendants deny the remainder of the allegations contained in ¶173 of Plaintiffs' First Amended Class Action Complaint.**

174.    Because TDCJ classifies the Pack Unit as a "Chronic Care I" facility, the Unit houses a disproportionate number of prisoners with chronic health needs.  There are more than 700 prisoners housed there who suffer from physiological conditions or take medications that increase their risk of heat-related illness.

**ANSWER:**

**Defendants admit the Pack Unit is a Type I geriatric facility, see unit description above. Defendants object to the use of the term "disproportionate" as the term is vague, mischaracterizes and is undefined.  Since this statistical allegation was prepared by Plaintiffs and contains incomplete information, Defendants lack sufficient knowledge or information to admit or deny the remaining allegations contained in ¶174 of Plaintiffs' First Amended Class Action Complaint.**

175.    Plaintiffs take their medications because the prescriptions are necessary to protect their health from their disabilities.

**ANSWER:**

**Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶175 of Plaintiffs' Amended Class Action Complaint.**

176. There are hundreds of otherwise-qualified prisoners with heat-sensitive disabilities housed at the Pack Unit, including the following:

**ANSWER:**

**Defendants deny the allegations contained in ¶176 of Plaintiffs' First Amended Class Action Complaint.**

177.    Hypertension is a cardiovascular disease. It is the leading cause of stroke, and a major cause of heart attacks. Serious damage is caused to the cardiovascular system when blood flow asserts high pressure on artery walls. Hypertension is often called "the silent killer." It can cause breathing problems, and result in organ damage if untreated or exacerbated.

**ANSWER:**

**This allegation is not directed to any specific Defendant. Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer. Defendants admit they rely on the medical providers for TDCJ to advise them regarding this type of information. Defendants lack personal knowledge or information sufficient to admit or deny the remaining allegations contained in ¶177 of Plaintiffs' First Amended Class Action Complaint.**

178.    Hypertension also causes severe headaches, fatigue, obesity, and vision problems. It is a physiological condition affecting body systems, including the respiratory and cardiovascular systems.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer. Defendants admit they rely on the medical providers for TDCJ to advise them regarding this type of information. Defendants lack personal knowledge or information sufficient to admit or deny the remaining allegations contained in ¶178 of Plaintiffs' First Amended Class Action Complaint.**

179.   As a consequence, TDCJ policy recognizes patients taking diuretics or beta blockers to treat hypertension are at increased risk of heat-related illness, and "should not be allowed to work or recreate in environments where the apparent air temperature is 95 [degrees] or higher."

**ANSWER:**

**Defendants admit that TDCJ has a policy which recognizes patients taking diuretics or beta blockers to treat hypertension are at increased risk of heat-related illness, and "should not be allowed to work or recreate in environments where the apparent air temperature is 95 [degrees] or higher."**

180.   Hypertension can substantially limit a patient's ability to walk, stand, and breathe, and limit the operation of his respiratory, circulatory, and cardiovascular systems, especially when the patient is exposed to extreme temperatures.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore,**

74

it is improper and incapable of answer. **Defendants admit they rely on the medical providers for TDCJ to advise them regarding this type of information. Defendants lack personal knowledge or information sufficient to admit or deny the remaining allegations contained in ¶180 of Plaintiffs' First Amended Class Action Complaint.**

181.    Hypertension itself also increases a patient's susceptibility to heat stress, and, combined with extreme heat, diminishes the body's ability to regulate internal temperature. Thus, a patient with hypertension will be at additional risk of heat-related injuries, and suffer additional pain and punishment above and beyond what an able-bodied inmate at the Pack Unit experiences.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer. Defendants admit they rely on the medical providers for TDCJ to advise them regarding this type of information. Defendants lack personal knowledge or information sufficient to admit or deny the remaining allegations contained in ¶181 of Plaintiffs' First Amended Class Action Complaint.**

182.    The doctor who cares for all prisoners at the Pack Unit has testified that hypertension increases the risk of heat-related illness.

**ANSWER:**

**Defendants admit that Dr. Fausto Avila has previously testified as follows:**

**Q.      Okay. All right. So those are all medical conditions - - obesity, hypertension, hypothyroidism - - that render you more vulnerable to extreme heat, right?**

**A. That's correct.**
**(Deposition of Fausto Avila, M.D., 3/5/2015, pg. 195 ln. 7-11)**

183.   TDCJ is aware that hypertension increases patients' risk of heat-related illness.

**ANSWER:**

**Defendant TDCJ admits that hypertension can increase a patient's risk of heat-related illness, but such risk or possible risk requires an individual assessment for each offender.**

184.   Approximately 728 prisoners at the Pack Unit suffer from hypertension.

**ANSWER:**

**Defendants admit that statistics provided by UTMB listed approximately 728 offenders at the Pack Unit with hypertension at the time the statistics were provided.**

185.   Asthma is a chronic lung disease that inflames and narrows the airways. It substantially limits sufferers' ability to breathe, causing recurring periods of wheezing, chest tightness, shortness of breath, and coughing. Asthma also substantially limits the operation of the respiratory system.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case.  These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer.  Defendants admit they rely on the medical providers for TDCJ to advise them regarding this type of information.  Defendants lack personal knowledge or information sufficient to admit or deny the remaining allegations contained in ¶185 of Plaintiffs' First Amended Class Action Complaint.**

186.   Heat and humid air can trigger asthma symptoms, causing asthma patients to suffer more pain and punishment in hot environments than people without asthma.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer. Defendants admit they rely on the medical providers for TDCJ to advise them regarding this type of information. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in ¶186 of Plaintiffs' First Amended Class Action Complaint.**

187.    TDCJ's medical provider recognizes that asthma is a condition that places patients at increased risk of heat-related illnesses.  The doctor who cares for all prisoners at the Pack Unit has testified that asthma increases the risk of heat-related illness.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer. Defendants admit they rely on the medical providers for TDCJ to advise them regarding this type of information. Defendants admit that Dr. Fausto Avila has previously testified as follows:**

