UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID BAILEY, MARVIN RAY YATES, KEITH COLE, and NICHOLAS DIAZ, individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BRAD LIVINGSTON, in his official capacity, ROBERTO HERRERA, in his official capacity, and TEXAS DEPARTMENT OF CRIMINAL JUSTICE,<br><br>Defendants. | § § § § § § § § § § § § § § § § | CIVIL ACTION NO.<br>4:14-cv-1698 |

**PLAINTIFFS' DESIGNATION OF EXPERT WITNESSES**

Plaintiffs file this Designation of Expert Witnesses:

**A.     Retained Experts**

1.     **Dr. Susi Vassallo, M.D.**

Dr. Vassallo is a physician licensed to practice Medicine in Texas and New York State. She is Board Certified in Emergency Medicine and Medical Toxicology. She is on the faculty of New York University Medical School, and is also an associate professor at the Dell School of Medicine in Austin, Texas. Her medical expertise includes thermoregulation and the consequences of extreme heat on people.  Her CV, fee schedule, and list of testimony for the previous four years have been contemporaneously produced to the Defendants.

She will testify human bodies dissipate heat by evaporative cooling and dilation of the blood vessels, and by losing sweat through the skin. Sweating cools the body through evaporation, however high relative humidity limits evaporation, and the body cannot get rid of its heat. When heat gain by the body exceeds the amount the body can remove, body temperature begins to rise, increasing the risk of heat-related illnesses.  She will describe the medical aspects of heat related illness and symptoms, how to protect against them, and risk factors that exacerbate a person's risk of heat-related illnesses.

She will testify it is well known that certain medical conditions, including hypertension, diabetes, and obesity, along with other factors like age, increase the body's intolerance to extreme temperatures.  She will also testify that it is well

know that certain medications, including diuretics and psychotropic medications, increase the risk of heat-related illness or symptoms. She will discuss the medical and physiological aspects of how each factor increases the risk of heat-related illness. She will discuss the various types of heat-related illnesses and their symptoms. She will testify that all forms of heat-related illness are preventable with appropriate protective measures. She will discuss medical literature regarding the effects of heat on the human body, heat-related illness including heat stroke, as well as risk, mortality, and morbidity from prolonged exposure to heat and heat waves, and the increased risk of heat to people over 65 and with certain medical conditions and/or taking certain medications.

She will testify about the medical conditions and medications of all Plaintiffs. She will testify that all Plaintiffs are at substantial risk of serious heat-related illness due to their prolonged exposure to high heat index temperatures in the Pack Unit housing areas., For all Plaintiffs except Mr. Mojica, she will testify that they have medical conditions and or take medications that significantly increase their heat sensitivity; that these medical conditions likely limited their major life activities, and that these medical conditions and medications put them at an ever greater risk of serious heat-related illness beyond the substantial risk for all Plaintiffs and Pack inmates. She will testify about past incidents of heat-related illness and symptoms of the Plaintiffs, their general medical and health conditions, and the contents of their medical records

She will testify that the temperatures and heat indexes inside Plaintiffs' dorms at the Pack Unit in the summer markedly increase their risks of serious heat-related illness, including heat stroke, creating a substantial risk. She will testify this is well-known in the medical community, and reflected in TDCJ and UTMB policies governing extreme temperatures.

She will testify that TDCJ policies, procedures, and practices at the Pack Unit, including but not limited to, failures to protect prisoners like Plaintiffs from extreme temperatures, have caused heat-related illness and symptoms in certain of the Plaintiffs, pose a significant risk of serious heat-related illness in the future to all the Plaintiffs and indeed all inmates at the Pack Unit, and amount to an inhumane and unreasonable infliction of medical risk and suffering.

She will testify about various measures that could prevent heat stroke at the Pack Unit, including air conditioning, housing prisoners with identified medical conditions in air-conditioned portions of the prison, and providing respite areas. She will testify that TDCJ's existing protections for prisoners regarding heat are medically inadequate.

The Fifth Circuit relied on Dr. Vassallo's opinions in *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) and *Ball v. LeBlanc*, 2015 WL 4114473 (5th Cir. 2015).

Dr. Vassallo will be paid $500 per hour for report writing and document review, and $5,000 per day (or any part thereof) for testimony at trial or by deposition.

