UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID BAILEY, MARVIN RAY YATES, KEITH COLE, and NICHOLAS DIAZ individually and on behalf of those similarly situated <br>     Plaintiffs, <br><br> v. <br><br> BRAD LIVINGSTON, in his official capacity, ROBERTO HERRERA, in his official capacity, and TEXAS DEPARTMENT OF CRIMINAL JUSTICE <br>     Defendants. | § § § § § § § § § § § § § § | No. 4:14-CV-01698 |

**DEFENDANTS' MOTION ASSERTING *DAUBERT* AND FRE 702 CHALLENGES TO PLAINTIFFS' CLASS-ACTION-CERTIFICATION EXPERT TESTIMONY UNDER THE GUIDELINES ESTABLISHED IN *TYSON FOODS, INC. V. BOUAPHAKEO, ET AL.*, 136 S.Ct. 1036 (2016)**

**TO THE HONORABLE DISTRICT JUDGE KEITH ELLISON:**

Defendants file this motion seeking to challenge evidence offered by Plaintiffs' experts, under the *Daubert* standards, under FRE 702, and under the guidelines recently set forth by the U.S. Supreme Court in the *Tyson Foods'* class-certification case. Defendants respectfully present the following argument and authorities:

    **I.**     **TIMING/PROCEDURE FOR *DAUBERT* MOTIONS IN THIS CASE**

This case is not controlled by a scheduling order. The Federal Rules of Civil Procedure do not address the procedural aspects of presenting *Daubert* challenges in a class-certification context (as opposed to a trial on the merits context). Thus, counsel for Defendants propose the following

procedure to best aid the Court.  At this point, the expert testimony at issue specifically involves the elements required to obtain class certification (i.e., numerosity, commonality, typicality, adequacy), as well as generally involving the merits of the underlying causes of action – at least to some limited degree.  Considering that the upcoming class-certification hearing does not involve a jury, defense counsel believes it would be most efficient for the Court to carry any pending *Daubert* motions through the class-certification hearing, thereby minimizing the chances of duplicate testimony being presented to the Court and minimizing the time associated with presenting these issues to the Court.  If accomplished in this manner, there may be no need to conduct an additional or lengthy *Daubert* hearing, *per se*, provided the parties have fully briefed the issues and the challenged expert testimony has been presented to the Court during the class-certification hearing.

If required and following the class-certification hearing, the parties will offer additional briefing specifically addressing the propriety of the actual expert testimony adduced during the certification hearing, applying the *Daubert* principles.  Utilizing this process, the Court may then rule on the parties' *Daubert* challenges at or near the time it rules on Plaintiffs' Motion for Class Certification.  This proposed process is effective, economical, and respects the Court's and the parties' time constraints.

## II.    *TYSON FOODS*:  EXPERT TESTIMONY IN CLASS ACTION SUITS

The issue in *Tyson Foods* is whether statistical sampling techniques (a/k/a "representative evidence") can provide the necessary evidence to establish liability in a wage and hour class-action suit context.  The Court found that because Tyson failed to keep the proper records required by law, which would have provided evidence for each individual class member, it may be appropriate

for a district court to rely on a statistical sampling technique if the required degree of reliability is met for the particular cause of action asserted. Notably, the Court found error in defendant's failure to move for a hearing regarding the statistical validity of plaintiffs' representative studies, citing *Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed. 469 (1993). *Tyson Foods*, 136 S.Ct. at 1044. When representative evidence is being used either to establish liability or to show that the case should proceed as a class action, *Tyson* requires that the defendant opposing class certification attack the expert evidence via *Daubert* to accomplish the following: (1) preserving its appellate complaints, concerning both the validity and admissibility of expert evidence, and (2) creating an appellate record sufficient to show the validity of the representative evidence for the particular causes of action asserted. *Id.*

To that end, Defendants are requesting – at this certification stage -- that the Court consider whether Plaintiffs' expert testimony meets the requirements of *Daubert*. Defendants are making this initial challenge to Plaintiffs' expert testimony, as any such testimony used to support class certification necessarily raises at least preliminary issues concerning the reliability and admissibility of Plaintiffs' expert testimony related to the merits of the underlying causes of action. This initial challenge to Plaintiffs' expert testimony is not intended to address all *Daubert* issues that will be raised by Plaintiffs' expert witnesses, particularly that testimony proffered during the trial on the merits.

