Case No. 4:14-cv-1698

_____

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

_____

**DAVID BAILEY, MARVIN RAY YATES, KEITH COLE, and NICHOLAS DIAZ, individually and on behalf of those similarly situated,**

*Plaintiffs*,

*v.*

**BRAD LIVINGSTON, in his official capacity, ROBERTO HERRERA, in his official capacity, and TEXAS DEPARTMENT OF CRIMINAL JUSTICE,**

*Defendants.*

_____

**DEFENDANTS' POST-HEARING BRIEFING
AND RESPONSE TO THE PLAINTIFFS' EMERGENCY MOTION FOR
PRELIMINARY INJUNCTIVE RELIEF**

_____

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**BRANTLEY STARR**
Deputy First Assistant Attorney General

**JAMES E. DAVIS**
Deputy Attorney General
For Civil Litigation

**KAREN D. MATLOCK**
Chief, Law Enforcement Defense Division

**CYNTHIA L. BURTON***
Assistant Attorney General

**MATTHEW J. GREER**
Assistant Attorney General

Office of the Attorney General
P.O. Box 12548
Capitol Station
Austin TX 78711
(512) 463-2080/Fax (512)936-2109
Counsel for Defendants       *Attorney in Charge

I.     **STANDARD OF REVIEW** ............................................................................**2**

II.    **SUMMARY OF DEFENDANTS' EVIDENCE ADDUCED AT THE HEARING** ...................................................................................................**2**

III.   **ARGUMENT** ...........................................................................................**5**

      **A. The TDCJ already provides access to respite at Pack Unit** ...................**5**

      **B. It would be an improper exercise of judicial power to overrule the TCEQ and EPA, the properly authorized regulatory enforcement agencies for Pack Unit water quality.** ..........................................**5**

      **C. Plaintiffs failed to demonstrate that eh TDCJ officials have acted with deliberate indifference which is substantially likely to cause harm.** ..........................................................................................**8**

      **D. No offenders nor named Plaintiffs have completed a timely exhausted grievance with regard to the issue of water quality at the Pack Unit.** ...............................................................................**12**

IV.   **PRAYER FOR RELIEF** ..........................................................................**15**

# TABLE OF AUTHORITIES

## Cases

*Am. Elec. Power Co. v. Connecticut* 564 U.S. 410, 428-29, 131 S. Ct. 2527, 2539-40, 180 L. Ed. 2d 435 (2011 ......................................................................................................-6,7-

*Ball v. Le Blanc*, 792 F.3rd 584 (5th Cir. 2015) ........................................................-5-

*Booth v. Churner*, 532 U.S. 731, 741 (2001) ..........................................................-13-

*Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003) ...............................................-13-

*Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ..............................................-14-

*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) .....................-9,10-

*Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1976 (1994)).........................................-9,10-

*Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012)...............................................-13-

*Gulf Restoration Network v. McCarthy*, 783 F.3d 227, 235 (5th Cir. 2015) ...............................-7-

*Helling v. McKinney*, 509 U.S. 25, 36, 113 S. Ct. 2475, 2482 (1993)...................................-5,6-

*Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir. 1998) ................................................-8-

*Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004) ............................................-14-

*Jones v. Bock*, 549 U.S. 199 (2007).......................................................................-13-

*Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir.2002) ......................................-9-

*Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir.1994).............................................-12-

*Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167 (2003) ......................................-8-

*Porter v. Nussle*, 534 U.S. 516, 525 (2001) ...........................................................-13-

*Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013) ...........................................-2-

*Stauffer v. Gearhart*, 741 F.3d 574, 581-82 (5th Cir. 2014).......................................-5-

*Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998) ..............................................-14-

*Wilson v. Garcia*, 471 U.S. 261, 273-76 (1985) ......................................................-12-

*Woodford v. Ngo*, 548 U.S. 81, 88 (2006) ..........................................................-13,14-

*Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995).....................................................-9-

*Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001) .....................................-13-

**Statutes**

Prison Litigation Reform Act, 18 USCA §3626....................................................-8,13-

