UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID BAILEY, MARVIN RAY YATES, KEITH COLE, and NICHOLAS DIAZ individually and on behalf of those similarly situated,<br>    Plaintiffs,<br><br>v.<br><br>BRAD LIVINGSTON, in his official capacity, ROBERTO HERRERA, in his official capacity, and TEXAS DEPARTMENT OF CRIMINAL JUSTICE,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.<br>4:14-cv-1698 |

**DEFENDANTS' OPPOSED MOTION TO STAY TRIAL DATE
AND DISCOVERY**

**I.     PROCEDURAL POSTURE**

Defendants contested the Named Plaintiffs' motion for class certification arguing *inter alia* that the Prison Litigation Reform Act ("PLRA") limited the relief that could be requested, that the sub-classes are not ascertainable, and that Named Plaintiffs had failed to carry their burden under Rule 23 to demonstrate that they meet the rule's requirements. FED. R. CIV. P. 23(a), (b); (D.E. 307, 308, and 468 (incorporating 326, 327, 345, 345-1, 450, 450-1, 450-2, 467, & 467-1)). This Court withdrew its Jan. 22, 2016 order initially certifying the class and set a hearing on Plaintiffs' Motion for Class Certification on May 27, 2016 and Jun. 1-2, 2016. After the hearing, this Court again certified a general class and two subclasses under Rule 23(b)(2) on Jun. 14, 2016. (Memorandum and Order, D.E. 473).

1

The class-certification order, however, again failed to adequately address the requirements of Rule 23(b)(2), let alone explain how the plaintiffs satisfied them. Moreover, this Court's finding of commonality under Rule 23(a)(2) assumed that every member of the putative class and subclasses faced a substantial risk of serious harm, but it did not consider existing remedial measures at the Pack Unit or the individual circumstances of the named plaintiffs. Because Defendants contend this Court failed to conduct the rigorous examination required by Rule 23, the Defendants timely filed with the United States Court of Appeals for the Fifth Circuit on Jun. 28, 2016 a petition for permission to appeal the order certifying the class. *Bailey v. Livingston, et al.*, Case No. 16-90023 (5th Cir. Jun. 28, 2016) (Petition filed under seal).

The Defendants have filed a Motion for Summary Judgment to which Plaintiffs responded and Defendants replied which remains pending. (D.E. 326, 339, and 345) On June 21, 2016, this Court considered, but declined to order preliminary injunctive relief related to access to air conditioning or any other interim protective measure other than the substitution of drinking water with water below the MCL for arsenic. (D.E. 477)

## II.     STANDARD FOR GRANTING A STAY

Rule 23(f) permits either the district court or the court of appeals to stay proceedings pending an appeal upon a party's request. Neither the rule nor any Fifth Circuit precedent establishes a standard applicable to a court's ruling on a motion to stay pending an appeal of a district court's interlocutory class certification order. The decision to grant or deny such a motion lies in the discretion of the court whose order is being appealed. *Arnold v. Garlock*, 278 F.3d 426, 438-39 (5th Cir. 2001); *In re First S. Sav. Ass'n*, 820 F.2d 700, 709 (5th Cir. 1987); *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982). Moreover, a four-part test, normally applied to preliminary injunctions but also applicable to motions to stay pending appeal, guides the court's discretion. *In re First S. Sav. Assn.*, 820 F.3d at 709. The test requires the court to determine: (1) the movant's

likelihood of success on appeal; (2) the irreparable harm to the movant if the stay is denied; (3) the substantial harm to the other party if the stay is granted; and (4) the public interests implicated in granting or denying the stay. *Id.* The Fifth Circuit does not require the movant to establish each element of the test to show its entitlement to a stay. Indeed, the court has made clear that a stay should not be denied simply because the movant failed to demonstrate a likelihood of success on appeal. *In re First S. Sav. Ass'n*, 820 F.2d at 709 n.10 ("In *Ruiz II*, we cautioned against reading *Ruiz I* as a 'coup de grace for the likelihood-of-success criterion in this circuit.'"). "[T]he movant need only present a substantial case on the merits when a legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay." *Id*. at 704.

