```
        IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF TEXAS
                 HOUSTON DIVISION

STEPHEN McCOLLUM and         )
SANDRA McCOLLUM,             )
individually and as          )
independent administrator    )
of the Estate of LARRY       ) Civil Action
GENE McCOLLUM,               )
                             ) Number 4:14-CV-3253
                             )
          Plaintiffs,        )
                             )
vs.                          )
                             )
                             )
BRAD LIVINGSTON, JEFF        )
PRINGLE, RICHARD CLARK,      )
KAREN TATE, SANDREA          )
SANDERS, ROBERT EASON,       )
THE UNIVERSITY OF TEXAS      )
MEDICAL BRANCH and THE       )
TEXAS DEPARTMENT OF          )
CRIMINAL JUSTICE,            )
                             )
          Defendants.        )
```

---

ORAL AND VIDEOTAPED DEPOSITION OF

BRYAN COLLIER

MARCH 30, 2016

---

```
 1                    A P P E A R A N C E S

 2   FOR THE PLAINTIFFS:
            Mr. Jeff Edwards, Esq.
 3          The Edwards Law Firm
            1101 East Eleventh Street
 4          Austin, Texas  78702
            512.623.7727
 5          Jeff@edwards-law.com
                  -and-
 6          Mr. Michael Singley, Esq.
            The Singley Law Firm
 7          4131 Spicewood Springs Road, Suite O-3
            Austin, Texas  78759
 8          512.334.4302
            Mike@Singleylawfirm.com
 9


10
     FOR THE DEFENDANTS BRAD LIVINGSTON, JEFF PRINGLE,
11   RICHARD CLARK, KAREN TATE, SANDREA SANDERS, ROBERT
     EASON, THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE:
12          Ms. Cynthia L. Burton, Esq.
            Mr. Matthew J. Greer, Esq.
13          Ms. Karen Matlock, Esq.
            Ms. Kamilla L. Stokes, Esq.
14          Assistant Attorneys General
            Office of the Attorney General of Texas
15          P.O. Box 12548, Capitol Station
            Austin, Texas  78711
16          512.463.2080
            512.963.2109 (Fax)
17          Cynthia.Burton@texasattorneygeneral.gov
            Karen.Matlock@texasattorneygeneral.gov
18          Matthew.Greer@texasattorneygeneral.gov
                  -and-
19          Ms. Sharon Felfe Howell, Esq.
            Ms. Kamilla L. Stokes, Esq.
20          Texas Department of Criminal Justice
            Post Office Box 13084, Capitol Station
21          Austin, Texas  78711
            512.463.9693
22          512.936.2159 (Fax)
            Sharon.Howell@tdcj.state.tx.us
23          Kamilla.Stokes@tdcj.texas.gov


24

25
```

```
 1   FOR THE UNIVERSITY OF TEXAS MEDICAL BRANCH:
          Mr. Graig J. Alvarez
 2        Fernelius Alvarez Simon
          1221 McKinney Street, Suite 3200
 3        Houston, Texas  77010
          713.654.1200
 4        GAlvarez@fa-lawfirm.com
                -and-
 5        Ms. J. Lee Haney, Esq.
          Assistant Attorneys General
 6        Office of the Attorney General of Texas
          P.O. Box 12548, Capitol Station
 7        Austin, Texas  78711
          512.463.2080
 8        512.963.2109 (Fax)

 9

10   ALSO PRESENT:
          Ms. Shanna Molanre
11        Ms. Ashley Palermo
          Mr. James Rheams
12        Mr. Cody Ginsel
```

