UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH COLE, JACKIE BRANNUM, RICHARD KING, MICHAEL DENTON, FRED WALLACE, and MARVIN RAY YATES, individually and on behalf of those similarly situated, | § § § § | |
| Plaintiffs, | § | CIVIL ACTION NO. |
| | § | 4:14-cv-1698 |
| | § | |
| v. | § | |
| | § | |
| BRYAN COLLIER, in his official capacity, ROBERT HERRERA, in his official capacity, and TEXAS DEPARTMENT OF CRIMINAL JUSTICE, | § § § | |
| | § | |
| Defendants. | § | |

**PROPOSED SETTLEMENT AGREEMENT AND RELEASE**

Plaintiffs Keith Cole, Jackie Brannum, Richard Elvin King, Fred Wallace, Michael Denton, and Marvin Ray Yates, individually and on behalf of those similar situated, and Defendants Bryan Collier in his official capacity, Robert Herrera in his official capacity, and the Texas Department of Criminal Justice (TDCJ), enter into this Settlement Agreement and Release (Settlement Agreement"), subject to the approval of the Court. The Parties, in consideration of the mutual promises, agreements, and covenants contained herein, the sufficiency and receipt of which are hereby acknowledged, stipulate and agree as follows:

**I.     RECITALS**

WHEREAS, on June 18, 2014, Plaintiffs filed their original class action Complaint for injunctive and declaratory relief only in this matter in U.S. District Court, Southern District of Texas, Houston Division, alleging that Defendants engaged in conduct in violation of 42 U.S.C. §1983, the ADA, the ADAAA, and the Rehabilitation Act; and

1

WHEREAS, the Court entered a preliminary injunction on the merits of Plaintiffs' claims finding Plaintiffs were substantially likely to prevail at trial (Doc. 737, p. 90);

WHEREAS, Plaintiffs are prosecuting the Action on behalf of a Class and Subclass of TDCJ inmates residing at the Wallace Pack Unit in Navasota, Texas; and

WHEREAS, Defendants deny the allegations of the Action, deny all allegations of wrongdoing and liability, and deny any causation of harm or damage to the Settlement Class, as defined below; and

WHEREAS, Plaintiffs and Defendants recognize that the outcome of the Action is uncertain, and that pursuing the Action to judgment would entail significant risk, cost, and delay; and

WHEREAS, the Parties have discussed and explored at length the legal and factual issues in the Action, and have participated in mediation sessions with the Honorable Scott Brister (Ret.) of the Texas Supreme Court concerning the issues raised by Plaintiffs in the action. Consequently, the Parties have agreed to a settlement of the claims asserted by Plaintiffs on behalf of the putative class, including an agreement to resolve Plaintiffs' claim for attorneys' fees and costs, and all other terms necessary for a global settlement of the Action, subject to Court approval; and

WHEREAS, the Parties desire to compromise all claims for injunctive, equitable, or declaratory relief that were asserted or could have been asserted based upon the facts alleged in the Action by Plaintiffs on their own behalf and on behalf of all members of the Class, including all claims addressed in Plaintiffs' complaint; and

WHEREAS, Plaintiffs, by and through Class Counsel, have made a thorough investigation of the facts and circumstances surrounding the allegations asserted in the Action,

engaged in extensive discovery and investigation of the Plaintiffs' claims, and considered the law applicable to the claims asserted in the Action, including the defenses that Defendants would likely assert and Defendants' pending appeals, and concluded after carefully considering the facts and applicable law, that it is in the best interest of the Settlement Class and Subclass to enter into this Settlement Agreement to avoid the uncertainties of continued litigation and to ensure a benefit to Plaintiffs and to the Members of the Settlement Class and Subclass; and

WHEREAS, Defendants, by and through their counsel, have concluded that settlement is desirable to avoid the time, expense, and inherent uncertainties of defending protracted litigation; to avoid further disruption of Defendants' duties due to the pendency and defense of the Action; and

WHEREAS, Plaintiffs' counsel are experienced in this type of class litigation, recognize the risks and costs of prosecution of this Action, and believe that it is in Plaintiffs' interest, and the interest of all Class and Subclass Members, to resolve this Action, and that the proposed Settlement is adequate, fair, and reasonable, and provides significant benefits and is in the best interests of the Class and Subclass; and

WHEREAS, significant arm's length settlement negotiations have taken place between the Parties, and, as a result, this Settlement Agreement has been reached in good faith by all parties, without collusion, and subject to the approval of the Court; and

WHEREAS, the Parties agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any federal or state statute, rule or regulation, principle of common law or equity, or of any liability or wrongdoing whatsoever by Defendants, or of the truth of any of the claims asserted in the Action, or elsewhere, but that nothing herein shall prevent Plaintiffs from enforcing the terms of this agreement; and

3

WHEREAS, the Parties agree that the certification of the Settlement Class in connection with this Agreement shall have no bearing on the question whether the claims asserted in the Action are or were appropriate for class treatment in the absence of settlement;

NOW, THEREFORE, it is hereby stipulated and agreed, by and between the Plaintiffs and the Defendants, in consideration of the agreements, promises, and covenants set forth in this Settlement Agreement, acting in good faith and subject to the approval of the Court pursuant to Federal Rule of Civil Procedure 23, that all Class and Subclass claims and the Action alleged against Defendants identified herein be, and hereby are, compromised, settled, released, and discharged in accordance with the terms set forth below.

