UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH COLE, JACKIE BRANNUM, RICHARD KING, MICHAEL DENTON, FRED WALLACE, and MARVIN RAY YATES, individually and on behalf of those similarly situated, | § § § § | |
| Plaintiffs, | § | CIVIL ACTION NO. 4:14-cv-1698 |
| | § | |
| v. | § | |
| | § | |
| BRYAN COLLIER, in his official capacity, ROBERT HERRERA, in his official capacity, and TEXAS DEPARTMENT OF CRIMINAL JUSTICE, | § § § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF CLASS REPRESENTATIVES' RESPONSE TO
OBJECTIONS TO CLASS ACTION SETTLEMENT**

Plaintiff class representatives Jackie Brannum, Richard King, Michael Denton, Fred Wallace, and Marvin Yates ("Plaintiffs") respectfully ask the Court to overrule the objections to the class action settlement,[1] and approve the settlement of this landmark class action.

---

[1] The class members filing objections to the settlement are Terry Franklin (Doc. 1083), Claybourne Baity (Doc. 1084), Ryan Gresham (Docs. 1086, 1119, & 1122), Jeffrey Dobbins (Doc. 1089), Richard Lares (Docs. 1090 & 1142), Charles "Charlie" Malouff (Docs. 1091, 1124, & 1151), Barry Newman (Doc. 1096), Jeffrey Robert Adams (Doc. 1100), James Gentry (Doc. 1101), Herbert Ellis (Doc. 1104), Steve Galloway (Doc. 1117), Billie Joe Britton (Doc. 1125), William Harrison Blackwell (Doc. 1126), David Garrett (Doc. 1127), Albert Hunter (Doc. 1128), Robert Lewis Hall (Doc. 1129), Jim Smith (Docs. 1130), Don Allen Stewart (Doc. 1131), Stephen Parker (Doc. 1132), Albert Thomas (Doc. 1136), James E. Archer (Doc. 1137), and John Ford (Doc. 1152). Plaintiff Keith Cole also has not signed the settlement agreement, and objects to the settlement. Doc. 1121. Several inmates who are not class members have also filed objections. *See* Docs. 1098 (James Harris), 1103 (David Weir), 1118 (Jerry Thomas), 1120 (Dusty Seaton), 1123 (Michael Walton), 1139 (Robert Voris), 1140 (Mario Martinez), and 1141 (Lakeith Amir-Sharif).

TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................... iv

I.   SUMMARY OF THE ARGUMENT ..................................................................... 1

II.  STANDARD OF REVIEW ................................................................................... 2

III. ARGUMENTS AND AUTHORITIES ................................................................... 3

A.  Objections of Terry Reece Franklin, Claybourne Baity, Ryan Gresham, Barry Newman, Charles Malouff, Herbert Ellis, Albert Hunter, and Stephen D. Parker ........... 4

B.  Objections of Jeffrey Dobbins (Doc. 1089) ................................................... 9

C.  Objections of Richard Lares (Docs. 1090, 1142, & 1147) ............................ 11

D.  Objections of Charles "Charlie" Malouff, Jr. (Docs. 1091, 1124 & 1151) .................. 13

E.  Objections of Jeffrey Robert Adams (Doc. 1100) ......................................... 15

F.  Objections of James Gentry (Doc. 1101) ...................................................... 18

G.  Objections of David Weir (Doc. 1103) .......................................................... 18

H.  Objections of Keith Cole (Docs. 1121 & 1133) ............................................ 19

I.  Objections of James Harris (Doc. 1098) ........................................................ 24

J.  Objections of Dusty Seaton, (Doc. 1120), Michael Walton (Doc. 1123), Jerry Thomas (Doc. 1118), and Lakeith Amir-Sharif (Doc. 1141) ................................................ 24

K.  Objections of Albert Hunter (Doc. 1128) ...................................................... 25

L.  Objections of Robert Lewis Hall (Doc. 1129), David Garrett (Doc. 1127), James E. Archer (Doc. 1137), and Albert V. Thomas (Doc. 1136) ........................................... 26

M.  Objections of Jim Smith and William Harrison Blackwell (Docs. 1126 & 1130) ...... 26

N.  Objections of Don Allen Stewart (Doc. 1131) ............................................... 27

O.  Objections of Billy Joe Britton (Doc. 1125) ................................................. 27

P.  Objections of Ryan Gresham (Docs. 1119 & 1122) ...................................... 28

Q.  Objections of Mario Martinez (Doc. 1140) ................................................... 28

**R.**   **Objections of Henry Garland (Doc. 1145)** ...................................................................... **29**

**S.**   **Objections of John Ford (Doc. 1152)** ............................................................................. **29**

**IV.**   **CONCLUSION** ............................................................................................................................ **30**

<div align="center">

**TABLE OF AUTHORITIES**

</div>

**Cases**

*AAL High Yield Bond Fund v. Deloitte & Touche LLP,*
 361 F.3d 1305 (11th Cir. 2004) ........................................................ 19, 24, 28

*Ayers v. Thompson,*
 358 F.3d 356 (5th Cir. 2004) .................................................................. 4, 8

*Ball v. LeBlanc,*
 881 F.3d 346 (5th Cir. 2018) ............................................................ 5, 19, 27

*Castro Romero v. Becken,*
 256 F.3d 349 (5th Cir. 2001) ........................................................................ 9

*DeHoyos v. Allstate Corp.,*
 240 F.R.D. 269 (W.D. Tex. 2007) ................................................................ 2

*Dunn v. Dunn,*
 318 F.R.D. 652 (M.D. Ala. Sept. 9, 2016) .................................................. 6

*Erickson v. Pardus,*
 551 U.S. 89 (2007) ........................................................................................ 2

*Evans v. Jeff D.,*
 475 U.S. 717 (1986) ...................................................................................... 2

*Grant v. Bethlehem Steel Corp.,*
 823 F.2d 20 (5th Cir. 1987) .......................................................................... 3

*Herman v. Holiday,*
 238 F.3d 660 (5th Cir. 2001) ...................................................................... 20

*In re Southern Ohio Correctional Facility,*
 173 F.R.D. 205 (S.D. Ohio 1997) ..................................................... 13, 16, 17

*Jones v. Singing River Health Servs. Found.,*
 865 F.3d 285 (5th Cir. 2017) .............................................................. 2, 3, 7, 8

*Merriman v. Porter,*
 251 Fed. Appx. 960 (5th Cir. 2007) .............................................................. 3

*Newby v. Enron Corp.,*
 394 F.3d 296 (5th Cir. 2004) ........................................................................ 7

*Parker v. Anderson,*
 667 F.2d 1204 (5th Cir. 1982) ...................................................................... 2

*Peoples v. Annucci*,
    180 F.Supp.3d 294 (S.D. N.Y. 2016)....................................................................... 4, 15, 16

*Piambino v. Bailey*,
    610 F.2d 1306 (5th Cir. 1980) ........................................................................................ 2

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ........................................................................... 3, 4, 5, 11

*Rowe v. E.I. DuPont de Nemours & Co.*,
    No. 06-1810, 2011 WL 3837106 (D. N.J. Aug. 26, 2011) ............................................ 24

*Ruiz v. Johnson*,
    No. H-78-987 (S.D. Tex. June 17, 2002)...................................................................... 16

*U.S. v. Bernal*,
    551 Fed. Appx. 177 (5th Cir. 2014)................................................................................ 3

*Woods v. Smith*,
    60 F.3d 1161 (5th Cir. 1995) ........................................................................................ 11

**Statutes**

TEX. GOV'T CODE § 508.0441 .............................................................................................. 10

**Rules**

FED. R. CIV. PROC. 23 ............................................................................................................ 2

## I.    SUMMARY OF THE ARGUMENT

The Court should overrule the objections raised by class members to approve the landmark agreement that will protect the health and safety of over 1,300 men who are class members, as well as many hundreds of other men who will be imprisoned at the TDCJ Pack Unit in the future.

