United States District Court
Southern District of Texas
**ENTERED**
June 08, 2018
David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH COLE, individually, and JACKIE BRANNUM, RICHARD KING, MICHAEL DENTON, FRED WALLACE, and MARVIN RAY YATES, individually and on behalf of those similarly situated, | § § § § § § § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:14-cv-1698 |
| | § | |
| BRYAN COLLIER, in his official capacity, ROBERTO HERRERA, in his official capacity, and TEXAS DEPARTMENT OF CRIMINAL JUSTICE, | § § § § § | |
| | § | |
| Defendants. | | |

## FINAL ORDER AND JUDGMENT APPROVING CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES

Plaintiffs in this class action are incarcerated in the Wallace Pack Unit of the Texas Department of Criminal Justice prison system. Plaintiffs brought the action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act to end TDCJ's policy and practice of exposing them to extreme, unsafe heat. They allege that the extreme heat that they face each summer subjects them to a substantial risk of serious harm in violation of the Eighth Amendment, and infringes on the rights of disabled prisoners to reasonable accommodations.

After nearly four years of contentious litigation, the parties reached agreement on a class settlement, which requires TDCJ to air-condition the housing units in which class members

1

reside. The Court granted preliminary approval of the settlement, directed notice to the class, and held a final fairness hearing.

Based on the memorandum and documents in support of the proposed settlement, the parties' arguments at the preliminary approval hearing, the filed objections, the parties' and objectors' arguments at the final fairness hearing, the remainder of the record, and the relevant law, this Court approves the proposed settlement for the reasons set forth below.

## I.      BACKGROUND

Keith Cole, Jackie Brannum, Richard King, Michael Denton, Fred Wallace, and Marvin Ray Yates brought this case, on behalf of themselves and others similarly situated (hereinafter, collectively, "Plaintiffs"), seeking injunctive and declaratory relief to mitigate the risks of exposure to extreme heat at the Wallace Pack Unit ("Pack Unit"), operated by the Texas Department of Criminal Justice.

Plaintiffs filed this action on June 18, 2014.[1] (Doc. No. 1.) Plaintiffs brought claims against the Texas Department of Criminal Justice, Bryan Collier, the executive director of the Texas Department of Criminal Justice, and Robert Herrera, the warden of the Wallace Pack Unit (hereinafter, collectively, "TDCJ"). (Doc. No. 629.) On behalf of themselves and the class, Plaintiffs alleged that exposure to high apparent air temperatures inside the housing areas of the Pack Unit violated their rights under the Eighth and Fourteenth Amendments. Additionally, Plaintiffs alleged violations of the Americans with Disabilities Act and the Rehabilitation Act on behalf of themselves and a subclass of people with disabilities that cause sensitivity to heat.

---

[1] The original named plaintiffs in this case were Marvin Yates, Keith Cole, David Bailey, and Nicholas Diaz. (Doc. No. 1.) As named plaintiffs were released on parole, additional plaintiffs were added to the case. (*See* Doc. Nos. 245, 629.)

The Court certified the case as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure in June 2016[2] and amended its certification order in March 2018. (Doc. Nos. 473, 1065.) The Fifth Circuit affirmed the Court's initial class certification order after an interlocutory appeal. *Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017) (pet. for en banc review pending).[3] In its order amending certification, the Court certified a general class of all incarcerated people who are still in TDCJ custody who were assigned to live at the Pack Unit between July 19, 2017 and August 8, 2017, or were living at the Pack Unit on March 6, 2018, as identified in Exhibit 1 to the Court's March 27, 2018 Order Amending Class Certification, Approving Class Notice, and Setting Date For Fairness Hearing (hereinafter "Class"). (Doc. No. 1065.) The Court also certified a subclass of those who had medical conditions causing heat sensitivity, as listed in Exhibit 2 to the Court's March 27, 2018 order (hereinafter "Subclass"). *Id.*

This case has been extensively litigated over the past four years. The Court held evidentiary hearings on class certification and two motions for preliminary injunctions. The Court entered its first preliminary injunction during the summer of 2016, requiring TDCJ to provide safe drinking water to inmates to mitigate the risks of excessive heat. (Doc. No. 477.) The injunction expired while TDCJ's interlocutory appeal was pending. *Yates v. Collier*, 677 Fed. Appx. 915 (5th Cir. 2017). The Court entered its second preliminary injunction in July 2017, after a nine-day evidentiary hearing. (Doc. No. 737.) The Court found that TDCJ was deliberately indifferent to Plaintiffs' Eighth Amendment right to be free from cruel and unusual

---

[2] The Court initially certified a general class of "all inmates who currently are, or in the future will be, incarcerated at the Pack Unit, and who are subjected to TDCJ's policy and practice of failing to regulate high indoor heat index temperatures in the housing areas," a heat-sensitive subclass, and a disability subclass. (Doc. No. 473.)

[3] The parties stayed all pending appeals pending the Court's approval of the class settlement.

3

punishment. (*Id.* at 91.) The Court required TDCJ to take additional steps to protect all class members from the risk of heat exposure, and to house subclass members with conditions causing heat sensitivity in areas where the indoor apparent air temperature did not exceed 88 degrees Fahrenheit. (*Id.* at 98-99.) TDCJ developed a plan, which the Court approved, to enhance heat mitigation measures for all class members, and temporarily to relocate heat-sensitive subclass members to air-conditioned housing in other TDCJ prisons. (Doc. Nos. 769, 771.) The Court extended the July 2017 preliminary injunction, finding that the heat index outside of the Pack Unit often exceeds 88 degrees Fahrenheit for prolonged periods from approximately April 15 through October 30 each year, such that the relief ordered by the July 2017 injunction was required during these periods. (Doc. Nos. 854, 955.) TDCJ appealed the Court's July 2017 preliminary injunction. The appeal was pending when the parties reached agreement on settlement. (*See* Doc. Nos. 989, 1016 (fully-executed settlement, hereinafter "Settlement").)

The parties reached agreement on a settlement in principle on January 31, 2018 and moved this Court for preliminary approval of class settlement and amendment of its class certification order on March 6, 2018. (Doc. No. 989.) Plaintiffs Mr. Brannum, Mr. King, Mr. Denton, Mr. Wallace, and Mr. Yates signed the Settlement (hereinafter "Class Representatives"); Mr. Cole did not. The Court granted preliminary approval, amended its class certification order, ordered that notice be sent to the class, and set a final fairness hearing for May 8, 2018. (Doc. No. 1065.) The Court held the fairness hearing as scheduled and heard argument from counsel and, via telephone, from all objectors who wished to speak.

The Court has subject matter jurisdiction over the claims of the Plaintiffs pursuant to 28 U.S.C. §1331 and §1343.

II.      THE PROPOSED SETTLEMENT

The Settlement brings significant relief to the class, remedying the harms at the center of Plaintiffs' case: the dangers of exposure to excessive heat.

