UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH COLE, JACKIE BRANNUM, RICHARD KING, MICHAEL DENTON, FRED WALLACE, and MARVIN RAY YATES, individually and on behalf of those similarly situated,<br>Plaintiffs,<br><br>v.<br><br>BRYAN COLLIER, in his official capacity, ROBERT HERRERA, in his official capacity, and TEXAS DEPARTMENT OF CRIMINAL JUSTICE,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.<br>4:14-cv-1698 |

**PLAINTIFFS' COURT ORDERED RESPONSE IN OPPOSITION TO
SHANNON DOUTHIT'S PETITION FOR WRIT OF MANDAMUS**

Plaintiffs respectfully oppose Shannon Douthit's petition for writ of mandamus. Class Counsel has been investigating Mr. Douthit's concerns by speaking with him, other inmates he identified for Class Counsel, and other reliable inmates identified during the course of this litigation. Class Counsel, however, is not empowered to unilaterally stop TDCJ from engaging in the complained-of behavior and mandamus is not an appropriate remedy in this circumstance.

However, if the Court finds reason to suspect TDCJ's conduct is related to the settlement, and constitutes retaliation, Class Counsel respectfully suggests that the Court order a show-cause hearing (at TDCJ's expense) where TDCJ will be required to produce the officials Mr. Douthit alleges made the retaliatory comments for cross examination by Class Counsel, and to produce the evidence Mr. Douthit alleges exists (including the video recordings of the offending shake downs).

**I.     SUMMARY OF THE ARGUMENT**

Several inmates have complained to Class Counsel that, beginning shortly after the settlement, TDCJ employed a burdensome shakedown practice in which elderly or disabled inmates were threatened with destruction of their belongings if they do not carry them, unassisted, across the Pack Unit facility. Though some inmates have alleged officers made statements that could indicate malicious intent (*see* Doc. 1390, p. 4, ¶ 7), Class Counsel has little recourse other than to trust TDCJ's initial assurances that the shakedown practice either did not occur or, if it did, was not malicious. TDCJ has consistently stated that the prison continues to provide carts for inmates to carry their belongings, the accommodation typically provided to elderly and disabled inmates during shake downs. When class members living in the E Building reported similar conduct again late last year, Class Counsel again promptly visited witnesses and requested further information from TDCJ. After Mr. Douthit's motion was filed, TDCJ again assured class counsel that no such practice had occurred. Ex. 5, Email from TDCJ Counsel, p. 1.

Given this posture, Mr. Douthit's motion should be denied as to Class Counsel. Class Counsel, though doubtful that mandamus is the appropriate remedy against TDCJ, takes no position on the merits of Mr. Douthit's allegations at this time as Class Counsel lacks sufficient evidence to support (or refute) his allegations. *See* FED. R. CIV. PROC. 11. Class Counsel has been diligently investigating, albeit with reluctance to involve the Court given the limited information available, and the difficult to verify nature of the allegations.

**II.    NATURE & STAGE OF THE PROCEEDING**

Plaintiffs are a class of prisoners at the TDCJ Pack Unit in Navasota, Texas. Doc. 1.

On June 14, 2016, this Court certified a class (and subclasses) of prisoners "who currently are, or in the future will be, incarcerated at the Pack Unit." Doc. 473, pp. 2–3, 22. On

July 19, 2017, this Court ordered preliminary relief for the class, in part requiring TDCJ to stop housing elderly and disabled class members in the dangerously hot temperatures inside the Pack Unit. Doc. 737.

On February 2, 2018, after a two-day mediation, the Pack Unit inmates and TDCJ informed the District Court of the settlement. On June 8, 2018, thirty days after a fairness hearing, the District Court entered final judgment approving the parties' settlement. Doc. 1188. The final judgment, among many other terms, provided that Class Counsel would continue to monitor conditions at the Pack Unit, and specifically would investigate allegations of retaliation. *See* Doc. 1188, pp. 19–20.

