UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH COLE, JACKIE BRANNUM, RICHARD KING, MICHAEL DENTON, FRED WALLACE, and MARVIN RAY YATES, individually and on behalf of those similarly situated,<br>Plaintiffs,<br>v.<br>BRYAN COLLIER, in his official capacity, ROBERT HERRERA, in his official capacity, and TEXAS DEPARTMENT OF CRIMINAL JUSTICE,<br>Defendants. | § § § § § § § § § § § § § § | CIVIL ACTION NO.<br>4:14-cv-1698 |

**PLAINTIFFS' EMERGENCY MOTION TO COMPEL DEFENDANT TDCJ TO COMPLY WITH SETTLEMENT AGREEMENT**

Defendant Texas Department of Criminal Justice is violating the court-approved settlement agreement by imprisoning at least 37 members of the settlement class in indoor apparent temperatures exceeding 88º F. TDCJ has transferred these class members to the LeBlanc Unit prison in Beaumont – a prison that is purportedly "air conditioned" though, in reality, indoor apparent temperatures throughout the prison yesterday were over 90º F, and likely have been for weeks (at least). The Beaumont area is currently under a National Weather Service Heat Advisory, where apparent temperatures are projected to reach 112º F today,[1] and the area has suffered similar dangerously high apparent temperatures for the past several weeks, and will likely continue to do so for the foreseeable future. This is a true emergency because TDCJ's

---

[1] *See* Ex. 1, National Weather Service, Heat Advisory: Urgent Weather Message, Aug. 9, 2019 (available at: https://forecast.weather.gov/showsigwx.php?warnzone=TXZ215&warncounty=TXC245&firewxzone=TXZ215&local_place1=Beaumont%20TX&product1=Heat+Advisory&lat=30.09&lon=-94.13#.XU2Mii2ZM2I) ("High heat index values will result in an increased risk of heat-related illnesses, including heat exhaustion and heat stroke").

1

proposed solution is to continue violating the settlement agreement during a period where the dangerously hot temperatures place class members at substantial risk of serious harm. *See* Doc. 737.

### I.     FACTS: TDCJ IS VIOLATING THE SETTLEMENT AGREEMENT

The Court-approved settlement agreement requires TDCJ to "provide … all Class and Subclass members … an air-conditioned housing assignment for the duration of their current incarceration" where the heat index "shall not exceed 88 degrees." Doc. 989-4, pp. 9-10 (proposed settlement agreement) & Doc. 1188 (final approval of settlement agreement). TDCJ may transfer prisoners away from the Pack Unit in order to provide "conditional parole-voted programs" in "air-conditioned facilities." Doc. 989-4, p. 12.

As of today, there are approximately 37 class members imprisoned at TDCJ's LeBlanc Unit in Beaumont, at least 27 of whom are also members of the heat-sensitive subclass because they suffer from a "heat sensitive" medical condition. Ex. 2, Declaration of David James, p. 2; Doc. 989-4, pp. 7–8. Upon information and belief, the vast majority of these class members were transferred to the LeBlanc Unit in order for them to attend programming necessary for their early parole. *See* Doc. 989-4, p. 12.

After receiving several complaints regarding indoor temperatures at the LeBlanc Unit from class members, Class Counsel visited the prison on August 8, 2019. An inspection of each housing area where class members were housed as of August 7, 2019 took place, where TDCJ's deputy director of maintenance measured the temperature and heat index with a device selected by TDCJ. *See* Ex. 2, Declaration of David James, p. 2. Every housing area had a heat index above 88ºF. *Id*. Fourteen of fifteen housing areas had a heat index above 90ºF, and one housing area had a heat index above 100ºF. *Id*. Even the alleged "cooler areas" where TDCJ told the

2

Court that class members were being moved to (Dorms G and H) as of August 7 had indoor heat indexes above 88ºF. *See id*.

