1

```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF TEXAS
 2                         HOUSTON DIVISION

 3
    KEITH COLE, et al.,            )
 4                                 )
            Plaintiffs,            )    NO. H-14-CV-1698
 5                                 )
    v.                             )    August 7, 2019
 6                                 )
    BRYAN COLLIER, et al.,         )
 7                                 )
            Defendants.            )
 8

 9
                              TELECONFERENCE
10            BEFORE THE HONORABLE KEITH P. ELLISON

11

12

13

14   For the Plaintiffs:       Jeffrey S. Edwards
                               David James
15                             Scott Medlock
                               Mike Singley
16                             The Edwards Law Firm
                               1101 East 11th Street
17                             Austin, TX  78702

18   For the Defendants:       Leah O'Leary
                               Office of the Attorney General
19                             State of Texas
                               P.O. Box 12548
20                             Austin, TX  78711

21   Court Reporter:           Bruce Slavin, RPR, CMR

22

23

24
     Proceedings reported by mechanical stenography and produced
25   by computer-aided transcription.
```

16:08

|  |  |
|---|---|
|  | 1  THE COURT: Good afternoon and welcome. This is |
|  | 2  Keith Ellison. We're on the record. Let's take appearances |
|  | 3  of counsel, please. |
|  | 4  MR. EDWARDS: This is, for the Plaintiffs class, |
| 16:09 | 5  Jeff Edwards, Scott Medlock, David James and Mike Singley, |
|  | 6  Your Honor. |
|  | 7  THE COURT: Okay. For Defendants. |
|  | 8  MS. O'LEARY: This is Leah O'Leary from the |
|  | 9  Attorney General's Office for TDCJ. |
| 16:09 | 10  THE COURT: Okay. I thought we had worked all |
|  | 11  these temperature issues out. |
|  | 12  Tell me what the problem is, Mr. Edwards. |
|  | 13  MR. EDWARDS: As we tried to be very brief in our |
|  | 14  letter, essentially, we have been getting complaints from |
| 16:09 | 15  inmates at the Leblanc Unit, which is one of the units that |
|  | 16  TDCJ has transferred members of the class to about the |
|  | 17  conditions being very hot. These complaints -- we have been |
|  | 18  getting letters and actual complaints since the 12th of |
|  | 19  July. They have continued this week. |
| 16:09 | 20  As a consequence, we visited the prison, |
|  | 21  confirmed the complaints and tried to work out an inspection |
|  | 22  with TDCJ. We were supposed to go tomorrow. We were told |
|  | 23  that that would not happen, that it would not happen until |
|  | 24  Monday. And, given that there is a heat advisory in |
| 16:10 | 25  Beaumont, that is something that we simply could not abide |

1 by and tried to work out an accommodation where they would
2 at least notify us of the temperatures in the housing areas
3 where these inmates were living during the hottest periods
4 of the time of day, roughly 12:00 o'clock until 4 o'clock.
5 They refused and left us with no choice but to notify the
6 Court.
7 This is not something that we enjoy doing, but
8 given the fact that we have monitoring responsibilities and
9 there is a heat advisory, I'm, frankly, at a loss as to why
10 TDCJ can't allow us to go into the prison and verify the
11 temperatures or the heat indexes tomorrow. And if they
12 absolutely cannot do that -- which I don't know that that's
13 necessarily true. Even so, there needs to be some
14 appreciation that we have received complaints and, whether
15 they are accurate or not, there is a very real risk given
16 the heat advisory in Beaumont and the complaints that we
17 have given.
18 Finally, in an effort to, again, try to work
19 things out, we have asked for documentation to show that
20 fixes have happened; and, unfortunately, it is TDCJ's
21 position that they simply are not obligated to provide us
22 with any documents, whether we request them or not, and that
23 it goes beyond our settlement agreement. This is core to
24 the issue. We disagree with that, but we have been trying
25 to work things out.

