UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KEITH COLE, *at al*, § § § Plaintiffs, § § § v. § § § BRYAN COLLIER, in his official capacity, *et al.*, § § § Defendants. § | CIVIL ACTION NO. 4:14-cv-1698 |

**PLAINTIFFS' RESPONSE
IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**

I.  **SUMMARY OF THE ARGUMENT**

Plaintiffs submitted 74 exhibits in support of a motion for contempt, to show cause, and for sanctions. Doc. 1459. Defendants (hereafter, TDCJ) move to strike 25 of these exhibits on various grounds. Doc. 1473. The Court should deny Defendants' motion to strike and overrule their groundless objections to the evidence for three reasons:

First, Defendants' contention that exhibits contain inadmissible hearsay is unfounded. Rather, numerous out of court statements are offered to show notice to TDCJ, many others are admissions by party opponents or statements against interest by TDCJ's agents, and the remainder are government records. Thus, each is either non-hearsay or admissible under hearsay exceptions.

Second, Plaintiffs' demonstrative tables accurately summarize TDCJ's own records and government weather data—all admissible evidence before the Court. No sponsor is needed for demonstratives addressing issues that will be decided without a jury.

Finally, TDCJ has now admitted it misrepresented the schedule of the ACA conference. The Court should admit the ACA documents proving that misrepresentation under the residual hearsay exception, and as non-hearsay primarily offered to prove notice.

**TABLE OF CONTENTS**

I. SUMMARY OF THE ARGUMENT .................................................................................... i

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES ................................................................................................. iii

II. STANDARD OF REVIEW ............................................................................................... 1

III. ARGUMENT AND AUTHORITIES ............................................................................. 1

   A. Defendants' boilerplate hearsay objections to the declarations, Exhibits 1, 2, 5, 8, 9, 60, 63, and 66– 71, should be overruled as waived and meritless. ........................... 2

      1.  TDCJ has waived its objections to hearsay by failing to brief them. ........................... 2

      2.  The declarations do not contain inadmissible hearsay. .................................................. 3

   B. Defendants' objections to the summary documents 15, 16, 17, 18, 24, 25 and 55 are meritless. ......................................................................................................................... 7

      1. Exhibit 15 – Summary of Non-Evacuee Inmates' BMI According to TDCJ's Sep. 7, 2017 Roster. ................................................................................................................ 8

      2. Exhibits 16, 17, 18, and 55 – Summaries of Daily Maximum Heat Index from August 29, 2017 to October 23, 2017, and for LeBlanc Area May 15, 2019 to June 12, 2019. ........... 9

      3.  Exhibits 24 and 25 – Summaries of Mishoused Inmates. ............................................ 10

      4.  Exhibit 37 – Table of Class Member Locations; TDCJ objects to their own document .. ................................................................................................................................ 11

   C.  The government publications, Exhibits 14, 32, 50, and 53, are all admissible. ......... 11

   D.  Exhibits 44 and 45 are offered for impeachment and should be accepted under the residual exception to hearsay. ......................................................................................... 12

IV. CONCLUSION ................................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**

*Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574 (5th Cir. 2000) ............................................ 1

*Amaretto Ranch Breedables v. Ozimales*, 907 F.Supp.2d 1080 (N.D. Cal. 2012) .......................... 2

*Anderson v. Dallas Cty., Texas*, No. 3:05-CV-1248-G, 2007 WL 1148994 (N.D. Tex. Apr. 18, 2007) ..................................................................................................................................... 3

*Baulch v. Johns*, 70 F.3d 813 (5th Cir. 1995) .................................................................................. 1

*Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) ............................................................. 8, 11

*Chapman v. A.S.U.I. Healthcare & Dev. Ctr.*, 562 F. App'x 182 (5th Cir. 2014) .......................... 7

*Flooring Sys., Inc., v. Chow*, No. 4:12–CV–475, 2013 WL 4674667 (E.D.Tex. Aug. 27, 2013) .. 3

*Hawk Aircargo, Inc. v. Chao.*, 418 F.3d 453 (5th Cir. 2005) ..................................................... 8, 11

*Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, No. 4:08–cv–243, 2009 WL 901128 (E.D.Tex. Mar. 30, 2009) ........................................................................................................ 3