**Q.    And asthma's also something that the heat affects, correct?**

**A.    Yes.**
**(Deposition of Fausto Avila, M.D., 3/5/2015, pg. 115 ln. 13-15)**

**Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in ¶187 of Plaintiffs' Amended Class Action Complaint.**

188.    TDCJ is aware that asthma places patients at increased risk of heat-related illness.

**ANSWER:**

**Defendant TDCJ admits that asthma under certain circumstances *can* place patients at an increased risk of heat-related illness, but such risk or possible risk requires an individual assessment for each offender.**

189.    Approximately 113 prisoners at the Pack Unit suffer from asthma.

**ANSWER:**

**Defendants admit that UTMB provided statistics listing approximately 113 prisoners at the Pack Unit as having asthma at the time the statistics were prepared.**

190.    Diabetes is a chronic disease caused by an insulin imbalance. Insulin is a hormone produced by the pancreas to control blood sugar. Diabetes results from improper insulin levels. Diabetes is a physical condition effecting the endocrine, digestive, circulatory, and nervous systems.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer. Defendants admit they will rely on their medical providers and experts regarding this type of information.  Absent medical or expert testimony, Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in ¶190 of Plaintiffs' First Amended Class Action Complaint.**

191.    Diabetes impairs the body's ability to adjust to increases in temperatures by affecting diabetics' ability to sweat.  Sweating is critical to cool the body in extreme heat. An

inability to sweat increases the body's core temperature, profoundly aggravating the risk of heat stroke.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer. Defendants admit they will rely on their medical providers and experts regarding this type of information.  Absent medical or expert testimony, Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in ¶191 of Plaintiffs' First Amended Class Action Complaint.**

192.    Diabetes also reduces blood circulation by impairing the action of the heart and by decreasing the ability of the body to dilate the blood vessels at the skin. Both are essential to dissipate body heat, and prevent heat stroke.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer. Defendants admit they will rely on their medical providers and experts regarding this type of information.  Absent medical or expert testimony, Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in ¶192 of Plaintiffs' First Amended Class Action Complaint.**

193.    The doctor who cares for all prisoners at the Pack Unit has testified that diabetes increases the risk of heat-related illness.

**ANSWER:**

**Defendants admit that Dr. Fausto Avila has previously testified as follows:**

**Q.      Tell the jury - - tell the Court why - - or how diabetes renders you more vulnerable to the heat because of what happens.**

**A.      Diabetes is a condition in which the autonomic nervous system starts deteriorating beside the metabolic problems they have. The regulation of temperature as well as other vital functions gets diminished.  The person will develop a neuropathy and the patient will develop a poor response to any kind of autonomic condition. (Deposition of Fausto Avila, M.D., 3/5/2015, pg. 129 ln. 2-10)**

194.    TDCJ is aware that diabetes increases the risk of heat-related illness.

**ANSWER:**

**Defendant TDCJ admits that diabetes *can* increase the risk of heat-related illness, but such risk or possible risk requires an individual assessment for each offender.**

195.    Approximately 212 prisoners at the Pack Unit suffer from diabetes.

**ANSWER:**

**Defendants admit that UTMB provided statistics listing approximately 212 offenders at the Pack Unit as having diabetes at the time the statistics were prepared.**

196.    COPD is a disease that makes it difficult to breathe. It includes chronic bronchitis and emphysema.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer. Defendants admit they will rely on their medical**

providers and experts regarding this type of information.  Absent medical or expert testimony, Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in ¶196 of Plaintiffs' First Amended Class Action Complaint.

197.    COPD causes frequent coughing, shortness of breath, and tightness in the chest, among other symptoms.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer. Defendants admit they will rely on their medical providers and experts regarding this type of information.  Absent medical or expert testimony, Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in ¶197 of Plaintiffs' First Amended Class Action Complaint.**

198.    COPD impairs the operation of the respiratory, circulatory, and cardiovascular systems.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer. Defendants admit they will rely on their medical providers and experts regarding this type of information.  Absent medical or expert**

testimony, Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in ¶198 of Plaintiffs' First Amended Class Action Complaint.

199.    Heat exacerbates COPD, because the body needs to breathe in additional oxygen to help cope with the heat. This requires additional breathing, which is impaired by COPD.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer. Defendants admit they will rely on their medical providers and experts regarding this type of information.  Absent medical or expert testimony, Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in ¶199 of Plaintiffs' First Amended Class Action Complaint.**

200.    The doctor who cares for all prisoners at the Pack Unit has testified that COPD increases the risk of heat-related illness.

**ANSWER:**

**Defendants admit Dr. Fausto Avila has previously testified as follows:**

**A.      Yes, the heat will affect the people with COPD.
(Deposition of Fausto Avila, M.D., 3/5/2015, pg. 115 ln. 7)**

201.    TDCJ is aware that COPD increases the risk of heat-related illness.

**ANSWER:**

**Defendant TDCJ admits that COPD *can* increase the risk of heat-related illness, but such risk or possible risk requires an individual assessment for each offender.**

202.   Approximately 84 prisoners at the Pack Unit suffer from COPD.

**ANSWER:**

**Defendants admit that UTMB provided statistics listing approximately 84 offenders at the Pack Unit with COPD at the time the statistics were prepared.**

203.   Schizoaffective disorder is a chronic mental illness in which a person suffers from both symptoms of schizophrenia and a mood disorder (such as major depression or bipolar disorder). Symptoms include paranoia, delusions, hallucinations, severe depression, mania, and thoughts of suicide.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer. Defendants admit they will rely on their medical providers and experts regarding this type of information.   Absent medical or expert testimony, Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in ¶203 of Plaintiffs' First Amended Class Action Complaint.**

204.   Schizoaffective disorder requires treatment with psychotropic drugs.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer. Defendants admit they will rely on their medical providers and experts regarding this type of information. Absent medical or expert testimony, Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in ¶204 of Plaintiffs' First Amended Class Action Complaint.**

205.    Schizoaffective disorder impairs the operation of the brain.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer. Defendants admit they will rely on their medical providers and experts regarding this type of information. Absent medical or expert testimony, Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in ¶205 of Plaintiffs' Amended Class Action Complaint.**

206.    Schizoaffective disorder limits patients' ability to think, concentrate, work, care for themselves, see, hear, and sleep.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require**

an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer. Defendants admit they will rely on their medical providers and experts regarding this type of information.  Absent medical or expert testimony, Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in ¶206 of Plaintiffs' First Amended Class Action Complaint.