Dr. Vassallo's opinions and their bases are described in greater detail in her Rule 26 expert report, which was produced contemporaneously to the Defendants.

### 2. Prof. Tom Sager, Ph.D.

Professor Thomas W. Sager has been a Professor of Statistics at the University of Texas at Austin, McCombs School of Business, since 1993, and prior to that had been an assistant and associate professor of statistics at Stanford University and the University of Texas at Austin since 1973. He obtained his Ph.D. in statistics in 1973. He has numerous publications, as listed in his enclosed CV.

Professor Sager was provided with indoor temperature and humidity data taken by TDCJ at various indoor locations at the Pack Unit for the period August 27, 2014 to October 8, 2014, as well as temperature and humidity data from the nearest National Weather Service station (the Brenham airport) for the period June 17, 2014 to October 8, 2014. He was also provided with the NWS heat index formula.

Based on that information, Professor Sager used a multiple regression analysis to extrapolate a highly reliable estimate of indoor temperatures at the same locations at the Pack Unit during the time period from June 17, 2014 to August 26, 2014 (for which TDCJ did not take measurements). In his report, Professor Sager describes not only the equations and methodology he used to perform this analysis, but the multiple ways in which he checked and analyzed the accuracy of his results and confirmed that they are highly accurate and reliable using usual and typical measures of reliability in the field of statistics.

Professor Sager has also attached figures to his report showing graphical displays of the empirical information he was provided, his extrapolation results, and the verification of the accuracy of his results.

Prof. Sager will be paid $200 per hour for report writing and document review, and $2,000 per day (or any part thereof) for testimony at trial or by deposition.

Professor Sager's opinions and the bases for them are more fully described in his Rule 26 report, served contemporaneously.

### 3. Ronald Brown, P.E.

Mr. Brown is a professional engineer with over 40 years of experience in developing and installing HVAC, mechanical, plumbing, and electrical systems in commercial, residential, and institutional settings. He has a BSME in mechanical engineering from Lamar University, and is licensed in 23 states.

Mr. Brown will testify based on the documents identified in his expert report, review of certain depositions, his personal observations at the Pack Unit, and his

use of the Carrier HAPS software program to assess the types of air conditioning equipment needed for particular spaces at the Pack Unit housing areas.

He will testify that while some buildings at the Pack Unit are air conditioned, the the inmate housing areas are not. He will testify about the characteristics of the prison buildings, including dimensions, construction, insulation, and ventilation based on his review of documents and personal observations. He will testify that the operation of fans actually adds heat to the building during periods of high temperatures.

He will testify about various ways and equipment needed to add air conditioning to the various inmate housing areas and/or the gym at the Pack Unit, and the costs thereof at different temperature and humidity levels, including initial installation costs of equipment and labor assuming free-world rates for labor, and also the annual operating costs, including power and maintenance costs.

He will testify that he has considered other methods of lowering the temperatures at the Pack Unit, and such methods are either not feasible (such as swamp coolers) or are not as cost effective as air conditions (such as chilled water systems).

He will testify about relevant industry standards, analytical methods and procedures, including standard commercial design points and performance parameters for commercial HVAC equipment, the characteristics and use of the Carrier HAPS program, ASHRAE standards, equipment cost quotes from Carrier, and estimations of costs including equipment and labor costs for installation of equipment.

Mr. Brown will be paid $225.00 per hour for report writing and document review, and $2,250 per day (or any part thereof) for testimony at trial or by deposition.

Mr. Brown's opinions and compensation are described in greater detail in his Rule 26 expert report, which was produced contemporaneously to the Defendants.

### 4.  Linda Mearns, Ph.D

Dr. Mearns is a Ph.D climatologist serving as Section Head, Regional Integrated Sciences Collective (RISC), IMAGe, CISL, National Center for Atmospheric Research (NCAR). She received her Ph.D. from UCLA in 1988 and has decades of experience in climatology including climate modeling. She has done climate modeling work on grants from NASA, the Department of Defense, NOAA, and the EPA, including a paper on heat waves and their effect on human health. She has more than 130 peer-reviewed publications.