Presently, Defendants' *Daubert* challenges are specifically directed at Plaintiffs' expert witnesses and the expert testimony related to the Court's determination whether to grant class-certification status in the case at bar. Because Defendants do not know with any certainty what specific expert evidence Plaintiffs will attempt to adduce during the certification hearing,

Defendants are broadly signaling the anticipated legal issues and related expert testimony that may be offered during the hearing.

### III. BACKGROUND

Plaintiffs filed this class-action suit challenging the conditions of confinement at the Texas Department of Criminal Justice, Pack Unit in Navasota, Texas. Plaintiffs sued the Texas prison system, its Executive Director, and the Pack Unit Warden, seeking an injunction to lower the temperature in the offender housing areas of the Pack Unit during the summer.

To properly proceed as a class-action suit, questions of law or fact common to class members must predominate over any questions affecting individual members. *Tyson Foods*, 136 S.Ct. at 1045. Under Federal Rule of Civil Procedure ("FRCP") 23, factual or legal issues requiring individual inquiry are fatal to proceeding as a class-action suit. *Id.* To that end, Plaintiffs argue that the risk of environmental heat illness or injury is the same for all healthy members of the putative class. Plaintiffs make this fallacious argument in an attempt to satisfy, *inter alia*, the numerosity, commonality, and typicality requirements of FRCP 23, governing class-action lawsuits. In short, if the risk of heat illness or injury from environmental hyperthermia varies based upon individual physiological and/or sociological characteristics, then the suit is not proper for class treatment, and it should not be certified to proceed as a class action.

As Defendants will show, in this class-certification stage, Plaintiffs' expert-witness testimony is not reliable. Defendants further assert that Plaintiffs' expert witnesses themselves do not possess the expertise, through education or experience, to offer valid scientific opinions concerning environmental hyperthermia – the key topic at hand.

### IV. *DAUBERT* RELIABILITY – TESTIMONY MUST BE RELIABLE

To be admissible, scientific evidence must satisfy a "reliability" standard. Under Rule 702, judges are directed to consider whether the expert: (1) has "sufficient facts or data" underlying the testimony; (2) applied "reliable principles and methods," and (3) "reliably applied the principles and methods to the facts" of the case. Fed. R. Evid. 702. *Daubert* holds that federal courts applying Rule 702 should consider multiple factors, including error rates and the existence of standards, in assessing reliability. *Daubert*, 509 U.S. at 590-92. Thus, *Daubert* invites the trial courts to look closely and directly at evidence and to consider a wide range of factors bearing on reliability – that courts are gatekeepers and must assess the validity and reliability of scientific evidence. *Id.*

*Daubert* mandates a three-pronged approach. *Id.* at 593. First, courts must consider the "validity" or "reliability" of the evidence. *Id.* Second, courts must consider how the evidence fits the facts and issues in the case. *Id.* Third, courts must consider the dangers that the evidence will mislead or confuse the jury (yet, Defendants recognize that the certification hearing is a bench proceeding). *Id. Daubert* firmly rejects the notion that merely qualifying an expert paves the way for whatever the expert might want to say about the case. See *id.* at 595-96. The expert must reach conclusions that are consistent with those reached by others applying similar analyses to similar facts. *Id.* Disparity is a red flag – it suggests that something about the method or manner has gone wrong and that reliability has not been met. Defendants believe Plaintiffs' expert evidence will contain ample disparity.

*Daubert* stresses that the inquiry is "flexible" and is to be shaped largely by the context of the particular case. Under *Daubert*, courts must consider: (1) whether the theory or technique can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) error

rates; (4) the existence of standards governing the operation of the technique; (5) the degree of acceptance in the scientific community. Id. 593-94.