42 U.S.C. §1983....................................................................................-8,12,13-

42 U.S.C. §1997e(a) ...................................................................................-8-

TEX. CIV. PRAC. & REM. CODE § 16.003(a) .........................................................-12,17-

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **DAVID BAILEY, MARVIN RAY YATES,** | § | |
| **KEITH COLE, and NICHOLAS DIAZ** | § | |
| **individually and on behalf of those** | § | |
| **similarly situated,** | § | **CIVIL ACTION NO.** |
| **Plaintiffs,** | § | **4:14-cv-1698** |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| **BRAD LIVINGSTON, in his official** | § | |
| **capacity, ROBERTO HERRERA, in his** | § | |
| **official capacity, and TEXAS** | § | |
| **DEPARTMENT OF CRIMINAL** | § | |
| **JUSTICE,** | § | |
| | § | |
| **Defendants.** | § | |


### DEFENDANTS' POST-HEARING BRIEFING
### AND RESPONSE TO THE PLAINTIFFS' EMERGENCY MOTION FOR
### <u>PRELIMINARY INJUNCTIVE RELIEF</u>

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE ELLISON:**

Defendants respectfully move this Court to deny Plaintiffs' Emergency Motion for Preliminary Injunctive Relief.[1]  First, the Plaintiffs improperly brought the motion as an emergency without good cause because the TDCJ already has implemented access to respite and repairs to the water system.  Second, it would be an improper exercise of judicial power to overrule the TCEQ and EPA, the properly authorized regulatory agencies with regard to the water quality at Pack Unit, especially where the risk from the drinking water is miniscule rather than a substantial risk of irreparable injury.  Third, the Plaintiffs' expert, Dr. McGeehin, who the Court found a "very

---

[1] Defendants incorporate by this reference all exhibits entered by Defendants at the hearing on May 26 and May 27, 2016; their Answer to Plaintiffs' Second Amended Complaint (D.E. 432); Defendants' Motion for Summary Judgement with all exhibits (D.E. 326) and Reply (D.E. 345); and Defendants' Response (D.E. 307) and Supplement (D.E. 450) to Plaintiffs' First and Second Amended Motions for Class Certification.

effective witness," actually lacks any experience whatsoever in prison administration or prison decision-making. Due to his admitted lack of experience with prisons, despite his ideals, his opinion should not outweigh the opinion of experienced prison administrators who have enacted access to respite care. Nor should his opinion outweigh the statutory authority of TCEQ[2], the State enforcement agency for water quality, in cooperation with the EPA.[3] In support, Defendants state as follows that:

## I.       STANDARD OF REVIEW

The Fifth Circuit reviews preliminary injunctions with an abuse of discretion standard unless the decision is grounded in erroneous legal principles. *Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013). Conclusions of law are subject to de novo review, but findings of fact are reviewed under a clearly erroneous standard. *Id.*

## II.      SUMMARY OF DEFENDANTS' EVIDENCE ADDUCED AT THE HEARING

The Texas Department of Criminal Justice ("TDCJ") presented four witnesses at the emergency preliminary injunction hearing on May 26, 2016: Deputy Director of Management Operations at the TDCJ, Cody Ginsel; the Director of the Toxicology Division of the TCEQ, Dr. Michael Honeycutt; Dr. Heidi Bojes of the Texas Department of State Health Services; and Brian Carney, Project Engineer for the Facilities Division of the TDCJ.

Deputy Director Ginsel testified and we entered the policies and directive into evidence that the TDCJ *already* initiated access to respite areas for offenders *before* the filing of Plaintiffs' emergency motion for preliminary injunction. (Defendants' MSJ at D.E. 326, p. 43, Appx. 533; Def. Ex. 4, 2016 Heat Directive at May 26, 2016, Rough Draft Transcript,(Exhibit 1) p. 44 at 23-

---

[2] "TCEQ" is an acronym which means "Texas Commission on Environmental Quality."

[3] "EPA" is an acronym which means the "Environmental Protection Agency."