### III. ARGUMENT

#### A. The Fifth Circuit is Likely to Grant Defendants' Petition for Permission to Appeal.

In the Petition for Permission to Appeal, the Defendants have argued four points of error in this Court's application of Rule 23: the failure to adequately assess commonality; the failure to adequately assess the relief requested by Plaintiffs; the failure to properly address the relationship between Rule 23(b)(2) and the Prison Litigation Reform Act; and the failure of this Court to adequately determine that thermoregulation is a "major life activity" under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.

##### (1) This Court Failed to Adequately Assess Commonality.

To establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2), the class members' claims "must depend upon a common contention" that is "capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551; *Jamie S. v. Milwaukee Public Schs.*, 668 F.3d 481, 497 (7th Cir. 2012) (commonality requires a

3

question of law or fact "that can be answered *all at once* and that the *single answer* to that question will resolve a central issue in all class members' claims"). Here, this Court failed to consider whether the common questions it identified would necessarily produce the same answer for each member of the general class and the subclasses. That was an error of law. *See M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 843–44 (5th Cir. 2012). Had it applied the correct legal standard, the court could not have found commonality without abusing its discretion.

According to this Court, the plaintiffs established commonality for the general class and the heat-sensitive subclass because:

> [t]hey raise the common contentions that excessive heat constitutes a condition of confinement that poses a substantial risk of serious harm to the health of all the inmates, and that TDCJ officials were deliberately indifferent to the risk posed to the inmates.

App'x A 16. For the disability subclass, this Court identified an additional common contention:

> that TDCJ officials failed to provide reasonable accommodations to inmates suffering from disabilities that may impact (or that cause the inmates to take medication that may impact) their ability to withstand extreme heat.

*Id.* Although this Court purported to identify common contentions, it merely recited the basic elements of the plaintiffs' claims.

This Court's general restatement of the plaintiffs' claims fails to satisfy Rule 23(a)(2). Commonality requires more than an allegation that the class members "have all suffered a violation of the same provision of law." *Dukes*, 131 S. Ct. at 2551; *Stukenberg*, 675 F.3d at 842 (holding that "the district court's certification of 'common questions of law, based upon Plaintiffs' claims of constitutional violations, namely substantive and procedural due process, along with associational rights' lacks the specificity required for [the Court] to determine whether the alleged common questions of law satisfy the requirements of Rule 23(a)(2)"); *Jamie S.*, 668 F.3d at 498 (holding that the "generic question" whether the defendant fulfilled its statutory obligation to each

4

class member, though part of every class member's claim, could not support a finding of commonality).

Because this Court merely identified common questions underlying the Plaintiffs' Eighth Amendment claim, it did not determine that the answer to those questions would be the same for each member of the class. That is the critical question, as the Supreme Court held in *Dukes*:

> What matters to class certification . . . is not the raising of common 'questions'— even in droves—but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.

*Dukes*, 564 U.S. at 350 (quoting Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).

This Court sidestepped the critical question by ignoring differences among class members, including the efficacy of existing mitigation measures. Instead, this Court adopted Plaintiffs' theory "that the actions and inactions of TDCJ in subjecting the class and subclass members to extremely high temperatures provide the basis for satisfying the 23(a)(2) requirement." App'x A 15. This Court noted that "absent proper mitigation measures, all of the inmates at the Wallace Pack Unit are at substantial risk of harm from prolonged exposure to extreme heat." *Id.* But this Court failed to consider whether existing mitigation measures were "proper" and sufficient to alleviate the risk to class members.[1]

---

[1] The district court's discussion of typicality under Rule 23(a)(3) confirms that it certified the class merely because the defendants applied a common policy, not because all class members suffered a common injury. *See* App'x A 17 ("The TDCJ policies and practices related to heat exposure affect all the inmates in the Wallace Pack Unit, including the named Plaintiffs. The named Plaintiffs' claims arise from the same conduct of TDCJ and share the same legal theory as the rest of the class.").