10   Q.   What's the point of the swamp cooler fans
11 at the -- at the Gurney Unit?
12   A.   To provide, one, an instant respite area
13 for an offender to go stand in front of, if they
14 want.

```
11      Q.   Okay.  I seem to recall -- you mentioned
12 something about respite areas --
13      A.   Yes, sir.
14      Q.   -- as one of the now key -- would that be
15 a key mitigation measure?
16      A.   Today it would be, yes, sir.




21      Q.   Did that come after the summer of 2012?
22      A.   As far as it being part of our regular
23 protocol, I don't -- I'm not sure it was in 2012.
24 What I do understand is that wardens had, for some
25 time, based upon individual unit, an individual
```

```
 1  warden used respite areas as one of the methods they
 2  employed.  But systematically, we did not put that
 3  out or require it.
 4       Q.   Is it now systematically part of your
 5  program?
 6       A.   I believe so.
 7       Q.   Do you know when that was implemented
 8  systemwide?
 9       A.   I don't recall specifically when that was
10  added.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

21   Q.   Sure, sure.  Well, what's your
22   understanding of what your current respite area
23   protocol is?
24   A.   Current respite area could include fans
25   that have the -- I said swamp cooler earlier.  I'm

1  not sure if that's the right terminology.  But we do
2  have fans that have the capability to blow water and
3  mist through the fan.  That would be an immediate
4  respite area for offenders in a housing area.
5             Classroom space in our education
6  building, within the medical clinic on a unit, there
7  could be areas where an offender could come into a
8  respite area there.
9       Q.   And so what I hear you telling me is, the
10 units that have these swamp coolers, the agency
11 considers that, in and of itself, to be some sort of
12 cooler area or respite area, in addition -- we'll
13 get to the other stuff.  But is that one of the
14 things the agency considers a, quote/unquote,
15 respite area?
16      A.   If it's within the housing area, it can be
17 considered an immediate respite area for that
18 offender.
19
20
21
22
23
24      Q.
25           If the -- is the design of the unit

1  the key to whether or not you choose to provide
2  swamp coolers in housing areas?
3      A.  It's one of the factors you consider when
4  you look at installing fans, ventilation systems,
5  which ventilation system or fan would be effective
6  based on the design.  Some designs may be able to
7  provide something like that, as well as space around
8  that, more so than other designs.
9      Q.  Which designs -- when you say, designs,
10 what are you talking about?
11     A.  In a -- for example, some of our
12 transfer-type facility dormitories would have enough
13 area within maybe dayroom areas, or other, where
14 that type of -- not fan, but swamp cooler could be
15 an effective use in that dormitory.  That's also
16 areas where the offender doesn't have the ability to
17 plug in a personal fan.
18
19
20
21
22
23
24
25

```
16    Q.   You've got like a $3 billion budget.
17 Right?
18    A.   That's correct.
```

11  Q.  Okay.  So at 3 o'clock in the morning your
12  understanding from the agency is that everybody in
13  all of the housing dorms could say, we would like to
14  go to the designated respite areas and the officers
15  would take every single person in the housing unit?
16  A.  I doubt that the respite area on any
17  facility could accommodate an entire housing area at
18  one time.

10 Q. What if they just say, I'm hot, I'd like
11 to go to a cooler area?
12 A. If they just say, I'm hot, I want to go to
13 a cooler area, they would ask an officer that,
14 officer would try to ascertain, is it just a comfort
15 issue or are they really having issues, do I need to
16 get them to a respite area. It could be that they
17 satisfy either/or.
18 Q. Let's take the situation where it's just a
19 comfort issue. For comfort reasons, is it your
20 understanding that people can go to the cooler
21 places whenever they feel like it?
22 A. No, sir, not whenever they feel like it.

**Q. Okay. Can you tell me, if a hundred**

1  people wish to access respite areas at the Pack
2  Unit, whether or not they could be accommodated?
3      A.   I assume you're speaking at one time?
4      Q.   All at once, yes.
5      A.   Yes, sir.  I couldn't tell you if they
6  could or couldn't.
7      Q.   Do you have any evidence to suggest that
8  they could?
9      A.   I have no evidence either way.

Q. Okay. Can an officer say, you know what? I don't think what you're telling me warrants a respite area, and say, no, or is it -- or does the officer have to take the inmate to respite, regardless of what he thinks of the inmate's request?

A. Based on unit protocol, I'm not certain.

CHANGES AND SIGNATURE

RE: McCOLLUM v. LIVINGSTON

WITNESS:   BRYAN COLLIER

PAGE/LINE        CHANGE                    REASON

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

    I, BRYAN COLLIER, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

            _____
            BRYAN COLLIER

1                   REPORTER'S CERTIFICATE

2    STATE OF TEXAS      )

3    McLENNAN COUNTY     )

4

5         I, Melody Renee Campbell, Certified Shorthand

6    Reporter in and for the State of Texas, do hereby

7    certify that the foregoing deposition is a full,

8    true and correct transcript;

9         That BRYAN COLLIER, the witness hereinbefore

10   named, was duly sworn by the officer and that the

11   oral deposition was taken by the officer in machine

12   shorthand on MARCH 30, 2016, and is a true record of

13   the testimony given by the witness;

14        I further certify that the signature of the

15   deponent was requested and is to be returned within

16   30 days from date of receipt of the transcript.  If

17   returned, the attached Changes and Signature Page

18   contains any changes and the reasons therefor;

19        That $ _____ is the deposition

20   officer's charges for preparing the original

21   deposition transcript and any copies of exhibits,

22   charged to PLAINTIFFS;

23        I further certify that I am neither counsel

24   for, related to, nor employed by any of the parties

25   in the action in which this proceeding was taken,

1  and further that I am not financially or otherwise
2  interested in the outcome of the action.
3          Subscribed and sworn to on this the 13TH day
4  of APRIL 2016.

_____
MELODY RENEE CAMPBELL
Integrity Legal Support Solutions
3100 W. Slaughter Lane, Suite A-101
Austin, Texas 78748
512.320.8690
512.320.8692 (Fax)