## II.  DEFINITIONS

As used in this Settlement Agreement, the following terms shall have the meaning set forth below.  Where appropriate, terms used in the singular shall be deemed to include the plural and vice versa.

2.1.   "Action" shall mean the case captioned Keith Cole, Jackie Brannum, Richard Elvin King, Fred Wallace, Michael Denton, and Marvin Ray Yates, individually and on behalf of those similarly situated, v. Bryan Collier in his official capacity, Robert Herrera in his official capacity, and the Texas Department of Criminal Justice, Case No. 4:14-cv-1698, pending in the U.S. District Court for the Southern District of Texas, and the claims asserted therein.

2.2.   "Plaintiffs" and/or "the Class" shall have the meaning articulated in Section III(A) – "Class Membership" – of this Settlement Agreement.  "Class Members" shall have the same meaning as "the Class."

2.3.   "The Subclass" shall have the meaning articulated in Section III (A) – "Class Membership" of this Settlement Agreement.

2.4.   "Defendants" shall mean Bryan Collier in his official capacity, Robert Herrera in his official capacity, and the Texas Department of Criminal Justice.

2.5.   "Class Counsel" shall mean Jeff Edwards, Esq. and the Edwards Law Firm.

2.6.   "Class Representatives" shall mean Keith Cole, Jackie Brannum, Richard Elvin King, Fred Wallace, Michael Denton, and Marvin Ray Yates.

2.7.   "Defendants' Counsel" shall mean the Office of the Attorney General, and attorneys assigned by the Attorney General of Texas to represent the Defendants in this Action.

2.8.   "Court" shall mean the U.S. District Court for the Southern District of Texas, Hon. Keith Ellison, or such other judge as may be assigned to hear matters in the Action.

2.9.   "Pack Unit" or "The Pack Unit" shall mean the Wallace Pack Unit in Navasota, Texas, including both the main building of the unit and the Trustee Camp co-located with those main buildings.

2.10.   "Settlement Agreement," "Agreement," and/or "Proposed Settlement Agreement," shall mean the express written terms (and only those terms) of this document (and only this document) once signed by all Parties to this Action, and by both Class Counsel and Defendants' Counsel.

2.11.   "Approval Motion" shall mean the motion filed with the Court in this Action in support of approval of this Proposed Settlement Agreement.

2.12.   "Final Approval Order" shall mean the Court's Order approving the Proposed Settlement Agreement.

## III.   SETTLEMENT CLASS RELIEF AND CONSIDERATION

In consideration of a full, complete, and final settlement of the Action, and the Releases below, and subject to the Court's approval, the Parties agree to the following relief:

### *Class Membership*

1.    Solely for purposes of this Settlement Agreement, and subject to Court approval, the Parties agree that this Action may be maintained as a class action on behalf of a Settlement Class and Subclass as follows:  The general Settlement Class (the "Class") shall be constituted by the inmates incarcerated at the Wallace Pack Unit on or between the dates of July 19, 2017 and August 8, 2017, and any inmates housed at the Pack Unit when this agreement is executed. Neither Class Representatives nor Class Counsel shall be deemed to represent or speak for any inmate moved into the Pack Unit after August 8, 2017, other than any inmates still housed at the Pack Unit when this agreement is executed; nor shall Defendants be bound by any obligation to such inmates originating in this Agreement or this Action other than the inmates expressly identified in Attachment A.  Inmates who are not Members of the Class or Subclass, as defined herein, shall not gain any rights as a result of this Action, and shall not be bound by this Agreement or by the Settlement of this Action, or have any rights or causes-of-action extinguished thereby. The Class and Subclass members are specifically listed, by inmate name and identification number, in Attachment A hereto.  The Parties agree and warrant that each of them has reviewed and investigated Attachment A; made their best efforts using all available resources to verify that the inmates listed on it completely and accurately reflect the identities of all Class Members, as the Class is defined in this paragraph; and brought to the attention of the other Party the identities of any inmates they believe may have been improperly included or excluded from Attachment A.  This is reflected in the Declaration of Bryan Collier, attached hereto as Attachment B.  The Parties agree and warrant that after performing this due diligence, each of them believes, as of the date of the execution of this Agreement, that Attachment A is

complete and accurate.  Attachment A shall be appended to any preliminary and/or final order concerning settlement approval. The Class shall not be further expanded or added to.