First, the common objection that the class members will not be awarded damages has no merit. Plaintiffs never sought damages, and the settlement agreement does not release any claims for damages. Doc. 1116, p. 6. Class members can still bring their own claims for damages, and have been advised by Class Counsel these claims are not being released. *See* Doc. 1089, p. 5.

Second, much of the relief the objectors complain they did not receive could never be a part of a civil settlement agreement (or even a remedy possible after a civil trial). The nature of a settlement is such that the parties must reach an agreement – and the Defendants would never agree, for example, to suffer criminal penalties to resolve the case. In the civil justice system, even if Plaintiffs' counsel wished to pursue criminal penalties, a criminal prosecution cannot be instituted by private lawyers. And, of course, should an agency like the U.S. Department of Justice choose to investigate and pursue criminal charges, the settlement would not prevent it from doing so.

Third, many of the objections have no relation to any alleged flaw in the settlement. That inmates at the Pack Unit were allegedly not provided a special religiously-required meal for Passover (Doc. 1090) or are otherwise suffering purported retaliation, while troubling if true, has nothing to do with the dangerous temperatures at the prison or the relief provided by the settlement. Moreover, if the Pack Unit administration was retaliating against inmates by denying them other rights and privileges, those claims would also not be foreclosed by the settlement (and, in fact, could be litigated before this Court as part of a breach of the settlement).

Finally, many of the objections are raised by prisoners who are not class members. Inmates who are not class members lack standing to object to the settlement.

All the objections should be overruled.

## II.   STANDARD OF REVIEW

A class action may not be settled without the approval of the Court. FED. R. CIV. PROC. 23(e); *Piambino v. Bailey*, 610 F.2d 1306, 1327-28 (5th Cir. 1980). The Court must ensure the settlement is "fair, reasonable, and adequate" to protect the rights of absent class members. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 285 (W.D. Tex. 2007) (citing FED. R. CIV. PROC. 23(e)(1)(C)). "The purpose of this salutary requirement is to protect the nonparty members of the class from unjust or unfair settlements affecting their rights." *Piambino*, 610 F.2d at 1327-28. "[T]he court cannot modify the terms of the proposed settlement; rather, the Court must approve or disapprove of the proposed settlement as a whole." *DeHoyos*, 240 F.R.D. at 286. "[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed." *Id.* (citing *Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986)).

Objectors thus must carry a "heavy burden of demonstrating the settlement is unreasonable." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 293 (W.D. Tex. 2007). Appellate review is only for "clear[] abuse of discretion" as "a product of the strong judicial policy favoring the resolution of disputes through settlement." *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 293 (5th Cir. 2017).

All the objections in this case are filed *pro se*. *Pro se* pleadings are "to be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "It is the substance of the relief sought by a *pro se* pleading, not the label that the [party] has attached to it, that determines its true and operative

effect." *U.S. v. Bernal*, 551 Fed. Appx. 177, 179 (5th Cir. 2014). "However, even a *pro se* [party] must brief the reasons for the requested relief, including the citation to the authorities, statutes and parts of the record relied on." *Merriman v. Porter*, 251 Fed. Appx. 960, 965-66 (5th Cir. 2007). Objections must further contain "factual support," not mere conclusory labels. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 173 (5th Cir. 1983); *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017) (affirming order overruling settlement objections with "no evidence" to support them).

## III. ARGUMENTS AND AUTHORITIES

The number of dissenting class members is very small. The class is composed of 1,329 people, and only twenty-two have filed objections.[2]  This low rate of objections – less than two percent of the class[3] – suggests the settlement is fair. *See Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 300 (5th Cir. 2017) ("the number of Objectors does not demonstrate unfairness" where 6.66% of class objected). The district court has an obligation to protect the interests of the "silent majority" who do not object. *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (5th Cir. 1987). Nonetheless, "[a] settlement can be fair notwithstanding [even] a large number of class members who oppose it." *Reed*, 703 F.2d at 173. In *Reed*, twenty-three of twenty-seven named plaintiffs, and nearly forty percent of the class, filed objections in

---

[2] To date, a similarly small number have "opted out." *See* Doc. 1159, Plaintiffs' Supplement to Motion to Approve Class Action Settlement (eighteen people have "opted out").

[3] At the last minute, objector Charles Malouff filed a third objection signed by 47 additional class members who had not objected before. Doc. 1151. (Though a total of 59 prisoners signed the objection, Doc. 1151 pp. 16-19, only 53 were class members, and six had previously filed additional objections). The substance of Mr. Malouff's objections is addressed below. Some of his concerns carry more weight than others (and his most significant complaint – that the trusty dayroom was not air conditioned – has now been addressed through the settlement agreement). But even assuming that all 47 new inmates still intended to object, the rate of objections would still be very small – just a total of 69 inmates, or approximately five percent of the class. *See Jones*, 865 F.3d at 300 (approving settlement over objection of 6.66% of class).

opposition to the settlement, but because the agreement was fair, it was approved by the district court and affirmed on appeal. *Id.* at 174. *See also Ayers v. Thompson*, 358 F.3d 356, 373 (5th Cir. 2004) (approving of *Reed*).

Accordingly, the objections raised here should be overruled, just as similar objections in similar prison class action litigation have been overruled to approve meaningful classwide relief. *See*, *e.g.*, *Peoples v. Annucci*, 180 F.Supp.3d 294, 306 (S.D.N.Y. 2016) (approving prison class action settlement over objections).

A. **Objections of Terry Reece Franklin, Claybourne Baity, Ryan Gresham, Barry Newman, Charles Malouff, Herbert Ellis, Albert Hunter, and Stephen D. Parker**

Mr. Franklin, Mr. Baity, Mr. Gresham,[4] Mr. Newman, Mr. Malouff,[5] Mr. Ellis, and Mr. Parker filed nearly identical objections. These "Franklin Objections" are conclusory, stating they object that the settlement is "fundamentally unfair" without explaining why. Conclusory objections, even when filed *pro se*, should be overruled. Because the *pro se* objections are construed liberally, however, Plaintiffs address each of them.

First, the settlement is a fair and just resolution to this litigation. A settlement that "substantially remedies any class injury" should be approved. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 173 (5th Cir. 1983). This is especially true where "[r]ejection of the settlement and further litigation is unlikely to lead to greater relief." *Ayers v. Thompson*, 358 F.3d 356, 373 (5th Cir. 2004). The settlement is a great victory for the class – it is difficult to articulate any additional relief that reasonably could have been expected at trial (other than higher attorneys'

---

[4] Mr. Gresham separately filed another objection that addresses allegations he has been denied medical attention. Doc. 1119. This objection is addressed separately below.

[5] Mr. Malouff separately filed additional objections (Docs. 1124 & 1151), which are addressed below.

fees). In fact, the settlement provides substantive relief to the class members beyond what the Plaintiffs originally sought, and more than the Court awarded in its preliminary injunction. *Compare* Doc. 1, p. 34 ¶ 181 (requesting "the Court enjoin Defendants to maintain a heat index of 88 degrees or lower inside each of the Pack Unit's housing areas") *with* Doc. 989-4, Ex. 4, pp. 9-12 (providing for air-conditioned housing areas, "an air-conditioned housing assignment" for class members throughout the TDCJ system, and transportation in air-conditioned vehicles for subclass members). *See also* Doc. 737 (awarding housing in temperatures below 88°F only to "heat sensitive" subclass, not otherwise healthy inmates). Despite this success, however, the relief provided in the settlement "was by no means preordained," such that the "uncertainty [of success at trial and on appeal] was relevant to the settlement." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 173 (5th Cir. 1983). *See also Ball v. LeBlanc*, 881 F.3d 346 (5th Cir. 2018) (overturning injunctive relief ordered in prison heat litigation).