The Settlement requires cooling of the air in housing areas of the Pack Unit during periods of likely extreme heat. The Settlement requires TDCJ to air-condition the housing areas of the Pack Unit to maintain indoor heat indices at or below 88 degrees Fahrenheit between April 15 and October 15 each year. (Settlement at 9.) Between April 15, 2018 and October 15, 2018, and between April 15, 2019 and October 15, 2019, TDCJ will install temporary air conditioning at the Pack Unit, to keep heat indices at the Pack Unit at or below 88 degrees Fahrenheit. Subject to legislative approval, TDCJ will install permanent air conditioning in all housing areas of the Pack Unit before April 15, 2020, to keep the heat index at 88 degrees Fahrenheit or less. (Settlement at 10.) If for any reason permanent air conditioning is not installed on or before April 15, 2020, temporary air conditioning will be provided in all Pack Unit housing areas during any April 15 to October 15 period in perpetuity, so long as any Class member is present at the Pack Unit, to keep the indoor heat index in the Pack Unit housing areas at or below 88 degree Fahrenheit. (Settlement at 11.)

The Settlement provides protections in the event of equipment malfunction. If there is an equipment malfunction for longer than twenty-four hours that causes the heat index to rise above 88 degrees Fahrenheit, TDCJ will notify the Edwards Law Firm (hereinafter "Class Counsel") and provide temporary heat mitigation measures. (Settlement at 9.)

Even if Class members are involuntarily transferred to other units for medical or security reasons, the temperature limitation will continue to apply to them. The Settlement requires TDCJ to house all Class members in air-conditioned environments with heat indices at or below 88

5

degrees Fahrenheit at any other prison where TDCJ may incarcerate a Class member for the duration of the Class member's present term of incarceration. (Settlement at 11.) Because of Class members' medical conditions, Class and Subclass members may be temporarily or permanently transferred to medical facilities that are air-conditioned as directed by qualified medical personnel. Because the Pack Unit has only dormitory housing, it may not house prisoners with certain security classifications[4] or prisoners who require administrative segregation. If a Class or Subclass member acquires a heightened security classification or must be placed in administrative segregation, he will be transferred from the Pack Unit to other air-conditioned housing facilities in accordance with the re-classifications.

The Settlement further provides that TDCJ will transport Subclass members in air-conditioned vehicles whenever Subclass members leave the Pack Unit for medical appointments or other travel within the TDCJ system during their present term of incarceration. (Settlement at 12.)

The Settlement also includes measures to ensure that heat-related protections do not interfere with Class members' access to parole-related programs. TDCJ will provide all conditional parole-voted programs to Class and Subclass members in air-conditioned facilities during the Class members' current terms of incarceration, except for the Innerchange Freedom Initiative, which is a voluntary faith-based program that teaches certain values and life skills. (Settlement at 12.)

In exchange for the above commitments from TDCJ, Class members release any and all injunctive, equitable, or declaratory relief claims that they have against TDCJ arising out of any

_____

[4] Prisoners with G4 or G5 classifications cannot reside at Pack, since they must be housed in cells (subject to limited exception for G4 prisoners).

6

of the legal and/or factual allegations of this action. (Settlement at 19.) Class members do not release claims for damages. *See id.* Class members may voluntarily opt out of the Class. Class members who wish to opt out may do so by submitting an agreed opt-out form to Class Counsel. The opt-out form requires a statement of the reasons the individual wishes to opt out.

Class Counsel are responsible for monitoring compliance with the agreement. (Settlement at 16.) Class and Subclass members shall submit in writing notice of any alleged violations of the Settlement to Class Counsel. Class Counsel may raise the issues with the Court, which will retain continuing jurisdiction over such claims and over attorneys' fees and expenses. (Settlement at 13.) The settlement provides for Class Counsel to recover attorneys' fees for their compliance monitoring. (Settlement at 14.)

TDCJ agrees to pay Plaintiff's counsel $4,500,000 for attorneys' fees and expenses. (Settlement at 13.)

## III.    FINAL APPROVAL OF THE PROPOSED SETTLEMENT

### A.  Legal Standard

Federal Rule of Civil Procedure 23(e) establishes the requirements for settlement of a class action. Under Rule 23(e), the Court may only approve a proposed class settlement after a hearing and on finding that it is fair, reasonable, and adequate. Fed. R. Civ. Proc. 23(e)(2). Before granting final approval of a class settlement, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. Proc. 23(e)(1).

### B.  Notice

"A settlement notice need only satisfy the broad reasonableness standards imposed by due process." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (internal quotation marks omitted). Notice is sufficient when it gives class members the information that

is reasonably necessary for them to decide whether to object to a settlement. *Id.*; *see also Wal– Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) ("The settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.") (internal quotation marks omitted).

The Court finds that Class members received sufficient notice to meet this standard. Members of the Class and Subclass received notice of the key terms of the proposed settlement through two primary avenues.

First, each Class and Subclass members received a copy of the Class Action Notice and Opt Out Form that was approved by this Court in its order granting preliminary approval of the proposed settlement. (Doc. No. 1065 at 3, Exh. 3; Doc. No. 1159-1 at 1-2.) A Spanish-language version of the form was also provided. (Doc. No. 1159-1 at 1-2.) The notice apprised Class and Subclass members of the pendency of this litigation; of the elements of the Settlement benefitting the Class and Subclass members; that Class Counsel will be paid attorneys' fees and expenses by TDCJ (and the amount thereof) in connection with the Settlement and that the motion for approval of the Settlement includes a request for approval of such payment of fees and expenses; of Class and Subclass members' opportunity to object and opt out of the Class and Subclass; of the identity and contact information of Class Counsel; and of the date of the fairness hearing.

Second, Class Counsel held group presentations at the Pack Unit regarding the Settlement. (Doc. No. 1159-1 at 2.) TDCJ has represented that all inmates had the opportunity to attend one of the presentations, and that over 1,000 Class members did attend. *Id.* Class members also had the opportunity to review the Settlement itself, which was made available to them in the Pack Unit law library. (Doc. No. 1175 at 1, Exh. 1.)

8

Full opportunity has been afforded to members of the Class to participate in the fairness hearing, including the opportunity for objectors to appear by telephone. As discussed in more detail below, numerous Class members filed objections to the Settlement and many of these individuals appeared at the fairness hearing. The Court finds that this notice was adequate and complied with Rule 23(e) and due process.

### C.  Fairness, Reasonableness, and Adequacy

The Fifth Circuit has identified six factors that a court should consider to determine whether a proposed settlement is fair, reasonable, and adequate:

> (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). When a class settlement is reached through arm's-length negotiations after meaningful discovery, a "presumption of fairness, adequacy, and reasonableness may attach." *Wal-Mart Stores*, 396 F.3d at 116; 4 Newberg on Class Actions § 13:45 (5th ed.). Judicial and public policy favor compromise of class actions. *Wal-Mart Stores*, 396 F.3d at 116.