Once the class members returned to the Pack Unit, several reported that an unusual "unit-wide shakedown" had occurred in May 2018, shortly after they had first arrived back pursuant to the settlement. *See* Ex. 1. A unit-wide shakedown is a search of each inmate's entire living area, person, and collection of property, principally to check for contraband.[1] To accomplish the search, TDCJ typically requires every inmate to physically move all of their personal property to a common area while officers search their cell or, in a dormitory-style facility like the Pack Unit, their cubicle. The inmate is usually subjected to a strip search while their personal property is perused by officers. During a unit-wide shakedown, prisoners in each living area are required to move their belongings to the common area in sequence—for example, Dormitory 1 might have a shakedown on the first day, while the remaining dormitories are "on lockdown," and Dormitory 2 might have a shakedown on the second day, and so on, until the entire facility has been searched. Unit-wide shakedowns typically occur twice per year per prison.

---

[1] As this case has not touched on the shakedown practice, counsel has limited access to formal TDCJ policies on the subject and is relaying their general understanding from inmate reports and other litigation against TDCJ.

3

During unit shakedowns, TDCJ often requires inmates to physically carry their own property to the common area, but TDCJ has stated that carts are available at the Pack Unit for older adults and people with disabilities. Ex. 5, Email from TDCJ Counsel. In addition, inmates using wheelchairs are allegedly not required to pack their property at all. *Id.*

Rather than TDCJ's typical practice, however, at least three class members reported, in correspondence and during in-person interviews with Class Counsel, that in May 2018 they were not provided carts to move their belongings to the common area during a "shakedown" of the Pack Unit in May 2018. Inmates could observe un-used carts available, but they reported being prohibited from using them. *See* Ex. 1.[2] Class Counsel conferred with TDCJ about this issue before the next unit-wide shakedown, in December 2018. Ex. 1.

Nonetheless, some class members again reported similar problems following the winter unit-wide shakedown at the Pack Unit. According to the inmates Class Counsel spoke to, in December 2018 the problems with the shakedown were confined to the E Building (where Mr. Douthit states he resides), and did not extend to other portions of the prison. Class Counsel, in turn, again reported the issue to TDCJ and again asked for further information on January 18, 2019, on March 12, 2019, and (after Mr. Douthit's motion was filed) on March 28, 2019. Ex. 2, 3, 5, pp. 2–3.

On March 12, 2019, before Mr. Douthit served his petition,[3] TDCJ responded to class counsel by stating that it would investigate, but also asserting that TDCJ "do[es] not see this issue as remotely related to the heat litigation" and that it would not compensate Class Counsel for hours incurred working on the issue. Ex. 4 (showing TDCJ Counsel's email).

---

[2] Perhaps unsurprisingly, this is a common inmate allegation. *See, e.g.*, *Clewis v. Hirsch*, No. H-13-2308, 2016 WL 1258404 (S.D. Tex. March 30, 2016).

[3] Counsel received notice of Mr. Douthit's petition on March 15, 2019. Ex. 6.

On March 15, 2019, Mr. Douthit's petition was distributed to counsel by the Court's electronic case filing system. *See* Ex. 6.

On March 28, 2019, Class Counsel followed up with TDCJ again, and counsel for TDCJ advised that the allegation does not match the Pack Unit shakedown practice. Ex. 5.

**III.   STANDARD OF REVIEW**

As part of the settlement agreement, Class Counsel conducts ongoing monitoring of the settlement terms. *See* Doc. 989-4, p. 16, ¶ 6.2(d). TDCJ's counsel is responsible for cooperating with Class Counsel's monitoring duties and compensating Class Counsel for time spent on them, subject to an annual fee cap. *Id.* pp. 16–17, ¶¶ 6.2, 6.2(f). Alleged violations of the agreement are to be submitted exclusively to Class Counsel, and Class Counsel may request that the Court dispose of any claimed violations. Doc. 989-4, p. 13, ¶ E.1. The Court retains jurisdiction to enforce the agreement. Doc. 989-4, p. 21, ¶ 7.6.