**Temperature and Heat Index Inside LeBlanc Unit (Aug. 8, 2019)**

| Building | Dorm | Temperature | Heat Index | Time | # of Class Members on 8/7/2019 | Heat Sensitive Class Members on 8/7/2019 |
|---|---|---|---|---|---|---|
| 1 | A | 87.9 | **97.2** | 2:37 | 3 | 2 |
| 1 | B | 85.9 | **94.5** | 2:52 | 3 | 3 |
| 1 | C | 84.5 | **91.8** | 3:00 | 1 | 1 |
| 2 | D | 87.1 | **94.6** | 2:20 | 1 | 1 |
| 2 | E | 85.3 | **93.2** | 1:46 | 7 | 5 |
| 2 | F | 85.6 | **93.7** | 2:04 | 1 | 1 |
| 3 | G | 81.8 | 87.1 | 12:54 | 0 | 0 |
| 3 | G | 83 | **88.2** | 4:04 | 0 | 0 |
| 3 | H | 83.7 | **90.7** | 1:11 | 0 | 0 |
| 3 | H | 84.2 | **92.3** | 4:15 | 0 | 0 |
| 3 | I | 85.3 | 91 | 1:32 | 2 | 1 |
| 4 | J | 87.4 | **96.8** | 3:19 | 4 | 4 |
| 4 | K | 85.1 | **92.7** | 3:36 | 7 | 6 |
| 4 | L | 83.9 | **91.4** | 3:51 | 1 | 0 |
| 5 | N | 87.7 | **100.2** | 4:27 | 2 | 1 |
| 6 | P | 85.8 | **95.6** | 4:48 | 1 | 0 |
| 6 | R | 84.3 | **89.1** | 4:40 | 2 | 2 |

Ex. 2, Declaration of David James, pp. 3, 5 (Yellow highlighting indicates locations all class members were housed as of Aug. 8, 2019; heat indexes in violation of the settlement agreement noted in **bold**.)

Because the LeBlanc Unit is allegedly air conditioned, the windows in the dormitories do not open, the showers are not cold, and the respite areas are severely underutilized.

## II.   TDCJ HAS MISREPRESENTED CONDITIONS AT THE LEBLANC UNIT

Beginning on July 18, 2019, class counsel started telling TDCJ's attorneys that the air conditioning was not working at the LeBlanc Unit – that an inmate who arrived at the prison "around July 1, 2019 [reported] the AC has been out the entire time he has been imprisoned

3

there." Ex. 3, Email from S. Medlock to TDCJ Counsel re: "Pack Unit Class Action – AC at LeBlanc Unit Out" (July 18, 2019). In response, TDCJ's counsel stated "the tempered air system is and has been operable" and that, while the power was out for one hour due to a utility problem, "the tempered air system has been functioning properly and has maintained the temperature just below 85 degrees." Ex. 4, Email from TDCJ Counsel to S. Medlock (July 18, 2019). In response, class counsel requested temperature logs that would verify this information. *See* Ex. 5, Letter from S. Medlock to TDCJ Counsel, July 22, 2019. TDCJ refused to produce documents that would show the indoor apparent temperatures were actually "just below 85 degrees," because "there is no requirement [in the settlement agreement] that the staff monitor the thermostat at the LeBlanc Unit on a daily basis [because] [i]t is a permanently air-conditioned unit." Ex. 6, Email from TDCJ Counsel to S. Medlock (Aug. 6, 2019).

Class counsel visited inmates imprisoned at the LeBlanc Unit on July 19, 2019, and spoke with several class members who again reported very hot indoor temperatures. Ex. 2, Declaration of David James. These complaints were reported to TDCJ's counsel on July 22, 2019. *See* Ex. 5, Letter from S. Medlock to TDCJ Counsel (July 22, 2019). TDCJ again refused to produce temperature logs verifying the indoor temperatures, and again insisted that the AC was operating properly.

On August 5, 2019, class counsel requested an inspection of the LeBlanc Unit after receiving "another call from the family of a LeBlanc inmate … claiming that it is still very hot inside." Ex. 7, Email from S. Medlock to TDCJ Counsel (Aug. 5, 2019).

While negotiating the visit protocol, TDCJ's counsel produced a document purportedly showing that any maintenance issues "have been resolved within hours." Ex. 6, Email from TDCJ Counsel to S. Medlock (Aug. 6, 2019); Ex. 8, "Offender Housing A/C Issues for LeBlanc

and Duncan Units." After the inspection, it is apparent this document is misleading at best, and patently untrue at worst. Class counsel's requests to see the actual complaints, grievances, and work orders related to the reported problems with the air conditioning at the LeBlanc Unit were again rebuffed.