|       |    |                                                                              |
|-------|----|------------------------------------------------------------------------------|
|       | 1  | Unfortunately, in this instance we have a                                    |
|       | 2  | concern that, you know, if we wait something really terrible                 |
|       | 3  | could happen.  It's certainly not our hope that that                         |
|       | 4  | happens, desire that that happens, but I would feel terrible                 |
| 16:12 | 5  | if we had simply not come to the Court and something like                    |
|       | 6  | that did happen.                                                             |
|       | 7  | That's basically the run of it, Your Honor.                                  |
|       | 8  | THE COURT:  Okay.  Ms. O'Leary.                                              |
|       | 9  | MS. O'LEARY:  Yes, Your Honor.                                               |
| 16:12 | 10 | We had scheduled a walk-through for tomorrow                                 |
|       | 11 | at the unit.  Unfortunately, the Warden has had a family                     |
|       | 12 | emergency and we had to reschedule that for Monday.                          |
|       | 13 | Because the walk-through is going to be                                      |
|       | 14 | walking into maintenance areas and we have an HVAC                           |
| 16:12 | 15 | professional that was going to attend with us and bring some                 |
|       | 16 | equipment that measures not only temperature and humidity,                   |
|       | 17 | it's not merely a unit visit and, so, it's not --                            |
|       | 18 | Plaintiffs' counsel can go to visit a unit at any time by                    |
|       | 19 | submitting attorney-client paperwork, but because this                       |
| 16:12 | 20 | walk-through is much more involved than a simple unit visit,                 |
|       | 21 | we have to have the Warden.  We need to move it until Monday                 |
|       | 22 | to get everything together.                                                  |
|       | 23 | As far as temperature logs that the Plaintiffs                               |
|       | 24 | have requested, our position is that the settlement                          |
| 16:13 | 25 | agreement does not require TDCJ to keep or maintain                          |

```
 1    temperature logs at a unit that has permanent
 2    air-conditioning.
 3              THE COURT:  Okay.  Well, my concern is -- I
 4    appreciate what you said, but my concern really is, if the
 5    logs are not going to be produced, tell me what you
 6    understand the temperature to be.  That's the point you
 7    haven't addressed.
 8              Is there some defect in the air-conditioning
 9    now?
10              MS. O'LEARY:  To the extent that there is
11    maintenance or issues with the air-conditioning, there's no
12    areas that don't have air-conditioning right now.
13              Just now, before we got on the phone with the
14    Court, TDCJ suggested that they could move the members of
15    the class to a different housing area within the Leblanc
16    Unit that does seem to be cooler.
17              THE COURT:  Well, tell me what's the problem.  Why
18    is one part of it hot?  What's the problem?  Is the
19    air-conditioning --
20              MS. O'LEARY:  Well, it's all air-conditioned, Your
21    Honor.  However, one area does seem -- they're getting more
22    complaints from offenders.  As the Plaintiffs' class counsel
23    are getting complaints, TDCJ always receives the same type
24    of complaint.
25              And, so, in one area they have not figured out
```

1 what's wrong with the air-conditioning. It seems to be
2 running, but it does seem to not be cooling as the others.
3 So, as an immediate fix, TDCJ has suggested that they move
4 the class members to the other housing areas that there
5 doesn't seem to be any complaints about the
6 air-conditioning.
7           And I apologize for not having that
8 information before we started this call. I certainly did
9 not intend to delay that information.
10           THE COURT: Ms. O'Leary, I don't think you're at
11 fault. That's not my intention at all, to assume that.
12           In terms of the inspection, I really don't
13 understand why the Warden needs to be there. Surely he's
14 got trusted staff who could cover for him. No?
15           MS. O'LEARY: Possibly, Your Honor. Because he was
16 not able to be there and because it's somewhat of an
17 involved walk-through at the unit where we are taking class
18 counsel into areas other than just the housing areas --
19 Class counsel has requested to see the area-conditioning
20 systems and things like that. I have just been told that
21 because it's a much more involved walk-through that the
22 Warden would need to be present, which is why it was
23 postponed for four days.
24           TDCJ is certainly not refusing them access.
25 TDCJ is trying to cooperate to get them the information that