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795 (E.D. Tex. 2014) .......... 3

*Miles Bramwell USA, LLC v. Weight Watchers Int'l, Inc.*, No. 4:12–CV–292, 2013 WL 1797031 (E.D.Tex. Mar. 27, 2013) ........................................................................................................ 3

*Nearstar, Inc. v. Waggoner*, No. 4:09-cv-218, 2011 WL 817374 (E.D.Tex. Mar. 2, 2011) .......... 3

*Paske v. Fitzgerald*, No. CIV.A. H-12-2915, 2014 WL 1366552 (S.D. Tex. Apr. 7, 2014) .......... 3

*Ryals v. United States,* 69 F.2d 946 (5th Cir. 1934) ....................................................................... 1

*Tucker v. SAS Inst., Inc.*, 462 F. Supp. 2d 715 (N.D. Tex. 2006) ................................................... 3

*United States v. Avants*, 367 F.3d 433 (5th Cir. 2004) ................................................................... 2

*United States v. Lewis*, 796 F.3d 543 (5th Cir. 2015) ................................................................ 1, 3

*United States v. Lynn*, 608 F.2d 132 (5th Cir. 1979) ..................................................................... 1

*Western Water Management, Inc. v. Brown*, 40 F.3d 105 (5th Cir. 1994) .................................... 4

**Rules**

FED. R. EVID. 801 ........................................................................................................................ 1, 3

FED. R. EVID. 803 ................................................................................................................. 4, 6, 11

FED. R. EVID. 807 ....................................................................................................................... 12

## II.   STANDARD OF REVIEW

This Court has discretion in the decision to admit or exclude evidence. *See MCI Commc'ns Servs., Inc. v. Hagan*, 641 F.3d 112, 117 (5th Cir.), *certified question accepted*, 2011-1039 (La. 7/1/11), 64 So. 3d 234, *and certified question answered*, 2011-1039 (La. 10/25/11), 74 So. 3d 1148. The application of the rules of evidence may be somewhat curtailed in the context of contempt, because "[c]ontempt proceedings are naturally 'summary in form and swift in execution.'" *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 583 (5th Cir. 2000) (quoting *Ryals v. United States,* 69 F.2d 946, 947 (5th Cir. 1934)). Likewise, "[w]e do not require district courts to find that authenticity is conclusively established before allowing the admission of disputed evidence." *Baulch v. Johns*, 70 F.3d 813, 816 (5th Cir. 1995).

"[A]n evidentiary objection must 'state[ ] the specific ground, unless it was apparent from the context.'" *United States v. Lewis*, 796 F.3d 543, 545 (5th Cir. 2015).

## III.   ARGUMENT AND AUTHORITIES

After over a year of refusing to answer questions or provide virtually any documentation concerning ongoing violations of the settlement agreement, TDCJ now ludicrously objects that Plaintiffs' evidence does not comport with the agency's improperly narrow reading of the Federal Rules of Evidence. TDCJ's objections are meritless, as Plaintiffs have offered extensive admissible evidence in spite of TDCJ's obfuscation. Moreover, TDCJ's position also runs contrary to the nature of contempt proceedings and further strongly militates towards reopening discovery to eliminate TDCJ's ability to hide evidence from the Court. If any of TDCJ's objections have an iota of merit (though they do not), that is simply another reason to grant the motion to show cause as it further demonstrates the necessity of additional discovery.

The Court should deny the motion to strike and overrule TDCJ's objections.

## A. Defendants' boilerplate hearsay objections to the declarations, Exhibits 1, 2, 5, 8, 9, 60, 63, and 66– 71, should be overruled as waived and meritless.

The Court should deny TDCJ's motion and overrule the objections to thirteen declarations (exhibits 1, 2, 5, 8, 9, 60, 63, and 66–71, *see* Doc. 1459), which TDCJ conclusorily claims contain "inadmissible hearsay within hearsay," without further explanation. This perfunctory briefing is inadequate, failing to even identify the allegedly objectionable portions of the declarations. Even if there were inadmissible hearsay in a part of a declaration, which has certainly not been established (or even argued), *only that portion* of that declaration should be disregarded. In any event, there is no inadmissible hearsay in the declarations.