207.    According to TDCJ's medical policies, psychotropic drugs increase a patient's vulnerability to heat-related medical conditions, like heat exhaustion, and heat stroke.

**ANSWER:**

**Defendant TDCJ admits that TDCJ policies list that psychotropic drugs *can* increase a patient's vulnerability to heat-related medical conditions, but such risk or possible risk requires an individual assessment for each offender.**

208.    TDCJ is aware that schizoaffective disorder (and the medications used to treat it) increase the risk of heat-related illness.

**ANSWER:**

**Defendant TDCJ admits that schizoaffective disorder and the medications used to treat it *can* increase the risk of heat-related illness, but such risk or possible risk requires an individual assessment for each offender.**

209.    Approximately 66 prisoners at the Pack Unit take some type of psychotropic drug.

**ANSWER:**

**Defendants deny the allegation set forth in ¶209 of Plaintiffs' First Amended Class Action Complaint.**

210.     Major depression is a chronic mental illness caused by a serotonin imbalance in the brain. People with depression experience insomnia or excessive sleeping, loss of appetite, fatigue, feelings of worthlessness, irritability, persistent headaches, and problems concentrating.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer. Defendants admit they will rely on their medical providers and experts regarding this type of information. Absent medical or expert testimony, Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in ¶210 of Plaintiffs' First Amended Class Action Complaint.**

211.     Depression is a physiological condition affecting body systems, including the brain.

**ANSWER:**

**Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer. Defendants admit they will rely on their medical providers and experts regarding this type of information. Absent medical or expert testimony, Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in ¶211 of Plaintiffs' First Amended Class Action Complaint.**

212.    The doctor treating patients at the Pack Unit testified patients with depression may experience difficulty caring for themselves. TDCJ does not dispute this.

**ANSWER:**

**Defendants admit that Dr. Fausto Avila has testified regarding this subject; however, objections were raised to this line of questioning.  Defendants cannot admit or deny this allegation pending a ruling on the objections asserted during the deposition referenced in paragraph 212.  Defendants, therefore, lack knowledge or information sufficient to admit or deny whether there are offenders at the Pack Unit who suffer depression that renders them unable to care for themselves that the health care providers at Pack Unit have not identified.**

213.    TDCJ's medical provider identifies antidepressant medications, like Prozac, as putting patients at much higher risk of heat-related illness. In fact, when a patient is prescribed an antidepressant, the physician informs the patient that these medications "can affect the manner in which the body relates to excessive heat especially in the summer." The patient is told to "contact nursing/security if they [feel] dizzy, confused, or over heated" so their vital signs can be checked. The patient is warned "excessive heat can cause life threatening conditions" and told to "drink plenty of water when the heat is extreme." Despite this explicit warning, TDCJ does nothing to protect inmates taking such medications from the extreme temperatures inside the housing areas.

**ANSWER:**

**Defendant TDCJ denies that it does nothing to protect inmates taking such medications from the heat.  Defendants object to allegations that contain information in the knowledge and experience of entities or persons who are not parties to this case. These allegations require an interpretation of information which was not prepared by the Defendants; and, therefore, it is improper and incapable of answer. Defendants admit they**

will rely on their medical providers and experts regarding this type of information.  Absent medical or expert testimony, Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in ¶213 of Plaintiffs' First Amended Class Action Complaint.

214.    TDCJ is aware that depression (and the medications used to treat it) increase the risk of heat-related illness.

**ANSWER:**

**Defendants object that allegations are vague and undefined. Defendants admit that certain medications used to treat depression *can* potentially increase the risk of heat-related illness, but is individual to each offender.**

215.    Dean Mojica has not been diagnosed with any medical conditions that make him sensitive to the heat. He also does not take any medications.

**ANSWER:**

**Defendants object to allegations that require an interpretation of an offenders' medical records.   Subject to further investigation by Defendants' medical experts, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶215 of Plaintiffs' First Amended Class Action Complaint, investigation continues.**

216.    Nevertheless, Mojica consistently suffers from headaches, fatigue, and excessive sweating when he is inside his dorm during summers at the Pack Unit. On the worst days, he has the sensation that it is difficult to breathe, as if there is pressure on his chest. Sometimes, he feels his heart beating much harder than normal.

**ANSWER:**

Defendants object to allegations that require an interpretation of an offenders' medical records.  Subject to further investigation by Defendants' medical experts and further discovery, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶216 of Plaintiffs' First Amended Class Action Complaint, investigation continues.

217.    Mojica has suffered from painful heat cramps in the back of his legs and in his feet while incarcerated at the Pack Unit.

**ANSWER:**

Defendants lack knowledge or information sufficient to admit or deny the allegations contained in ¶217 of Plaintiffs' Amended Class Action Complaint.

218.    Thus, even prisoners without heat-sensitive medical conditions suffer at the Pack Unit due to the high indoor apparent temperatures and cruel conditions.

**ANSWER:**

Defendants deny that the conditions at Pack Unit are "cruel."  Defendants lack knowledge or information sufficient to admit or deny the remainder of the allegations contained in ¶218 of Plaintiffs' First Amended Class Action Complaint.

219.    Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2), Plaintiffs bring this action on behalf of themselves and all similarly-situated persons.