Dr. Mearns was a member of the Intergovernmental Panel on Climate Change (IPCC) from 1996-2009, serving on the IPCC Task Group on Regional Climate

4

Projections. As a member of the IPCC, she was awarded the 2007 Nobel Peace Prize that was shared by the members of the IPCC.

Dr. Mearns will offer opinions regarding historical climate information, predictions regarding the future climate, and climate modelling, including specifically including information and future estimates for the area of Texas in which the Pack Unit is located. She will opine that the mean summer temperatures in the area of the Pack Unit will increase in the future, as will the high temperatures. She will opine that the area historically has experienced many summer days in which the heat index exceeds 88 for at least 4 hours and for at least 8 hours, and the number of such days will increase in the future. She will opine that although the summer of 2011 was very hot in Texas, it was not a unique event and she will describe the risk and likelihood of another similar summer occurring in the future. Although some aspects of climate change involve significant uncertainty, that is not the case with the prediction that future temperatures will increase in this area of Texas.

Dr. Mearns has not testified at trial or in deposition in the past four years.

Dr. Mearns will be paid $200.00 per hour for report writing and document review, and $2,000 per day (or any part thereof) for testimony at trial or by deposition.

Dr. Mearns's opinions, their bases, and her compensation are described in greater detail in her Rule 26 expert report, which was produced contemporaneously to the Defendants.

5.   **Michael McGeehin, Ph.D**

Michael McGeehin holds a Ph.D. in Environmental Health Sciences and an M.S.P.H. in Epidemiology. Dr. McGeehin is the former Director of Environmental Health Effects at the Centers for Disease Control and Prevention (CDC) and worked at the CDC as an epidemiologist for thirty-three years. Dr. McGeehin was the lead scientist for the CDC on health effects from extreme heat and heat waves for more than fifteen years. As a Director, Dr. McGeehin led research on the effects of extreme heat and was regularly asked to consult with state health departments and federal agencies concerning the same.

Dr. McGeehin will testify about the dangers of high temperatures and humidity from an epidemiological perspective. Epidemiology identifies risks to human health based on exposure of population groups to environmental conditions, such as extreme heat. He will testify that epidemiological studies are especially useful to policymakers to making informed decisions about protecting human health, and will describe various studies and other literature regarding the risks of heat to human health.

Dr. McGeehin will testify it is well-established that prolonged exposure to high apparent temperatures causes heat-related illnesses, including heat cramps, heat

syncope, heat exhaustion, heat stroke, and death. He will testify that the entire population is at significantly increased risk of heat-related injury, illness, or death with prolonged exposure to high heat index temperatures, including people with and without identifiable risk factors. He will testify about typical presentation of each of these heat-related conditions. He will testify that prolonged exposure to extreme heat results not only in traditionally defined heat illnesses such as heat stroke and heat exhaustion, but also other medical events that are caused or exacerbated by the heat. He will testify the risk of heat-related illness climbs higher during extreme heat events, or "heat waves."

Dr. McGeehin will testify that heat-related illnesses and injuries are often vastly under-reported, or go unrecognized by treating medical personnel. Despite this, he will testify that, on average, hundreds of people die each year in the United States from heat-related causes, and that more people die in the United States from extreme heat events than any other natural disaster. He will testify most of these people die indoors.

Dr. McGeehin will testify certain populations are at much greater risk of heat-related injury, illness, or death, including the elderly (over age 60), people with certain chronic illnesses and medical conditions (including obesity, heart disease, diabetes, and mental illnesses), those taking certain medications, and people in institutional settings (including prisons or jails).

Dr. McGeehin will testify that access to air conditioning significantly reduces the risk of heat-related illness or injury, and reduces the risk far more than other preventative measures. In a completely controlled environment, such as a prison, air conditioning would completely eliminate the risk of heat-related illness and death. He will testify that there is no support in any scientific literature for the effectiveness of measures other than air conditioning in reducing the risk of extreme heat. He will testify that use of fans is actually counter-productive at certain heat indices above 95 degrees. He will testify TDCJ's existing policies are grossly inadequate to address summer heat in Texas generally, to protect inmate health, or to address extreme heat events.