Accompanying the amendment to Rule 702, in 2000, the courts are instructed to consider more factors bearing on reliability: (1) whether the opinion grows from independent research or was developed for the purpose of litigation; (2) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; (3) whether the expert has adequately accounted for alternative explanations; (4) whether the expert has exercised the care appropriate to professional work, and (5) whether the field is known to reach reliable results in the area of the proposed testimony. See, e.g., *Oddi v. Ford Motor Co.,* 234 F.3d 136, 156 (3rd Cir. 2000). The import of the Rule 702 amendment was to put into words three additional categories of inquiry, beyond the helpfulness standard of the original Rule 702. All three conditions affect the admissibility of evidence, not merely its weight. Id. These are preliminary questions:

1. **Sufficient Facts or Data.** The courts must screen out expert testimony that is not adequately supported, underscoring the authority of courts to examine expert testimony.
2. **Reliable Principles and Methods.** This lies at the heart of *Daubert*. Expert opinion must reflect reliable principles and methods.
3. **Reliable Application.** Rule 104(a) determines whether evidence is admissible. The courts must determine whether the principles and methods were reliably applied.

### V. POST-*DAUBERT* RELIABILITY FACTORS

In addition to the canonical *Daubert* factors, there are "red flags that caution against certifying an expert [that] include reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity" as well as whether "a purported expert's opinion was prepared solely for litigation." *Newell Rubbermaid, Inc. v. Raymond Corp.*,

676 F.3d 521, 527 (6th Cir. 2012).  Here, the Court held that the district court correctly applied these considerations when excluding the testimony of a forensic engineer who concluded that the failure to include a rear guard door on a forklift constituted a design defect.  *Id.*

As this Court will see from the testimony of Susi Vassallo, M.D., her opinions are not reliable.  Dr. Vassallo relies on anecdotal evidence; Dr. Vassallo extrapolates improperly; Dr. Vassallo fails to consider other methods to reduce heat illnesses or injuries; Dr. Vassallo has not identified appropriate scientific evidence or studies to support her conclusions; Dr. Vassallo relies on her subjective opinions.  In the end, it is as unfortunate as it is plain that Dr. Vassallo's opinions have transformed over time, not to reflect the current state of scientific evidence or opinion but, rather, to help Plaintiffs construct a better scientific basis for the successful maintenance of a lawsuit against the State of Texas.

Plaintiffs' expert Dr. McGeehin should be struck for similar reasons.  Approaching this subject from the perspective of epidemiology, Dr. McGeehin's opinion departs from traditional epidemiological principals by entirely ignoring data from the target population and attempting to conduct a risk assessment based on scientific articles he has admitted are different from the factual circumstances at that Pack Unit.  In addition, Dr. McGeehin's testimony is unreliable as to the insufficiency of TDCJ's mitigation measures because he admitted he has not reviewed the totality of measures in place at the Pack Unit.  Finally, it will be clear from Dr. McGeehin's testimony that he is not apply the correct standards to a government entities obligation in terms of risk abatement then that imposed by the Eighth Amendment as clearly expressed in Fifth Circuit precedent.

Upholding summary judgment for the defendant pharmaceutical company, the Eleventh Circuit (the Fifth Circuit's former jurisdiction) addressed the weight given to a physician's sole

reliance on selective information fed to her by plaintiff's lawyers.  *Guinn v. Astra-Zeneca Pharmaceuticals*, 602 F.3d 1245, 1255 (11th Cir. 2010) (per curiam).  The Court stated:

> The reliability of Dr. Marks' methodology is further called into question by her failure to conduct the standard diagnostic techniques she normally used to rule out potential alternative causes. . . . Dr. Marks admitted that although she would normally conduct an interview to determine the cause of a patient's weight gain, she had only reviewed selections from Guinn's medical records prepared by her attorneys.  Not only does this cast doubt on Dr. Marks' differential diagnosis, but ***it also violates a primary purpose of Daubert: to ensure the expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field*.'**

*Id.* (emphasis added).  In substantially the same manner as Dr. Marks, Dr. Vassallo's testimony fails to show the intellectual rigor required of an expert in the field of environmental hyperthermia.  And, she is – in fact – not an expert in this field of study.