24) Deputy Director Ginsel unequivocally testified that the TDCJ expects its officers and staff to comply with their training and instructions regarding placing offenders in respite areas. (May 26, 2016, Rough Draft Transcript, (Exhibit 1) p. 29 at 10-25) The officers also can interact with medical staff at the Pack Unit if they observe or are told about an offender not feeling well and take the offender to the infirmary. (May 26, 2016, Rough Draft Transcript, (Exhibit 1) p. 65 at 3-24) The TDCJ also requires its officers to conduct "wellness checks" in accordance with their 2016 policy, AD 10.64, "Extreme Temperature Conditions in the TDCJ," where wellness checks are defined (May 26, 2016, Rough Draft Transcript, (Exhibit 1) p. 37-38, p. 41 at 3-14, Def. Exh. 3) Correctional staff receive training at the pre-service academy from videos prepared by the American Heart Association and the UTMB[4]. (May 26, 2016, Rough Draft Transcript, (Exhibit 1) p. 21 at 4-9) Correctional officers carry a pocket card to remind them of the symptoms of heat-related illness. (May 26, 2016, Rough Draft Transcript, (Exhibit 1) p. 22 at 12-23) Offenders are trained, too, with posters, heat and cold weather training videos from UTMB, peer education (just initiated this year), from supervisors at the offenders' job assignments, and during their unit classification meeting when they arrive at a unit. (May 26, 2016, Rough Draft Transcript, (Exhibit 1) p. 25 at 13-25, p. 25 at 1-23) There are multiple avenues for reporting heat illnesses --- Emergency Action Center, medical reporting, and risk management. (May 26, 2016, Rough Draft Transcript, (Exhibit 1) p. 37-38, p. 41 at 3-14, Def. Exh. 3) The TDCJ also has in place an emergency incident command system that may be activated by any officer on the unit or for the entire agency, depending upon the type of emergency. (May 26, 2016, Rough Draft Transcript, (Exhibit 1) p. 33 at 13 to p. 37, l. 11; p. 64 at 6-21)

---

[4] "UTMB" is the acronym for one of the TDCJ's contracted medical providers and means "University of Texas Medical Branch."

Deputy Director Ginsel testified about the challenges associated with providing Pack Unit offenders with bottled water on a daily basis until the Pack Unit water filtration system's installation is completed in early 2017. Deputy Director Ginsel noted that with 1400 offenders on the Pack Unit, somewhere between 8,400 to 14,000 bottles of water per day would be required and that storage of that amount of bottled water would be problematic as well as the cost of the water. (May 26, 2016, Rough Draft Transcript, (Exhibit 1) p. 54 at l. 23 to p. 56 at l. 16) There would be less ice on the unit and problems with freezer storage space and use. (May 26, 2016, Rough Draft Transcript, (Exhibit 1) p. 56 at l. 1-16)

Dr. Honeycutt, unequivocally testified that there is no emergency at Pack Unit based on the lack of water quality from groundwater with arsenic in it. (*See generally his testimony; specifically see* May 26, 2016, Rough Draft Transcript, (Exhibit 1) p.147 at l. 20-22) He also noted that arsenic can be found in rice, beans, vegetables, and fruits. (May 26, 2016, Rough Draft Transcript, (Exhibit 1) p.148 at l. 12-17). He further testified that the "We are not ignoring [the standard]. In fact, EPA has issued the enforcement order in this case. EPA is in charge of making sure that TDCJ comes into compliance with the standard." (May 26, 2016, Rough Draft Transcript, (Exhibit 1) p. 166 at l. 4-14) The risk calculated by Dr. Bojes assumed that the prisoners would drink three liters per day of water every single day, year around for both 9 year and 2 year consumption periods, and used cancer slopes that overestimate the danger. (May 26, 2016, Rough Draft Transcript, (Exhibit 1) p. 186 at l. 20 to p. 187 at l. 12; p. 192 to 193) And the risk she calculated with assumptions used the higher than normal consumption rates and a cancer slope based on much higher ingestion of arsenic, was that after decades of use, drinking the Pack water might result in 1.5 cases for 10,000 people overall and at Pack Unit a possible risk of .05 cases over a two year period (not even one case!). (May 26, 2016, Rough Draft Transcript, (Exhibit 1) p. 197 and p. 200 at 1-5)

Brian Carney, the TDCJ project engineer testified that the installation of the filtration unit for Pack Unit's water supply is a priority which should be completed by January 2017. (May 26, 2016, Rough Draft Transcript, (Exhibit 1) p. 236-237)