The record showed substantial differences in age and physical condition among inmates in the Pack Unit. For example, "Keith Cole is a 60-year-old inmate who has Type II diabetes, coronary arterial disease, high blood pressure, and high cholesterol." App'x A 3. In contrast, "Lavar Santee is a 34-year-old inmate who has no medical conditions that would affect his sensitivity to extreme heat." *Id.* The record also showed that TDCJ provided heat-mitigation measures including access to air-conditioned areas, showers, and ice water. Class Cert. Opposition Appendix, D.E. No. 309, at 681, 687, 689 (testimony by Plaintiff Keith Cole that he had access to air-conditioned areas, which he used "[j]ust about every day," as well as cool-down showers, and that he drank more than one gallon of water per day); *id.* at 698–700, 703 (testimony by Plaintiff Richard Elvin King that he and other inmates had unrestricted access to air-conditioned areas, and that he took as many as five showers per day).

To establish commonality, Plaintiffs had to prove that even the youngest, healthiest, and most acclimatized inmates face a substantial threat of serious harm despite current heat-mitigation efforts. If they did not, different conclusions could be reached for different individuals on the questions of whether they were at substantial risk of harm, or what level of intervention is necessary, negating the ability to answer these questions in a single stroke. The record contains no such evidence. In fact, Plaintiff Lavar Santee testified that aside from one episode of heat cramps while working, he had not had any heat related illnesses at the Pack Unit. He also testified that had not seen any young, healthy inmates having heat-related issues.[2] The scientific literature to which the Plaintiffs' experts and this Court referred involved circumstances different from the Pack Unit,

---

[2] Appendix, Supplement to Defendants' Supplement to Response to Plaintiffs' Amended Motion for Class Certification, *Bailey v. Livingston*, No. 4:14-cv-1698 (S.D. Tex. June 13, 2016), D.E. 467-1 at 10–11, 26, 28.

6

such as an experiment placing soldiers in a 130-160 degree heat chamber and studies of exertional heat stroke during military training.[3]

This Court disregarded mitigation efforts and individual health conditions because it found that "[t]he evidence calls into serious question the adequacy of TDCJ's mitigation measures—as applied in practice—in reducing the heat risk *for all the inmates*, and particularly for those inmates with comorbidities that diminish their ability to thermos-regulate." *Id.* at 16 (emphasis added). But whether TDCJ failed to mitigate the risk to every inmate is not the question. To prove commonality, Plaintiffs had to show that TDCJ's mitigation measures did not adequately reduce the risk for *any inmates*.

The Fifth Circuit has emphasized "that the finding of substantial risk regarding a heat-related injury is tied to the individual health conditions of [the plaintiff] inmates." *Ball v. LeBlanc*, 792 F.3d 584, 594 n.6 (5th Cir. 2015). But individual health conditions did not factor into this Court's analysis of commonality. By disregarding the effect of mitigation measures, this Court neglected its duty to "look beyond the pleadings 'to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination." *Stukenberg*, 675 F.3d at 841 (quoting *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003)).

Because this Court did not account for the impact of existing heat-mitigation efforts or individual health circumstances, it had no basis to conclude that high temperatures subjected each member of the class and subclasses to a substantial risk of serious harm. It is no answer to argue, as this Court did, that "Rule 23 does not require a showing that the questions common to the class 'will be answered, on the merits, in favor of the class.'" App'x A 5 (quoting *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013)). Rule 23 does not require plaintiffs to

---

[3] Transcript, Hearing on Preliminary Injunction and Class Certification, *Bailey v. Livingston*, No. 4:14-cv-1698 (June 2, 2016), at 126–30, 132.

prove that a common question will be answered in their favor, but it does require proof that the answer to that common question—favorable or not—will be the same for every member of the class. In other words, even though the court may not resolve the *merits* of the putative class claims, it must determine whether the *nature* of the claims makes them susceptible to class-wide resolution. This Court's failure to make that threshold determination justifies interlocutory review.