2.   Subclass Definition:  The Parties agree that they have used their best efforts to identify agreed factors that could contribute to an elevated risk of heat injury and/or illness.  The Parties agree that multiple considerations should be taken into account when assessing the relative risk posed by each such condition, which may vary from minor to serious.  The Parties agree that multiple co-morbidities, certain medical conditions, and certain pharmaceuticals pose more substantial risks than the risks posed by other medical conditions and/or pharmaceuticals.  The Parties agree that qualified expert physicians may assess the degree of risk posed by each factor that can materially contribute to heat sensitivity, and that it is proper for TDCJ to prioritize the protection of those inmates at a relatively higher risk.  For purposes of this settlement only (in which the Pack Unit will be air conditioned), the Parties agree that the settlement heat-sensitive Subclass ("Subclass") shall be defined to include those inmates listed on Attachment A who are presently are in or later come into one or more of the following twenty-six (26) categories (listed in no particular order), and to exclude all other inmates, whether those inmates are Class Members or not:

A.  Inmates who are 65 or older.
B.  Inmates diagnosed with Coronary Artery Disease.
C.  Inmates diagnosed with Congestive Heart Failure.
D.  Inmates diagnosed with Cardiovascular Disease.
E.  Inmates diagnosed with Cystic Fibrosis.
F.  Inmates diagnosed with a Sweat Gland disorder.
G.  Inmates diagnosed with Sjogren's syndrome.
H.  Inmates diagnosed with Asthma, EXCEPT inmates diagnosed with mild/intermittent Asthma – *i.e.*, those patients prescribed albuterol inhaler ONLY and not prescribed inhaled or oral steroids and/or long-acting beta-agonist inhalers.
I.  Inmates diagnosed with Chronic Obstructive Pulmonary Disease (COPD) EXCEPT inmates prescribed albuterol inhaler ONLY and not prescribed inhaled or oral steroids and/or long-acting beta-agonist inhalers.

J. Cirrhotic inmates who are also receiving a diuretic, or daily laxatives, or the non-absorbable antibiotics Rifamixin or Neomycin (an inmate need only be prescribed one of the three to be included).

K. Inmates diagnosed with Obesity.

L. Inmates with BMI above 40.

M. Inmates with BMI between 35 and 40.

N. Inmates with BMI between 30 and 35.

O. Inmates receiving Antipsychotic drugs.

P. Inmates receiving Lithium.

Q. Inmates receiving Tricyclic antidepressants.

R. Inmates receiving diuretics.

S. Diabetes, if accompanied by diagnosed resultant target organ damage which increases risk of heat-related injury and/or illness, to include diagnosed neuropathy.

T. Inmates receiving bupropion.

U. Inmates chronically receiving high-activity anticholinergic medications, including but not limited to 1st generation antihistamines.

V. Inmates receiving beta blockers.

W. Hypertension uncontrolled by medication and resulting in target organ damage which increases risk of heat-related illness and/or injury.

X. Inmates diagnosed with active psychiatric conditions, defined as schizophrenia, schizo-affective disorder, and/or dementia/Alzheimer's disease, psychosis, and bipolar disorder, but excluding inmates diagnosed with drug-induced psychiatric conditions resolved or resolvable by drug treatment.

Y. Inmates with developmental disabilities.

Z. Inmates receiving the anti-convulsant drugs carbamazepine (Tegretol), topiramate (Topamax), and zonisamide.

3. Inmates included in either the Class or Subclass shall have the ability to voluntarily "opt out" at any time up to and after a final approval of any class settlement. They shall be removed from the relevant class membership for all purposes and may not opt back in.  "Opt outs" shall be monitored by the Class Counsel, as specified herein, and reported to the Defense Counsel and the Court in the regular course of business.  The Parties agree that upon release from TDCJ incarceration (including release to a halfway house or to Federal incarceration, but *not* to include the achievement of "trustee" status), an inmate's status as a Class and/or Subclass Member shall be forever extinguished, not to be resurrected even if the inmate is subsequently sentenced by a court to serve incarceration in a correctional institution in the TDCJ system.

### A.   *Air Conditioning*

1.   All housing areas in the Pack Unit will be air conditioned, using temporary measures, from April 15, 2018 to October 15, 2018; and from April 15, 2019 to October 15, 2019. The heat index in the Pack Unit housing areas shall not exceed 88 degrees Fahrenheit during these time periods; except that, in the event of an equipment malfunction resulting in the heat index rising above 88 degrees, TDCJ shall repair or replace the malfunctioning equipment, or otherwise provide housing areas below 88 degrees Fahrenheit heat index to Subclass members, as expeditiously as possible, but in no longer than 96 hours. If there is an equipment malfunction lasting longer than twenty-four (24) hours during the any period from April 15 to October 15 any year which results in the indoor heat index rising above 88 degrees Fahrenheit, TDCJ shall notify Class Counsel on the first business day after the disruption. If, during an equipment malfunction, the heat index rises above 88 degrees as measured at the Pack Unit by Defendants, or if Plaintiffs notify Defendants that the heat index is above 88 degrees at the Brenham Municipal Airport weather station, TDCJ shall provide the following temporary mitigation measures:

- Access to air-conditioned "respite" areas for an unlimited amount of time, 24 hours a day, seven days a week, upon request by any inmate;

- Access to cool showers of unlimited length, 24 hours a day, seven days a week;

- Public postings and training warning inmates of the heat and encouraging them to avail themselves of "respite" areas and cool showers;

- Cold drinking water accessible 24 hours a day, seven days a week;

- Notify Class Counsel on the first business day of or after the disruption of air conditioning with subsequent updates on any business day which the disruption continues, including by identifying the areas without operating equipment; describing

9

the expected timeline to repair or replace the equipment; providing all temperature, heat index, and humidity records for such time as the air conditioning is disrupted; and providing the identities of all affected inmates if requested; and,

- Implement all measures listed in TDCJ's then current "Annual Heat Directive".