Second, while the Franklin Objectors correctly note the settlement "[d]oes not provide for monetary damages" (Doc. 1083, p. 2), it also does not preclude class members from pursuing their own claims for damages. The settlement agreement only releases claims "for equitable or injunctive relief" – *not* claims for damages. Docs. 989-4, p. 19 and 1116, p. 6. This lawsuit never sought damages – the only claims the Plaintiffs ever brought were for injunctive relief. Doc. 1, p. 35 ("Prayer for Relief"). Any class member who believes he was personally injured by the heat at the Pack Unit can still bring a claim for damages.[6] *See also* Doc. 1116, p. 6. Thus, as in other, similar cases, "class members' requests for money damages are not true objections to the

---

[6] Construed liberally, class member Steve Galloway (Doc. 1107) requests to be made a "named plaintiff" to address his allegations regarding the conditions at the Pack Unit during the hurricane evacuation. Though his motion is not styled as an objection, any claims for damages that Mr. Galloway wishes to pursue would not be extinguished by the settlement agreement. Mr. Galloway's request to become a "named plaintiff" was thus denied. Doc. 1116, pp. 8-9.

settlement agreement." *Peoples v. Annucci*, 180 F.Supp.3d 294, 306 (S.D. N.Y. 2016) (approving prison class action settlement); *see also Dunn v. Dunn*, 318 F.R.D. 652, 672 (M.D. Ala. Sept. 9, 2016) (overruling objections that settlement agreement in prison class action did not provide for money damages).

Third, the settlement undisputedly *does* "address constitutional … violations by the Defendants … that occurred during the course of the case." *See* Doc. 1083, p. 1. The Court found a substantial likelihood the Plaintiffs would prove the dangerous indoor temperatures created a substantial risk of serious harm. Doc. 737. The settlement eliminates that substantial risk by air-conditioning the Pack Unit's housing areas and requiring indoor temperatures remain below 88°F. Doc. 989-4, pp. 9-11.

To the extent the objections seek criminal penalties because TDCJ officials "committed violations of state and federal statutes … causing substantial injury and harm to many class members," this civil lawsuit is not the appropriate vehicle to address these allegations. Doc. 1083, p. 1. This "relief" could never be achieved in a civil settlement. *Criminal* violations must be instituted by the proper public authorities, like the U.S. Department of Justice or Federal Bureau of Investigation. Plaintiffs and Plaintiffs' counsel, who are all private citizens, cannot bring criminal charges. Of course, a civil settlement does not preclude the appropriate authorities from bringing criminal charges.

The objectors specifically complain that TDCJ officials "tamper[ed] with or destroy[ed] documentary and physical evidence." *See*, *e.g.*, Doc. 1083, p. 1. Though TDCJ's document preservation practices in related cases did raise problems, the evidentiary record supporting the settlement is voluminous and comprehensive.  Hundreds of thousands of pages of documents were reviewed, dozens of depositions were conducted, and the record was developed in thirteen

days of adversarial evidentiary hearings. Class Counsel was well informed about the available evidence (including evidence TDCJ failed to preserve in other cases) and the likelihood of success at trial. Moreover, even if some hypothetical evidence was not preserved, this landmark settlement remains historic in scope, duration, and the manner in which is protects all Pack Unit prisoners. A fair class action settlement can even theoretically be approved in the complete absence of discovery. *See Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004). Document destruction can undermine a settlement if the circumstances of the settlement suggest "the unscrupulous leading the blind," but, where, as here, a settlement is supported by a substantial record, even the fact that some documents were destroyed does not provide grounds to deny court approval. *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 300 (5th Cir. 2017).

The Franklin Objectors allege the settlement "does not provide an acceptable remedy for violations of [the] Court['s] Order" (presumably the significant flaws in implementing the July 2017 preliminary injunction). But like the objections related to damages, any class member who was injured during the preliminary injunction's implementation can still bring his own suit.

Fourth, the Franklin Objectors conclusorily allege that "Class counsel has become self-serving, deficient and negligent in their responsibilities to their clients, [and] the class members." Doc. 1089, p. 1. This allegation is unsupported and untrue. Class Counsel visited the Pack Unit dozens of times, spoke to hundreds of inmates, and devoted over 10,000 hours while investing hundreds of thousands of dollars in costs to the case, without any guaranty of ever being paid or reimbursed for any portion of this time and money. Moreover, an extremely well-qualified mediator, the Hon. Scott Brister, "oversaw settlement negotiations … to ensure they were conducted at arms' length," and "the involvement of an experienced and well-known mediator is also a strong indicator of procedural fairness." *Jones v. Singing River Health Servs. Found.*, 865

F.3d 285, 295 (5th Cir. 2017). Ultimately, however, "adequacy of representation and adequacy of settlement are different sides of the same question." *Ayers v. Thompson*, 358 F.3d 356, 374 (5th Cir. 2004). If the settlement is fair – which it is by providing "ample relief" – then Class Counsel performed their duties adequately. *Id.* Without any evidence that Class Counsel "became self-serving," the objection must be overruled. *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017) ("Because [objectors] have pointed to no record evidence … we reject their contention that collusion was present in the settlement negotiations") (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)).

The Franklin Objectors next state the settlement "discriminates against class members." This objection lacks any explanation of how or why the settlement is discriminatory. In fact, the settlement provides the same base relief to all class members (housing in air-conditioned prisons), and additional relief to the subclass members with heat-sensitive disabilities (off-site transport in air-conditioned vehicles).

The Franklin Objectors further object that "surprise visits/inspections need to be conducted" to ensure TDCJ will comply with the settlement agreement. Though the settlement agreement does not include a "surprise visit/inspection" provision, Class Counsel does retain the ability to monitor implementation of the agreement (for which TDCJ will compensate Class Counsel).[7] Doc. 989-4, pp. 16-17. The agreement also mandates TDCJ notify Class Counsel if the air conditioning malfunctions and the temperature rises above 88°F indoors. *Id.* at pp. 9-10. If TDCJ fails to notify Class Counsel of an air-conditioning interruption, TDCJ will be in breach and the settlement can be enforced in this Court. *Id.* at pp. 20-22. While not "surprise

---

[7] Edwards Law, Reynolds Frizzell, and the Texas Civil Rights Project have all acted as class counsel in this matter. *See* Order, Doc. 473, p. 22 (appointing "counsel for named Plaintiffs" as class counsel). Notably, only Edwards Law would retain ongoing duties of class counsel, such as monitoring, under the settlement agreement. *See* Doc. 989-4, p. 5, ¶ 2.5; p. 16, ¶ 6.2.

inspections," these monitoring provisions are fair and adequate in a case where Class Counsel can verify if TDCJ is complying with the bargain.

Finally, the Franklin Objectors request "independent counsel need to be made available to … every class member … who object[s] to this proposed settlement agreement." *See e.g.* Doc. 1089, p. 3. Of course, any prisoner is free to retain his own lawyer to evaluate the settlement agreement and provide him individualized advice on objecting or opting out. But civil rights litigants have "no automatic right to appointment of counsel." *Castro Romero v. Becken*, 256 F.3d 349, 354-55 (5th Cir. 2001). In this case, the class members have received extensive education about their rights under the agreement. Individual notice letters and forms were provided to each class member who is still incarcerated (*see* Doc. 1089), and hundreds of prisoners attended presentations about the settlement made by Class Counsel at the Pack Unit (where inmates had an opportunity to ask questions). *See* Doc. 1159, Ex. 1, Declaration of Scott Medlock. Instead of appointing additional lawyers to represent class members, the agreement provides that Class Counsel will "advis[e] any Class or Subclass Members who express a desire to opt out" of their rights (and requires TDCJ to pay Class Counsel to incentivize Class Counsel to do so). Doc. 989-4, p. 16.