### 1.  *Evidence of Fraud or Collusion*

"The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010). There is no evidence of collusion between the parties in the record. The parties vigorously litigated this case for years prior to settlement, and the compromise they reached

substantially benefits the Class. The parties reached agreement after arm's-length negotiations, conducted in good faith. (Doc. No. 989-9 at 7-8.) A neutral mediator facilitated the settlement negotiations. *Id.* Counsel did not negotiate attorneys' fees until after they reached agreement on the substantive terms. *Id.* This factor weighs in favor of approval of the Settlement.

### 2. *Complexity, Expense, and Duration of Litigation*

The complexity of this case, likelihood of delay, and likelihood of significant transaction costs weigh in favor of approval of the Settlement. *See Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) (finding risks of protracted litigation and transaction costs in civil rights case weigh in favor of settlement). It is likely that there will be significant delay and additional litigation if the Settlement is not approved. Although the parties had already litigated motions for class certification and preliminary injunctions before this Court, a petition for en banc review of the class certification decision and a third interlocutory appeal were both pending when the parties agreed on the Settlement. A trial on the merits was also pending, and the parties have represented that the outcome of a trial would likely be appealed to the Fifth Circuit. (*See* Doc. No. 989 at 22.) Absent settlement, the litigation would almost certainly have continued for years, with no assurance of as favorable a resolution. This factor weighs strongly in favor of approval of the Settlement.

### 3. *The Stage of Litigation and the Available Discovery*

Completion of discovery and significant litigation weigh in favor of a finding that the Settlement is fair, reasonable, and adequate. When discovery has been completed and legal issues decided, the parties and the court have sufficient information with which to evaluate the merits of their positions. *Ayers*, 358 F.3d at 369. There has been extensive discovery in this case, including more than forty depositions and the exchange of more than 430,000 pages of records.

(Doc. No. 989-9 at 1-2.) There were more than two weeks of evidentiary hearings, extensive motion practice, and rulings by this Court on two motions for a preliminary injunction. (Doc. Nos. 477, 737.) The parties were therefore able to evaluate their respective positions when negotiating the Settlement. The Court can look to the prior hearings and its prior decisions when determining the adequacy of the Settlement. This factor again weighs strongly in favor of approval of the Settlement.

### 4.   *The Probability of Success on the Merits*

The probability of the Plaintiffs' success on the merits is the most important factor for courts to consider when evaluating a class action settlement. *Parker*, 667 F.2d at 1209. "A district court faced with a proposed settlement must compare its terms with the likely rewards the class would have received following a successful trial of the case." *Reed*, 703 F.2d at 172. Plaintiffs were likely to succeed on the merits of their claims. This Court has already found that conditions of confinement at the Pack Unit violated the Eighth Amendment. (Doc. No. 737 at 83-91.) Nevertheless, Plaintiffs' ultimate success was not guaranteed, as appeals of this Court's decisions were pending at the time of settlement.

The parties faced uncertainty regarding what remedy the Court would order after a full trial and whether such remedy would withstand a likely appeal. The Prison Litigation Reform Act ("PLRA") limits the injunctive relief available to remedy constitutional violations arising from prison conditions. *See* 18 U.S.C. § 3626(a) (courts may only order relief that is narrowly drawn, extends no further than necessary, and is the least intrusive means to remedy the constitutional violation). Determining the proper remedy for heat-related Eighth Amendment violations requires a detailed, fact-specific inquiry that is often the subject of appellate review.

11

*See, e.g., Ball v. LeBlanc*, 881 F.3d 346, 348 (5th Cir. 2018). This factor weighs in favor of approval of the Settlement.

<em>5.   <u>The Range of Possible Recovery</u></em>

The Settlement provides substantial benefit to the Class. The relief sought in the complaint helps establish the benchmark against which courts can compare the settlement terms. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Plaintiffs sought air-conditioning of the Pack Unit in their complaint, and the Settlement provides this relief. Air-conditioning the housing areas of the Pack Unit will effectively protect Pack Unit residents from the dangers of extreme heat. It is far from certain that Plaintiffs would achieve the relief agreed upon in the Settlement, should the case progress. Indeed, the Settlement provides greater relief than the relief granted by this Court in the second preliminary injunction. Under the injunction, subclass members with heat sensitivity were required to be housed in cooled areas, but members of the general class were not. Rather, TDCJ was required to improve its heat mitigation measures. Under the Settlement, the Class and Subclass will have air conditioning in their housing units, which will reduce the risk of heat injury and harm. This factor weighs in favor of approval of the Settlement.

<em>6.   <u>The Opinions of Class Counsel, Class Representatives, and Absent Class<br>Members about the Settlement</u></em>

When assessing the fairness of a settlement, the Court must look to the opinions of Class Counsel, the Class Representatives, and absent Class members. "The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007). Class Counsel, who have substantial experience litigating civil rights and other complex cases, view the Settlement as a

12

significant victory for the Class. (*See* Doc. No. 989-9 at 2-5, 9.) Class Representatives Michael Denton, Fred Wallace, Jackie Brannum, Richard King, and Marvin Yates, have submitted declarations describing their satisfaction with the Settlement. (Doc. Nos. 989-26, 989-27, 989-28, 989-29, 989-30.) For example, Mr. Yates states that he and other Class members will be much better off not having to live in unbearable summer heat and that the use of air-conditioned vehicles for medical transfers will make it safer for him to get medical care. (Doc. No. 989-26 at 2.)

When considering the opinions of absent class members, courts must look at both the number and nature of the objections to the settlement. *Reed*, 703 F.2d at 174. The Fifth Circuit has affirmed approval of settlement even where class representatives and a significant percentage of class members objected to the settlement. *Id.* (affirming approval of settlement over the objections of twenty-three of twenty-seven named plaintiffs and nearly forty percent of the 1,517 member class).

Twenty-two Class members filed a total of twenty-eight objections with the Court.[5] Less than two percent of Class members filed objections to the Settlement.[6] Below is discussion of the issues raised in the Class members' objections. The Court also received objections from

---

[5] Doc. Nos. 1083, 1084, 1086, 1089, 1090, 1091, 1096, 1100, 1101, 1104, 1119, 1121, 1122, 1124, 1125, 1126, 1127, 1128, 1129, 1130, 1131, 1132, 1133, 1136, 1137, 1147, 1151, 1152. Mr. Charles Malouff filed one of his objections on behalf of himself and approximately sixty other prisoners. (*See* Doc. No. 1151.)