"[T]he writ of mandamus is an extraordinary remedy reserved for extraordinary situations. Traditionally, federal courts have exercised their mandamus power only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *In re Am. Marine Holding Co.*, 14 F.3d 276, 277 (5th Cir. 1994) (quoting *Gulf Stream Aerospace Corp. v. Mayacamus Corp.,* 485 U.S. 271, 289 (1988)) (internal citations omitted).

Federal law prohibits prisons from retaliating against inmates for "reporting conditions which may constitute a violation" of the Constitution, including for reporting them in administrative proceedings required by the PLRA. 42 U.S.C. § 1997d. "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act,

and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). Retaliation is actionable "if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Brunson v. Nichols*, --- F.3d ----, 2017 WL 5476800 (5th Cir. Nov. 15, 2017).

## IV. ARGUMENT AND AUTHORITIES

As an initial matter, the style of Mr. Douthit's filing is incorrect. A writ of mandamus is reserved for ordering completion of ministerial acts by government officials, and, in federal court, typically it only arises in narrow situations where an appellate could not suffice to protect from a lower court's order. *See In re Am. Marine Holding Co.*, 14 F.3d at 277. Class Counsel could not identify any federal authority using this power to order counsel to act, and Mr. Douthit cites none. In addition, Class Counsel's duties under the settlement are not ministerial—before Class Counsel can act on a complaint, counsel must make strategic decisions about how to proceed, including by evaluating whether individual class member complaints merit action at all. *See* FED. R. CIV. PROC. 11.

However, Class Counsel agrees that Mr. Douthit's sworn allegations (if true) are potentially troubling, and that TDCJ has not provided sufficient evidence, as of this writing, to refute them. If Mr. Douthit's allegations are true, then they suggest that an official chose to alter normal procedures, and that at least one official made comments suggesting the change had a retaliatory motive. Accordingly, if the Court agrees that Mr. Douthit's allegations, if true, would constitute retaliation, the Court should order a show cause hearing (at TDCJ's expense)[4] where

---

[4] Class Counsel suggests a show cause hearing as the least burdensome, and most efficient means to dispose of Mr. Douthit's allegations. In the alternative, the Court could order, at TDCJ's expense, brief, 1-hour depositions of the officers Mr. Douthit identifies (Major Perez, Lieutenant Temple, and Sergeant Kroll), and for TDCJ to produce relevant documents (including

witnesses will be presented to potentially refute (or confirm) Mr. Douthit's allegations, and where the evidence Mr. Douthit alleges exists (such as the video recordings)[5] be produced, so that the Court can order appropriate relief under the settlement agreement.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs ask that the Court deny Mr. Douthit's petition for writ of mandamus as to Class Counsel, but, if Mr. Douthit's claims cause the Court concern, order a show cause hearing at TDCJ's expense (or order any other appropriate relief the Court may prefer). In the alternative, Class Counsel would ask that the Court direct Mr. Douthit that he may file a separate suit concerning these matters (provided he has exhausted his administrative remedies pursuant to the Prison Litigation Reform Act).

Dated: April 5, 2019.

---

grievances, disciplinary reports, medical records of Mr. Douthit and other inmates who consent, and video recordings from the relevant locations) to be reviewed at TDCJ's expense.

[5] Class Counsel would specifically direct the Court to the video recordings that Mr. Douthit alleges exist showing the conduct of the May and December 2018 shakedowns in E Building, where Mr. Douthit resided and was allegedly not provided an accommodation for his disability.

Respectfully submitted,

EDWARDS LAW
The Haehnel Building
1101 East 11th Street
Austin, Texas 78702
    Tel.   (512) 623-7727
    Fax.  (512) 623-7729

By: /s/ *Scott Medlock*
JEFF EDWARDS
State Bar No. 24014406
Attorney-in-Charge
Scott Medlock
State Bar No. 24044783
Michael Singley
Texas Bar No. 00794642
David James
State Bar No. 24092572
Federal ID No. 2496580

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

    By my signature below, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Southern District of Texas. A copy of the foregoing and all exhibits hereto have also been placed in the mail to Mr. Douthit.

/s/ *Scott Medlock*
Scott Medlock