Also in the course of negotiating the visit parameters, TDCJ's counsel represented that, "At the LeBlanc Unit … the thermostats are mounted at the location of the chillers" and that "the maintenance employees check the mounted thermostat when they service the systems." Ex. 6, Email from TDCJ Counsel to S. Medlock (Aug. 6, 2019). In fact, the "mounted thermostat" is located *inside* the air conditioning unit, and cannot be read unless a panel is removed (and, in at least two cases, the person inspecting the unit actually climbs inside the device – as class counsel did yesterday). Ex. 2, Declaration of David James, p. 3. This "mounted thermostat" does not actually measure the temperature – it just tells the air conditioning unit what temperature it should try to achieve. In fact, during the inspection, one "mounted thermostat" was set at 30ºF, but the indoor heat index for the building that "chiller" serviced was as high as 97ºF. *See id*. The temperature the "thermostat" is set to obviously has no relation to the actual indoor temperature.

After initially agreeing to hold the inspection on Thursday, August 8, TDCJ attempted to postpone the inspection – citing an alleged "family emergency" experienced by the LeBlanc Unit's warden. Ex. 9, Email from TDCJ Counsel to S. Medlock (Aug. 7, 2019). The Court ordered the visit go ahead as scheduled after TDCJ refused to simply record the indoor heat indexes for the four days the visit would be delayed. Yesterday, the warden attended and supervised the entirety of the inspection. Ex. 2, Declaration of David James.

In short, since class counsel reported potential problems at the LeBlanc Unit to TDCJ's counsel weeks ago, TDCJ has been telling class counsel that indoor apparent temperatures were

"just below 85 degrees" when, in reality, TDCJ was not actually checking the temperatures inside the dormitories where class members were living – and it would be obvious to anyone actually inspecting the conditions that the "thermostats" were not reporting the actual indoor temperatures.

### III. AN ENFORCEABLE COURT ORDER IS NECESSARY TO IMMEDIATELY PROTECT CLASS MEMBERS AND ENSURE COMPLIANCE WITH THE SETTLEMENT AGREEMENT

As of this morning, TDCJ has allegedly decided to return the class members to the air-conditioned Pack Unit. But it does not intend to accomplish this transfer until "the end of next week." Ex. 10, Email from S. Medlock to TDCJ Counsel, Re: Cole v. Collier – Availability for Emergency Telephone Hearing (Aug. 9, 2019). Because the temperatures inside the LeBlanc Unit are dangerous *right now*, and will continue to be dangerous throughout "next week," this proposal is not acceptable.[2] The Court should order TDCJ to ensure the class members are all housed in apparent temperatures below 88°F tonight, and provide an affidavit (supported by documentation) that it has done so.

Moreover, given the numerous misrepresentations made by TDCJ throughout the course of this litigation, and over the past few weeks regarding the current conditions at the LeBlanc Unit, an enforceable court order is necessary to ensure TDCJ's compliance even with its own inadequate proposal.

---

[2] *See* Ex. 11, National Weather Service, Extended Forecast for Beaumont, Texas (accessed Aug. 9, 2019) (available at: https://forecast.weather.gov/MapClick.php?lat=30.09&lon=-94.13#.XU2uky2ZM2I) ("This afternoon: … Heat index values as high as 110." "Saturday: … Heat index values as high as 108." "Sunday: … high near 96." "Monday: … high near 96." "Tuesday: … high near 95." "Wednesday: … high near 95." "Thursday: … high near 93.").

## IV. CONCLUSION

TDCJ has misrepresented the dangerous conditions at the LeBlanc Unit for weeks, and has likely been housing class members in dangerous conditions in violation of the settlement agreement for far longer. Class counsel does not bring these allegations to the Court lightly, and, unfortunately, sanctions will likely need to be taken up at a later date. But today, emergency relief is necessary to protect the health and safety of class members immediately due to TDCJ's violations of the settlement agreement.

Dated: August 9, 2019.

        Respectfully submitted,

        Edwards Law
        The Haehnel Building
        1101 East 11th Street
        Austin, Texas 78702
            Tel.    512-623-7727
            Fax.   512-623-7729

        By    /s/ Jeff Edwards
        JEFF EDWARDS
        State Bar No. 24014406
        Attorney-in-Charge
        Scott Medlock
        State Bar No. 24044783
        Michael Singley
        State Bar No. 00794642
        David James
        State Bar No. 24092572
        Federal ID No. 2496580

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Court's electronic filing system.

        By    /s/ Jeff Edwards
        JEFF EDWARDS