|  |  |
|---|---|
| | 1   they need.  Temperature logs, however, are not something |
| | 2   that are done regularly.  There is not thermostats that |
| | 3   automatically grab and record temperatures.  My |
| | 4   understanding is that maintenance personnel are required to |
| 16:16 | 5   go view the temperatures.  And, so, that's the reason that |
| | 6   the easy fix is not just to do temp logs for the next four |
| | 7   days. |
| | 8           THE COURT:  Mr. Edwards. |
| | 9           MR. EDWARDS:  Well, Your Honor, this is even more |
| 16:16 | 10  concerning than when we wrote the e-mail.  Now what I am |
| | 11  learning is that TDCJ has gotten numerous complaints and |
| | 12  that TDCJ affirmatively knows that portions of the Leblanc |
| | 13  Unit are, actually, cool and some portions are not, making |
| | 14  the need for temperature data far more important than, |
| 16:16 | 15  frankly, before the call. |
| | 16          One of the problems here, we're back to -- I |
| | 17  mean, I can't believe I am saying this, but it appears that |
| | 18  we're back to Square One with -- |
| | 19          And let me again echo what you've said.  I |
| 16:17 | 20  respect, Ms. O'Leary, and she is, unfortunately, telling you |
| | 21  things that are being told to her and we're back to this |
| | 22  situation where TDCJ is expecting and asking Plaintiffs' |
| | 23  counsel to simply believe them and take their word for |
| | 24  things when, given the history -- and I do not want to |
| 16:17 | 25  relitigate this case -- but given the history, that's |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | simply something that is untenable on objective grounds at    |
|       | 2  | this point.                                                   |
|       | 3  | Here, again, the concern that we have is that                 |
|       | 4  | inmates who are in the class, who are entitled to             |
| 16:17 | 5  | air-conditioning where temperatures, heat indexes below       |
|       | 6  | [verbatim] 88 degrees, are in danger.  Okay?                  |
|       | 7  | TDCJ cannot even tell you what the temperature                |
|       | 8  | is in the housing areas for purposes of this hearing.  We     |
|       | 9  | have been asking for that information for a significant       |
| 16:17 | 10 | period of time prior to this call.                            |
|       | 11 | I understand TDCJ, through Ms. O'Leary's                      |
|       | 12 | position, that they're not obligated to give us anything      |
|       | 13 | and, so, they're taking, out of some misguided fear, that     |
|       | 14 | providing us some information will create some precedent      |
| 16:18 | 15 | that they then have to continue to provide us information --  |
|       | 16 | That is their worry or what's been relayed to us or what I    |
|       | 17 | am trying to decipher is their concern.  But the reality is   |
|       | 18 | we have a heat advisory in Beaumont.  We have a very real     |
|       | 19 | danger.  We have an acknowledged risk by TDCJ that portions   |
| 16:18 | 20 | of the prison are hotter than others.                         |
|       | 21 | The proposed solution is let's move the class                 |
|       | 22 | members to the cool, safe area of the prison.  By all means   |
|       | 23 | they should do that.  But we should go forward with the       |
|       | 24 | inspection so that we can see the housing areas that they     |
| 16:18 | 25 | were in to see if TDCJ is in compliance with the settlement   |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | agreement.                                                   |
|       | 2  | Again, all we're talking about with regards to               |
|       | 3  | these inspections are verification of heat indexes, which    |
|       | 4  | they should be able to tell this court or us, frankly, on a  |
| 16:19 | 5  | moment's notice, and we need to verify that the temperatures |
|       | 6  | that the thermometers are saying are consistent with what's  |
|       | 7  | being reported. This is not a lengthy inspection, but from   |
|       | 8  | our standpoint it needs to happen. I think even TDCJ         |
|       | 9  | acknowledges it happen.                                      |
| 16:19 | 10 | Again, with regards to why it can't go forward               |
|       | 11 | tomorrow, Plaintiffs' counsel does not accept TDCJ's         |
|       | 12 | explanation that the Warden needs to be there. There is no   |
|       | 13 | reason that an assistant warden or another warden from       |
|       | 14 | another prison or a more high-ranking official than a warden |
| 16:19 | 15 | couldn't be in the housing area. I don't think there is a    |
|       | 16 | safety concern and I don't think there is a legitimate       |
|       | 17 | concern.                                                     |
|       | 18 | As to the engineers, the air-conditioning                    |
|       | 19 | engineers that TDCJ was going to bring, TDCJ suggested this  |
| 16:20 | 20 | date. TDCJ was the one who said Thursday at the Leblanc      |
|       | 21 | Unit or at least agreed to that date when we said that's as  |
|       | 22 | long we can wait.                                            |
|       | 23 | Again, I hope nothing were to happen over the                |
|       | 24 | next four days, but from Plaintiffs' perspective, given what |
| 16:20 | 25 | TDCJ's people have represented to Ms. O'Leary, I very much   |