### 1. TDCJ has waived its objections to hearsay by failing to brief them.

TDCJ has waived its hearsay objection because it fails to complain with any specificity, apparently demanding counsel and the Court to read each declaration and guess at random as to which parts Defendant contends are inadmissible. "Evidentiary objections must be specific." *United States v. Avants*, 367 F.3d 433, 445 (5th Cir. 2004). "This Court need not address boilerplate evidentiary objections that the parties themselves deem unworthy of development." *Amaretto Ranch Breedables v. Ozimales*, 907 F.Supp.2d 1080, 1081 (N.D. Cal. 2012); *see also Paske v. Fitzgerald*, No. CIV.A. H-12-2915, 2014 WL 1366552, at *5 (S.D. Tex. Apr. 7, 2014) (Weirlein, J.), *aff'd*, 785 F.3d 977 (5th Cir. 2015) ("Because Defendants do not specify which of their objections apply to which of the numerous statements they identify, their objections are OVERRULED").[1]

---

[1] *See also Tucker v. SAS Inst., Inc.*, 462 F. Supp. 2d 715, 722 (N.D. Tex. 2006) ("The court is not required to review large quanta of evidence to ferret out inadmissible statements."); *Anderson v. Dallas Cty., Texas*, No. 3:05-CV-1248-G, 2007 WL 1148994, at *4, nn.2–3, 5 (N.D. Tex. Apr. 18, 2007), *aff'd*, 286 F. App'x 850 (5th Cir. 2008) (disregarding numerous nonspecific evidentiary objections).

2

Even for some of the shortest declarations, counsel is frankly unsure what the hearsay objections could possibly concern. For example, class Member Randall Anderson's declaration, Exhibit 9, does not refer to any out of court statements by anyone (much less hearsay statements), but TDCJ still nonetheless objects. Doc. 1459-9; Doc. 1473, p. 1.

The Court should deem the vague objections waived even if TDCJ should offer additional detail in reply briefing or oral argument. "Failure to raise an argument in a motion waives the argument; raising it for the first time in a reply memorandum is too late." *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795, 811 (E.D. Tex. 2014);[2] *see also Lewis*, 796 F.3d at 545 (5th Cir. 2015).

### 2. *The declarations do not contain inadmissible hearsay.*

In an abundance of caution, examination of the declarations shows that TDCJ's objections are also completely meritless based upon three principles.

First, the Defendants must certainly bear the consequences of the statements of their employees and authorized agents, as such statements are simply not hearsay. FED. R. EVID. 801(d)(2)(A)-(E); *United States v. Lynn*, 608 F.2d 132, 135 (5th Cir. 1979).

Second, a critical issue in the question of sanctions and contempt is notice to TDCJ that violations were occurring. Accordingly, Plaintiffs have offered evidence of those out-of-court statements primarily to show notice, rather than the truth of the matter asserted, because the fact of the violations is established by the first-hand knowledge of the declarants and other evidence. Defendants' failure to even dispute these cumulative allegations militates towards admission,

---

[2] *Citing Flooring Sys., Inc., v. Chow*, No. 4:12–CV–475, 2013 WL 4674667, at *1, n.2 (E.D.Tex. Aug. 27, 2013); *Miles Bramwell USA, LLC v. Weight Watchers Int'l, Inc.*, No. 4:12–CV–292, 2013 WL 1797031, at *4 (E.D.Tex. Mar. 27, 2013); *Nearstar, Inc. v. Waggoner*, No. 4:09-cv-218, 2011 WL 817374, at *4 (E.D.Tex. Mar. 2, 2011); *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, No. 4:08–cv–243, 2009 WL 901128, at *2, n.1 (E.D.Tex. Mar. 30, 2009).

3

particularly in a contempt proceeding. *See, e.g.*, *Western Water Management, Inc. v. Brown*, 40 F.3d 105, 109 (5th Cir. 1994) (affirming admission of cumulative, uncontroverted affidavits despite objections).

Third, an out-of-court statement of the declarant's then-existing physical condition is an exception to hearsay. FED. R. EVID. 803(3).