**ANSWER:**

Defendants admit that Plaintiffs seek class certification under Federal Rule of Civil Procedure 23(a) and (b)(2), but deny that the requisites for class certification are met in the this case.

220.    Plaintiffs propose to represent a class composed of all inmates who currently are, or who in the future will be, incarcerated at the Pack Unit, and who are subjected to TDCJ's policy and practice of failing to regulate high apparent indoor temperatures in the housing areas. Each Plaintiff is typical of class members.

**ANSWER:**

**Based upon information and belief, Defendants deny that each named Plaintiff is typical and incorporate the Answer at ¶219 as if fully set forth.**

221.    Plaintiffs also seek to represent the following sub-classes of people who 1) are currently incarcerated at the Pack Unit (or will be in the future), 2) are subjected to TDCJ's policy and practice of failing to regulate high apparent indoor temperatures in the housing areas, and either:

**ANSWER:**

**Defendants incorporate the Answer at ¶219 as if fully set forth.**

3a.   **Heat-Sensitive Subclass:** (i) have a physiological condition that places them at increased risk of heat-related illness, injury, or death (including, but not limited to, suffering from obesity, diabetes, hypertension, cardiovascular disease, psychiatric conditions, cirrhosis of the liver, chronic obstructive pulmonary disease, cystic fibrosis, asthma, Sjogren's syndrome, sweat gland dysfunction, and thyroid dysfunction); or, (ii) are prescribed an anticonvulsant, anticholinergic, antipsychotics, antihistamines, antidepressants, beta blockers, or diuretic; or, (iii) are over age 65. Cole, Wallace, Brannum, Wilson, King, and Yates are typical members of this subclass.

**ANSWER:**

**Defendants incorporate the Answer at ¶219 as if fully set forth.**

3b. **Disability Subclass:** suffer from a disability that substantially limits one or more of their major life activities and who are at increased risk of heat-related illness, injury, or death due to their disability or any medical treatment necessary to treat their disability. Cole, Wallace, Brannum, Wilson, King, and Yates are typical members of this subclass.

**ANSWER:**

**Defendants incorporate the Answer at ¶219 as if fully set forth.**

222.    **Numerosity**: The joinder of each class member would be impracticable because each class is so numerous. The approximate number of class members exceeds 1,400 as the Pack Unit houses over 1,400 inmates and many other inmates could potentially be housed at the Pack Unit during some point during this litigation, or in the future. Joining all members of the class is impracticable due to the minimum 1,400 person size and the fluctuating population of the Pack Unit.

**ANSWER:**

**Defendants incorporate the Answer at ¶219 as if fully set forth.  Based upon the lack of a significant number of grievances from offenders and the necessity for an individual review of each offender's medical records, Defendants deny that individual lawsuits would be impracticable; but, rather, would be necessary.**

223.    The subclasses are also sufficiently numerous to satisfy Rule 23(a). Because the Pack Unit is a "Chronic Care I" facility, more than 700 inmates incarcerated there suffer from at least one medical condition or disability that would make them a class member. TDCJ itself identifies over 400 inmates who have "heat restrictions" on their forced labor assignments due to

their vulnerability to "extreme temperatures," though this number is under-inclusive. Likewise, upon information and belief, TDCJ houses a high number of inmates with qualifying disabilities at the Pack Unit.

**ANSWER:**

**Defendants deny the allegations set forth in ¶223 and incorporate their Answers at ¶219 to ¶223 as if fully set forth.**

224.    Approximately 200 prisoners over age 65 live at the Pack Unit. Joining all 200 prisoners over age 65 would be impracticable.

**ANSWER:**

**Defendants deny the allegations set forth in ¶224 and incorporate the Answers at ¶219-223 as if fully set forth.**

225.    Identifying every inmate at the Pack Unit who is a subclass member would require interviewing hundreds of prisoners, and reviewing each of their medical records. Disposition of this matter as a class action will provide substantial benefits and efficiencies to the parties and the Court.

**Defendants deny the allegations set forth in ¶225 and incorporate the Answers at ¶219-224 as if fully set forth.**

226.    **Commonality**: Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class.  A. The common questions of law and fact for the proposed **General Class** are:

1)    Are all prisoners at the Pack Unit exposed to high apparent temperatures inside the inmate housing areas?

2)    Does exposing prisoners to the high apparent temperatures in the housing areas

at the Pack Unit violate the Eighth Amendment, by denying prisoners safe housing and shelter from the elements?

   3)   Are the members of the General Class entitled to declaratory and injunctive relief?

B.      Further, the common questions of law and fact for the subclasses are:

  1)    For the **Heat-Sensitive Subclass**:

    a)    Is the risk of heat-related injuries for the Heat-Sensitive Subclass increased when members are exposed to the high apparent temperatures in housing areas of the Pack Unit?

    b)    Does exposing members of the Heat-Sensitive Subclass to the high apparent temperatures in the housing areas at the Pack Unit violate their Eighth Amendment rights to safe housing conditions and shelter from the elements?

    c)    Are the members of the Heat-Sensitive Subclass entitled to declaratory and injunctive relief?

  2)    For the **Disability Subclass**:

    a)    Do the members of the Disability Subclass a) suffer from a disability that substantially limits one or more of their major life activities and b) *either* suffer from a disability that increases the risk of heat-related illness, injury, or death *or* receive any medical treatment necessary to treat their disability that increases the risk of heat-related illness, injury or death?

    b)    Does TDCJ provide reasonable accommodations to prisoners with heat-related disabilities exposed to high apparent temperatures in the housing areas at the Pack Unit?

      c)      Is TDCJ immune from claims for injunctive and declaratory relief brought under the ADA and Rehabilitation Act?

      d)      Are members of the Disability Subclass entitled to declaratory and injunctive relief?