Dr. McGeehin will testify that, from an epidemiological perspective, "heat" includes both temperature and humidity. He will testify that the common measure epidemiologists utilize is the "heat index" as promulgated by the National Weather Service. He will testify that in some buildings, the heat index is actually higher indoors than outdoors during summer months.

Dr. McGeehin will testify that government agencies in the Southern United States have almost universally adopted air conditioning as a basic necessity in their facilities. He will testify he is unaware of any federal or state building without air conditioning other than TDCJ prisons.

Dr. McGeehin will testify that, based on his review of the temperature data at the Pack Unit, that he is greatly concerned about the inmates' health and safety during

the summer, when inmates experience prolonged periods of high heat indices. He will testify that the heat indices indoors are high and unrelenting, significantly increasing the risk of illness, injury, or death to the inmates. He will testify these heat indices place all people at significantly increased risk.

Dr. McGeehin will testify that the population characteristics of the Pack Unit place inmates at particularly increased risk for serious heat related illness. He will testify that the Pack Unit's population skews older, has a higher rate of chronic illnesses, and take heat-sensitive medications at higher rates than the general population.

Dr. McGeehin will testify that the levels of arsenic in drinking water at the Pack Unit are more than twice the upper limit recommended by the Environmental Protection Agency and World Health Organization. He will testify that drinking this water is unsafe, and associated with increased risk of bladder, skin, and lung cancer, as well as other medical conditions.

Dr. McGeehin will testify that the risk to prisoners at the Pack Unit will increase in the future, because the prison population is aging and the climate is warming.

Dr. McGeehin will be paid $185.00 per hour for report writing and document review, and $2,000 per day (or any part thereof) for testimony at trial or by deposition.

Dr. McGeehin's opinions and their bases are described in greater detail in his Rule 26 expert report, which was produced contemporaneously to the Defendants.

**6.      Secretary Eldon Vail (ret.)**

Eldon Vail is the former secretary of the Washington State Department of Corrections. He has nearly 35 years of experience in adult and juvenile corrections, holding various line and supervisory positions in prisons and jails in Washington State. He served as the warden of three adult prisons that housed maximum, medium, and minimum-security inmates. He was the deputy secretary of the Washington Department of Corrections for seven years, and the Secretary of the Department of Corrections for four years before his retirement.

Sec. Vail will testify there is no penological purpose for keeping indoor temperatures in prisons high during the summer. He will testify that prisons similar to the Pack Unit in Washington State and throughout the country are air conditioned expressly to protect the health and welfare of the inmates they house. He will testify that Texas and other states have regulations requiring correctional facilities, like county jails, to keep indoor temperatures in a range between 65 and 85 degrees.

Sec. Vail will testify that when faced with the decision about whether to air condition new or refurbished prisons that including air conditioning was a

deliberate choice made in Washington State expressly to protect inmate safety and welfare. He will testify that prison policymakers in Washington State knew this decision may be politically unpopular, but that it was necessary.

Sec. Vail will testify that, from a correctional perspective, the heat-mitigation measures presently in place at the Pack Unit are insufficient to protect inmate health and safety, and that air-conditioning the prison should be mandatory.

Sec. Vail will testify that air conditioning the Pack Unit would likely make the prison marginally safer strictly from a security perspective. Air conditioning would allow correctional officers to focus on other duties, likely lower rates of violence, and remove security risks created by TDCJ's current decision to not air condition the facility. Based on his experience working in and supervising air-conditioned prisons, he is unaware of any additional security risks that would be created by installation of air conditioning.

Sec. Vail will testify that the decision to use climate control devices in livestock barns, but not inmate housing areas, is extremely disturbing.

Sec. Vail will be paid $175.00 per hour for report writing and document review, and $1,500 per day (or any part thereof) for testimony at trial or by deposition.

Sec. Vail's opinions and their bases are described in greater detail in his Rule 26 expert report, which was produced contemporaneously to the Defendants.

These witnesses opinions are based on TDCJ and UTMB policies, health care records, American Correctional Association standards, any literature they may have relied upon, statements and depositions taken in this cause (and exhibits thereto), documents produced by Defendants in this cause in discovery and pursuant to Public Information Act requests, and the policies relevant to the operation of the Pack Unit, and their education, training and experience, as well as additional documents identified in their reports.