Plaintiffs' expert Dr. McGeehin should be struck for similar reasons.  Approaching this subject from the perspective of epidemiology, Dr. McGeehin's opinion departs from traditional epidemiological principals by entirely ignoring data from the target population and attempting to conduct a risk assessment based on scientific articles he has admitted are different from the factual circumstances at that Pack Unit.  In addition, Dr. McGeehin's testimony is unreliable as to the insufficiency of TDCJ's mitigation measures because he admitted he has not reviewed the totality of measures in place at the Pack Unit.  Finally, it will be clear from Dr. McGeehin's testimony that he is not apply the correct standards to a government entities obligation in terms of risk abatement then that imposed by the Eighth Amendment as clearly expressed in Fifth Circuit precedent.

## VI. FIFTH CIRCUIT LAW

The Fifth Circuit has frequently addressed issues concerning the admissibility of expert testimony or evidence, addressing an array of actual and claimed areas of specialized knowledge or expertise, applying the Supreme Court trilogy of cases: *Daubert, Kumho*, and *Joiner*.[1] In *Daubert*, the Supreme Court adopted a multi-factor reliability standard predicated on the plain text of the Federal Rules of Evidence. Based on the plain text of Rule 702, the Court held that expert testimony is admissible if the expert proposed to testify to: (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. *Daubert,* 509 U.S. at 592. *Daubert* instructed federal courts to scrutinize closely the expert's methodology; the reliability of the methodology is frequently the focus of gatekeeping as reflected in a number of Fifth Circuit opinions.

### A. Methodology

In *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383 (5th Cir. 2009), the plaintiff claimed to have contracted Chronic Beryllium Disease from exposure in his workplace. Plaintiff's expert diagnosis of CBD was based on inaccurate assumptions in pathology. In fact, Plaintiff did not have the markers required by the scientific literature to diagnose the disease. Also, Plaintiff's expert had published that beryllium sensitivity was merely a precursor to clinical illness, not a present injury. Because Plaintiff had no compensable injury, his claims were dismissed.

In *Wells v SmithKline Beecham Corp.*, 601 F.3d 375 (5th Cir. 2010), Plaintiff alleged that the drugs he took for Parkinson's disease caused him to become a compulsive gambler. Plaintiff's

---

[1] *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997).

expert witnesses agreed that the scientific literature did not establish a causal relationship. Instead, the experts relied on case studies, while not *per se* inadmissible, do not establish causation absent epidemiological support. Thus, there was insufficient evidence to support Plaintiff's claim. *Wells*, 601 F.3d at 381, n.33 ("Law lags science, it does not lead it.") (quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996)).

To sustain a toxic tort claim, a plaintiff must provide evidence of the level of exposure to a substance that is harmful and evidence that the plaintiff was exposed to such quantities. *Seaman v. Seacor Marine LLC*, 326 F.App'x 721, 723 (5th Cir. 2009). In *Seaman*, Plaintiff claimed exposure to hydrocarbons (in particular, Ferox) and had no scientific literature showing a statistically significant link between Ferox and Plaintiff's bladder cancer. Plaintiff's expert had no information about the duration, concentration, or other circumstances of Plaintiff's exposure. Moreover, Plaintiff's expert had no scientific literature showing a statistically significant link between Ferox and bladder cancer. *Id.* at 726. Thus, the expert's testimony was "sadly lacking" and did not "come close to either general or specific causation." *Id.* at 728.

The Fifth Circuit has carefully analyzed the scientific literature that purportedly supports general causation, and the Court has rejected it. See *LeBlanc v. Chevron USA, Inc.,* 396 F.App'x 94 (5th Cir. 2010). There, Plaintiff claimed he contracted myelofibrosis with myeloid metaplasia ("MMM") from exposure to benzene. Plaintiff's expert's scientific studies all had deficiencies, however, and could not show causation. Some studies were not statistically significant; some were non-specific and did not consider benzene alone; some expressly disclaimed a causal connection; some were not scientific evidence at all but merely secondary literature. *Id.* at 99-100. Moreover,

the Court rejected the argument that Plaintiff's expert could establish causation based on clinical experience without support from the scientific literature. *Id.* at 100-01.