### III. ARGUMENT

**A. The TDCJ already provides access to respite at Pack Unit.**

TDCJ's 2016 Annual Heat Directive moots Plaintiffs' request that the Court require "TDCJ to provide every inmate an opportunity to rotate through an air-conditioned space for three hours per day. . ." (D.E. 434 at p. 29) Where a government agency publishes a new rule in the exercise of their official duties, the Courts accord the new rule a presumption of good faith. *Stauffer v. Gearhart*, 741 F.3d 574, 581-82 (5th Cir. 2014). Deputy Director Ginsel testified that the expectation of the TDCJ is that officers will comply with the Directive that requires respite to be provided. He also testified regarding his investigation of the access to respite that is available at Pack Unit. These formally announced changes to official government policy are not "litigation posturing" because Mr. Ginsel testified that the TDCJ learned from the summer of 2011, evaluated their procedures, and has enacted more robust summer mitigation measures to reduce the risk of summer heat related illnesses in response to the *Ball v. Le Blanc*, 792 F.3rd 584 (5th Cir. 2015) case. Plaintiffs offered no evidence that any offender at Pack Unit who wishes to spend three hours per day in a respite area cannot do so. Under these circumstances, the relief requested by Plaintiffs already has been implemented thereby rendering their emergency motion for a preliminary injunction to require access to respite as moot. *Id.*

**B. It would be an improper exercise of judicial power to overrule the TCEQ and EPA, the properly authorized regulatory enforcement agencies for Pack Unit water quality.**

This Court should refrain from overruling the decisions of the TCEQ and EPA. For example, in *Helling,* an inmate sued because his cellmate smoked 5 packs of cigarettes a day, and

he was worried about illness from second hand smoke.  There was a directed verdict at the trial and the Court of Appeals ruled he should have been allowed to present his case.  The Supreme Court agreed, but discussed what a prisoner would have to prove on remand in order to state an Eighth Amendment claim:

> Also with respect to the objective factor, determining whether McKinney's conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Helling v. McKinney*, 509 U.S. 25, 36, 113 S. Ct. 2475, 2482 (1993).  In other words, even though the risk of "arsenic poisoning" here is miniscule, it is a risk that our society, and the regulatory authorities choose to tolerate.  Even though populations outside prisons may have more ability to obtain alternative water sources, there are no doubt thousands of citizens who cannot do so, either because of cost or circumstances.  Yet, neither federal nor state regulatory authorities require the provision of alternate water to those communities with the same or higher levels of arsenic in their systems. Nor has society demanded such action from state agencies or Congress.

This Court must assess whether it is proper for this Court to overrule the EPA and TCEQ's enforcement authority by requiring different action from the TDCJ than the enforcement agencies have determined is needed.  The Plaintiffs improperly seek for this Court to overrule the EPA, TCEQ and the TDCJ on what is a practical, feasible and economically viable water supply for the Pack Unit.  In *Am. Elec. Power Co. v. Connecticut*, the Supreme Court discussed an analogous case regarding greenhouse gas emissions and explained that:

> It is altogether fitting that Congress designated an expert agency, here, EPA, as best suited to serve as primary regulator of greenhouse gas emissions. The expert agency is surely better equipped to do the job than individual district judges issuing ad hoc, case-by-case injunctions. Federal judges lack the scientific, economic, and

technological resources an agency can utilize in coping with issues of this order. Judges may not commission scientific studies or convene groups of experts for advice, or issue rules under notice-and-comment procedures inviting input by any interested person, or seek the counsel of regulators in the States where the defendants are located. Rather, judges are confined by a record comprising the evidence the parties present. Moreover, federal district judges, sitting as sole adjudicators, lack authority to render precedential decisions binding other judges, even members of the same court.

Notwithstanding these disabilities, the plaintiffs propose that individual federal judges determine, in the first instance, what amount of carbon-dioxide emissions is 'unreasonable,' and then decide what level of reduction is 'practical, feasible and economically viable.' These determinations would be made for the defendants named in the two lawsuits launched by the plaintiffs. Similar suits could be mounted, counsel for the States and New York City estimated, against 'thousands or hundreds or tens' of other defendants fitting the description 'large contributors' to carbon-dioxide emissions.