### (2) This Court Failed to Adequately Assess the Relief Requested by Plaintiffs.

This Court committed further error by certifying a general class and two subclasses under Rule 23(b)(2) without applying the proper legal standard. Rule 23(b)(2) permits certification only if "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2) is designed for cases involving "allegations that a defendant's conduct affected all class members in the same way." 2 Newberg on Class Actions § 4:40 at 169 (5th ed. 2012). The Supreme Court has explained:

> The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011) (quoting Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

This Court's order reflects a misunderstanding of Rule 23(b)(2). According to this Court, the plaintiffs "easily" met Rule 23(b)(2)'s requirements because the "conditions of confinement" and mitigation measures "apply uniformly to the class of inmates as a whole":

> Injunctive or declaratory relief, therefore, would be appropriate respecting the class as a whole if an Eighth Amendment violation were to be found. That holds true if the Plaintiffs establish that air-conditioning is indeed necessary to cure the violation, or if less drastic measures (such as ordering TDCJ to create and adhere to a more definitive policy regarding respite areas) are shown to suffice to remedy the violation.

8

App'x A 20. But the existence of a uniform policy does not imply that every class member has suffered a constitutional injury, let alone that their alleged injuries would necessarily require the same relief.

Had this Court applied the proper standard, it could not have certified a (b)(2) class without abusing its discretion. To satisfy the requirements for certification under Rule 23(b)(2), "the class members' injuries must be sufficiently similar that they can be addressed in [a] single injunction that need not differentiate between class members." *Shook v. Bd. of Cnty. Comm'rs*, 543 F.3d 597, 604 (10th Cir. 2008) ("*Shook II*"); *cf. Stukenberg*, 675 F.3d at 845 ("[T]he injunctive relief sought must be specific." (quoting *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007))). This Court made no such finding. Instead, it assumed that any potential remedy would necessarily be required for all class members or none of them. But courts cannot assume facts necessary to class certification. This Court failed to explain how a single form of injunctive relief—whether it be air conditioning or something less—would necessarily be appropriate (or not) for the entire class.

Further, by refusing to define any alternative relief beyond the request for air-conditioning, this Court failed to meet the requisites of Rule 23(b)(2), which mandates evidentiary proof that the relief is "appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). *See also*, *Stukenberg*, 675 F.3d at 845 (holding that Rule 23(b)(2) requires (1) the "class members must have been harmed in essentially the same way" and (2) "the injunctive relief sought must be specific.") The record contains little specificity as to what alternative relief this Court is considering, much less its appropriateness for every member of the class as a whole.

9

This Court's cursory discussion of Rule 23(b)(2) falls short of "the 'rigorous analysis' required by Rules 23(a) and 23(b)(2)." *Stukenberg*, 675 F.3d at 837 (citing *Dukes*, 131 S. Ct. at 2551–52). This Court's manifest error warrants interlocutory review.

### (3) If Permission is Granted, the Fifth Circuit Will Address Novel or Unsettled Legal Questions.

Defendants are further likely to prevail on their Petition for Permission to Appeal because the class certification order raises at least two novel or unsettled questions of law: (1) the relationship between Rule 23(b)(2) and the Prison Litigation Reform Act; and (2) whether thermoregulation is a "major life activity" for purposes of the Americans with Disabilities Act and the Rehabilitation Act.