2.   Subject to legislative approval, TDCJ will install permanent air-conditioning in all housing areas of the Pack Unit by May 1, 2020.  Permanent air conditioning will keep the heat index at 88 degrees Fahrenheit or less in those housing areas; except that, in the event of an equipment malfunction resulting in the heat index rising above 88 degrees, TDCJ shall repair or replace the malfunctioning equipment or otherwise provide housing areas below 88 degrees Fahrenheit heat index to Subclass members, as expeditiously as possible, but after no longer than 96 hours. If there is an equipment malfunction lasting longer than twenty-four (24) hours during any April 15 to October 15 period, TDCJ shall notify Class Counsel on the first business day after the disruption.  If, during an equipment malfunction, the heat index rises above 88 degrees as measured at the Pack Unit by Defendants or if Plaintiffs notify Defendants that the heat index is above 88 degrees at the Brenham Municipal Airport weather station, TDCJ shall provide the following temporary measures:

- Access to air-conditioned "respite" areas for an unlimited amount of time, 24 hours a day, seven days a week, upon request by any inmate;

- Access to cool showers of unlimited length, 24 hours a day, seven days a week;

- Public postings and training warning inmates of the heat and encouraging them to avail themselves of "respite" areas and cool showers;

- Cold drinking water accessible 24 hours a day, seven days a week;

- Notify Class Counsel on the first business day of or after the disruption of air conditioning with subsequent updates on any business day which the disruption continues, including by identifying the areas without operating equipment; describing the expected timeline to repair or replace the equipment; providing all temperature, heat index, and humidity records for such time as the air conditioning is disrupted; and providing the identities of all affected inmates if requested; and,

- Implement all measures listed in TDCJ's then current "Annual Heat Directive".

3.   If for any reason permanent air conditioning is not achieved by May 1, 2020, temporary air conditioning will be provided during any April 15 to October 15 period while any Class or Subclass member is present at the Pack Unit.

4.   Class and Subclass members will be housed at the Pack Unit unless they voluntarily opt-out as provided above and described in further detail below, or are subject to involuntary transfers out of the Pack Unit to receive medical treatment or for legitimate prison security reasons as discussed below. It is the intent of this agreement to provide that all Class and Subclass members who do not affirmatively opt-out shall receive an air-conditioned housing assignment for the duration of their current incarceration. Class Members requiring medical beds not available at the Pack Unit shall be transferred to air-conditioned medical beds elsewhere in the system for so long as the medical need persists. Class and Subclass members not currently residing at the Pack Unit will be moved back to the Pack Unit no later than the date of the execution of this Agreement, unless already residing in an air conditioned medical bed at another unit if there are no appropriate medical beds available at the Pack Unit, or already residing in an air-conditioned parole-voted programming bed. Inmates not in the Class or Subclass, as defined herein, will be moved out of the Pack Unit, as previously represented to the Court.

11

### B.   Transfers

1.   Because of a medical condition, Class and Subclass members may be temporarily or permanently transferred to medical facilities that are air conditioned as directed by qualified medical personnel.

2.   Because the Pack Unit has only dormitory housing, it may not house G4 offenders or G5 offenders. These classifications require cellblock housing. The Pack Unit also does not have administrative segregation housing. If a Class or Subclass member acquires a heightened security classification or must be placed in administrative segregation, he will be transferred from the Pack Unit. Class members shall be moved to other air-conditioned housing facilities in accordance with their reclassifications.

3.   During medical appointments and other necessary travel within the TDCJ system, Subclass members shall be transported in air-conditioned vehicles.

### C.   Other Heat Mitigation Measures

1.   Other heat mitigation measures mandated in the Court's preliminary injunction orders shall not be included as part of any settlement, and shall not be mandated by any Final Order, except as necessary to address heat indexes above 88 degrees during an equipment failure as described above.

### D.   Programming

1. All conditional parole-voted programs shall be offered in air-conditioned facilities to Class and Subclass members, except the Innerchange Freedom Initiative, which is a voluntary program.

### E.  Class Member Rights Enforcement

1. Subject to Court approval stating their rights under any Class settlement, Class and Subclass Members shall be provided a memorandum in the form attached hereto as Exhibit C. Class members shall be informed that any claimed violations of any Class settlement shall be exclusively submitted to Class counsel, the Edwards Law Firm. The Court shall retain continuing jurisdiction to dispose of any such claims at the request of Class counsel.

### F.  Attorneys' Fees

1. Solely for the purposes of enforcing payment of attorneys' fees and expenses, the Parties agree that Plaintiffs are entitled to attorneys' fees and expenses under 42 U.S.C. § 1988 and 42 U.S.C. § 12205. The Parties agree and stipulate that Plaintiffs' fair, reasonable, and necessary attorneys' fees and expenses in this case are $4,500,000, and agree that payment of fees and expenses in this amount is a material term of this agreement. The Parties recognize that approval of the Attorney General of Texas, the Governor of Texas, and the Texas Legislature are necessary before payment of attorneys' fees, costs, and expenses in this amount. The Parties expressly agree that this amount ($4,500,000) represents a fair, reasonable, and necessary attorneys' fee for litigation of this duration and complexity.