The Franklin Objections should be overruled.

**B.      Objections of Jeffrey Dobbins (Doc. 1089)**

Mr. Dobbins objects because he is concerned the settlement will prevent Pack Unit inmates from winning parole.[8] Mr. Dobbins believes "Pack 1 Unit inmates will be overlooked at during Parole consideration." Doc. 1089, p. 1.

---

[8] Notably, Mr. Dobbins' maximum release date – the day he is guaranteed release absent any new criminal charges – is July 18, 2018.

First, the facts of this litigation belie Mr. Dobbins' concerns. Four former named plaintiffs (Mr. Bailey, Mr. Diaz, Mr. Wilson, and Mr. Mojica) have been released on parole while this case was pending. *See* Docs. 243 & 410. Two more named Plaintiffs (Mr. Brannum and Mr. Denton) are scheduled to be released in the next few months. Over twenty class members were granted discretionary parole and released between the date the settlement agreement was signed and the notice letters were distributed. These gentlemen were not "overlooked," and actually won parole from the Pack Unit. Though every prisoner's primary concern is rightly "when will I go home?," the settlement (like the litigation itself) will not significantly alter that calculation.[9]

Second, the settlement mandates all programs *required* for parole will be provided to class members at air-conditioned prisons. Doc. 989-4, p. 12. If the Texas Board of Pardons and Parole *requires* a prisoner to complete a program before his release (such as a substance abuse program), the settlement guarantees the class member can attend that program in air conditioning. In fact, a named Plaintiff (Mr. Brannum) is currently attending a parole-required program at another air-conditioned TDCJ prison before his release. The Constitution does not secure any inmate's *right* to parole, or *right* to access to programs that make discretionary parole more likely. *See Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). But at least for those programs *necessary* for parole, the settlement creates an entitlement for class members to attend those programs in air conditioning. This is fair and adequate relief, which likely was unavailable following a trial on the merits.

---

[9] Significantly, in Texas, parole decisions are not made by the Texas Department of Criminal Justice, but by an independent entity, the Texas Board of Pardons and Parole. *See* TEX. GOV'T CODE § 508.0441.

Finally, to the extent inmates wish to attend optional educational or vocational programs only offered at prisons other than the Pack Unit, those programs are, unfortunately, beyond the scope of this lawsuit. This suit has only ever sought to address the dangerous temperatures at the Pack Unit. *See* Doc. 1064. Reforming dangerous conditions at other prisons is relief that was always beyond the scope of this litigation. Certain specialized programs (like the faith-based InnerChange Freedom Initiative, *see* Doc. 989-4, p. 12) were never available at the Pack Unit, and would have always required the inmates to leave to attend them. While it is unfortunate that this lawsuit is not an appropriate vehicle to reform TDCJ prisons generally, this reality does not make the settlement unfair or inadequate.

Mr. Dobbins' objections should be overruled.

### C.      Objections of Richard Lares (Docs. 1090, 1142, & 1147)[10]

Mr. Lares objects on behalf of the "Sabbatarian/Jewish" class members alleging the settlement does not "provide protection" from retaliation by prison officers. Doc. 1090, p. 1. Mr. Lares asks that the settlement agreement be reformed to "include a prejudice, discrimination and retaliation protection" for inmates who are members of religious communities.

First, retaliation based on prisoners' exercise of other fundamental rights (including religious practice) is already illegal. *See*, *e.g.*, *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). Including "a generally phrased instruction [like] 'don't violate the law'" has little "practical value" in a class action settlement agreement, and the absence of such a provision does not make the settlement agreement inadequate or unfair. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 173 (5th Cir. 1983).

---

[10] Notably, to the extent Mr. Lares raises new objections in Doc. 1142, these objections should be overruled because Doc. 1142 is untimely as it was mailed after the April 27, 2018 deadline. *See* Doc. 1142, p. 3 (dated May 2, 2018).

Second, the settlement provides for continuing jurisdiction of the Court, and that Class Counsel will monitor compliance with the agreement. Doc. 989-4, p. 16. Monitoring compliance with the agreement will ensure that Class Counsel will regularly communicate with Pack Unit inmates, and that any true retaliation is brought to the Court's attention. *See supra* p. 8, n.7 If prisoners have been subjected to retaliatory discipline (*see* Doc. 1142), these complaints can be addressed in the settlement framework.

Third, Mr. Lares raises the same concerns about the availability of parole-related programming at the Pack Unit as Mr. Dobbins. For the same reasons discussed above, this objection must be overruled. *See supra* at § III(B).

Fourth, Mr. Lares contends that attrition at the Pack Unit will diminish the number of class members housed there, allowing the Texas Legislature to justify refusing to permanently air condition the prison. This objection is too speculative to sustain. As noted above, the number of "opt out" requests is actually very low, and the settlement agreement requires TDCJ to provide temporary air conditioning at the Pack Unit for every summer when a class member is housed there (if the Legislature never agrees to provide the funds for permanent air conditioning). Critically, until all the class members are released from TDCJ custody, they will be entitled to an air-conditioned housing assignment, whether at the Pack Unit or elsewhere. The class members will be protected from the heat, even under Mr. Lares' scenario. This is a fair and adequate resolution to the suit.

Mr. Lares' objections should be overruled.

### D.     Objections of Charles "Charlie" Malouff, Jr. (Docs. 1091, 1124 & 1151)[11]

Mr. Malouff's original objections largely mirror Mr. Franklin's, but he also contends that TDCJ staff is committing misconduct at the trusty camp (where he lives) by "intentionally tamper[ing] with the installed, defective and deficient temporary air conditioning systems at the trusty camp." Doc. 1091, p. 3. Mr. Malouff claims that while the air conditioning functioned properly to lower the temperature to 72°F during "a VIP visit from the director and his retinue," that after Director Collier's departure officers raised the thermostats to "80°F or greater." *Id*.

Mr. Malouff's allegations are not a reason to reject the settlement agreement. Mr. Malouff is alleging, at most, a violation of the settlement agreement – which can be remedied if verified. Doc. 989-4, p. 13. This is not a reason to reject the agreement. *In re Southern Ohio Correctional Facility*, 173 F.R.D. 205, 215 (S.D. Ohio 1997). If the heat index in the trusty camp's housing areas were to rise above 88°F, TDCJ would be in breach of the agreement and subject to an enforcement action.

In Mr. Malouff's most recent objections (Doc. 1151), he alleges that TDCJ has not (as of yet) air conditioned the trusty camp's dayroom. The settlement requires air conditioning the prison's "housing areas." Doc. 989-4. In all the "main building" dormitories, the dayroom is a part of the same structure as the dormitory. Inside the "main building," air-conditioning the dormitory necessarily includes air-conditioning the dayroom. The trusty camp is different. There, the dayroom, where inmates are allowed to recreate, is a separate structure that was not been air conditioned (to date). But this issue actually proves the settlement process works. After Class Counsel raised this issue with TDCJ, the agency agreed to also air condition the trusty dayroom

---

[11] Mr. Parker (Doc. 1132) files objections identical to Mr. Malouff. Mr. Parker's objections should be overruled for the same reasons.