[6] The Class contains approximately 1,286 people. When the Court granted preliminary approval and modified the class definition, there were 1,326 people in the Class. Class Counsel have represented that forty individuals were released from TDCJ custody, and are thus no longer part of the Class, when notice was distributed. (Doc. No. 1159 at 1.) If the sixty individuals who signed onto the Malouff objection are included in the percentage calculation, then approximately six and a half percent of Class members objected to the Settlement.

individuals who are incarcerated in the TDCJ system but are not Class members.[7] These individuals do not have standing to object to the proposed Settlement, since they are not bound by the Settlement. *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, on Apr. 20, 2010, 910 F. Supp. 2d 891, 941 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014). This "stems from the fundamental purpose of fairness review under Rule 23(e)—to ensure that absent class members are not bound by an unfair settlement." *Id.* The Court therefore does not consider their objections in its analysis.

After reviewing the concerns raised by Class members in their filings and at the fairness hearing, the Court finds that the objections lack merit and/or do not identify deficiencies sufficient to outweigh the significant benefits of the Settlement.

### a) Individual Actions and Damage Recovery

Some Class members object to the Settlement because they want to preserve their right to bring individual actions, including actions for monetary damages. *See, e.g.*, Gresham Amended Objection (Doc. No. 1122), Hall Objection (Doc. No. 1129), Thomas Objection (Doc. No. 1136), Malouff Amended Objection (Doc. No. 1124), Archer Objection (Doc. No. 1137). Objections to the lack of monetary recovery appear to be based on misapprehension of the relief sought in this action and a misunderstanding of the release of claims. Plaintiffs never sought monetary damages in this case. The Settlement does not provide for monetary damages, and it does not foreclose class members from independently pursuing claims for damages. (Settlement at 19.) The Court clarified the meaning of the release at the fairness hearing. The Settlement does include a release of claims for injunctive or declaratory relief that could have been raised against Defendants in this action, as follows:

---

[7] Doc. Nos. 1098, 1103, 1118, 1120, 1123, 1140, 1141.

14

On the Effective Date, all Class and Subclass Members hereby fully, finally, and forever release, relinquish, and discharge any and all injunctive, equitable, or declaratory relief claims, liens, demands, actions, and causes of action of any nature that they have, had, may have, or could have raised against Defendants and Released Parties, arising out of any of the legal and/or factual allegations and/or legal claims of the Action.

(Settlement at 19.)

The Court finds that the release of claims is reasonable. Class members were provided an opportunity to opt out of the Settlement if they did not want to release their individual claims for injunctive relief related to the claims in this action. The Court finds that objections based on preservation of rights to bring individual actions lack merit.

### b) Criminal Liability

Seven Class members object to the fact that the Settlement does not include a finding of criminal liability against TDCJ and its employees. *See, e.g.*, Franklin Objection (Doc. No. 1083), Baity Objection (Doc. No. 1084), Ellis Objection (Doc. No. 1104), Parker Objection (Doc. No. 1132). This objection is based on a misunderstanding of the relief sought in this case and the scope of this Court's authority. Private citizens cannot bring criminal charges. Criminal liability for Defendants was never a part of this case. Objectors seek something that this Court cannot order as part of this action. The Court finds that objections to the Settlement's silence regarding criminal liability are not relevant.

### c) Impact of the Settlement on Precedential Effect of the Court's Prior Rulings

Several Class members object that the prior holdings in the case will not have a precedential effect if the Settlement is approved. *See, e.g.*, Garrett Objection (Doc. No. 1127), Cole Objection (Doc. No. 1121). Some of them intend to use the precedent to "substantiate" their own claims, while others are concerned that other inmates in the TDCJ system who are not part of the Class will not be able to rely on the case. Again, these objections appear to be based on a

15

misunderstanding of the Settlement's effect. The precedential effects of this Court's prior orders are not altered by the Settlement. The Court finds that objections based on alleged loss of precedent are without legal foundation.

### d)  Lack of Air Conditioning in Other Parts of the Pack Unit

A few Class members object to the Settlement because it requires TDCJ to provide air conditioning in the housing areas but not in other areas of the Pack Unit. (Settlement at 9.)  Class members argue that the Settlement should provide for air conditioning in the dining area, gym, hallways, and other areas. *See, e.g.*, Britton Objection (Doc. No. 1125), Blackwell Objection (Doc. No. 1126), Smith Objection (Doc. No. 1130). They believe that air-conditioning these areas is necessary to protect prisoners' health and safety. An additional Class member objects that the dayroom at Trusty Camp is not air-conditioned. Malouff Objection (Doc. No. 1151). Class Counsel raised the complaint with TDCJ, which has agreed to install air conditioning in the Trusty Camp day room. (Doc. Nos. 1160 at 13-14, 1160-2 at 1.)

Although prisoners will be exposed to some risk of harm by TDCJ's failure to air-condition all areas of the Pack Unit, the parties' agreement to air-condition the housing areas of the Pack Unit is a reasonable compromise of the claims. "Compromise is the essence of a settlement." *Cotton*, 559 F.2d at 1330. Plaintiffs rarely receive all desired relief through settlement. Exposure to high heat is a significant concern. People with heat sensitivities may experience heat-related illness within just a few hours of exposure to a heat index above 88 degrees. (*See* Doc. No. 737 at 39.) However, the Prison Litigation Reform Act and Fifth Circuit precedent limit this Court's ability to grant relief that mitigates all heat-related risk: The Court may only order relief that is narrowly drawn to correct the constitutional injury. *See Ball*, 881 F.3d at 352. Here, Plaintiffs have negotiated relief that is greater than the relief ordered by the

16

Court in the preliminary injunction and likely greater than the relief available should the case proceed through trial. Housing areas are air-conditioned for all Class members, not only for members of the heat-sensitive Subclass. Class members will be transported in air-conditioned vehicles and will be housed in air-conditioned units if they need to be transferred out of the Pack Unit. The objectors' concerns are understandable in light of the risks that arise with even brief exposure to high temperatures, but do not weigh against approval of the Settlement.

### e) Concerns about Adequacy of Air Conditioning

Two Class members object to the Settlement on the basis that the temporary air conditioning that TDCJ has already installed is not working well. *See* Malouff Objection (Doc. No. 1091), Parker Objection (Doc. No. 1132). Other Class members object that the Settlement lacks sufficient protections to ensure that air conditioning operates well, such as surprise inspections. *See, e.g.*, Franklin Objection (Doc. No. 1083).

The Settlement contains provisions to ensure that the air conditioning works. Under the terms of the Settlement, Class Counsel will monitor implementation of the agreement and may bring concerns about compliance to this Court. (Settlement at 16-17.) Additionally, TDCJ is required to notify Class Counsel if the air conditioning malfunctions for 24 hours or more and the indoor heat index goes above 88 degrees. (Settlement at 9.) If such an outage occurs, TDCJ must provide temporary heat mitigation measures. (Settlement at 9-10.) The Court finds these measures to be sufficient to address the concerns raised by objectors regarding efficacy of the air conditioning.