|    |    |    |
|----|----|----|
|       | 1  | think that this needs to go forward tomorrow and that there |
|       | 2  | be some discussion as to, you know, what perhaps Plaintiffs' |
|       | 3  | counsel is entitled to in terms of trying to monitor these |
|       | 4  | facilities. |
| 16:20 | 5  | I don't want to have to come -- I mean, I |
|       | 6  | certainly hope we don't have to come back to the Court when |
|       | 7  | all we're trying to do is verify whether or not complaints |
|       | 8  | are legitimate.  We're five hours away, roughly, from the |
|       | 9  | Leblanc Unit.  It's not something that we can easily just go |
| 16:21 | 10 | and check. |
|       | 11 | When we did go there on the 19th the |
|       | 12 | complaints seemed legitimate to us.  We interviewed a number |
|       | 13 | of inmates.  In response to that, here's what was refused to |
|       | 14 | us: |
| 16:21 | 15 | Under no circumstances would TDCJ provide any |
|       | 16 | documents substantiating work done on the air-conditioning. |
|       | 17 | Under no circumstances would they alert us to when |
|       | 18 | air-conditioning problems are done or when they're notified |
|       | 19 | of them.  Under no circumstances would they take |
| 16:21 | 20 | temperatures, document them and provide them to either us or |
|       | 21 | the Court. |
|       | 22 | That's what we were told.  And, so, you know, |
|       | 23 | given the situation -- |
|       | 24 | MS. O'LEARY:  I am going to have to interrupt -- |
| 16:21 | 25 | THE COURT:  Okay.  All right.  I think I understand |

1  your point, Mr. Edwards.

2  Ms. O'Leary, do you want to say something?

3  MS. O'LEARY: We have provided a spreadsheet of all

4  of the maintenance and work on air-conditioning that was

16:21  5  performed at the Leblanc Unit over the past month. That

6  spreadsheet indicated what the problem was, when it was

7  reported and the time and date that it was resolved. And,

8  so, that was provided. So, the statement that under no

9  circumstances would we provide it -- that's just not true.

16:22  10  Secondly, to the extent that the Plaintiff or

11  the Court perceived there to be an emergency situation

12  because of the heat advisory, that is certainly allayed by

13  moving the offenders to a different housing area.

14  And, so, absent the emergency, there is no

16:22  15  reason why the walk-through can't be rescheduled for Monday

16  when TDCJ is able to get everybody that it feels

17  necessary --

18  THE COURT: Ms. O'Leary, is the only reason that

19  tomorrow is not good the Warden's unavailability?

16:22  20  MS. O'LEARY: No, Your Honor. All of the high-

21  level executive officials at TDCJ are out of the state

22  attending the ACA conference, which is the American

23  Correctional Association conference, and by Monday they'll

24  be back. And, so, there was some concern that during the

16:23  25  walk-through, if we need to get permission to enter a

```
         1   certain area or if there's questions, then those high-level
         2   officials would be available during the walk-through.
         3              THE COURT:  Well, why did --
         4              MS. O'LEARY:  The secondary reason that --
16:23    5              THE COURT:  Well, Ms. O'Leary, if that is true, why
         6   did you originally agree to Thursday as the date?
         7              MS. O'LEARY:  I'm not sure, Your Honor.  That's --
         8   I'm not sure.  I think, if the only reason was the ACA
         9   conflict, then it wasn't an issue and it was scheduled for
16:23   10   Thursday.  But now the combination of the Warden being
        11   unavailable and the ACA, that's the reason for the request
        12   for the reschedule.
        13              THE COURT:  Well, I'm sorry, but I am going to have
        14   to deny your request.
16:23   15              The inspection will proceed as scheduled
        16   tomorrow.  And I'll be here in case there's anything I need
        17   to rule on during the course of the day.
        18              Thank you all very much.  Thank you.
        19              MS. O'LEARY:  Yes, Your Honor.
16:24   20              MR. EDWARDS:  Thank you, Your Honor.
        21                    COURT REPORTER'S CERTIFICATE
                  I, BRUCE SLAVIN, certify that pursuant to
        22   28 USC § 753 the foregoing is a correct transcript from the
             record of proceedings in the above entitled matter, to the
        23   best of my ability.
        24
                                         s/Bruce Slavin
        25                               BRUCE SLAVIN, RPR, CMR
```