Exhibit 1, class member Thelonious Henry's declaration, refers to a TDCJ employee who told the declarant that a part for the air conditioning was broken. Doc. 1459-1, p. 3. TDCJ's employees are its agents, so this is not hearsay. *See* FED. R. EVID. 801(d). Moreover, this statement is not offered primarily for its truth. TDCJ has itself offered evidence that *many* parts were broken in the air conditioning at LeBlanc Unit throughout the summer. *See, e.g.*, Exhibit X, Doc. 1472-35, pp. 2–3, 6, 10, 30, 68, 69, 71–78. That fact itself is not in reasonable dispute. But the fact that a TDCJ employee would readily admit this to Mr. Henry raises doubt as to TDCJ's executives' professed ignorance (or at least suggests no one asked).

Exhibit 2, class member Darrell Armstrong's declaration, refers to an out of court statement *by the declarant* on page 2, stating "I have told TDCJ staff at Stiles that the air conditioning is not working"—the underlying statement is obviously not offered for the truth of the matter asserted, because Mr. Armstrong attests to that directly on page 1. Instead, the fact that Mr. Armstrong made the statement to TDCJ's agent is evidence of notice. Mr. Armstrong also describes being forbidden from taking cold showers and accessing respite areas, which are, at best, evidence *that he was told no*, not an underlying fact stated by someone else, and also an admissible statement of TDCJ's agent. *See* FED. R. EVID. 801(d).

Exhibit 5, class member John Crocker's declaration, similarly refers to TDCJ officers refusing inmates access to cold showers and respite areas. Doc. 1459-5, pp. 2–3. These are also

admissible statements of TDCJ's agents, to the extent they are even asserting some underlying fact. *See* FED. R. EVID. 801(d). The fact that the statements were made is the probative fact: TDCJ was denying inmates mitigation steps contrary to the settlement agreement.

Exhibit 8, class member Kenneth Abbott's declaration, refers to the assistant warden's wordless, sarcastic response to an inmate complaining about the failing air conditioning: pouring a bottle of water out on his arm. Doc. 1459-8, p. 3. To the extent this is a statement at all (rather than an action Mr. Abbott observed and can certainly testify to), it was made by a TDCJ official. Exhibit 8 also refers to inmate statements that are directly relevant because they were made—whether they are true or not—because they go to both TDCJ's notice and indifference. If the assistant warden was told about problems with air conditioning, and his only response was to sarcastically empty a bottled water onto his arm, that is direct evidence of the warden's indifference—it is not offered to show the air conditioning problem (which, again, is widely proven by other evidence and Mr. Abbott's direct, sworn statement).

Exhibit 60, class member Dave Shepherd's declaration, refers to overhearing a TDCJ staff person or contractor—agents of the opposing party—say temperatures were 95° F while inside the housing area. Doc. 1459-60, p. 3. This is an admissible statement of a party opponent and a statement against interest, and thus non-hearsay. *See* FED. R. EVID. 801(d).

Exhibit 63, class member Gary Butaud's declaration, refers to what Mr. Butaud himself told TDCJ. Doc. 1459-63, p. 3. This is evidence of notice of the problem on the bus. Obviously, Plaintiffs are not offering the officer's incorrect response, "it's not hot," for the truth of the matter asserted (particularly because the statement was false), but rather for the fact that the statement was made by a TDCJ officer, so the officer's statement is not hearsay. In any event, it was made by a party opponent—and is by definition non-hearsay. *See* FED. R. EVID. 801(d).

Exhibit 66, class member Michael Denton's declaration, also refers to overhearing a "LeBlanc Unit Maintenance HVAC Supervisor"—a TDCJ employee—say he has tried everything to fix the A/C. Doc. 1459-66, p. 3. The same declaration also refers to TDCJ officers refusing respite—to the extent those refusals are even referring to a fact (rather than being the fact), those officers are agents of TDCJ, and their statements are non-hearsay. *Id. See* FED. R. EVID. 801(d).