**ANSWER:**

**Defendants deny the allegations set forth in ¶226 and incorporate the Answers at ¶219-225 as if fully set forth.**

227.   **Typicality:** Plaintiffs' claims are typical and representative of each class and subclass member's claims against Defendants, as identified above. The claims of Plaintiffs and the Class all arise from the same conduct by Defendants (exposing them to unsafe temperatures in the housing areas at the Pack Unit), are based not only on identical legal theories, and also seek identical remedies (injunctive and declaratory relief requiring Defendants to lower the temperatures at the Pack Unit to safe levels). The Pack Unit's housing areas all reach roughly the same temperature levels; the high indoor apparent temperatures threaten all inmates' wellbeing. Plaintiffs' interest in reducing the danger of heat-related illness, injury, or death is identical to every other inmate's interest. All members of the class are similarly injured by Defendants' wrongful conduct.

**ANSWER:**

**Defendants deny the allegations set forth in ¶226 and incorporate the Answers at ¶219-226 as if fully set forth.**

228.   **Adequacy of Class Counsel:** Plaintiffs and their counsel will fairly and adequately represent the interests of the class. Plaintiffs have no interests contrary to those of class members. Plaintiffs' counsel includes a non-profit law firm, the Texas Civil Rights Project (TCRP), whose

mission is to protect the civil rights of low-income Texans. TCRP has prosecuted many class actions, or multi-plaintiff cases that obtained class-like injunctive and declaratory relief. Likewise, Plaintiffs' class counsel, Edwards Law, has litigated complex commercial and civil rights cases, including class actions against multinational corporations and governmental entities. Edwards Law has extensive experience in heat-related temperature litigation against TDCJ, as Plaintiffs' counsel represent the families of eight men who died of heat stroke in TDCJ prisons, and one other man who suffered a non-fatal heat stroke.

**ANSWER:**

**Defendants incorporate the Answers at ¶219-227 as if fully set forth and further state that Defendants do not have sufficient information to admit or deny these allegations. Defendants have previously sought this information in interrogatories to Plaintiffs' attorneys on May 13, 2015 and received nonresponsive answers on June 15, 2015. Defendants were unable to investigate these allegations because Plaintiffs have refused to provide answers to Defendants' First Set of Interrogatories to Plaintiffs' attorneys. Defendants will be unable to investigate these allegations until Plaintiffs provide the facts underpinning these conclusory allegations. Additionally, Plaintiffs have failed to allege the totality of the requirements for adequacy of class counsel, specifically, the work counsel has done in identifying or investigating potential claims in the action and the resources that counsel will commit to representing the class.**

229.   A class action is superior to other available methods for fairly and efficiently adjudicating this controversy, especially since joinder of all Class members is impracticable. Each class member is irreparably harmed as a result of Defendants' wrongful conduct. Litigating this

case as a class action will reduce the risk of repetitious litigation relating to the Defendants' conduct.

**ANSWER:**

**Defendants deny the allegations set forth in ¶229 and incorporate the Answers at ¶219-228 as if fully set forth.**

230.    Plaintiffs do not seek damages, except as may be incidental to declaratory or injunctive relief.

**ANSWER:**

**Defendants admit that it has been stipulated and pled by Plaintiffs that Plaintiffs are proceeding under Rule 23(b)2 and are not seeking damages in this lawsuit.**

231.    Plaintiffs incorporate the previous paragraphs as if alleged herein, and further plead:

**ANSWER:**

**Defendants incorporate their Answers at ¶1-230 as if fully set forth.**

232.    Pursuant to 42 U.S.C. § 1983, Livingston and Herrera, in their official capacities, are deliberately indifferent to the substantial risk of serious harm to prisoners at the Pack Unit caused by their choice to expose prisoners to high apparent temperatures inside the housing areas, and unnecessarily and wantonly cause the Plaintiffs pain.

**ANSWER:**

**Defendants deny the allegations contained in ¶232 of Plaintiffs' First Amended Class Action Complaint.**

233.    The high indoor apparent temperatures at the Pack Unit pose an unreasonable risk to prisoners' health.

**ANSWER:**

**Defendants deny the allegations contained in ¶233 of Plaintiffs' First Amended Class Action Complaint.**

234.   Defendants are aware that extreme heat in their facilities' housing areas poses substantial risk of serious injury to inmates, including Plaintiffs. Defendants' knowledge is demonstrated by TDCJ policies and practices, as well as the well-documented history of injuries to inmates and employees at the Pack Unit. Defendants remain indifferent to the risk, failing to take obvious steps to mitigate it.

**ANSWER:**

**Defendants deny the allegations contained in ¶234 of Plaintiffs' First Amended Class Action Complaint.**

235.   In light of the numerous public warnings about the risk posed by extreme temperatures from government agencies, scientific studies of the risk, warnings within TDCJ's own policy, knowledge of TDCJ's medical providers, and the history of inmate and staff injuries, Defendants know of the risk of heat-related illness, injury, or death that exists at the Pack Unit.

**ANSWER:**

**Based upon the implementation of remedial and mitigations measures during the summer months, as well as the offenders' access to medical care, Defendants deny that the conditions, services, and programs within the Pack Unit violate the Constitution or laws of the United States.**

236.   Defendants are acting with deliberate indifference to Plaintiffs' constitutional right to be free from cruel and unusual punishment by refusing to provide safe housing areas that protect inmates from exposure to extreme heat, and which annually cause injuries to prisoners.

**ANSWER:**

**Based upon the implementation of remedial and mitigations measures during the summer months, as well as the offenders' access to medical care, Defendants deny the allegations contained in ¶236 of Plaintiffs' First Amended Class Action Complaint.**

237.    Defendants' deliberate indifference to Plaintiffs' risk of serious medical problems puts Plaintiffs at substantial risk of serious bodily injury including, but not limited to, heat stroke, heat cramps, and heat exhaustion, as well as the myriad symptoms associated with these conditions.