Expected exhibits to which these witnesses may refer or rely upon when giving their testimony at trial are not fully known at this time but are expected to include related TDCJ and UTMB records, health care records, relevant literature, any written report of these witnesses or other witnesses and any of the testimony of any party or other witness, the documents produced in this cause in discovery and pursuant to Public Information Act requests, articles concerning the events and TDCJ and UTMB policies, depositions in this cause, and exhibits to said depositions.  These witnesses may refer to or rely upon any exhibit shown to or admitted into evidence by any other witness.

B.    **Non-Retained Experts**

1.    Medical Providers to TDCJ Inmates

The following persons are medical providers, including physicians, technicians, nurses, radiologists, physician's assistants, healthcare providers, clinics, hospitals and their

agents, representatives and employees, where, or by whom, Plaintiffs, putative class members, and other TDCJ prisoners received medical care and treatment. Plaintiff identifies all health care providers who provided and/or failed to provide care to Plaintiffs and putative class members at the Pack Unit, including but not limited to, the following health care providers, as persons who may give expert testimony at the trial of this cause. To the extent it is necessary to call live at the trial of or deposition in this cause any custodian of records for any of the following health care providers, Plaintiff identifies any such custodian as a person who may have expert knowledge.

The health care providers listed below are not within the control of Plaintiffs and have not been retained by Plaintiffs as expert witnesses (and therefore have not provided to Plaintiffs any specific written report other than their respective medical records); therefore, for the mental impressions held by and the opinions of and facts known by any of the following witnesses, please refer to their medical records of Plaintiffs and putative class members, and any deposition testimony given or to be given by any such healthcare providers.

Dr. Fausto Avila, M.D.
Dr. Charles Adams, M.D.
Dr. Glenda Adams, M.D.
Dr. Owen Murray, M.D.
Dr. Susan Morris, M.D.
Joe Oliver
Barry Norwood
c/o Lee Haney
Office of the Attorney General

Dr. Lannette Linthicum, M.D.
Dr. Kathryn Buskirk, M.D.
Dr. Robert Williams, M.D.
Sarah Abke
George Crippen
Justin Robison
Gary Eubank
Jason Chavers
Jerri Robison
Sheila Curry
c/o Cynthia Burton
Office of the Attorney General

For the subject matter on which the medical providers will testify and the general substance of their mental impressions and opinions and for a brief summary of the basis for their opinions, please refer to their respective medical records and other documents produced in discovery in this case. It is anticipated that these witnesses may provide opinions regarding the conditions in the Pack Unit and TDCJ generally, medical conditions of the Plaintiffs and putative class members, and the effects of heat on the human body generally.

9

2.	Correctional Officers

The following persons are current and former correctional officers or other officials at the Pack Unit and Texas Department of Criminal Justice. Plaintiffs identify all correctional officers with knowledge of the Texas Department of Criminal Justice and Pack Unit's practices, and specific knowledge concerning the facts described in the complaint and all amendments thereto, as well as any practices at the prison, including but not limited to the following, as persons who may give expert testimony at the trial of this cause. To the extent it is necessary Plaintiffs reserve the right to call live at the trial of or deposition in this cause any custodian of records for the correctional facility. Plaintiffs identify any such custodian as a person who may have expert knowledge regarding issues related to the incident in question.

The correctional officers listed below are not within the control of Plaintiffs and have not been retained by Plaintiffs as expert witnesses (and therefore have not provided to Plaintiffs any specific written report or curriculum vitae). For the subject matter on which they will testify and the general substance of their mental impressions and opinions and for a brief summary of the basis for their opinions, please refer the records/documents produced to date and to any deposition testimony given or to be given by any such individuals.

All correctional officers at the Pack Unit and/or officials listed in the documents produced to date, including but not limited to

William Stephens
Robert Eason
Eric Guerrero
Kaury McConahay
Warden Robert Herrera
Mj. Matthew McLarin
Asst. Warden Donald Bilnoski
Larry Cantu
Debra Allison
Tommy Vian
Kim Farguson
Ron Steffa
Glenn Isbell
Clyde Armstrong
c/o Cynthia Burton
Office of the Attorney General

Lance Lowry
AFSCME/CEC7
Barret Professional Bldg.
1314 10th Street, Suite 230
Huntsville, Texas 77320

        For the subject matter on which the corrections officials will testify and the general substance of their mental impressions and opinions and for a brief summary of the basis for their opinions, please refer to their depositions and other records they reviewed or created produced in discovery in this case. It is anticipated that these witnesses may provide opinions regarding the conditions in the Pack Unit and TDCJ generally, and security practices both at the Pack Unit and in TDCJ generally.