An expert may not base their opinions on speculation or conjecture. *Hathaway v. Bazany*, 507 F.3d 312, 317–19 (5th Cir. 2007) (proposed expert's testimony was speculative and unreliable under *Daubert* and thus, it was properly excluded). Expert opinions based on speculation rather than reasoned analysis are inadmissible. Dr. Vassallo's unsupported opinion that air conditioning should be required to minimize the health effects of environmental hyperthermia in the offender housing areas of the Pack Unit is speculative and is not a sufficient expert opinion.

## VII. EXPERT QUALIFICATION

Case law requires that this Court exclude proposed expert testimony when the witness is not qualified to provide an opinion regarding the subject at issue. *Smith v. Goodyear Tire & Rubber Co.,* 495 F.3d 224, 226–27 (5th Cir. 2007) (proposed expert was not sufficiently qualified to provide an opinion that related to the issues in the case). The core issue here is environmental hyperthermia. Dr. Vassallo has no clinical experience treating patients who are injured or ill from environmental hyperthermia. Further, Dr. Vassallo has no specialized training in environmental hyperthermia. To the degree that Dr. Vassallo argues that she has published in the field, it will be made clear to the Court that Dr. Vassallo has only done so in an effort to transform herself into an expert for this particular case or, in the past, for this particular kind of lawsuit. Any attempts to gain expertise were made to develop a specific area for which Dr. Vassallo could attempt to gain recognition as an expert. Likewise with Dr. McGeehin, the testimony will show he has applied an inappropriate methodology, selectively

reviewed evidence to omit key evidence, and applied a standard incompatible with well-articulated Eighth Amendment standards in reaching his conclusions. This is backwards and suspect. Likewise with Dr. McGeehin, the testimony will show he has applied an inappropriate methodology, selectively reviewed evidence to omit key evidence, and applied a standard incompatible with well-articulated Eighth Amendment standards in reaching his conclusions

## VIII.  CONCLUSION AND PRAYER

Under the binding precedents cited above, Defendants urge this Court not to consider the expert testimony offered by Plaintiffs. As stated earlier, it is difficult at this point to clearly and specifically attack testimony that has yet to be offered, particularly since the forum for this testimony concerns one facet of this case – class certification. Therefore, Defendants request that this Court grant this Motion to Exclude and, anticipating the need for additional briefing, Defendants further request that this Court allow the opportunity to present additional briefing to address the specific testimony offered. Finally, Defendants pray for all other relief, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**JAMES E. DAVIS**
Deputy Attorney General for Civil Litigation

          **KAREN D. MATLOCK**
Division Chief, Law Enforcement Defense


/s/ Pat Tulinski
**PATRICIA TULINSKI**
Assistant Attorney General
Co-Counsel
Texas Bar No. 20283485
Patricia.tulinski@texasattorneygeneral.gov

**CYNTHIA L. BURTON**
Assistant Attorney General
Lead Counsel
Texas Bar No. 24035455
Southern District ID No. 35273
cynthia.burton@texasattorneygeneral.gov

Office of the Attorney General of Texas
Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin TX  78711
Tel. (512) 463-2080
Fax (512) 495-9139

**ATTORNEYS FOR DEFENDANTS**


### NOTICE OF ELECTRONIC FILING

I, **PATRICIA TULINSKI**, Assistant Attorney General of Texas, certify that I have electronically submitted for filing the above and foregoing in accordance with the Electronic Case Files system of the Southern District of Texas on this day April 29, 2016.

/s/ Pat Tulinski
**PATRICIA TULINSKI**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, **PATRICIA TULINSKI**, Assistant Attorney General of Texas, certify that a true and correct copy of the above and foregoing has been served electronically to all counsel or *pro se* parties of record as authorized by FED. R. CIV. P. 5 (b)(2) on April 29, 2016.

/s/ Pat Tulinski
**PATRICIA TULINSKI**
Assistant Attorney General