The judgments the plaintiffs would commit to federal judges, in suits that could be filed in any federal district, cannot be reconciled with the decision making scheme Congress enacted. The Second Circuit erred, we hold, in ruling that federal judges may set limits on greenhouse gas emissions in face of a law empowering EPA to set the same limits, subject to judicial review only to ensure against action 'arbitrary, capricious, ... or otherwise not in accordance with law.'

*Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 428-29, 131 S. Ct. 2527, 2539-40, 180 L. Ed. 2d 435 (2011) (Court's cites omitted). And, the Fifth Circuit also looked at when it is appropriate for a federal court to intervene in agency actions and explained that: "Our inquiry proceeds in two steps: First, we determine whether the agency action is akin to a denial of a rulemaking petition or whether it is properly termed a refusal to engage in enforcement actions. If it is the former, we employ the presumption of reviewability, *if it is the latter, the presumption is nonreviewability*. Second, we look to the statutory provision at issue to see whether Congress has spoken sufficiently clearly as to override the appropriate presumption." *Gulf Restoration Network v. McCarthy*, 783 F.3d 227, 235 (5th Cir. 2015) (emphasis added). Here, the EPA already has issued an enforcement action and made the determination that the water is safe to drink for the time period it will take the TDCJ to install the new water filtration system. (May 26, 2016, Rough Draft Transcript, (Exhibit 1) p. 166 at l. 4-14) Under these circumstances, this determination is not reviewable. This Court,

therefore, should refrain from interfering with and overruling the properly authorized regulatory enforcement agencies for Pack Unit water quality.

### C. Plaintiffs failed to demonstrate that the TDCJ officials have acted with deliberate indifference which is substantially likely to cause harm.

The evidence demonstrates that the TDCJ has enacted a requirement for respite which is enforced by disciplinary action if officers do not comply with the Directive. The TDCJ also has worked closely with TCEQ (EPA) to address the water quality issues at Pack Unit. Under these circumstances, there is no emergency nor is there a violation of the prisoners' constitutional rights. Further, "[courts] must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167 (2003).

When moving for an emergency preliminary injunction in accordance with the Prison Litigation Reform Act, 18 USCA §3626, and 42 U.S.C. §1983, the Plaintiffs have a very high burden:

> A preliminary injunction is an extraordinary equitable remedy that may be granted only if the plaintiff establishes four elements: (1) a s**ubstantial** likelihood of success on the merits; (2) a **substantial** threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest.

*Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir. 1998) (emphasis added). The burden on Plaintiffs is to show a "substantial" likelihood of success on the merits, not simply "likely" to succeed, as asserted by Plaintiffs. And, here, the Plaintiffs cannot meet their burden.

Further, the Prison Litigation Reform Act requires that: "Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall

give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief."  18 USCA §3626, ¶2.  Defendants, therefore, move this Court to give substantial weight to any adverse impact on the operation of the Texas Department of Criminal Justice in deciding the Plaintiffs' emergency motion.

Prisoners are protected from cruel and unusual punishment under the Eighth Amendment of the United States Constitution. *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995).  The Constitution, however, does not mandate comfortable prisons[5], but, the Eighth Amendment's prohibition against cruel and unusual punishment does require that offenders be afforded "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1976 (1994).  The resulting inquiry, deliberate indifference, is an "extremely high" standard. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001).

A two-part test determines whether a prisoner has established a constitutional violation. *Woods*, 51 F.3d at 581.  First, he must demonstrate the objective component of conditions "so serious as to deprive prisoners of the minimal measure of life's necessities, as when it denies the prisoner some basic human need." *Id*. (quotation omitted).  This requires a showing of an "unnecessary and wanton infliction of pain ...." *Farmer*, 511 U.S. at 834.