### (a) This Court Failed to Fully Consider the Relationship Between Rule 23(b)(2) and the Prison Litigation Reform Act.

First, the class-certification order raises an unsettled question regarding the effect of the Prison Litigation Reform Act on the prerequisites for class certification. Rule 23(b)(2) requires this Court to find that "a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 131 S. Ct. at 2557. But the PLRA restricts the injunctive relief that a district court may award. It requires the district court to find that "such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation." 18 U.S.C. § 3626(a)(1)(A). If Rule 23(b)(2) conditions certification on the availability of class-wide injunctive relief, the PLRA's restriction on what relief may be awarded ought to factor into the determination whether a single injunction can provide relief to the entire class.

The relationship between Rule 23(b)(2) and the PLRA has particular significance here because a range of remedies may satisfy the constitutional requirements for prison conditions. In *Ball*, for example, the Fifth Circuit held that the PLRA did not permit the district court to order

facility-wide air conditioning because it was "unnecessary to correct the Eighth Amendment violation." 792 F.3d at 599. The Court relied on expert testimony[4] outlining alternative remedies, including periodic access to air-conditioned areas, "access to cool showers at least once a day," an "ample supply of cold drinking water and ice at all times," and "personal ice containers and individual fans." *Id.*; *cf. id.* at 595 (noting the Court's prior approval of a class-wide injunction "requiring Mississippi to equip each cell with fans, provide inmates with additional access to ice water, and allow daily showers when the heat index in the cells exceeded [90 degrees]" (citing *Gates v. Cook*, 376 F.3d 323, 339–40 (5th Cir. 2004))). To the extent air-conditioning was acceptable for some inmates, *Ball* explained, the PLRA required the district court to limit that relief to those particular inmates. *Id.* at 600.

*Ball* was not a class action, but its restriction on overbroad relief under the PLRA should inform the application of Rule 23(b)(2)'s command that a single injunction must remedy every class member's injury. As the Fifth Circuit has explained, "Under the PLRA, plaintiffs are not entitled to the most effective available remedy; they are entitled to a remedy that eliminates the constitutional injury." *Id.* at 599 (citing *Westefer v. Neal*, 682 F.3d 679, 683–84 (7th Cir. 2012)). Whereas Rule 23(b)(2) requires a district court to determine that an effective class-wide remedy is *available*, the PLRA requires a second determination that the class-wide remedy is also *permissible* for all class members.

This Court avoided the implications of the PLRA by assuming that each class member's claim would require the same remedy. But it conceded that different remedies might be sufficient to cure a constitutional violation:

> If an Eighth Amendment violation is found, this Court will need to determine whether air-conditioning the housing areas is indeed the least intrusive means of

---

[4] The Court relied on testimony by Dr. Vassallo, the same expert who testified for Plaintiffs in this case. *See Ball*, 792 F.3d at 599; App'x A 14.

11

> correcting the violation, or whether augmenting the mitigation measures that are already in place at the Wallace Pack Unit would be sufficient to remedy the violation.

App'x A 21. This Court should have considered whether particular remedies would be necessary to address each class member's alleged constitutional injury. Had it done so, it could not have assumed that any single mitigation measure would be the least intrusive means of alleviating every class member's risk of heat-related injury.

### (b) This Court Failed to Adequately Determine that Thermoregulation is a "Major Life Activity" under the ADA and the Rehabilitation Act.

The class-certification order presents an additional unsettled question of law regarding the two subclasses: Is thermoregulation a major life activity for purposes of the Americans with Disabilities Act and the Rehabilitation Act? Under the ADA and the Rehabilitation Act, "a person is disabled if he has 'a physical or mental impairment that substantially limits one or more major life activities.'" *Ball*, 792 F.3d at 596 (quoting 42 U.S.C. § 12102(1)(A)); *see also* 29 U.S.C. §704(20)(B) (incorporating the ADA definition of disability into the Rehabilitation Act). Major life activities include (a) "caring for oneself, performing manual tasks, seeing, hearing, eating sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking , communicating, and working"; or (b) "the operation of a major bodily function," including "the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine and reproductive functions." 42 U.S.C. §§ 12102(2)(A), (B).