2. In the event that Plaintiffs' attorneys' fees and expenses in the amount of $4,500,000 have not been paid in full by September 30, 2019, TDCJ agrees to (a) a stipulation of judgment in the amount of $4,500,000 plus interest at the rate of 5% from January 30, 2018, to be entered in the Court, and (b) to waive all rights of appeal related to such stipulation of judgment. The Parties further agree that the Court shall retain continuing jurisdiction over all issues related to attorneys' fees and expenses.

## IV.    APPROVAL OF SETTLEMENT

4.1.    Approval Motion.  Promptly upon execution of this Settlement Agreement, Plaintiffs, acting as Class Representatives, through Class Counsel, shall file an Approval Motion.  The Approval Motion shall request that this Court approve the Settlement Agreement and enter an Approval Order including provisions:

a.    Certifying the Settlement Class and Settlement Subclass, superseding any prior proposed or court-approved classes, constituted as described in Section III(A) of this Agreement, for the sole purpose of effectuating this settlement;

b.    Appointing Keith Cole, Jackie Brannum, Richard Elvin King, Fred Wallace, Michael Denton, and Marvin Ray Yates as representatives of the Class and Subclass;

c.    Appointing Class Counsel as counsel for the Class and Subclass;

d.    Granting preliminary approval to this Settlement by order substantially in the form attached as Attachment D (the Approval Order), and finding this Settlement sufficiently fair, reasonable, and adequate to allow Notice to be disseminated to the Settlement Class and Subclass;

e.    Approving a Settlement Notice and Request for Exclusion/Opt-Out notice substantially in the form attached hereto as Attachment D;

f.    Setting a schedule for proceedings with respect to final approval of this Settlement; and

g.    Providing that, pending entry of a Final Approval Order and Judgment, no Settlement Class or Subclass Member (either directly, in a representative capacity,

14

or in any other capacity) shall commence or continue any action against the
Released Parties asserting any of the Class Released Claims.

Defendants and Defendants' Counsel shall not oppose the Approval Motion.

4.2    Best Efforts.    The Parties acknowledge that prompt approval, consummation, and
implementation of the Settlement set forth in this Settlement Agreement are essential.    The
Parties shall cooperate with each other in good faith to carry out and effectuate this Settlement
Agreement.

4.3    Finality.    This Settlement Agreement shall become Final upon the occurrence of the
following events:

(a)    An Order by the Court certifying the Settlement Class has been entered;

(b)    A Dismissal Order has been entered, including dismissal of all claims in this Action
against Defendants by Members of the Settlement Class and Subclass who do not exclude
themselves ("opt-out"), with prejudice, incorporating the Release on behalf of all members of the
Settlement Class and Subclass; and,

(c)    The time for appeal of the Dismissal Order and Final Judgment has expired, or, if an
appeal is noticed, it has been dismissed or the final judgment has been affirmed in its entirety and
the affirmance has become no longer subject to further appeal or review (the "Effective Date").

V.    NO ADMISSION OF LIABILITY

Neither the acceptance by Defendants of the terms of this Settlement Agreement nor any of the
related negotiations or proceedings constitute any admission with respect to the merits of the claims
alleged in the Action, the validity of any claims that could have been asserted by any of the Settlement
Class or Subclass Members in the Action, or the liability of any Defendant in the Action, other than as
specifically stated in this Agreement.    This Settlement Agreement shall not be used, offered, or received

into evidence in the Action for any purpose other than pursuant to 18 U.S.C. § 3626 to enforce, to construe, or to finalize the terms of the Settlement Agreement or to obtain the preliminary and final approval by the Court of the terms of the Settlement Agreement.

## V.     NOTICE, OBJECTIONS, AND REQUESTS FOR EXCLUSION

6.1     Notice to the Settlement Class shall be provided in the forms approved by the Court in the Approval Order.

6.2     Class Counsel, with cooperation from Defense Counsel, shall be responsible for all of the following:

     a.     Disseminating within fourteen days of the execution of this Settlement Agreement to the Class Members the Settlement Notice and Request for Exclusion/Opt-Out notice approved by the Court, substantially in the form attached hereto as Attachment E;

     b.     Answering inquiries from Class Members about Opt-Out rights and/or Objections to the Settlement.  With regards to this subpart, within fourteen days of the execution of this Agreement, Class Counsel and Defense Counsel shall provide notice to the Class and Subclass members (consistent with the terms of this Agreement and with Attachment E, as approved by the Court), including an explanation of the opt out procedure;

     c.     Keeping track of opt-outs and objections to the Settlement, advising any Class or Subclass Members who express a desire to Opt-Out, as set forth below; and promptly and on an ongoing basis notifying Defense Counsel and the Court, of all such opt-outs and objections by Class and/or Subclass Members, within forty days of receipt of such; and

     d.     Necessary monitoring of compliance with this agreement.

     e.     Such other tasks as Class Counsel and Defense Counsel mutually agree, or as required by the Court.

f.       For performance of these duties which shall be concluded upon the entry of Final Judgment, Class Counsel shall be entitled to an additional attorneys' fee of $219/hour (with the first 20 hours to be provided pro bono), not to exceed $48,000 annually, in addition to the fee in Section III(F). Class Counsel shall quarterly submit any such requests for attorneys' fees in performance of these duties.  TDCJ shall pay all reasonable fee requests within 45 days of receipt. In the event of a dispute regarding these attorneys' fees, the Court shall retain continuing jurisdiction to resolve the dispute.