(and is presumably taking steps to do so).[12] But even if TDCJ had not amicably (and commendably) agreed to this solution, the settlement agreement would allow the parties to litigate this issue (the meaning of "housing areas") before the Court.

Mr. Malouff raises a number of other tangential issues that he requests the Court address before approving the settlement. Some of these concerns, such as air-conditioned housing at prisons other than the Pack Unit where specialized programs are offered, are addressed above. *See supra* at § III(B). The concerns about "medical segregation" at the Estelle Unit are addressed below. *See infra* at § III(H). Other concerns are outside the scope of this litigation.[13] None of these issues make the settlement unfair or inadequate.

Mr. Malouff also has not been "ignored" by Class Counsel. Mr. Malouff's letters to the Court have resulted in multiple investigations of conditions at the Pack Unit by Class Counsel, including meetings with Mr. Malouff. *See* Docs. 636, 646, 654, 744. Class Counsel has consistently attempted to speak with inmates living throughout the prison, including at the trusty camp. Concerns raised by trusty camp inmates about air-conditioning their dayroom resulted in quick action by Class Counsel and TDCJ to remedy this legitimate complaint. In short, the settlement agreement does not draw any distinction between trusty camp and "main building" inmates – they all receive the same relief.

---

[12] *See* Ex. 1, May 2, 2018 Letter from D. McCarty to Class Counsel.

[13] The condition of the water pipes (and concomitantly the alleged necessity of blood testing) are better raised in separate litigation. Trusty camp inmates exposure to the summer heat when walking a half mile from the camp to the "main building" is outside the scope of this lawsuit, which addressed inmates' exposure to heat *indoors*. That a dead cat was allegedly allowed to rot in the newly installed ventilation is disturbing, but not a reason the settlement agreement is unfair. And allegations that subclass members are being discriminated against in commissary purchases is better addressed through the settlement mechanisms (or separate litigation) than as a reason to reject the agreement.

Mr. Malouff also asks the Court to "preserve his right to suit for injury and damages" (which the settlement does). Doc. 1124. This objection has no merit, as discussed above. *See supra* at § III(A).

Mr. Malouff's objections should be overruled.

### E.      Objections of Jeffrey Robert Adams (Doc. 1100)[14]

Mr. Adams objects because TDCJ "cares nothing for the separation of powers, court orders and certainly nothing as meaningless as … a consent decree." Doc. 1100, p. 1. The gravamen of Mr. Adams' objection is that TDCJ will not comply with any settlement (or court order). Doc. 1100, p. 3.  If this objection had merit, neither settling the case nor taking it to trial would matter.  Under Mr. Adams' view of the agency, TDCJ would disregard both court-ordered injunctive relief after a trial (and appeal), and a settlement agreement.

Even under a skeptical worldview, however, the settlement agreement is a fair conclusion to this litigation. The settlement agreement takes a "trust, but verify" position: while TDCJ has said it will work in good faith to bring the indoor heat index below 88°F (as it appears to have already done by installing temporary air conditioning for the upcoming summer), Class Counsel will be compensated to continue "necessary monitoring of compliance with this agreement." Doc. 989-4, p. 16. The agreement also requires TDCJ to notify Class Counsel should the air-conditioning systems fail to bring the indoor heat index below 88°F. Doc. 989-4, pp. 9-11 (describing notice requirements). This is adequate monitoring to ensure a fair settlement. *Peoples v. Annucci*, 180 F.Supp.3d 294, 306 (S.D. N.Y. 2016). As Mr. Adams notes, if parties refuse to act in good faith then settlement agreements or court orders have little meaning. But the

---

[14] Though Mr. Adams is currently housed at the Stiles Unit, he is a class member. Doc. 989-5, p. 1. Class Counsel has no knowledge of why Mr. Adams is not at the Pack Unit, and he provides no insight in his objection.

settlement agreement has enforcement teeth should Mr. Adams' fears be realized and TDCJ act in bad faith. *In re Southern Ohio Correctional Facility*, 173 F.R.D. 205, 215 (S.D. Ohio 1997) (objections regarding prospective enforcement of settlement terms do not justify rejecting settlement).

Mr. Adams further questions, "why is this not a system wide class action?" Doc. 1100, p. 1. He is doubtlessly correct that similar conditions exist at numerous other TDCJ prisons. But those other prisons are, like it or not, beyond the scope of this litigation. *See* Doc. 1064.

Mr. Adams also objects that TDCJ "has used this case … to manipulate the court and walk all over [the *Ruiz* litigation]," and that prisoners "will be housed in a way that is contradiction" to the *Ruiz* consent decree such as "warehousing inmates in a dormitory bunk bed setting." Doc. 1100, pp. 1 & 2.[15] This appears to be an objection to the conditions that existed at the LeBlanc Unit during the implementation of the preliminary injunction (where "institutional division" inmates were housed in bunk beds in a "pre-parole" facility, contrary to a provision of the old *Ruiz* consent decree). But the vast majority of class members have now returned to the Pack Unit, and live in conditions that existed before the suit was ever filed. Though Mr. Adams is currently imprisoned at the Stiles Unit, upon information and belief, the Stiles Unit is an "institutional division" prison that does not have the "dormitory bunk bed[s]" that concern Mr. Adams.[16] Like many other tangential issues raised by objectors (*see supra* at § III(C)), these problems do not make the settlement agreement inadequate or unfair. *See Peoples v. Annucci*, 180 F.Supp.3d 294, 306 (S.D. N.Y. 2016).

---

[15] Notably, the *Ruiz* consent decree was terminated by operation of the Prison Litigation Reform Act over sixteen years ago. *See Ruiz v. Johnson*, No. H-78-987 (S.D. Tex. June 17, 2002) (dismissing action due to PLRA termination provision).

[16] *See* TDCJ, Stiles Unit Profile, http://tdcj.state.tx.us/unit_directory/st.html.

Thus, Mr. Adams' further objection that Class Counsel is not qualified, and that "a reasonable amount of experience in other factors may not exist," has no merit. Doc. 1100, p. 2. Class Counsel has extensive experience litigating class actions and suits against TDCJ. Doc. 473, pp. 21-22. Class Counsel's adequacy was not seriously challenged at the certification stage (or raised on appeal). As noted above, Class Counsel's adequacy is demonstrated by the significant relief achieved in the settlement (as well as their performance to date). *Supra* at § III(A). *See also In re Southern Ohio Correctional Facility*, 173 F.R.D. 205, 215 (S.D. Ohio 1997) (objections to qualifications of class counsel at settlement stage are untimely where class has already been certified).

Likewise, Mr. Adams seeks to re-litigate the "opt out" mechanism, because the provision will allegedly encourage TDCJ to "ma[ke] it … oppressive for anyone involved in this lawsuit." Doc. 1100, p. 2. He asks "who would choose the Texas heat over air conditioning?" and speculates that all inmates who opt out would only do so when they "are being crushed by the abuse of power and authority" and speculates "it is already happening." *Id*.  In fact,  the actual, very low, number of opt outs to date – just sixteen (*see* Doc. 1159), approximately one percent of class members – belies Mr. Adams' trepidation. The structure of the settlement agreement also addresses this alleged flaw. Class Counsel will be compensated by TDCJ to advise all inmates who seek to "opt out." Doc. 989-4, p. 16. This creates a financial disincentive for TDCJ officials to pressure inmates to "opt out."

Mr. Adams next contends that he is being denied the opportunity to participate in "the Changes pre-release class" and being retaliated against due to false disciplinary cases. Doc. 1100, p. 3. As with the other objectors, Mr. Adams is free to litigate these allegations separately. Moreover, these specific allegations – denial of required parole programs – are actionable under

the agreement, which specifically requires TDCJ to provide mandatory parole programming to class members. Doc. 989-4, p. 12.