### f) Effect of Settlement on Program Participation

A few Class members object that certain educational programs are not available in air-conditioned facilities, thus requiring class members to opt out of the class to pursue educational

17

opportunities. *See, e.g.*, Dobbins Objection (Doc. No. 1089). Mr. Dobbins is concerned that the Settlement will prevent Class members from getting parole.

The Settlement will not interfere with Class members' parole eligibility. Under the Settlement, TDCJ must offer all conditional parole-voted programs in air-conditioned facilities for Class members, with the exception of the Innerchange Freedom Initiative, which is a voluntary program. (Settlement at 12.)

Mr. Dobbins and other objectors are correct that certain educational programs will not be available to Class members in air-conditioned settings. The Settlement does not require TDCJ to provide air-conditioned facilities for optional programming. The Court is indeed concerned that Class members might have to choose between educational opportunity and their constitutional rights to be free of substantial risk caused by extreme heat. The Court finds that the parties reached a reasonable compromise on the issue of air conditioning for programming that is not offered at the Pack Unit. The Court finds that objections based on the lack of air conditioning for all educational programs do not weigh against approval of the Settlement.

### g) *Loss of Class Membership upon Release from Custody*

Three Class members object to the fact that current Class members will lose their protections when they are released from custody. They anticipate that they or other class members might violate parole or commit other offenses, and then be subject to the same heat-related risk upon return to TDCJ custody. *See, e.g.*, Cole Objection (Doc. No. 1121), Stewart Objection (Doc. No. 1131). The Court urges Class members to do their best to avoid recidivating. In the event that a person is again incarcerated, he will no longer be a Class member and is not foreclosed from bringing his own claim for relief. It is possible, though not guaranteed, that he will return to the Pack Unit, which will be air-conditioned. The Court finds

that objections based on loss of Class status upon release do not weigh against approval of the Settlement.

### h)  Retaliation

Fifteen Class-member objectors allege that TDCJ officers have retaliated against them and/or other Class members through various forms of mistreatment. *See, e.g.*, Baity Objection (Doc. No. 1084), Adams Objection (Doc. No. 1100), Gresham Objection Supplement (Doc. No. 1119), Britton Objection (Doc. No. 1125), Cole Advisory (Doc. No. 1133), Archer Objection (Doc. No. 1137). A few objectors provide specific examples of alleged retaliation, such as running fans in cold weather, writing up frivolous disciplinary violations, and excessively waking people up for wellness checks at night. The objectors who discuss retaliation do not fully explain the connection between the alleged retaliation and specific deficiencies in the Settlement itself. Rather, the allegations of retaliation support their general concerns regarding adequacy of representation and the efficacy of the Settlement to address constitutional harms.

The Court takes allegations of retaliation seriously, but such allegations are not cause to find the Settlement unfair, inadequate, or unreasonable. The Settlement establishes a mechanism for Class members to raise concerns about violation of their rights under the Settlement. Class members may inform Class Counsel of alleged violations, and Class Counsel will investigate such violations and bring them to the attention of the Court if the parties cannot resolve the dispute. (Settlement at 13.) Indeed, Class Counsel have already responded to some of the issues raised by Class members in their objections. For example, objectors complained that the air-conditioned housing in the Estelle Unit, where Pack Unit residents are sent for medical care, lacked mattresses, bedding, toilet paper, and other necessities. Class Counsel followed up on these concerns and TDCJ remedied the problem. (*See* Doc. Nos. 1160 at 27, 1160-1.) Some of

the issues that objectors have raised may require further investigation by Class Counsel, which Class Counsel will undertake as part of their monitoring and enforcement role. The Court retains jurisdiction over enforcement of the Settlement, and may address substantiated claims of retaliation that are directly related to the Settlement and raised by Class Counsel. (Settlement at 13, 21.)

Objectors have also alleged incidents that are not clearly related to this case. For example, one person alleges that TDCJ unjustly segregated him and used pepper spray on him. *See* Hunter Objection (Doc. No. 1128). Such incidents are not within the scope of this action, as they are unrelated to heat risk and mitigation and there is no evidence that they were employed as retaliation against an individual for exercising his rights under the current preliminary injunction or the pending Settlement. If people want relief for alleged mistreatment that is not directly related to this case, they may comply with TDCJ's grievance procedures, and, if appropriate, file a separate action with a court of proper jurisdiction. The Settlement does not preclude such actions.

The allegations of retaliation are not reason to find that the Settlement is not fair, reasonable, or adequate.

### i)   Unsettled Property Claims

A few individuals have alleged that TDCJ has not fully compensated them for property lost or damaged by TDCJ while transferring prisoners pursuant to the Court's July 2017 preliminary injunction. *See, e.g.*, Gentry Objection (Doc. No. 1101), Cole Objections (Doc. Nos. 1121, 1133), Stone Objection (Doc. No. 1150). Specific property complaints are outside the scope of this action, and would not be addressed by modification to the Settlement. The parties already created and implemented a property complaint procedure to address property complaints

related to the transfer period. (*See* Doc. No. 890; Minute Entry for Oct. 30, 2017.) Any further claims individuals have regarding lost or damaged property must be pursued through grievance procedures and private actions. Class members have not released claims for monetary damages, including claims for property loss or damage. If the case were to continue without the Settlement, the Court would not address individual property complaints, since they are outside the scope of this case. Property-related objections to the Settlement therefore lack merit.

### j)  General Allegations of Unfairness

Numerous objectors generally allege unfairness and insufficiency of the Settlement. *See, e.g.*, Franklin Objection (Doc. No. 1083), Gresham Objection (Doc. No. 1086), Newman Objection (Doc. No. 1096). The objectors also allege that the Settlement does not address constitutional violations by the Defendants that occurred during the course of the case.

The general objections to the Settlement are deficient. Objections must contain factual support. *Reed*, 703 F.2d at 173. These general allegations are unsupported by specific factual allegations. The Settlement does provide significant relief for the constitutional violations alleged in Plaintiffs' complaint by dramatically reducing the risk of harm from exposure to extreme heat. A settlement that "substantially remedies any class injury" should be approved. *Id*. Further litigation is unlikely to bring greater relief. This weighs in favor of approving the Settlement. *See Ayers*, 358 F.3d at 373.

### k)  Additional Concerns that are Outside the Scope of this Case

Class members also raised objections based on conditions of confinement that are not directly related to this case and would not be part of the relief in this case—whether the relief is achieved through litigation or settlement.

One Class member objects to the Settlement for failing to include injunctive relief protecting religious freedoms. Lares Objection (Doc. No. 1090). Mr. Lares argues that the Settlement is deficient because it does not prohibit TDCJ from retaliating against prisoners by infringing on their religious freedoms. While religious freedoms are a vitally important right, they are not related to the claims in this case. Mr. Lares may follow TDCJ's grievance procedures and bring a separate action to address alleged violations of his religious rights. To the extent TDCJ is acting in a retaliatory manner because of this case, the Settlement allows for monitoring and continuing jurisdiction as discussed in subsection (h), above.