Exhibit 67, class member Randall Anderson's declaration, likewise is quoting a TDCJ officer: "I don't give a fuck about your heat restrictions. Fuck you and your lawsuit." Doc. 1459-67, p. 3. That statement was made by a TDCJ agent in the course of that agent's work for TDCJ, an admissible statement of a party opponent and a statement against interest. *See* FED. R. EVID. 801(d). The TDCJ officer's refusal of respite because she "do[es]n't give a fuck about your heat restrictions" is, furthermore, relevant because the statement was made. Exhibit 67 also refers to overhearing another inmate complain of chest pains on the bus with malfunctioning air conditioning. Doc. 1459-67, p. 3. Although this is also admissible as a then-existing physical condition, FED. R. EVID. 803(3), it is primarily offered to show that the TDCJ officers on the bus could have heard, and therefore had notice of, the same complaint.

Exhibit 68, class member Rell Angton, Jr.'s declaration, refers to hearing other inmates complain directly to Warden Benjamin at the LeBlanc Unit about the heat. Doc. 1459-68, p. 3. This is evidence of notice; it is not offered to independently show that the heat was excessive— Mr. Angton and the other declarants attest to their personal knowledge of the heat. *Id.* at 2.

Similarly, Exhibit 69, class member Travis Williamson's declaration, refers to a direct complaint to Warden Benjamin about the heat at LeBlanc, which goes to notice. Doc. 1459-69, p. 3. It also contains the then-existing physical condition of the person with chest pains on the bus, which is likewise relevant primarily for notice.

Exhibits 70 and 71, Class Counsel's declarations, recount several communications from TDCJ's counsel—obviously the opposing party's agent. Doc. 1459-70, pp. 3–6; Doc. 1459-71, p. 3. They also include references to class members and other informants to explain the actions counsel took. Doc. 1459-70; Doc. 1459-71. Plaintiffs do not ask the Court to consider the substance of these non-party or class member statements for the truth of the matter asserted, but rather to show the fact that the statements were made. These statements provide important context and show that TDCJ had notice of these issues, yet continued to make it as difficult as possible for Plaintiffs' counsel to uncover the truth. The volume of these statements also suggests that, by comparison, TDCJ had extensive notice of the problems being reported.

> **B.      Defendants' objections to the summary documents 15, 16, 17, 18, 24, 25 and 55 are meritless.**

Plaintiffs' summaries are demonstrative exhibits that specifically refer to admissible evidence—in most cases even with pin-cites or, for weather records, dates and locations. Moreover, the underlying evidence is obviously voluminous, as can be seen from that evidence which is filed or linked to. The Court will not benefit from counsel filing thousands of pages of weather records, nor has TDCJ disputed Plaintiffs' summary of the freely available weather data. The other information summarized in the chart is based on TDCJ's own records, which have been filed with the Court. In this context, where the issues surrounding TDCJ's contempt will be decided by the Court, no authentication or sponsorship of the summaries themselves is necessary. *See, e.g.*, *Chapman v. A.S.U.I. Healthcare & Dev. Ctr.*, 562 F. App'x 182, 186 (5th Cir. 2014) (affirming admission of summary charts in a bench trial without any sponsoring witness, where the underlying admissible records were available for the district court to examine).

In an abundance of caution, Plaintiffs will repeat what is self-explanatory from the demonstratives: Each exhibit is accurate and based upon admissible, voluminous evidence.

          1.      *Exhibit 15 – Summary of Non-Evacuee Inmates' BMI According to TDCJ's Sep. 7, 2017 Roster.*

Exhibit 15 simply performs a widely accepted mathematical calculation of BMI for 122 inmates based upon TDCJ's own records of height and weight, then endeavors to[3] cite to the specific pages showing that inmate's presence at the (then-un-air-conditioned) Pack Unit in 2017. Doc. 1459-15.

For example, for Mr. Lawrence Butler, on page 1, the summary lists his height as 73 inches, with a weight of 294 pounds. Doc. 1459-15, p. 1. The document copies these numbers from Exhibit 12—TDCJ's own records—and points to the Bates labeled page 133643 of that exhibit, which confirms that this personal information is correct. Doc. 1459-12, p. 5 (HT, 6 ft. 1 in., WT, 294). Next, the table reflects the BMI based upon the National Institutes of Health formula—a government record[4]—703 times the weight divided by height squared. Doc. 1459-14, p. 11. This yields the unsurprising conclusion that a 294-pound man is obese, with a BMI of over 38. Doc. 1459-15, p. 1; Doc. 1459-14, p. 11. The table finally shows that, nevertheless, TDCJ left Mr. Butler at the Pack Unit contrary to the injunction—he was there on August 8, long before Hurricane Harvey made landfall, and *still* there on both September 7 and November 1—by referring to the corresponding TDCJ records in Exhibits 11, 12, and 13.