**ANSWER:**

**Defendants deny the allegations contained in ¶237 of Plaintiffs' First Amended Class Action Complaint.**

238.    Defendants' policies, practices, acts, and omissions violate the Cruel and Unusual Punishments Clause of the Eighth Amendments, made applicable to the States through the Fourteenth Amendment to the United States Constitution.

**ANSWER:**

**Defendants deny the allegations contained in ¶238 of Plaintiffs' First Amended Class Action Complaint. Defendants deny that the conditions, services, and programs within the Pack Unit violate the Constitution or laws of the United States.**

239.    As a proximate result of Defendants' unconstitutional policies, practices, acts, and omissions, Plaintiffs and class members have suffered and will continue to suffer immediate and irreparable injury, including physical injury, risk of physical injury, and risk of death.

**ANSWER:**

**Defendants deny the allegations contained in ¶239 of Plaintiffs' First Amended Class Action Complaint.**

240.    For purposes of the ADA, ADA Amendments Act, and Rehabilitation Act, Plaintiffs Wilson, Wallace, Brannum, King, Yates, and Cole, and other similarly situated prisoners, are qualified individuals regarded as having a physiological or mental impairment that substantially limits one or more of their major life activities.

**ANSWER:**

**Defendant TDCJ lacks sufficient information at the time of this Answer to admit or deny whether the named Plaintiffs are qualified individuals regarded as having a physiological or mental impairment that substantially limits one or more of their major life activities for purposes of the ADA, ADA Amendments Act, and Rehabilitation Act.  Defendant TDCJ asserts that if such impairments are determined to make the named Plaintiffs qualified individuals regarded as having a physiological or mental impairment that substantially limits one or more of their major life activities, that the remedy of refrigerated air-conditioning on a class-wide basis may not be medically necessary, overbroad and an undue burden.  Defendant TDCJ denies that any such determinations can be made on a class-wide basis as urged by Plaintiffs.**

241.    TDCJ fails to reasonably accommodate prisoners with heat-sensitive disabilities. These disabilities (such as asthma, COPD, hypertension, obesity, diabetes, depression, and mental illnesses treated with psychotropic medications) place prisoners at increased risk of heat-related illness, injury, or death, and cause them to suffer more pain and punishment than able-bodied prisoners.

**ANSWER:**

**Defendant TDCJ denies the allegations contained in ¶241 of Plaintiffs' First Amended Class Action Complaint.**

242.    TDCJ acknowledges in internal documents that people with certain disabilities (like diabetes, hypertension or cardiovascular disease), or who take certain medications to treat their disabilities (like psychotropics, antihistamines, antidepressants, or diuretics), are much more vulnerable to extreme temperatures. Their medical conditions prevent their bodies from regulating their temperature, putting them at much greater risk of death from heat.

**ANSWER:**

**Defendant TDCJ admits its polices at Ex. A-D, indicate that people with certain medical conditions like diabetes, hypertension or cardiovascular disease, or who take certain medications to treat their medical or psychiatric conditions (like psychotropics, antihistamines, or diuretics), may be more vulnerable to extreme temperatures and that such a determination requires an individual review of each person's medical and psychiatric records and an individual treatment plan.  Defendant TDCJ, therefore, denies that such alleged conditions are disabilities which are capable of class-wide proof for suits brought pursuant to the ADA, ADA Amendments Act, and Rehabilitation Act.  Defendant TDCJ denies the remainder of ¶242 of Plaintiffs' First Amended Class Action Complaint.**

243.    Plaintiffs Cole, Wallace, Brannum, Wilson, Yates, and King, as well as other similarly situated prisoners, suffer from these heat-sensitive disabilities.

**ANSWER:**

**Defendant TDCJ admits that its policies at Exs. A-D indicate that people with certain medical conditions like diabetes, hypertension or cardiovascular disease, or who take certain**

**medications to treat their medical or psychiatric conditions (like psychotropics, antihistamines, or diuretics), may be more vulnerable to extreme temperatures and that such a determination requires an individual review of each person's medical and psychiatric records and an individual treatment plan. Defendant TDCJ, therefore, denies that such alleged conditions are disabilities which are capable of class-wide proof for suits brought pursuant to the ADA, ADA Amendments Act, and Rehabilitation Act. Defendant TDCJ denies the remainder of ¶243 of Plaintiffs' First Amended Class Action Complaint.**

244.    TDCJ has been, and is, a recipient of federal funds, and thus covered by the mandate of the Rehabilitation Act. The Rehabilitation Act requires recipients of federal monies to reasonably accommodate persons with disabilities in their facilities, program activities, and services and reasonably modify such facilities, services and programs to accomplish this purpose.

**ANSWER:**

**Defendant TDCJ admits the allegations contained in ¶244 of Plaintiffs' First Amended Class Action Complaint and asserts its entitlement to all defenses under the Act.**

245.    Further, Title II of the ADA and the ADA Amendments Act apply to TDCJ and has the same mandate as the Rehabilitation Act. 42 U.S.C. §12131 *et seq*.

**ANSWER:**

**Defendant TDCJ asserts all of its defenses, including Eleventh Amendment and sovereign immunity, and admits that under certain circumstances, Title II of the ADA and the ADA Amendments Act may apply to the TDCJ, and that if they do apply, the ADA and ADAAA have the same mandate as the Rehabilitation Act. 42 U.S.C. §12131 *et seq*.**

246.    Title II of the ADA and the ADA Amendments Act protects prisoners with disabilities because exposure to extreme temperatures also actually violates the Eighth and Fourteenth Amendments of the U.S. Constitution.