D.    Plaintiffs reserve the right to elicit, by way of cross-examination, opinion testimony from experts designated or to be designated and called by other parties to the suit. Plaintiffs also reserve the right to elicit, by way of cross-examination, opinion testimony from Defendants and their employees. Plaintiffs express their intention to possibly call, as witnesses associated with adverse parties, any of Defendant's experts and/or employees (or former employees) of Defendants TDCJ and UTMB. Plaintiffs do not have any control over any such witness to be named by Defendant, nor do they have any superior right to ascertain the subject matter on which any such witness may testify and/or opinions held by any such witness, beyond the information disclosed in deposition testimony and/or by Defendants' discovery responses. In that regard, Plaintiffs refer you to Defendant's discovery documents, deposition testimony, and documents produced by Defendants in discovery or through Public Information Act requests for the subject matter, facts known, and opinions and impressions of these witnesses. Plaintiff reserves the right to obtain opinion testimony from any such witness within their area of expertise or related to this case.

E.    Plaintiffs reserve the right to call undesignated rebuttal expert witnesses, whose testimony cannot reasonably be foreseen until the presentation of the evidence against the Plaintiffs.

F.    Plaintiffs reserve the right to withdraw the designation of any expert and to aver positively that any such previously designated expert will not be called as a witness at trial, and to re-designate same as a consulting expert, who cannot be called by opposing counsel.

G.    Plaintiffs reserve the right to supplement this designation with additional designations of experts within the time limits imposed by the Court or any alterations of same by subsequent Court Order or agreement of the parties, or pursuant to the Federal Rules of Civil Procedure.

H.    Plaintiffs reserve the right to elicit any lay opinion testimony at the time of trial which would be truthful, which would be of benefit to the jury to determine material issues of fact, and which would not violate any existing Court Order or the Federal Rules of Civil Procedure and/or the Federal Rules of Evidence. Specifically, Plaintiffs reserve the right to elicit such testimony from persons with knowledge of relevant facts who have been identified in response to discovery propounded to Plaintiffs.

I.    Plaintiffs reserve all additional rights they have with regard to experts pursuant to the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the case law construing

same, and the rulings of the trial court.

J. Plaintiffs names all of those persons identified as having knowledge of relevant facts whose training and background enables them to testify as experts and who may be called as experts by any of the parties to this litigation. Furthermore, Plaintiffs adopt the designation of experts of Defendants to this litigation, without necessarily adopting their opinions or validating their qualifications as experts.

K. Plaintiffs reserve the right to call former and current employees and/or representatives of Defendants as they are identified in discovery.

L. Attorneys' Fees

Plaintiffs' counsel, Jeff Edwards, Scott Medlock, James Harrington, Wayne Krause-Yang, Brian McGiverin, and Michael Singley will testify concerning the amount, reasonableness, and necessity of Plaintiffs' attorney fees. To the extent their biographies and resumes have not already been produced, they will be produced at an appropriate time after judgment, as that is when attorneys' fees issues are typically resolved.

DATED: August 7, 2015.

Respectfully submitted,

The Edwards Law Firm
The Haehnel Building
1101 East 11th Street
Austin, Texas 78702
    Tel.   512-623-7727
    Fax.  512-623-7729

By   /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Lead Counsel
Scott Medlock
State Bar No. 24044783

Brian McGiverin
State Bar No. 24067760
James C. Harrington
State Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073 [phone]

(512) 474-0726 [fax]

Michael Singley
Texas Bar No. 00794642
THE SINGLEY LAW FIRM, PLLC
4131 Spicewood Springs Rd., Ste. O-3
Austin, Texas 78759
(512) 334-4302
(512) 727-3365 fax


ATTORNEYS FOR PLAINTIFFS

### **CERTIFICATE OF SERVICE**

By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Southern District of Texas.