The second part of the inquiry focuses on the subjective state of mind of the defendants. "The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the ... officials were actually aware of the risk, yet consciously disregarded it." *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir.2002).  "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Hall*, 190 F.3d

---

[5] For example, TDCJ is not constitutionally required to provide "entertainment" in respite areas so that prisoners will use them.

at 697 (*quoting Farmer*, 511 U.S. at 834). Thus, the "'failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference." *Domino*, 239 F.3d at 756 (quoting *Farmer*, 511 U.S. at 838). Further, a prison official cannot be held liable even if he "responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure ***reasonable safety***. *Farmer*, 511 U.S. at 844 (emphasis added).

But, here, Plaintiffs do not seek "reasonable safety;" instead, they seek complete safety, with no risk whatsoever—a goal their own expert agrees cannot be achieved. (Rough Draft, May 27, 2016, (Exhibit 2) p. 142 at l. 10-20) Plaintiffs' suggestions with regard to replacing water at Pack Unit are so impractical and costly that this Court should not give the suggestions any serious weight. If this Court were to order the steps suggested by Plaintiffs' counsel to just "go to 7-11 and buy some bags of ice," the Pack Unit would be buying and storing at least 4,200 to 7,000 bags of ice per day that would cost approximately 99 cents per bag (assuming 3-5 bags of ice per offender per day). The cost of bottled water at 30 cents per bottle (commissary cost) is $2,520 to $4,200 per day. Assuming that a 7-11 or something similar even has the amount of ice on a daily basis that would be required, that cost also would run somewhere between $4,158 to $6900 per day. The total cost of Plaintiffs' suggestions ---- the provision of "bottled" water and the purchase of ice from 7-11 is between $6,678 to $11,100 per day!!! In addition, the bottled water and bags of ice would have to be stored somewhere ---- but, Plaintiffs offered no solution to the storage issues or any safety concerns that might arise from improper storage if there is not room for the copious amounts of bottled water that would be required. Plaintiffs' counsel and experts obviously have no experience in running a large prison system because they fail to make any suggestions which actually can be implemented without causing secondary, unintended and costly consequences that might be worse than the situation about which they complain.

The Plaintiffs' expert, Dr. McGeehin, actually lacks any experience whatsoever in prison administration or prison decision-making. (May 27, 2016 Rough Draft, (Exhibit 2) p. 142 at l. 25 to p. 144 at l. 10) He agreed that many of the summer heat mitigation measures which are being implemented by the TDCJ are effective. (May 27, 2016 Rough Draft, (Exhibit 2) p. 124 at l. 19 to p. 129 at l5) Instead of testing whether the generalizations he relies upon actually hold true for offenders at the Pack Unit, he admitted that he did not review any of the surveillance data available for Pack Unit offenders. (May 27, 2016 Rough Draft, (Exhibit 2) p. 106 at l. 4 to p. 109 at l. 14) He admitted this even though he had testified that surveillance data is the backbone of epidemiology. (May 27, 2016 Rough Draft, (Exhibit 2) p. 106 at l. 7-9) Due to his admitted lack of experience with prisons and his failure to review the actual data available for Pack Unit, despite his ideals, his opinion should not outweigh the opinion of experienced prison administrators who already have implemented access to respite care and are in the process of repairing the water system. His opinions should not outweigh the statutory authority of TCEQ[6], the State enforcement agency for water quality, in cooperation with the EPA.[7]

There is no emergency. The water at Pack Unit is not poisonous. The offenders at Pack Unit already have access to respite and many other summer heat mitigation measures. (See testimony of Cody Ginsel and Defendants' exhibits entered at the hearing) Defendants, therefore, respectfully ask this Court not to accept the Plaintiffs' concerted effort to instill fear by their manipulation of words like "poison" and "cancer" and "silent killer." The Plaintiffs are turning the entire notion of what constitutes a substantial risk of harm on its head by taking very small

---

[6] "TCEQ" is an acronym which means "Texas Commission on Environmental Quality."

[7] "EPA" is an acronym which means the "Environmental Protection Agency."

*theoretical* risks and describing those very small *theoretical* risks in a such way to purposely instill fear rather than reason.

In this case the TDCJ has enacted proper summer heat mitigation measures and taken steps to repair the water facilities at Pack Unit in cooperation with the regulating and enforcement agencies, TCEQ and EPA. For these reasons, this Court should not find that the TDCJ has been deliberately indifferent. The TDCJ has not ignored the potential harm and has taken reasonable steps to help prevent the harm. The Plaintiffs, therefore, cannot demonstrate that they are likely to succeed on the merits or that there is a substantial likelihood of injury of the Court decides to deny their emergency motion for preliminary injunction.