Whether thermoregulation constitutes a major life activity for purposes of the ADA and the Rehabilitation Act remains an open question in this circuit. *See Ball*, 792 F.3d at 597 & n.11; *EEOC v. Agro Distribution*, LLC, 555 F.3d 462, 469 n.8 (5th Cir. 2009). If thermoregulation is not a major life activity, then this Court had no basis to certify either the heat-sensitive subclass or the disability subclass.

Even if thermoregulation can be considered a major life activity, this Court certified the disability sub-class without evidence that any proposed member of the disability sub-class have actually suffered a failure to thermos-regulate, and this Court appears to have certified this class on the basis of some possible risk that might be suffered in the future. This runs contrary to the Fifth Circuit's holding in *Ball*, and this issue merits review to define the evidentiary proof needed in a trial on the merits to establish a viable ADA claim. *Ball*, 792 F.3d at 597-598.

### B. The Balance of Equities Favors a Stay of the Trial Date and Partial Stay of Discovery.

Finally, the balance of equities weighs in favor of staying the trial of this case and part of the discovery pending appeal. A trial will be costly, time-consuming, and premature until the class certification order is finalized. Further, the class-certification order poses a serious threat to the operation of all TDCJ prison facilities, not just the Pack Unit. If a district court can certify a class of all inmates without a rigorous examination of commonality under Rule 23(a)(2) and without any analysis of Rule 23(b)(2), a similar class could be certified for inmates at the other TDCJ facilities across the state without consideration of actual prison conditions. Defendants are entitled to a stay of the trial date in light of the potential impact of this Court's class certification order on the operations of TDCJ. Finally, a stay would not cause irreparable for the same reasons why this Court declined to extend preliminary injunctive relief beyond the substitution of the drinking water. (D.E. 477)

**WHEREFORE**, the Defendants move this Honorable Court to order that:

(1) No final trial of the merits in this case will be set pending the resolution of the class certification order;

(2) During the pendency of the appeal all discovery remains closed unless good cause is shown by petition to the Court or agreement of the parties; and

(3) Such other and further relief which this Court deems just under the circumstances.

Respectfully submitted,


**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**BRANTLEY STARR**
Deputy First Assistant Attorney General

**JAMES E. DAVIS**
Deputy Attorney General for Civil Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division

/s/ *Cynthia L. Burton*
**CYNTHIA L. BURTON**
Assistant Attorney General
Attorney in Charge
Texas Bar No. 24035455
Southern District ID No. 35273
cynthia.burton@texasattorneygeneral.gov

Office of the Attorney General of Texas
Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin, Texas  78711
(512) 463-2080/Fax (512) 936-2109

**ATTORNEYS FOR TDCJ DEFENDANTS**

### CERTIFICATE OF CONFERENCE

I, Cynthia Lee Burton, Assistant Attorney General, Lead Counsel for TDCJ Defendants, hereby certify that I conferred with Plaintiffs' counsel, Scott Medlock, on June 28, 2016 by phone and he indicated that Plaintiffs' are opposed to a stay.

>*/s/ Cynthia L. Burton*
>**CYNTHIA L. BURTON**
>Assistant Attorney General

### NOTICE OF ELECTRONIC FILING

I, Cynthia Lee Burton, Assistant General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing **Defendants' Opposed Motion To Stay Trial Date And Stay Of Discovery** in accordance with the Electronic Case Files System of the Southern District of Texas, on the 30th day of June, 2016.

>*/s/ Cynthia L. Burton*
>**CYNTHIA L. BURTON**
>Assistant Attorney General

### CERTIFICATE OF SERVICE

I, Cynthia Lee Burton, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Defendants' Opposed Motion To Stay Trial Date and Stay Of Discovery** in accordance with the Electronic Case Files System of the Southern District of Texas, on the 30th day of June, 2016.

>*/s/ Cynthia L. Burton*
>**CYNTHIA L. BURTON**
>Assistant Attorney General