6.3.      TDCJ, in cooperation with Class Counsel, shall be responsible for (a) posting a copy of the Settlement Notice in each housing area and the law library of the Pack Unit, and (b) maintaining sufficient copies of the Opt-Out form (Attachment E) in the Pack Unit's law library such that a copy of the form is always available for use by any Class or Subclass member seeking to opt out.

6.4     Requests for Exclusion/Opt-Out Procedures

a.       Class Counsel, with cooperation from Defense Counsel, will provide to all Class and Subclass Members, within fourteen days of the Court's Approval Order, the "Class Action Exclusion/Opt-Out Notice," approved by the Court, substantially in the form of Attachment E, attached hereto, explaining the Members' right to request exclusion from the Class and Subclass and the procedures for doing so, and including the form (approved by the Court) for inmates to complete if they wish to exclude themselves from the Class.

b.       The Parties will request, as part of the Approval Order, that the Court require that any Class or Subclass Member who wishes to exclude himself ("opt out") from the class action and from this Settlement submit the approved form to the Court, whereupon, the Court may approve a request for exclusion on the basis of the Class or Subclass

17

Member's written request; or, if necessary, may hold a hearing before approving or denying the request.

c.      Class or Subclass Members shall be permitted to exclude themselves ("opt-out") from the Class and/or Subclass so long as the Court is satisfied by a preponderance of the evidence that the inmate is not making the request as the result of any actual external compulsion or threats sufficient to override their free will. Inmates shall be free to choose to exclude themselves from the class ("opt-out") on the basis that they wish to leave the Pack Unit in order to obtain benefits not available at the Pack Unit (including, but not limited to: preferred geographical location; proximity to family and/or friends; access to educational, trade, or vocational programs located elsewhere; preferred religious programming, communities, and/or amenities located elsewhere.). An inmate's choice to exclude himself from the Class and/or Subclass, once approved by the Court, shall be irrevocable.

d.      The Parties will also request that the Court enter an Order, at least seven days prior to the Final Approval Hearing, requiring any Class or Subclass Member who wishes any objection to this Settlement to be considered, to file with the Court a written objection, by the Objection Date.  To state a valid objection, an objecting Class or Subclass Member must provide to the Court the following information in his written objection: (i) the name of the lawsuit; (ii) full name, inmate number, and current housing assignment; (iii) a statement of the position(s) the objector wishes to assert, including the factual and legal grounds for the position; and (iv) the objector's signature and the date of the signature.

e.      Subject to approval of the Court, any objector may appear, in person, by telephone pursuant to 42 U.S.C. § 1997e(f)(1), or by counsel, at the Final Approval Hearing held by the Court, to (i) show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable; or (ii) object to any petitions for attorneys' fees and costs.

f.      Any person who fails to raise an objection or opposition to this Settlement in the manner described herein shall be foreclosed from making such objection or opposition. Any person that fails to file a timely written objection shall have no right to file an appeal relating to the approval of this Settlement.

## VI.      RELEASE AND JURISDICTION OF THE COURT

7.1      Binding and Exclusive Nature of Settlement Agreement.  On the Effective Date, the Parties and each and every Settlement Class and Subclass Member shall be bound by this Settlement Agreement and shall have recourse exclusively to the benefits, rights, and remedies provided herein.  No other action, demand, suit, or other claim for equitable or injunctive relief may be pursued against the Released Parties with respect to the Class Released Claims.

7.2      Release by Class Members.  On the Effective Date, all Class and Subclass Members hereby fully, finally, and forever release, relinquish, and discharge any and all injunctive, equitable, or declaratory relief claims, liens, demands, actions, and causes of action of any nature that they have, had, may have, or could have raised against Defendants and Released Parties, arising out of any of the legal and/or factual allegations and/or legal claims of the Action.

7.3      Releases by Class Representatives.  On the Effective Date, the Class Representatives in their individual capacities hereby fully, finally, and forever release, relinquish, and discharge any and all claims, liens, demands, actions, and causes of action of any nature that they have, or had been made against Defendant and Released Parties, arising out of any of the allegations of the

Action, and hereby expressly waive and relinquish any and all claims they had raised arising out of the allegations of the Action. This release is intended to be a general one covering claims or demands brought in this litigation by the Class Representatives in their individual capacities.

7.4     Assumption of Risk. In entering into this Settlement Agreement, each of the Parties assumes the risk of any mistake of fact or law. The Parties and the Class and Subclass Members recognize and warrant that even if they later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of the Final Approval Order and accompanying Judgment, Plaintiffs and the Class and Subclass Members fully, finally, and forever settle and release all of the Released Claims. If either Party should later discover that any fact which the Party relied upon in entering this Settlement Agreement is not true, or that the Party's understanding of the law or facts was incorrect, the Party shall not be entitled to modify, reform, or set aside this Settlement Agreement, in whole or in part, by reason thereof. The Parties agree that at the time this Settlement Agreement was executed, there were unsettled issues of relevant law, and the Parties agree to honor this Agreement regardless of developments in the law after execution. The Parties acknowledge that the foregoing waiver and release was bargained for and is a material element of the Settlement Agreement.