Mr. Adams' objections should be overruled.

**F.      Objections of James Gentry (Doc. 1101)**

Mr. Gentry objects that portions of his personal property – typewriter ribbons with a total value of $26.25 – were not replaced after the ribbons were damaged in the hurricane evacuation.

The relief Mr. Gentry seeks – payment for his damaged property – is not foreclosed by the settlement agreement. This is clearly a claim for damages, and Mr. Gentry is free to pursue separate litigation concerning any lost property. *See* Doc. 1116, p. 6.

Mr. Gentry's objections should be overruled.[17]

**G.      Objections of David Weir (Doc. 1103)**

Mr. Weir alleges that the heat at the Pack Unit has caused him permanent physical injuries. Doc. 1103. If Mr. Weir has suffered personal injuries from the heat at the Pack Unit, however, the settlement agreement does not prevent him from pursuing claims for damages. *See supra* at § III(A).

Moreover, Mr. Weir is not a class member because he left the Pack Unit before July 19, 2017.[18] Because he is not a class member, Mr. Weir has no standing to object, as his claims are

---

[17] Charles Williams (Doc. 1115), Cecil McDonald (Doc. 1134), Bobby Casadoes (Doc. 1138), Robert Voris (Doc. 1139), and Patrick Ford (Doc. 1146) also filed documents with the Court regarding damaged property. Though these inmates do not appear to object to the settlement, out of an abundance of caution, if their filings could be construed as an objection, they should be overruled for the same reasons as Mr. Gentry's objections. Notably, Mr. Casadoes, Mr. Voris, and Mr. Ford are not class members, and lack standing to object to the settlement. *See* Doc. 989-5 and *AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1311 (11th Cir. 2004).

[18] Mr. Weir is presently imprisoned at the Stiles Unit.

not released by the agreement. *AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1311 (11th Cir. 2004) (holding objectors excluded from the class definition had no right to appeal settlement approval because they "are simply potential plaintiffs who have yet to litigate any claims"). *See also* Doc. 1116 (denying Mr. Weir's motion to intervene).

Mr. Weir's objections should be overruled.

### H.     Objections of Keith Cole (Docs. 1121 & 1133)

Mr. Cole is a named plaintiff, and former class representative. His ten objections should also be overruled.

First, Mr. Cole objects that eventually dismissing the case with prejudice will prevent the Court's order granting the second preliminary injunction (Doc. 737) from having any precedential "stare decisis" effect. This objection is misguided. The value of the preliminary injunction decision for future litigants in other courts is as a trial court ruling. That value will remain, and, as the Court has noted, these proceedings may serve as a "template" for future litigation in similar circumstances. Hearing Tr. Mar. 21, 2018, p. 8. Moreover, settling the claims while the interlocutory appeal challenging the preliminary injunction is still pending eliminates any risk of appellate rulings that might curtail or contradict aspects of the Court's decision or analysis. *Cf. Ball v. LeBlanc*, 881 F.3d 346 (5th Cir. 2018). Eventual dismissal with prejudice does not prevent other inmates from citing the law made in this case as authority.

Second, Mr. Cole objects that the class members' entitlement to air-conditioned housing under the settlement agreement ends when the prisoner completes his current incarceration. Mr. Cole is concerned that some class members will be released, then recidivate and return to TDCJ custody, but no longer be entitled to air-conditioned housing. This objection should be overruled for three reasons. First, the relief Mr. Cole suggests – permanent entitlement to air-conditioning

even after release and return to prison – is likely too speculative for Plaintiffs to have achieved at trial. *See*, *e.g.*, *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001). The Plaintiffs would have to prove an inmate was likely to be released from custody, *then* return to prison, *then* return to dangerously hot housing. The law would (unfortunately) not support the relief Mr. Cole proposes. Second, if a class member is released, and then recidivates, and then returns to TDCJ custody, there is a reasonable chance he will return to the (now air-conditioned) Pack Unit. TDCJ has already decided the Pack Unit is where this prisoner "belongs," and the settlement agreement requires TDCJ to air condition the Pack Unit. This is especially true for the elderly and disabled inmates Mr. Cole is presumably most concerned for – the Pack Unit (unlike many other TDCJ prisons) used by TDCJ to accommodate their disabilities. Finally, when a prisoner is released, he ceases to be a class member. Doc. 989-4, p. 8. Thus, his claims for injunctive and declaratory relief would not be released should he return to prison. (Or, if there were ever an argument his claims were released, he could simply opt out and then pursue new, unreleased claims for injunctive relief). While Mr. Cole is correct that a prisoner in this situation would face "difficulties," that does not make the settlement agreement unfair or inadequate.[19] The notice, confidential letter, and settlement agreement all clearly explain this provision in plain language. This objection should be overruled.

Third, Mr. Cole also believes the settlement agreement must include protection from retaliation – such as from turning on the "barrel fans" while the temporary air-conditioning is already sufficiently cooling the dormitories. *See* Doc. 1133, p. 2. These concerns, though worth

---

[19] Mr. Blackwell (Doc. 1126) raises this same objection. Mr. Blackwell's objection should be overruled for the same reason.

considering, are unavailing for the same reasons Mr. Lares' objections should be overruled. *See supra* at § III(C).

Fourth, Mr. Cole believes that, rather than entrust approval of the settlement to the Court, the class members should vote on approving the settlement. Though this proposal would be unorthodox, likely unmanageable, and lacking any legal support, even in classes of similar or smaller size (and a settlement can be fair even if a majority of class members would reject it, *see supra* at § III), Mr. Cole's underlying concerns are also unpersuasive. Mr. Cole's true concern is that inmates have not read, or do not understand, the agreement. But all class members have had the opportunity to read the settlement agreement, which the Court ordered be made available in the prison's law library. Class Counsel also provided a confidential letter (filed by an objector at Doc. 1089, pp. 4-5), provided a copy of the class notice to every class member explaining their rights in plain language (in English and Spanish), and conducted in-person group presentations (with questions and answers) for all the inmates who wished to attend.[20] Every effort has been made to ensure inmates "understand the terms of the agreement." Doc. 1159, Ex. 1, Declaration of Scott Medlock.

Fifth, that the date on which the class membership "locked in" changed from a draft notice shared with the class representatives before the settlement was finalized does not mean the representatives were "hoodwinked." Mr. Cole's concern is that the class is slightly smaller because the date in the draft notice (April 15, 2018) was later than the ultimate execution date (March 6, 2018), and that prisoners who would have otherwise been class members were released from custody at the Pack Unit in the interim. Of course, if TDCJ were manipulating the

---

[20] Approximately 1,000 prisoners attended presentations where Class Counsel explained the agreement and the rights secured for class members on April 24, 2018. A copy of the Power Point presentation used during the sessions is attached as Doc. 1159-1, Ex. 1-A.

population at the Pack Unit to make the class smaller, it could have done so regardless of when the class membership "locked in." The agreement the five named Plaintiffs signed had the proper execution date, the agreement was read aloud and explained to them, and the final notice was approved by the Court (March 6, 2018, *see* Doc. 989-4, pp. 6).

Sixth, Mr. Cole shares concerns that many inmates' property damage claims have not been resolved. This objection should be overruled for the same reason Mr. Gentry's concerns should be overruled. *See supra* at § III(F).