Class members also asked that the water system be tested for metals and that prisoners receive blood testing for arsenic and other substances. *See* Malouff Objection (Doc. No. 1151). Water quality is only relevant to this case to the extent water is a component of TDCJ's heat mitigation protocol. (*See* Doc. No. 477.) The Settlement provides for air conditioning to mitigate heat risk. Mr. Malouff's concerns regarding water safety are thus outside the scope of this case. Mr. Malouff may follow TDCJ's grievance procedures and bring a separate action to address alleged violations of his constitutional rights to safe drinking water.

Objections related to conditions of confinement outside the scope of this case do not show the Settlement to be unfair, unreasonable, or inadequate.

### l)   Adequacy of Class Counsel

Nine Class-member objectors make general allegations that Class Counsel have not adequately represented their interests. They allege that Class Counsel are self-serving, deficient and negligent, but do not allege specific examples or facts in support. *See, e.g.*, Franklin Objection (Doc. No. 1083), Baity Objection (Doc. No. 1084), Adams Objection (Doc. No. 1100), Ellis Objection (Doc. No. 1104).

The Court finds these unsupported allegations to be meritless. Class Counsel have been unstinting in their efforts and unsparing in their financial commitments. They have also been creative and articulate advocates for the rights of Class members related to the claims at issue in this case. The Court has found no evidence of fraud or collusion by parties or counsel in reaching settlement. Further, the settlement negotiations were overseen by a mediator, which is an indicator of procedural fairness. *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017).

Numerous objectors request the appointment of independent counsel. *See, e.g.*, Franklin Objection (Doc. No. 1083), Baity Objection (Doc. No. 1084). There is no automatic right to the appointment of counsel in civil actions. *Castro Romero v. Becken*, 256 F.3d 349, 354-55 (5th Cir. 2001). The Court has found Class Counsel to be exemplary and denies the requests for appointment of counsel. The Court finds objections based on Class Counsel's representation to be meritless.

*m)  Sufficiency of Notice*

Additional Class members object that the process for informing Class members of the Settlement was flawed. They allege that not all Class members were able to review the Settlement, as posted versions were removed by individual Class members. However, the parties have provided the Court with evidence that the Settlement was made available, and remains available, in the Pack Unit law library. (Doc. No. 1175.) Objectors also allege that Class Counsel did not listen and respond to each Class member's concerns at the presentations Class Counsel held regarding the Settlement. Reasonable notice does not require a presentation on a proposed settlement, let alone an extensive question-and-answer session between class members and counsel. The procedural and notice requirements of Rule 23 have been met and exceeded.

### n)  Additional Procedural Objections

One Class member also objects to the existence of an opt-out mechanism. Adams Objection (Doc. No. 1100). Mr. Adams is concerned that TDCJ will force people out of the Class through retaliatory treatment. The existence of an opt-out mechanism is not a basis for objecting to the Settlement, since the Court itself ordered the parties to create an opt-out mechanism. While the Court understands the logic of Mr. Adams' concern, the Court ordered the opt-out mechanism after receiving requests from Class members to opt out of the Class. As of the fairness hearing, only eighteen individuals had opted out of the Class. (*See* Doc. No. 1159-1.) Further, the Settlement's provisions for monitoring and continuing jurisdiction will protect against retaliation.

One Class member is concerned that the Class-membership cut-off date changed between the draft of the agreement shown to the Class Representatives and the final proposed Settlement. Cole Objections (Doc. Nos. 1121, 1133). The prior draft had an April 15 cut-off date, while the current version has a March 6 cut-off date. This change has not negatively impacted the Class. There is no procedural deficiency with regard to class notice, because the correct version of the Settlement was provided to Class members, and the correct class definition appeared in the class notice and the Court's preliminary approval order. (*See* Doc. No. 1065, Exh. 3.)

Mr. Cole also argues that Class members should have the opportunity to vote to approve the Settlement. The Court finds this proposal to be unmanageable. Rule 23 sufficiently protects the rights of absent class members through the notice process, the requirement that this Court provide class members an opportunity to object and be heard at the fairness hearing, and the final approval process. Further, individuals have been granted the opportunity to opt out of the action and bring their own claims for relief if they find the Settlement to be inadequate.

24

7. *Result of the Six-Factor Analysis*

All six factors favor approving the proposed settlement. The Court finds that the settlement is fair, reasonable, and adequate under Rule 23(e). The terms are approved.

### D. Prison Litigation Reform Act

Because this case addresses prison conditions, the Court must determine whether the settlement complies with the Prison Litigation Reform Act. *See* 18 U.S.C. § 3626. Private settlements are not subject to the PLRA's limitations, but agreements that are subject to judicial enforcement are within the scope of the statute's requirements. 18 U.S.C. § 3626(c), (g). The Court will retain continuing jurisdiction to dispose of claimed violations of the Settlement at the request of Class Counsel or TDCJ's counsel. (Settlement at 13, 17, 21.) The PLRA therefore requires that the relief provided for by the settlement "is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a). The court must also "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." 18 U.S.C.A. § 3626(a)(1)(B).

In its order of July 19, 2017 granting Plaintiffs preliminary injunctive relief, the Court made a preliminary finding that Plaintiffs were substantially likely to prevail on claims that conditions at the Pack Unit violated Class and Subclass members' federal rights. The Court incorporates the factual findings in its July 19, 2017 order granting the second preliminary injunction and in its October 12, 2017 order extending the preliminary injunction. (Doc. Nos. 737 at 8-71, 854.)

Exposure to extreme heat will continue to cause a substantial risk of serious injury or death to members of the Class, absent the mitigation measures required by the Settlement. The

Court finds that, absent the relief agreed to in this Settlement, the extreme heat conditions described in the July 19, 2017 order will continue to exist every year between April 15 and October 15 in perpetuity. The provision of temporary air conditioning during the summer months is necessary to mitigate the risk sufficient to correct the alleged violation of the Class and Subclass' federal rights, until permanent air conditioning is installed. The relief afforded extends no further than is necessary to correct the constitutional harms, and the relief will not adversely impact public safety or the operation of the criminal justice system. The parties concur that the Settlement meets the requirements of the PLRA.

## IV.    APPROVAL OF ATTORNEYS' FEES AND COSTS

### A.  Legal Standard

Courts may award reasonable attorneys' fees as part of a class action settlement. Fed. R. Civ. Proc. 23(h).[8] The Court may grant the prevailing party a reasonable attorneys' fee in an action to enforce 42 U.S.C. Section 1983 or in an action under the Americans with Disabilities Act. 42 U.S.C. §§ 1988, 12205. The Parties agree that Class Counsel are entitled to recover attorneys' fees and expenses pursuant to 42 U.S.C. Sections 1988 and 12205.