Accordingly, TDCJ's charge that the information in this chart "is unknown and unidentified" is doubly wrong. Doc. 1473, p. 2. The information is TDCJ's and is specifically

---

[3] Due to a clerical oversight, pin cites were missing for five inmates at the bottom of the chart. The pin cite was also incorrect for Mr. Williams. Plaintiffs offer the attached substitute chart for Exhibit 15 to remedy these inadvertent omissions.

[4] Government records like these are an exception to hearsay, FED. R. EVID. 803(8); self-authenticating, FED. R. EVID. 902(5); and, if from a government website, amenable to judicial notice. *See Hawk Aircargo, Inc. v. Chao.*, 418 F.3d 453, 457 (5th Cir. 2005); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005).

identified; all the chart does is condense information from TDCJ's own records and illustrate basic arithmetic. The headings of the chart clearly identify the underlying documents and Plaintiffs have even pin cited those documents using TDCJ's Bates labeling.

> 2. *Exhibits 16, 17, 18, and 55 – Summaries of Daily Maximum Heat Index from August 29, 2017 to October 23, 2017, and for LeBlanc Area May 15, 2019 to June 12, 2019.*

Exhibits 16, 17, and 18 are presented for the Court's convenience to summarize the daily outdoor maximum heat index from ten different locations in Texas in 2017—Plaintiffs copied all of the temperature and humidity data from the National Weather Service. *See, e.g.*, National Weather Service, *Local Climatological Data Station Details* (last accessed, August 21, 2019), *available at* https://www.ncdc.noaa.gov/cdo-web/datasets/LCD/stations/WBAN:53928/detail (showing the Brenham station). This source is a government website of which the Court should take judicial notice. *See supra* at p. 8, n.4 & FED. R. EVID. 201. The heat index, in turn, is calculated with the National Weather Service formula (another government website). National Weather Service, *The Heat Index Equation* (last accessed, August 21, 2019), available at https://www.wpc.ncep.noaa.gov/html/heatindex_equation.shtml. Although Plaintiffs will make this freely downloadable data available upon request, Defendants have not requested it. Doc. 1459, p. 21, n.83.

Unsurprisingly, these summaries show that the outdoor heat index frequently exceeded 88 degrees in the summer of 2017 at prison locations throughout Texas.

Likewise, Exhibit 55 is similarly a summary of the outdoor maximum heat index in Beaumont leading up to the LeBlanc Unit inspection in 2019, as reported by the NWS and calculated from the NWS Heat Index Equation. Doc. 1459-55. The Court should take judicial notice of the underlying information from a government website. FED. R. EVID. 201 & *Coleman v.*

*Dretke*, 409 F.3d 665, 667 (5th Cir.) (en banc) (judicial notice of government websites). In an abundance of caution, Plaintiffs supplement their motion with Exhibit 76, the underlying Beaumont weather records.

### 3. *Exhibits 24 and 25 – Summaries of Mishoused Inmates.*

As explained in the endnotes to each exhibit, Exhibits 24 and 25 combine the same admissible information reflected in the summary Exhibits 15 through 18, as well as TDCJ's housing and heat sensitivity records, Exhibits 20 through 23, to summarize the length of time subclass members were likely mishoused in violation of the 2017 injunction. Doc. 1459-24; Doc. 1459-25.