**ANSWER:**

**Paragraph 246 sets forth a legal conclusion which does not require an answer.  To the extent it does require an answer, Defendants deny the allegations contained in ¶246 of Plaintiffs' First Amended Class Action Complaint.**

247.    The Pack Unit and other TDCJ units are facilities, and their operation comprises a program and service for Rehabilitation Act, ADA, and ADAAA purposes. Plaintiffs Cole, Wallace, Brannum, King, Wilson, and Yates, and similarly situated prisoners with disabilities, are presently qualified to participate in programs, activities and services in TDCJ facilities at the Pack Unit, such as incarceration in the inmate housing areas.

**ANSWER:**

**Defendant TDCJ denies that all the operations at Pack Unit and other TDCJ facilities, comprise a program and service for Rehabilitation Act, ADA, and ADAAA purposes. Defendant TDCJ incorporates its answer at ¶243 as if fully set forth.**

248.    Defendants know that Brannum, Wallace, Wilson, King, Yates, and Cole, and other similarly situated prisoners with disabilities, suffer from heat-sensitive disabilities, and were prescribed medications to treat their disabilities. Despite their knowledge, TDCJ's officers intentionally discriminated against them, under the meaning of the ADA, ADAAA, and Rehabilitation Act, by failing and refusing to protect them from the extreme temperatures.

**ANSWER:**

**Defendant TDCJ denies the allegations contained in ¶248 of Plaintiffs' First Amended Class Action Complaint. Defendant TDCJ incorporates its answer at ¶243 as if fully set forth.**

249.     As alleged above, TDCJ fails and refuses to reasonably accommodate Brannum, Wilson, Wallace, King, Yates, and Cole, and other similarly-situated prisoners with disabilities, while in custody, in violation of the ADA, ADAAA and Rehabilitation Act.

**ANSWER:**

**Defendant TDCJ denies the allegations contained in ¶249 of Plaintiffs' First Amended Class Action Complaint. Defendant TDCJ incorporates its answer at ¶243 as if fully set forth.**

250.     As shown above, TDCJ failed, and refused, to reasonably modify its facilities, services, accommodations, and programs to reasonably accommodate Brannum, Wallace, Wilson, King, Yates, and Cole's disabilities, as well as similarly situated prisoners.

**ANSWER:**

**Defendant TDCJ denies the allegations contained in ¶250 of Plaintiffs' First Amended Class Action Complaint. Defendant TDCJ incorporates its answer at ¶243 as if fully set forth.**

251.     Plaintiffs seek injunctive and declaratory relief pursuant to 42 U.S.C. § 1983, the ADA, ADAAA, and Rehabilitation Act against Defendants, for themselves and the class, to require TDCJ to provide safe housing conditions at the Pack Unit.

**ANSWER:**

**Defendants incorporate their responses set forth in ¶¶1-250. Defendants admit that Plaintiffs seek injunctive and declaratory relief against Defendants for themselves and the**

**class.  Defendants deny the allegation that the TDCJ does not provide safe housing conditions at the Pack Unit.**

252.    Without permanent injunctive relief, Defendants will continue their same perilous practices and conduct, disregarding federal legal mandates, and endangering the lives and the welfare of current and future prisoners at the Pack Unit, causing every prisoner to suffer each summer.

**ANSWER:**

**Defendants incorporate their responses set forth in ¶¶1-251.  Defendants admit that Plaintiffs seek injunctive and declaratory relief against Defendants for themselves and the class.  Defendants deny the allegations contained in ¶252 of Plaintiffs' First Amended Class Action Complaint.**

253.    Plaintiffs have no plain, adequate, or complete remedy at law to address the wrongs described herein.

**ANSWER:**

**Defendants deny the allegations contained in ¶253 of Plaintiffs' First Amended Class Action Complaint.**

254.    Plaintiffs ask that the Court enjoin Defendants to maintain a safe indoor apparent temperature (e.g. maintaining a heat index of 88 degrees or lower) inside each of the Pack Unit's housing areas (calculated using the NWS heat index table), or enter other injunctive relief sufficient to protect the health and safety of the prisoners at the Pack Unit.

**ANSWER:**

**Defendants deny that an injunction to enjoin Defendants to maintain a heat index of 88°F or lower inside each of the Pack Unit's housing areas is appropriate in this case or that**

it is established that such a temperature would eliminate all risk of heat-related illnesses or injuries about which Plaintiffs complain.  Further, such a resolution would impose an undue burden and cost on Defendant TDCJ.

255.    Plaintiffs request an order declaring the conditions under which they are housed are unconstitutional.

**ANSWER:**

**Defendants move the Court to deny the relief requested in ¶255 of Plaintiffs' First Amended Class Action Complaint.**

256.    Plaintiffs Cole, Yates, King, Wilson, and Brannum request an order declaring TDCJ violates the Americans with Disabilities Act and Rehabilitation Act by failing to reasonably accommodate inmates with disabilities.

**ANSWER:**

**Defendants move the Court to deny the relief requested in ¶256 of Plaintiffs' First Amended Class Action Complaint.**

257.    Plaintiffs and members of the class are entitled to injunctive and declaratory relief to end this unlawful discrimination.

**ANSWER:**

**Defendants deny the allegations contained in ¶257 of Plaintiffs' First Amended Class Action Complaint.**

258.    Plaintiffs do not seek damages.

**ANSWER:**

**Defendants admit that Plaintiffs do not seek damages as stipulated and pled by the Plaintiffs.**

259.     259. Pursuant to 42 U.S.C. § 1988, and 42 U.S.C. § 12205 Plaintiffs are entitled to recover attorneys' fees, litigation expenses, and court costs, including expert costs.

**ANSWER:**

**Defendants move the Court to deny the relief requested in ¶259 of Plaintiffs' First Amended Class Action Complaint.**

### III. DEFENDANTS' OTHER DENIALS AND DEFENSES

1.     Defendants deny that the conditions, services, and programs within the Pack Unit violate the Constitution or the laws of the United States.

2.     The Plaintiffs have not stated a claim upon which relief can be granted under 42 U.S.C. §12131 (ADA and ADAAA) or 29 U.S.C. §794 (RA) or under any other statute, constitutional theory, or legal authority.