### D. No offenders nor named Plaintiffs have completed a timely exhausted grievance with regard to the issue of water quality at the Pack Unit.

Only one of the named Plaintiffs has completed the two step process to exhaust this claim, Offender Cole. Cole's grievance, however, was exhausted by step 2 on Sept. 22, 2011, (D.E. 434-47), more than three years before the Plaintiffs filed this suit on June 18, 2014. (D.E. 1) The statute of limitations for Section 1983 actions are governed by the same time limitations for personal injury actions for the state in which suit was brought. *Wilson v. Garcia*, 471 U.S. 261, 273-76 (1985). In Texas, the applicable limitations period is two years. *See Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir.1994) (noting that district courts in Texas must use Texas' general two-year, personal injury limitations period); *see also* TEX. CIV. PRAC. & REM. CODE § 16.003(a) (Texas' two-year, personal injury limitations statute). Cole's grievance, therefore, cannot provide a "class-wide" vicarious exhaustion of remedies because he failed to sue within the requisite two year statute of limitations.

To the extent that Plaintiffs attempt to claim their exhaustion requirement is met by the recent grievances prepared by Plaintiffs' counsel and then distributed to Pack Unit inmates for filing, these grievances will not suffice because the exhaustion process is not complete. According

to 42 U.S.C. §1997e(a): "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion of administrative remedies is mandatory and is intended to give correctional officials an opportunity to address complains internally before initiation of a federal lawsuit. *See Porter v. Nussle*, 534 U.S. 516, 525 (2001). The exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or particular episodes. *Id*. at 532. In addition, prisoners must exhaust administrative remedies before filing a lawsuit regardless of the type of relief prayed for in the complaint. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The Supreme Court has likewise held that the exhaustion requirement requires "proper exhaustion," meaning that "a prisoner must complete the administrative review process in accordance with the applicable rules, including deadlines, as *a precondition* to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006); *see also*, *Jones v. Bock*, 549 U.S. 199 (2007) (holding unexhausted claims cannot be filed in federal court). In the Fifth Circuit, a "strict approach" is taken to this exhaustion requirement. *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003). "Nothing in the Prison Litigation Reform Act . . . prescribes appropriate grievance procedures or enables judges, by creative interpretation of the exhaustion doctrine, to prescribe or oversee prison grievance systems." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). "District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing [a] complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). In addition, the Supreme Court has "held that to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules–rules that are defined not by [statute], but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required [by statute] to properly exhaust." *Jones v.*

*Brock*, 549 U.S. 199, 218 (2007) (internal quotation marks and citations omitted); *see also Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

But the exhaustion requirement requires "proper exhaustion," meaning that "a prisoner must complete the administrative process in accordance with the applicable procedural rules . . . as a precondition to bringing suit in federal court." Accordingly, inmates must exhaust their administrative remedies in a procedurally correct manner. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010). The Texas Department of Criminal Justice, Correctional Institutions Division, has a two-step grievance procedure available to inmates. *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998). The prisoner must pursue the grievance through both steps of the procedure for his claim to be considered exhausted. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

Here, there are no exhausted grievances on the issue of arsenic in the water. This Court, therefore, cannot enter injunctive relief based on this claim. Further, this Court can properly find that where over 1400 prisoners have failed to exhaust any grievances regarding the water quality, there is no emergency.

### E. Offenders and Plaintiffs have the ability to buy bottled water but the named Plaintiffs rarely do so.

Offenders at the Pack Unit have the ability to buy bottled water; however, the named Plaintiffs very rarely, if ever, buy this water. A 16.9 ounce bottle of spring water costs $0.30. (Exhibit 3 at 2) This is 25 cents less than the cost of any soda and 30 cents less than the cost of any juice. (Exhibit 3) At 30 cents, bottled water is one of the cheapest items at the Pack Unit commissary. Despite how cheap bottled water is at the Pack Unit, the named Plaintiffs rarely, if ever, buy this water. Of the Plaintiffs named as class representatives only Keith Cole and Jackie Brannum have ever bought bottled water, despite all class representatives buying numerous other items from the Pack Unit commissary.