7.5     Upon issuance of the Final Approval Order by the Court: (i) the Settlement Agreement shall be the exclusive remedy for any and all Class and Subclass Members; (ii) Defendants shall not be subject to liability for injunctive or declarative relief to any Class or Subclass Member for reasons related to the Action, except as explicitly set forth herein; and (iii) Class and Subclass Members shall be permanently barred from initiating, asserting, or prosecuting any and all of the Released Claims against Defendants.

7.6     Without affecting the finality of the Final Approval Order or Final Judgment in any way, the Court shall retain jurisdiction over (i) the enforcement of this Settlement Agreement, the Final Approval Order and Final Judgment; and (ii) the "opt-out" of Class and/or Subclass Members from the Class and/or Subclass.

7.7     The Parties agree that the Court found in a Preliminary Injunction Order that there was a substantial likelihood that trial in this matter would result in a finding that Class members' federal rights were violated by conditions at the Pack Unit.  The Parties agree that Defendants appealed that preliminary finding to the U.S. Court of Appeals for the Fifth Circuit, and intended to contend at trial on the merits in U.S. District Court that no such violations exist.  The Parties agree that at the time of this Settlement Agreement, both the trial in this case and the appeal of the Preliminary Injunction Order remained pending, and the final outcomes at both trial and appeal remained uncertain.  The Parties agree that, for settlement purposes only, the measures provided by this Settlement Agreement are narrowly drawn, extend no further than necessary to correct the alleged violations of the federal rights of the Plaintiffs, Class, and Subclass, and are the least intrusive means necessary to correct these alleged violations of the Plaintiffs, Class, and Subclass' federal rights. The Parties further agree that the measures provided by this settlement will not cause any adverse impact on public safety or operation of the criminal justice system. See 18 U.S.C. § 3626(a)(1).  The Parties agree that the Settlement Agreement extends no further than necessary to enforce the alleged violations of the Class and Subclass members' federal rights, and that the scope of all the remedies included in the Settlement Agreement are proportional to cure the alleged violations. It is the express intent of the Parties for this provision to comply in all respects with 18 U.S.C. § 3626(a) for purposes of enforcing this agreement in the U.S. District Court for the Southern District of Texas, the Hon. Keith Ellison presiding. The

Parties represent, and will jointly ask the Court to find, that the Settlement Agreement complies in all respects with 18 U.S.C. § 3626(a). The Parties agree that the provisions of this section, and of this Settlement Agreement, do not constitute, and shall not be construed to constitute, any admission or acknowledgement by Defendants that any federal rights of Class Members have been violated, or respecting any alleged liability, fault, omission, or wrongdoing of any kind, without prejudice or limitation, however, to the ability of Class Counsel to enforce the terms of the Settlement Agreement pursuant to 18 U.S.C. § 3626(a).

7.8     Upon the permanent installation of air conditioning, the Parties shall notify the Court and ask for the case to be dismissed with prejudice.  Class and Subclass members may continue to opt out following dismissal of the case.  Defendants anticipate installation of permanent air conditioning at the Pack Unit will be completed before the summer of 2020. Defendants agree not to move to terminate any temporary relief afforded by the Settlement Agreement pursuant to the terms herein before the installation of permanent air conditioning at the Pack Unit. Defendants agree to provide written notice to Class Counsel 60 days before filing any termination motion. Defendants agree not to move to decertify the Class or Subclass. Defendants agree they will not appeal any of the relief the parties request the Court approve, including, but not limited to, the installation of temporary or permanent air conditioning, or the amount of attorneys' fees and expenses.

## VIII.   REPRESENTATIONS, WARRANTIES, COVENANTS

8.1.  Class Representatives and Class Counsel, who are signatories hereto, represent and warrant that they have the authority, on behalf of Plaintiffs and the Class and Subclass, to execute, deliver, and perform this Settlement Agreement, and to consummate all transactions contemplated thereby.   This Settlement Agreement has been duly and validly executed and

delivered by Class Counsel and Plaintiffs and constitutes their legal, valid, and binding obligation.

8.2.   Defendants represent and warrant that they have the authority to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated thereby; except that, the Settlement Agreement, and all its terms, are expressly conditioned upon approval by the Texas Legislature, pursuant to Tex. Civ. Prac. & Rem. Code Ch. 111; and subsequent signature by the Governor of Texas.

## IX.    MISCELLANEOUS

9.1. Construction and Interpretation.   This Settlement Agreement is entered into only for purposes of settlement.  In the event the Final Approval Order is not entered or is subsequently reversed by an appeal, the Parties agree to use their best efforts to cure any defect(s) identified by the Court.   If, despite their best efforts, the Parties cannot cure said defects, this Settlement Agreement, including any releases or dismissals hereunder, is cancelled, and no term or condition of this Settlement Agreement, or any draft thereof, or of the discussion, negotiation, documentation or other part or aspect of the Parties' settlement discussions, shall have any effect, nor shall any such matter be admissible in evidence for any purpose, or used for any purposes whatsoever in the Action or any other proceeding, and any judgment or order entered by the Court in accordance with the terms of this agreement shall be treated as vacated.