Seventh, Mr. Cole's concern about the conditions at the Estelle Unit is not a reason to reject the settlement agreement. Inmates are entitled to bedding and other necessities while attending overnight medical appointments. But nothing in the settlement agreement contradicts this simple proposition. If Mr. Cole's allegations about conditions at the Estelle Unit are true – and Class Counsel takes such concerns seriously – this problem is more properly addressed through Class Counsel's monitoring role under the settlement agreement and this Court's continuing jurisdiction to enforce the agreement. [21]

Eighth, it is true that many defense witnesses testified that awakening inmates in the middle of the night to conduct "wellness checks" is inappropriate.[22] Such a practice is more troubling when the condition the "wellness checks" were intended to "mitigate" – the extreme heat – is eliminated by the air conditioning. But this issue is also more appropriately addressed

---

[21] Indeed, TDCJ's counsel has already represented this practice has stopped after the issue was raised by Class Counsel. *See* Ex. 1, May 2, 2018 Letter from D. McCarty to Class Counsel. (Certain private medical information about inmates has been redacted from this letter.) Class Counsel continues to monitor this situation.

[22] *See*, *e.g.*, Warden Herrera (Doc. 755, pp. 890:12-891:4) (awakening inmates for wellness checks prevents them from "getting enough sleep"); Assistant Director Ginsel (Doc. 756, pp. 6-17); Dr. Rieger (Doc. 758, pp. 1458:1-12).

through Class Counsel's monitoring obligations than as reason to reject the settlement agreement and deny inmates protection from the heat.[23]

Ninth, Mr. Cole claims that inmates are already experiencing retaliation after their return to the Pack Unit. He claims that he and other inmates can no longer use the craft shop, a privilege he and many other inmates had enjoyed for many years before departing the Pack Unit due to the preliminary injunction. *See* Doc. 1121, p. 13. Choosing to enforce the rules Mr. Cole describes now – after years of elderly and disabled inmates using the craft shop – is certainly suspicious.[24] Mr. Cole and others should not be denied a privilege they had earned due to participation in a lawsuit that vindicated their rights. But, ultimately, this is not a reason to reject the settlement. That TDCJ is allegedly retaliating against prisoners does not make the settlement unfair – it means the settlement needs to be enforced, or that other avenues must remain open for inmates to pursue these claims. The settlement keeps both options open.

Finally, Mr. Cole asks the Court to review certain disciplinary convictions that have prevented him from enjoying privileges he had previously earned during his many years in TDCJ custody (principally the ability to use the craft shop). Class Counsel have raised this issue with TDCJ's counsel. If Mr. Cole is being retaliated against for his role as a named plaintiff, he retains the ability to bring an action for damages

Mr. Cole's objections should be overruled.

---

[23] TDCJ's counsel also represented this practice has stopped. *See* Ex. 1, May 2, 2018 Letter from D. McCarty to Class Counsel.

[24] To the extent the "disabled" and the "able bodied" craft shops are not equivalent, this also raises concerns that inmates with disabilities are being denied access to services and programs available to the able-bodied.

I.       **Objections of James Harris (Doc. 1098)**

Mr. Harris is not a class member, and has never been imprisoned at the Pack Unit. He thus lacks standing to object to the settlement. *See* Doc. 989-5; *AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d at 1311. In fact, Mr. Harris has repeatedly sought to join the action as a "named plaintiff," and his requests were repeatedly denied. *See*, *e.g.*, Doc. 147 (denying Harris' motion to intervene).[25] Mr. Harris never was a part of the class and is not releasing any claims under the agreement. His objections must be overruled.

J.       **Objections of Dusty Seaton, (Doc. 1120), Michael Walton (Doc. 1123), Jerry Thomas (Doc. 1118), and Lakeith Amir-Sharif (Doc. 1141)**

Like Mr. Harris, objectors Mr. Seaton, Mr. Walton, Mr. Thomas, and Mr. Amir-Sharif are not class members. Docs. 989-5 & 1064. They are currently imprisoned at the LeBlanc Unit, and lack standing to object. *AAL High Yield Bond Fund*, 361 F.3d at 1311. As such, their objections should be overruled.

---

[25] Mr. Harris is presently incarcerated at TDCJ's Terrell Unit. *See* TDCJ, Prisoner Information Search, https://offender.tdcj.texas.gov/OffenderSearch/index.jsp. Mr. Harris contends he was unaware his motion had been denied because his "name was not on the order." Doc. 1098, p. 1. But the order clearly states "*All* pending motions to intervene are … denied," that the order was denying intervention to inmates who resided at the Terrell Unit, and that inmates who "do not reside at the Wallace Pack Unit" would not be permitted to intervene. Doc. 147, pp. 1 & 3 (emphasis added). Mr. Harris plainly knew his motion had been denied, but that he could separately pursue claims related to conditions at the prisons where he was incarcerated. Even if Mr. Harris did not know his motion was denied, that is a far cry from his motion to intervene actually being granted. At best, action by the Court was still required for intervention, but never occurred – under Mr. Harris' theory, at best, his motion was still pending. Moreover, "even if a person mistakenly believes that he or she is a class member, although that person receives no class benefit, he or she retains the ability to pursue his or her own claims." *Rowe v. E.I. DuPont de Nemours & Co.*, No. 06-1810, 2011 WL 3837106, *2 n. 9 (D. N.J. Aug. 26, 2011). Likewise, Harris was never appointed counsel – even the docket sheet he submits as "proof" that Edwards Law was appointed to represent him shows he was designated as a *pro se* (not a represented) party. Doc. 1098, p. 10.

The substance of Mr. Walton, Mr. Thomas, and Mr. Amir-Sharif's objections is that, as prisoners with heat-sensitive medical conditions, they are at risk of transfer from the air-conditioned LeBlanc Unit to a prison without air conditioning. Because they are presently at an air-conditioned prison, however, their concerns are not ripe and are too speculative to require relief at this time, even if this Court could adjudicate their claims in this litigation. *See also* Doc. 1116, p. 7.

Mr. Seaton objects that the settlement agreement is unfair because he will not benefit from it, though "the underlying litigation" allegedly resulted in him losing "my I.D. unit inmate status and [being] deprived of my privileges, activities, and accommodations." Doc. 1120. The settlement agreement cannot benefit all TDCJ prisoners, as improving conditions at prisons other than the Pack Unit was always beyond the scope of this suit. *See* Doc. 1064. As Mr. Seaton is not a class member, the agreement is not unfair to him – he may still pursue his claims through separate litigation, including complaints about conditions at the LeBlanc Unit.

Mr. Seaton, Mr. Walton, Mr. Thomas, and Mr. Amir-Sharif's objections should be overruled.

### K.     Objections of Albert Hunter (Doc. 1128)

Mr. Hunter files objections substantially similar to the Franklin Objections, but also alleges that the settlement is unfair because of an incident in April 2018 where he was exposed to pepper spray while unjustly segregated. That is a serious allegation, but there is no connection between an incident where Mr. Hunter was unjustly gassed and whether the settlement agreement is a fair resolution of this litigation. Mr. Hunter can pursue claims for damages resulting from his incident (including damages for retaliation if he can prove the gassing was retaliatory).

Mr. Hunter also alleges that Class Counsel was inadequate because they did not adequately meet with inmates residing in the trusty camp. This is not true. Class Counsel repeatedly met with inmates living throughout the prison, including at the trusty camp. *See supra* at § III(C). In any case, the trusty camp inmates will receive the same benefit as "main building" inmates – the opportunity to live in air-conditioned housing.

Mr. Hunter's objections should be overruled.[26]

**L.    Objections of Robert Lewis Hall (Doc. 1129), David Garrett (Doc. 1127), James E. Archer (Doc. 1137), and Albert V. Thomas (Doc. 1136)**

Mr. Hall, Mr. Garrett, Mr. Archer, and Mr. Thomas file identical objections complaining that the settlement does not provide for monetary damages and does not include a retaliation provision. These objections should be overruled for the same reasons the Franklin Objections should be overruled. *See supra* at § III(A).