As part of its duty to review and approve a class action settlement, the Court must determine whether the agreed-upon attorneys' fees are reasonable. *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 849 (5th Cir. 1998). Courts encourage litigants to resolve fees by agreement. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974). When the amount of fees is agreed upon, is separate and apart from the class settlement,

---

[8] Plaintiffs must inform the Class of the fee application, including the scope of the fee. *See In re: Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 446-47 (3d Cir. 2016). Plaintiffs have done so, as the Class Notice included a clear statement of the agreed-upon fee. (*See* Doc. No. 1065, Exh. 3.)

and has been negotiated after the other terms have been agreed, the attorneys' fee is presumed to be reasonable. *See DeHoyos*, 240 F.R.D. at 322-23. This is the case here, as the fees were agreed upon after the injunctive relief was negotiated and the Plaintiffs sought only injunctive relief. The Court must nevertheless undertake its own analysis of the reasonableness of the fee.

Courts use the lodestar method to determine a reasonable fee. *Strong*, 137 F.3d at 850. The lodestar is calculated by multiplying the reasonable hours expended by a reasonable fee. *Id.* Once the lodestar has been calculated, the Fifth Circuit applies the *Johnson* factors to assess the reasonableness of the fee and may use a multiplier to adjust the lodestar upward or downward. *Id.* The twelve *Johnson* factors are: (1) the time and labor required, (2) the novelty and difficulty of the issues, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. If a factor has already been accounted for in the lodestar calculation, it may not be used to adjust the lodestar. *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993).

**B.  Analysis**

*1.  Lodestar Calculation*

Class Counsel have provided detailed accounting of the work they performed in this case. (*See* Doc. Nos. 989-9; 989-11 through 989-25.) As of March 6, 2018, Class Counsel performed 9,909.5 hours of work, for total fees of $4,428,466.25. (Doc. No. 989-8.) Class Counsel also recorded $300,721.99 in expenses, which the Court finds to be fair and reasonable. Class

Counsel reported an additional 389.1 hours of work since preparing the motion for preliminary approval, incurring an additional $178,615.00 in fees, for a total of $4,607,081.25. (Doc. No. 1159-1 at 3-4.)

While the number of hours expended is high, the amount is reasonable in light of the significant time required to effectively litigate this action. Discovery included 40 depositions and review of over 500,000 pages of documents. (Doc. No. 989-9 at 7.) Motion practice included class certification, summary judgment, motions to dismiss, discovery disputes, and preliminary injunctions. Class Counsel expended additional time defending three interlocutory appeals. Additionally, the Court recognizes that prison litigation can be particularly time-consuming, as counsel must travel to and from remote prisons to interview witnesses, and may devote many hours to following up on communications from Class members, to whom they owe significant duties under Rule 23. Finally, Class Counsel exercised billing judgment, omitting numerous hours spent reviewing emails, writing correspondence, holding telephone calls, and traveling. (Doc. No. 989-9 at 10.)

Class Counsel's hourly rates are reasonable. Plaintiffs' attorneys are experienced in class action litigation and civil rights work and are highly skilled, as evidenced by their success at many stages of this litigation. (*See* Doc. Nos. 989-9 at 4; 989-21 through 989-23.) The hourly rates sought by Class Counsel are fair and reasonable for attorneys of their experience ($650/hour for Jeff Edwards, $550/hour for Michael Singley, $525/hour for Scott Medlock, $570/hour for Jeremy Doyle, $450/hour for Nathan Smith, $475/hour for Sean Flammer, $400/hour for David James, $350/hour for Brian McGiverin, $300/hour for Wallis Nader, $225/hour for Emma Hilbert and Hannah Herzog, $185–150/hour for professional legal support

staff, and $100/hour for law clerks). Courts have found similar rates to be reasonable in other civil rights litigation. *See DeHoyos*, 240 F.R.D. at 322-23.

2. *Application of the Johnson Factors*

Having found the hours expended and hourly rates to be reasonable, the Court now assesses the reasonableness of the lodestar in light of the *Johnson* factors. The *Johnson* factors support a fee of $4,500,000.

This action involved novel and difficult issues. Plaintiffs' claims involve complex areas of constitutional and statutory law, and are further complicated by the PLRA and the class action mechanism. The case involved complex factual issues, including institutional policies and practices and medical and scientific issues. The multiple appeals in this case, including a request for en banc review, are further indication of the case's complexity and novelty.

Skilled attorneys were necessary to perform the legal services properly. This was a complex action in a specialized area of law. Defendants put forth a vigorous defense. Class Counsel are experienced, reputable, and able, and brought their expertise in complex litigation and civil rights to bear in successfully litigating this action.

Class Counsel obtained extraordinary results in this case. When prisoners are kept in extreme heat, they cannot escape the unsafe conditions. They must rely on the institution's voluntary compliance with constitutional requirements, or, as in this case, they must seek relief from the courts. Class Counsel have successfully vindicated Class members' rights, reducing the harm of extreme heat for all Class members. The risk of harm from extreme heat will be effectively mitigated by the provision of air conditioning in the Pack Unit. Class members will be guaranteed air conditioning, in housing and transportation, for the remainder of their time in

29

TDCJ custody. Class members have already benefitted from the relief granted in the existing preliminary injunctions, and will continue to benefit as the Settlement is implemented.

The time and labor required in this case were significant, Class Counsel took the case on a contingent basis, and Class Counsel's litigation of this case precluded other employment. As discussed previously, there has been extensive discovery, motion practice, appellate practice, and evidentiary hearings in this case. Class Counsel spent over 10,000 hours on this case, at the expense of other employment opportunities. (*See* Doc. No. 989-9 at 12-13.) Counsel devoted thousands hours to this important litigation, with no guarantee of eventual compensation.

Although the vindication of constitutional and civil rights is of great societal import, cases such as this one are often seen as undesirable by attorneys. Cases involving civil rights, class actions, and incarcerated clients are often costly, time-consuming, and difficult. This case is complex and required years of effort by Class Counsel, without assurance of final success on the merits and recovery of fees. When the case was initiated and for the several years it was pending, Class Counsel were facing the distinct possibility that they would receive nothing, not even recoupment of their enormous out-of-pocket expenses. The fee-shifting statutes applicable to civil rights actions play an important role in ensuring that attorneys will take on cases to protect individuals' rights, where the litigant lacks resources and seeks minimal monetary relief. *See Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968); *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) ("If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers.") (internal quotation marks and citation omitted). Class Counsel took on this case despite its undesirability and helped the Class vindicate their rights.

30

The lodestar amount would reflect a market-based fee. The Court has found that the expenditure of time and the rates charged are reasonable. This is already accounted for in the lodestar.

Although this case was protracted because of its complexity, Class Counsel pursued the litigation in a timely, vigorous manner, as appropriate to the urgent rights at stake. Counsel also has a strong relationship with their clients. Class Counsel have worked with Plaintiffs for multiple years and have visited numerous Class members in prison, both before and after filing the lawsuit. (Doc. No. 989-9 at 7.)