Exhibit 24 summarizes information for each individual inmate. Beginning in the left-most column, Exhibit 24 identifies the names of 190 subclass members, then, in the next column, cites to the specific TDCJ record reflecting each inmate's heat sensitivity. Most are either obese or elderly, but others were identified by TDCJ as subclass members. For example, Mr. Butler is listed as obese, with Exhibit 12 pin-cited as evidence of his heat sensitivity. Doc. 1459-24, p. 2. The next column of Exhibit 24 estimates the number of days Mr. Butler was housed without air conditioning based upon the limited information presented to the Court (which is all TDCJ provided to class counsel): Since Mr. Butler was at Pack on August 8, September 7, and November 1, the document estimates he was at Pack from August 8 through November 1—a total of 63 days during the injunction period, in violation of the Court's orders. *See* Doc. 1459-11, p. 6; Doc. 1459-12, p. 4; Doc. 1459-13, p. 5. (For others, TDCJ has provided complete housing histories or their own complete transfer summary, so this assumption is not necessary. *See* Doc. 1459-21; Doc. 1459-23.) Finally, Exhibit 24, in the right-most column, reflects the total number of those days when the

nearest weather station to that subclass member's housing assignment had a heat index exceeding 88 degrees.

Exhibit 25 summarizes the exact same information, but instead organizes the data by the day, showing the daily tally of subclass members at each prison. Doc. 1459-25.

These exhibits are not speculative; to the contrary, these two exhibits summarize direct evidence that TDCJ violated the 2017 injunction for each subclass member, and that evidence is before the Court. The only estimation goes merely to the *duration* of that violation, and is educated by TDCJ practice—generally keeping inmates in the same prison. (And that estimation is only necessary because TDCJ never provided documentation of the complete housing history for each subclass member. TDCJ can easily answer this question but chooses not to.)

    4.    *Exhibit 37 – Table of Class Member Locations; TDCJ objects to their own document*

TDCJ provided Exhibit 37 to Plaintiffs through counsel, so it is admissible as a statement of a party opponent and presumptively authentic. Plaintiffs submit TDCJ's transmission with the full-length document, of which Exhibit 37 is an excerpt. Ex. 77.

    **C.**    **The government publications, Exhibits 14, 32, 50, and 53, are all admissible.**

TDCJ mistakenly objects to several government publications: Exhibits 14, 32, 50, 53, and 54. Government publications, where they fall within that government agency's duties to report (including the weather and health guidelines for the National Weather Service and National Institutes of Health respectively) are an exception to the rule against hearsay. FED. R. EVID. 803(8). Government publications are also self-authenticating. FED. R. EVID. 902(5). Moreover, each of these exhibits is pulled from government websites and so TDCJ could easily verify them—they are not subject to reasonable dispute and the Court should take judicial notice of them. *See Hawk*

11

*Aircargo, Inc. v. Chao.*, 418 F.3d 453, 457 (5th Cir. 2005); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (en banc).

Astoundingly, TDCJ even objects to the Texas biennium budget as hearsay. This document is also a statement of a party opponent, making it admissible apart from the foregoing exceptions. Doc. 1459-32.

### D. Exhibits 44 and 45 are offered for impeachment and should be accepted under the residual exception to hearsay.

The schedule of the ACA conference is only relevant because TDCJ misrepresented this fact to this Court. Accordingly, Exhibits 44 and 45 are only offered for the purpose of impeachment. Within the narrow confines of this purpose, the Court should admit these documents, which are not subject to reasonable dispute as they are from the ACA's website, under the residual exception to hearsay. FED. R. EVID. 807.

In addition, the ACA website is not primarily relevant to the truth of the matter asserted—which TDCJ has now admitted—instead, it is more probative of notice to TDCJ and TDCJ's counsel, who should have known about the schedule but nonetheless misrepresented the fact to the Court.

### IV. CONCLUSION

TDCJ's objections to the motion for contempt are misplaced and many are outright frivolous. The Court should deny TDCJ's motion to strike and overrule TDCJ's objections.

Dated: November 1, 2019.

Respectfully submitted,

EDWARDS LAW
The Haehnel Building
1101 East 11th Street
Austin, Texas 78702
    Tel.   (512) 623-7727
    Fax.  (512) 623-7729

By: /s/ *Jeff Edwards*
JEFF EDWARDS
State Bar No. 24014406
Attorney-in-Charge
Scott Medlock
State Bar No. 24044783
Michael Singley
Texas Bar No. 00794642
David James
State Bar No. 24092572
Federal ID No. 2496580

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

    By my signature below, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Southern District of Texas.

/s/ *Jeff Edwards*
Jeff Edwards

13