3.     The Defendants admit that causes of action may be stated under certain circumstances pursuant to 42 U.S.C. §1983, 42 U.S.C. §12131 or 29 U.S.C. §794 but deny that such circumstances are present in this case.

4.     The Defendants invoke all limitations, defenses, and exclusions set forth in the PLRA (Prison Litigation Reform Act) and any other applicable statutes.

5.     The Defendant TDCJ denies that it violated any of Plaintiffs' rights under ADA, ADAAA, or RA or any other law or statute under which Plaintiffs sue or may be suing.

6.     The Defendant TDCJ denies that its employees were motivated by any discriminatory intent of any kind.

7.     The Defendants assert that actions taken relative to Plaintiff(s), concerning any claim alleged by Plaintiff(s) in this lawsuit, were based on a good faith belief that such actions

were taken in accordance with agency policy, applicable law, and were taken without any discriminatory intent.

8.     The Defendants assert that each alleged challenged action, of which Plaintiffs complain in this lawsuit, was taken for valid and legitimate, non-discriminatory reasons in the context of a prison facility.

9.     The Defendants deny that Plaintiffs are entitled to injunctive, declaratory, or any other relief demanded in the Plaintiffs' Complaint and further deny that Plaintiffs are entitled to attorney's fees or costs in any amount whatsoever.

10.     Defendant TDCJ denies that Congress has abrogated Texas' sovereign immunity for purposes of the ADA, ADAAA or RA.

11.     Defendant TDCJ denies that Plaintiffs requested an accommodation under the ADA, ADAAA, or RA that defendant knew or believed any or all needed an accommodation, or that defendant denied him a reasonable accommodation.

12.     Defendant TDCJ claims that the accommodations now requested by Plaintiffs would impose an undue hardship on Defendant.

13.     Defendant TDCJ asserts that Plaintiff(s) were not a qualified individual with a disability who, by reason of such disability, was excluded from participation in or was denied the benefits of services, programs, or activities of a public entity.

14.     Defendant TDCJ denies that Plaintiffs were subjected to discrimination in violation of the ADA, ADAAA, or RA.

15.     Defendant TDCJ denies that any employee of TDCJ intentionally discriminated against Plaintiffs by reason of or solely because of their alleged disability.

16.      The Defendants assert the defenses of res judicata, statute of limitations, laches,

estoppel, waiver and lack of jurisdiction to Plaintiffs' claims in this lawsuit.

17.    The Defendants assert that some, and perhaps all, of Plaintiff(s)' complaints may be barred by the applicable statute of limitations and/or by the Plaintiff(s)' failure to exhaust administrative remedies under applicable law; and, thus, the Defendants assert such defenses to the extent these defenses may be applicable.

18.    The Defendants specifically invoke entitlement to Eleventh Amendment Immunity and sovereign immunity as to any of Plaintiff's claims which are not expressly and unambiguously included within the limited waivers of sovereign immunity found in any statute under which Plaintiffs make claims.

19.    The Defendants assert, based upon and information and belief, that Plaintiff(s) failed to mitigate or avoid injury or to take advantage of the remedial measures for the conditions alleged, and that none of such alleged conditions or risk of harm, if any, have been the result of any discriminatory or unconstitutional act by the Defendants, all acts of which the Defendants deny.

20.    The Defendants assert entitlement to the after-acquired evidence defense.

21.    The Defendants assert their right to raise additional defenses that become apparent throughout the factual development of the case.

## JURY DEMAND

The Plaintiffs do not seek money damages; however, in an abundance of caution, in the event any new claims are asserted or the pending claims amended, Defendants demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

For the foregoing reasons, Defendants move the Court to deny all relief requested by Plaintiffs, to enter judgment in Defendants' favor as to all claims asserted by Plaintiffs and to enter an order awarding Defendants all costs, including attorney's fees incurred in the litigation of this matter, and to be granted all such other and further legal and equitable relief to which they may be entitled.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**CHARLES E. ROY**
First Assistant Attorney General

**JAMES E. DAVIS**
Deputy Attorney General for Civil Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division


 */s/ Cynthia L. Burton*
**CYNTHIA L. BURTON**
Assistant Attorney General
Attorney in charge
Texas Bar No. 24035455
Southern ID No. 35273
Cynthia.burton@texasattorneygeneral.gov


**MATTHEW GREER**
Assistant Attorney General
Co-Counsel
Texas Bar No. 24069825
Southern ID No.1171775
Matthew.greer@texasattorneygeneral.gov

**DANIEL C. NEUHOFF**
Assistant Attorney General
Co-counsel
Texas Bar No. 24088123
Southern ID No.2374885
Daniel.neuhoff@texasattorneygeneral.gov


Office of the Attorney General of Texas
Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin TX  78711
(512) 463-2080/Fax (512) 936-2109

**ATTORNEYS FOR BRAD LIVINGSTON,
ROBERTO HERRERA, and the TEXAS
DEPARTMENT OF CRIMINAL JUSTICE**

**NOTICE OF ELECTRONIC FILING**

I, **CYNTHIA L. BURTON**, Assistant Attorney General of Texas, certify that I have electronically submitted for filing **Defendants' Original Answer to Plaintiffs First Amended Class Action Complaint** in accordance with the Electronic Case Files system of the Southern District of Texas on this day August 3, 2015.

/s/ Cynthia L. Burton
**CYNTHIA L. BURTON**
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I, **CYNTHIA L. BURTON**, Assistant Attorney General of Texas, certify that a true and correct copy of the above and foregoing **Defendants' Original Answer to Plaintiffs First Amended Class Action Complaint** has been served electronically to all counsel or *pro se* parties of record as authorized by Fed. R. Civ. P. 5 (b)(2) on August 3, 2015.

/s/ Cynthia L. Burton
**CYNTHIA L. BURTON**
Assistant Attorney General

111