On May 17, 2011, Cole filed his first grievance regarding the issue of the arsenic in the water. (Exhibit 4) From April 22, 2011 to August 1, 2011, Cole bought water on seven occasions. (Exhibit 5) However, after August 1, 2011, Cole bought bottled water only one time on June 15, 2012 and has not bought any bottled water since. (*See* Exhibit 5 & 6) He did not stop buying water for lack of funds, as is evidenced by all of his other purchases since 2011.[8]

Jackie Brannum is the only other named Plaintiff to ever buy bottled water. From 2012 to the present, Brannum bought bottled water on 11 separate occasions. (*See* Exhibit 7) Only five of those occasions were during the summer months from May to October. (*See* Exhibit 7). Like Cole, Brannum made numerous other purchases, during this time period, which consisted of junk food and snacks.[9] None of the other named Plaintiffs have ever bought bottled water, despite buying large amounts of snacks and junk food.[10]

Offenders at the Pack Unit do have access to bottled water and can buy that water from the Pack Unit Commissary at a very low price. Despite having the means to buy this water, the named Plaintiffs do not do so.

## IV.    PRAYER FOR RELIEF

**WHEREFORE**, the Defendants move this Honorable Court to find that the issues presented by Plaintiffs do not constitute an emergency and that the steps taken by the TDCJ reasonably address the Plaintiffs' concerns regarding water quality and access to respite in the summer.   For these reasons the Defendants move this Honorable Court to deny Plaintiffs'

---

[8] Based on a review of Ex.'s 5 & 6, Cole buys a large amount of snack food and sodas. In particular, Coca-Cola, ice cream cones, salted peanuts, party snack mix, jalapeno squeeze cheese, corn chips, and ramen noodles.
[9] Based on a review of Ex. 7, Brannum buys a large amount of snack food. In particular, Brannum buys various types of chips, ramen chili noodles, ice cream, Marias cookies, various types of candy, Mrs. Bairds pastries, and various types of sodas.
[10] The commissary records of Yates, King, Wallace, and Santee are not included in this motion as they would be voluminous. Should the Court wish to view these records, Defendants will supplement.

Emergency Motion for Preliminary Injunction and award the Defendants their attorneys' fees and costs to abide the event.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**BRANTLEY STARR**
Deputy First Assistant Attorney General

**JAMES E. DAVIS**
Deputy Attorney General for Civil Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division

*/s/ Cynthia L. Burton*
**CYNTHIA L. BURTON**
Assistant Attorney General
Attorney in Charge
Texas Bar No. 24057611
Southern District ID No. 35273
Cynthia.Burton@texasattorneygeneral.gov

**MATTHEW J. GREER**
Assistant Attorney General
Co-Counsel
State Bar No. 24069825
Southern District ID No. 1171775
Matthew.Greer@texasattorneygeneral.gov

Office of the Attorney General of Texas
Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin TX 78711
(512) 463-2080/Fax (512) 936-2109

**ATTORNEYS FOR BRAD LIVINGSTON,
ROBERT HERRERA, and the TEXAS
DEPARTMENT OF CRIMINAL JUSTICE**

## NOTICE OF ELECTRONIC FILING

I, **CYNTHIA LEE BURTON**, Assistant General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above in accordance with the Electronic Case Files System of the Southern District of Texas, on this the 31ST day of May, 2016.

*/s/ Cynthia L. Burton*
**CYNTHIA L. BURTON**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, **CYNTHIA LEE BURTON**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing *Defendants' Post-Hearing Briefing And Response To The Plaintiffs' Emergency Motion For Preliminary Injunctive Relief* has been served by electronic means, on this 31ST day of May, 2016 addressed to:

***Attorneys for Plaintiff***

Jeff Edwards
Scott Medlock
The Edwards Law Firm
1101 E. 11th Street,
Austin, Texas 78702-1908

/s/ Cynthia L. Burton
**CYNTHIA L. BURTON**
Assistant Attorney General