9.2. Settlement Class and Subclass Member Signatures.   The Parties agree that, because the Settlement Class and Subclass Members are so numerous, it is impractical to have each Settlement Class Member execute the Settlement Agreement.   The Notice will advise all Settlement Class Members of the binding nature of the Releases and of the remainder of the Settlement Agreement, and in the absence of a valid Request for Exclusion, such Notice shall

have the same force and effect as if each Settlement Class and Subclass Member executed this Settlement Agreement.

9.2. Modification in Writing.  This Settlement Agreement may not be modified or amended except in writing and signed by all the Parties.  This Settlement Agreement constitutes the entire, fully integrated agreement between the Parties, and supersedes all prior written and unwritten agreements and understandings pertaining to the settlement of the Action.

9.3.  Counterpart Originals.  This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

9.4. Reasonable Extensions of Time.  The Parties to this Settlement Agreement reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement, and to correct any non-substantive mistakes or typographical errors contained in any of the Settlement papers.

9.5.  Drafting of the Settlement.  The determination of the terms of, and the drafting of, this Settlement Agreement has been by mutual agreement after negotiation, with consideration by and participation of all Parties and their respective counsel.  Since this Settlement Agreement was drafted with the participation of all Parties and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply.  There was no disparity in bargaining power among the Parties to this Settlement Agreement.

9.6. Parties to Bear Costs.  Except as otherwise provided in this Settlement Agreement, each party to this Settlement Agreement shall bear his own costs of the Action to date.

9.7.   Notices in Writing.   All notices to the Parties or counsel required by this Settlement

Agreement, shall be made in writing and communicated by electronic and regular mail to

counsel of record for the Parties at the undersigned addresses.

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**BRANTLEY STARR**
Deputy First Assistant Attorney General

**JAMES E. DAVIS**
Deputy Attorney General for Civil Litigation

**LACEY E. MASE**
Division Chief, Law Enforcement Defense Division

**CRAIG M. WARNER**
Assistant Attorney General
*Attorney-in-Charge*
State Bar No. 24079074
P. O. Box 12548, Capitol Station
Austin, Texas  78711
(512) 463-2080 / (512) 370-9814 Fax
Craig.warner@oag.texas.gov

**DARREN McCARTY**
Special Counsel for Civil Litigation
Co-Counsel
Texas Bar No. 24007631
Southern District ID No.28364
Darren.McCarty@oag.texas.gov

**JOHN S. LANGLEY**
Assistant Attorney General
Co-Counsel
Texas Bar No. 11919250
Southern District ID No. 14478
John.Langley@oag.texas.gov

**LEAH O'LEARY**
Co-Counsel
State Bar No. 24079074
Southern District No.: 1563191
P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 / (512) 370-9814 Fax
Leah.OLeary@oag.texas.gov

**ATTORNEYS FOR DEFENDANTS COLLIER,
HERRERA, AND TDCJ**

_____

**BRYAN COLLIER**
**FOR THE TEXAS DEPARTMENT OF
CRIMINAL JUSTICE**

_____

**BRYAN COLLIER**
**DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE**

_____

**ROBERT HERRERA**
**WARDEN, WALLACE PACK UNIT**

_____

**JEFF EDWARDS**
State Bar No. 24014406
Attorney-in-Charge
Scott Medlock
State Bar No. 24044783
Michael Singley
Texas Bar No. 00794642
David James
State Bar No. 24092572
Federal ID No. 2496580

Jeremy L. Doyle
State Bar No. 24012553
Federal ID No. 24559
Nathan M. Smith

26

**LEAH O'LEARY**
Co-Counsel
State Bar No. 24079074
Southern District No.: 1563191
P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 / (512) 370-9814 Fax
Leah.OLeary@oag.texas.gov

**ATTORNEYS FOR DEFENDANTS COLLIER, HERRERA, AND TDCJ**

_____

**BRYAN COLLIER**
**FOR THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE**

_____

**BRYAN COLLIER**
**DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE**

**ROBERT HERRERA**
**WARDEN, WALLACE PACK UNIT**

_____

**JEFF EDWARDS**
State Bar No. 24014406
Attorney-in-Charge
Scott Medlock
State Bar No. 24044783
Michael Singley
Texas Bar No. 00794642
David James
State Bar No. 24092572
Federal ID No. 2496580

Jeremy L. Doyle
State Bar No. 24012553
Federal ID No. 24559
Nathan M. Smith

26

State Bar No.: 24053060
Federal ID No. 1075505
REYNOLDS FRIZZELL LLP
1100 Louisiana
Suite 3500
Houston, Texas 77002
Tel. (713) 485-7200
Fax. (713) 485-7250

**ATTORNEYS FOR PLAINTIFFS**

_____
**KEITH COLE**
**PLAINTIFF & CLASS REPRESENTATIVE**

**JACKIE BRANNUM**
**PLAINTIFF & CLASS REPRESENTATIVE**

**MICHAEL DENTON**
**PLAINTIFF & CLASS REPRESENTATIVE**

**RICHARD ELVIN KING**
**PLAINTIFF & CLASS REPRESENTATIVE**

**FRED WALLACE**
**PLAINTIFF & CLASS REPRESENTATIVE**

**MARVIN RAY YATES**
**PLAINTIFF & CLASS REPRESENTATIVE**

27