**M.    Objections of Jim Smith and William Harrison Blackwell (Docs. 1126 & 1130)**

Mr. Smith and Mr. Blackwell object that the settlement agreement only requires TDCJ to air-condition the prison's housing areas, but not other hot parts of the prison (like the cafeteria, the hallway where inmates stand in line to receive medication, and the gymnasium). The evidence, however, demonstrates that inmates spend the vast majority of their time in the housing areas (which will be air-conditioned pursuant to the agreement). Air-conditioning the housing areas is necessary to make the prison safe. *See* Doc. 737. Though it would certainly be preferable for TDCJ to air-condition all areas where prisoners spend significant periods of time, prisons are not required to be "comfortable" – the remedy Mr. Smith and Mr. Blackwell

---

[26] In the same docket entry, Mr. Hunter also files a "motion seeking joinder of parties." Doc. 1128, p. 6. This motion should be denied for the same reasons the motions addressed in Doc. 1116 were previously denied.

effectively seek. *See*, *e.g.*, *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015). The settlement achieves a safe prison – the only relief the Plaintiffs sought in the suit.

Mr. Smith also objects that the tap water cannot be used in his C-PAP machine. This concern – his inability to receive sufficient amounts of "medical water" – is beyond the scope of this litigation. Though the Plaintiffs sympathize with him (and sought to bring the water used to "mitigate" the heat into compliance with EPA standards), Mr. Smith's concerns about the "gummy white substance" in the bottom of his machine after using tap water are better addressed through vehicles other than this lawsuit. Doc. 1130, p. 2.

Mr. Blackwell also joins Mr. Cole's concerns about conditions at the Estelle Unit when class members are there to attend medical appointments. Mr. Blackwell's well-intentioned objections should be overruled for the same reasons as Mr. Cole's. *See supra* at § III(H).

Mr. Smith and Mr. Blackwell's objections should be overruled.

**N.     Objections of Don Allen Stewart (Doc. 1131)**

Mr. Stewart objects that the permanent assignment to air-conditioned housing should continue for class members if they are released from custody then recidivate. This objection should be overruled for the same reason as Mr. Cole's objection – that the relief Mr. Stewart proposes is beyond the scope of this lawsuit, and likely could not be secured at trial. *See supra* at § III(H).

**O.     Objections of Billy Joe Britton (Doc. 1125)**

Mr. Britton's objections also raise the specter of retaliation. This objection should be overruled for the same reasons discussed above. *See supra* at § III(A), *et. seq*. If TDCJ officials are punishing inmates by turning off the air-conditioning on medical transport vehicles (as Mr.

Britton alleges), that is a breach of the settlement agreement which can be addressed before this Court.

Mr. Britton also objects that parts of the prison – like the cafeteria and hallway – will not be air-conditioned under the settlement. This objection should also be overruled for the same reasons as discussed above. *See supra* at § III(N).

Mr. Britton's objections should be overruled.

### P.     Objections of Ryan Gresham (Docs. 1119 & 1122)

Mr. Gresham alleges he is being denied appropriate medical attention for his sleep disorder. But Mr. Gresham does not allege how these allegations relate to the unsafe summer temperatures at the Pack Unit, or the relief won in the settlement agreement. These objections should be overruled.

Mr. Gresham further raises the same concerns as Mr. Cole and Mr. Blackwell regarding inmates' temporary assignment to the Estelle Unit while receiving medical attention. Though a serious concern, this is not a matter that warrants rejecting the settlement agreement. It requires approving the agreement so that Class Counsel can enforce the agreement (if they are otherwise unable to amicably resolve this problem with TDCJ).

Mr. Gresham's objections should be overruled.

### Q.     Objections of Mario Martinez (Doc. 1140)

Like Mr. Harris and others, Mr. Martinez is also not a class member. *See* Doc. 989-5. Because he lacks standing to object to the settlement, Mr. Martinez' objections should be overruled. *AAL High Yield Bond Fund*, 361 F.3d at 1311.

Mr. Martinez is another inmate who is not imprisoned at the Pack Unit (and never was). He is currently imprisoned at the Hightower Unit, a prison with no connection to this litigation.

Mr. Martinez objects that "very serious problem[s]" still exist at other TDCJ prisons. Doc. 1140, p. 3. While this may well be true, the scope of this lawsuit has always been limited to the conditions at the Pack Unit. *See* Doc. 1064. Though troubling conditions likely exist at other TDCJ prisons, these concerns are (unfortunately) beyond the scope of this litigation.

Mr. Martinez' objections should be overruled.

### R.     Objections of Henry Garland (Doc. 1145)

Mr. Garland is not a class member, and he lacks standing to object to the settlement. To the extent his pleading is construed as an objection to the settlement, it is also untimely (as it was signed on May 2, 2018). Doc. 1145, p. 10.

The substance of Mr. Garland's "objection" – the former Stringfellow Unit inmates' continuing status as class members – was addressed previously by the Court. *See* Doc. 1064. When the Stringfellow Unit inmates left the Pack Unit, they ceased to be class members as they were no longer "currently" imprisoned at the Pack Unit, and were unlikely to return there "in the future." *Id*. To the extent Mr. Garland seeks a declaratory judgment to the contrary, objecting to the settlement agreement is not the proper vehicle to do so.

Mr. Garland's objections should be overruled.

### S.     Objections of John Ford (Doc. 1152)

Class member John Ford's objections should be overruled. First, Mr. Ford's objections are untimely. Though he invokes the "mailbox rule," his objections were signed on May 2, 2018, after the April 27, 2018 postmark deadline to file objections. Doc. 1152, p. 3.

Moreover, Mr. Ford raises many of the same concerns cited above by other objectors. "Voting" on the settlement has no basis in law. *See supra* at § III(H). Dismissing the lawsuit with

prejudice will not change the precedential value of the order granting preliminary relief. *Id*. And relief after recidivism is not a remedy that could have likely be won at trial. *Id*.

Mr. Ford's concerns about access to the craftshop and alleged retaliation are being seriously investigated and considered. But even if his allegations were true, concerns regarding potential retaliation do not mean the settlement agreement is unfair or inadequate. *See supra* at § III(C).

Likewise, Mr. Ford's concern that TDCJ officials will "us[e] retaliation and harassment to cause [prisoners] to become … frustrated [and] opt-[out]" is not borne out by the actual very low number of opt-outs. *See supra* at § III(B). Moreover, Class Counsel's continuing role in supervising opt-out requests will ensure the process is not abused.

## IV.  CONCLUSION

For the foregoing reasons, the objections to the class action settlement should be overruled, and the settlement should be approved.

Dated: May 7, 2018.

<div style="margin-left:40%">

Respectfully submitted,

Edwards Law
The Haehnel Building
1101 East 11th Street
Austin, Texas 78702
    Tel.   512-623-7727
    Fax.   512-623-7729

By    /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Attorney-in-Charge
Scott Medlock
State Bar No. 24044783
Michael Singley
State Bar No. 00794642
David James
State Bar No. 24092572

</div>

30

Federal ID No. 2496580

Jeremy Doyle
State Bar No. 24012553
Federal ID No. 24559
Nathan Smith
State Bar No.: 24053060
Federal ID No. 1075505
REYNOLDS FRIZZELL LLP
1100 Louisiana
Suite 3500
Houston, Texas 77002
Tel.      (713) 485-7200
Fax.     (713) 485-7250

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Court's electronic filing system. A copy of the foregoing has been placed in the mail, with first class postage, to each inmate whose objections are described in this legal instrument.

By ____ /s/ Jeff Edwards _____
JEFF EDWARDS