Similar awards have been granted in suits that seek injunctive relief. Numerous courts have approved similar, or greater, fee awards in cases seeking injunctive relief. *See, e.g.*, *Perdue v. Kenny A.*, 559 U.S. 542 (2010) (lodestar of over $6,000,000); *DeHoyos*, 240 F.R.D. at 323 (approving fee of $11,720,000).

The Court finds that the attorneys' fees and expenses specified in the Settlement are fair and reasonable.

### 3. *PLRA Requirements*

The PLRA sets particular requirements for attorneys' fees in prisoner litigation. 42 U.S.C. § 1997e(d). As detailed above, the Court finds that Plaintiffs' fees and expenses were directly and reasonably incurred in a good faith effort to prove an alleged violation of Plaintiffs' federal rights, the amount of the fees and expenses are proportionately related to the relief required for the alleged violation, and the fee was directly and reasonably incurred in obtaining relief addressing the alleged violation.

The rate caps of the PLRA do not apply here. First, Defendants have agreed to pay $4,500,000 in fees, and not to invoke the rate caps. Second, Plaintiffs brought claims under the

31

ADA and Rehabilitation Act, which are governed by their own fee provisions, 42 U.S.C. § 12205 and 29 U.S.C. § 794, and are not subject to the PLRA caps. *See Armstrong v. Davis*, 318 F.3d 965, 974 (9th Cir. 2003).

Even if the Court applied the PLRA rate caps, the agreed-upon fees and expenses of $4,500,000 would be reasonable. Attorneys' fees in an action subject to the PLRA cannot be based on an hourly rate that is greater than $220.5/hour.[9] 42 U.S.C. § 1997e(d)(3). Class Counsel expended 10,298.6 hours working on this case, for a total lodestar of $2,270,841.30 at the PLRA rate. Courts may adjust the lodestar by a multiplier to achieve a reasonable fee in PLRA cases. *Kelly v. Wengler*, 822 F.3d 1085, 1103 (9th Cir. 2016). The Court finds that a multiplier of 1.9 is appropriate here to ensure the lodestar reflects a reasonable fee in light of the *Johnson* factors. The *Johnson* factors, discussed in detail above, weigh in favor of a multiplier. "The most critical factor in determining the reasonableness of a fee award in a civil rights suit is the degree of success obtained." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (internal quotation marks omitted). The extraordinary results achieved necessitate use of a multiplier. Additionally, the time-consuming nature of this case, uncertainty of recovery, and difficulty prisoners find in acquiring representation in civil rights litigation particularly weigh in favor of an upward adjustment. Applying a 1.9 multiplier, plus expenses, leads to a total award of $4,615,320.46, which is greater than the agreed-upon amount.

---

[9] The statutory cap is "150 percent of the hourly rate established under" 18 U.S.C. § 3006A, the Criminal Justice Act ("CJA"). Most courts use the maximum authorized CJA rates, rather than the rate actually paid to court-appointed counsel. *Depriest v. Walnut Grove Corr. Auth.*, No. 3:10-CV-00663-CWRFKB, 2017 WL 4228751, at *3 (S.D. Miss. Sept. 22, 2017) (collecting cases); *see also Carruthers v. Israel*, 274 F. Supp. 3d 1345 (S.D. Fla. 2017). The maximum rate for fiscal year 2018 is $147. *See* The Judiciary FY 2018 Congressional Budget Summary at 37.

## V.        CONCLUSION

In the resolution of litigation over collective constitutional rights, doubts and dissents—even from those knowing none of the facts—are inevitable. The Court has spoken to each of these of which it is aware.

But, the scale of the parties' accomplishment remains undiminished. The State of Texas, a group of prisoners, and far-sighted counsel for both have collaborated to save lives, redress illness, reduce misery, achieve constitutionality, and do justice. The Court salutes all those who have labored so long and done so much.

This case addresses the fundamental rights to health and safety of over a thousand prisoners. The Settlement brings extraordinary relief to the class, effectively mitigating the risks to their health that they regularly encounter in extreme temperatures. For the reasons set forth above, the Court finds that the settlement is fair, adequate, and reasonable and that attorneys' fees in the amount agreed upon by the parties are fair and reasonable.

It is therefore ORDERED, ADJUDGED, and DECREED that:

1. The Settlement submitted by the parties is finally approved as fair, reasonable, and adequate.

2. The Settlement is in the best interests of the Class and Subclass, and the parties are directed to consummate and to implement the Settlement in accordance with its terms. The provision of equitable relief shall take place in accordance with the Settlement.

3. This Court awards Class Counsel attorneys' fees and expenses of four million and five hundred thousand dollars ($4,500,000.00), as negotiated and agreed by the parties. Said fees and expenses are determined by the Court to be fair, reasonable, and appropriate for the work expended to date.

33

4. Pursuant to the terms of the Settlement between the parties, the Court finds the Plaintiffs, solely for purposes of an award of attorneys' fees and expenses pursuant to 42 U.S.C. § 1988, and 42 U.S.C. § 12205, are prevailing parties. In the event that Plaintiffs' attorneys' fees and expenses in the amount of $4,500,000 have not been paid in full by September 30, 2019, TDCJ agrees judgment will be entered against TDCJ in the amount of $4,500,000 plus interest at the rate of 5% from January 30, 2018.

5. This Court shall retain jurisdiction over any issues related to attorneys' fees and expenses.

6. This order expressly resolves only Class and Subclass members' claims for injunctive, declaratory, or other equitable relief.

7. Without affecting the finality of this Final Order and Judgment Approving Class Action Settlement, the Court retains exclusive jurisdiction to resolve any disputes relating to or arising out of the administration, enforcement, implementation, consummation, or interpretation of the Settlement.

8. In addition, without affecting the finality of this judgment, the parties, including each member of the Class and Subclass as defined in this Order, are hereby deemed to have submitted irrevocably to the exclusive jurisdiction of this Court for any suit, action, proceeding, or dispute arising out of or relating to this Order or the Settlement.

9. The Court finds, solely for purposes of approving the Settlement and maintaining its continuing jurisdiction only, that the relief agreed to in the settlement is necessary to remedy the alleged violations of the Class and Subclass members' federal rights, and the relief extends no further than necessary to correct the alleged violation of the Class and Subclass' federal rights. The relief will not cause any adverse impact on public safety or

the operation of the criminal justice system. Therefore, the Court shall maintain continuing jurisdiction pursuant to 18 U.S.C. § 3626(a) until installation of permanent air conditioning is installed at the Pack Unit, and as otherwise necessary to resolve any alleged violations of the Settlement and administer the Settlement (including permitting Class members to opt out). The Court expressly finds that the Settlement complies with all requirements of 18 U.S.C. § 3626(a) and 42 U.S.C. § 1997e(d).

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 8th day of June, 2018.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE