UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH COLE, JACKIE BRANNUM, RICHARD KING, MICHAEL DENTON, FRED WALLACE, and MARVIN RAY YATES, individually and on behalf of those similarly situated, | § § § § § | CIVIL ACTION NO. 4:14-cv-1698 |
| Plaintiffs, | § § | |
| v. | § § | |
| BRYAN COLLIER, in his official capacity, ROBERTO HERRERA, in his official capacity, and TEXAS DEPARTMENT OF CRIMINAL JUSTICE, | § § § § | |
| Defendants. | § | |

## PLAINTIFFS' MOTION TO COMPEL RESPONSES TO QUESTIONS DURING EXAMINATION IN SHOW CAUSE HEARING

### I. SUMMARY OF THE ARGUMENT

TDCJ refuses to identify the individuals who caused misrepresentations to be made to this Court. Privilege does not protect the identity of those who use the attorney client relationship to further a fraud or crime. "A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told." *Clark v. United States*, 289 U.S. 1, 15, 53 S. Ct. 465, 469, 77 L. Ed. 993 (1933).

The Court should order TDCJ to answer the questions posed to Director Collier at the September 10, 2019 hearing.

### II. NATURE AND STAGE OF PROCEEDINGS – TDCJ'S MISTAKEN ASSERTION OF PRIVILEGE

As discussed at length in Plaintiffs' pending motion for contempt, Doc. 1459, TDCJ has repeatedly violated this Court's orders and the settlement agreement. In particular, TDCJ executives knew that temperatures inside the LeBlanc Unit were excessive on August 6, 2019.

1

Nonetheless, TDCJ's counsel falsely told this Court that a planned inspection for August 8, 2019 needed to be rescheduled because agency executives were attending an American Correctional Association trade show while the warden had a family emergency. TDCJ now admits both of those representations were false, but refuses to identify the people responsible for them on the basis of attorney-client privilege.

>These questions to Bryan Collier were not answered on September 10, 2019:
>
>Q. But are you aware that the exact opposite was communicated by the Attorney General's office to us? The exact opposite, sir.
>
>A. I do believe that the agency advised you that we had staff that were out for the American Correctional Association conference. I believe that that communication was happening in TDCJ at a midlevel within our office of general counsel. We had not asked –
>
>Q. Who gave that information, sir? What midlevel general counsel's office employee provided that information to Ms. O'Leary?

Ex. 1, pp. 87:18–88:3.

>Q. Who do you know told Ms. O'Leary that this was a family emergency and [the warden] couldn't be in town?

Ex. 1, p. 90:12–13.

These questions have not been answered by other avenues. Plaintiffs need to know who is causing misrepresentations of basic facts if they are to have any hope of enforcing the settlement.

**III.    STANDARD OF REVIEW**

A communication is only protected by attorney-client privilege if it is "(1) a confidential communication; (2) made to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding." *SEC v. Microtune, Inc.*, 258 F.R.D. 310, 315 (N.D. Tex. 2009) (citing *United States v. Robinson*, 121 F.3d 971, 974 (5th

2

Cir. 1997)). The party asserting privilege bears the burden to prove these elements. *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985).

"The privilege for communications between client and attorney ceases when the purpose of the privilege is abused, when the lawyer becomes either the accomplice or the unwitting tool in a continuing or planned wrongful act." *United States v. Ballard*, 779 F.2d 287, 292 (5th Cir. 1986). "Under the crime-fraud exception to the attorney-client privilege, the privilege can be overcome where communication or work product is intended to further continuing or future criminal or fraudulent activity." *In re Grand Jury Subpoena*, 419 F.3d 329, 335 (5th Cir. 2005) (quoting *United States v. Edwards,* 303 F.3d 606, 618 (5th Cir.2002)); *see also In re Grand Jury Subpoenas*, 561 F.3d 408, 412 (5th Cir. 2009).

"The attorney-client privilege was intended as a shield, not a sword." *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) (internal quotation marks omitted). "[T]he attorney-client privilege is waived when a litigant place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *Id.*; *see also* FED. R. EVID. 502(a); *First Am. CoreLogic, Inc. v. Fiserv, Inc.*, No. 2:10-CV-132, 2010 WL 4975566, at *3 (E.D. Tex. Dec. 2, 2010); *Nalco Co. v. Baker Hughes Inc.*, No. 4:09-CV-1885, 2017 WL 3033997, at *4 (S.D. Tex. July 18, 2017).

The application of the attorney-client privilege, the crime-fraud exception, and waiver are fact questions, so this Court's decision on those issues would only be reviewed for clear error on appeal. *Id.*; *United States v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002).

## IV.   ARGUMENT AND AUTHORITIES

TDCJ made multiple misrepresentations to Class Counsel and to the Court related to its violations of the plain terms of the settlement agreement and the Court's orders. These frauds were made through counsel—but the attorney-client relationship does not protect the identity of the people making those communications, particularly because, in this case, they were intended to perpetrate a fraud, so the source of the misleading information should be identified. The Court should find that the communications are not privileged for three reasons.

First, TDCJ has not offered proof to show the statements were privileged. Apparently the agency contends that a communication was made to an attorney, but they have not offered proof that the statement was in the course of the attorney-client relationship or confidential. This is TDCJ's burden. *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985). Indeed, they were not confidential because TDCJ intended that the communications be relayed to Class Counsel and the Court.

Second, the crime-fraud exception applies. Prima facie evidence shows the communications were fraudulent: this was likely an intentionally misleading falsehood directed to Class Counsel and the Court. The warden certainly knew a routine doctor's visit was not a family emergency. *Compare* Doc. 1459-49, Hearing Transcript, August 7, 2019, at 4:10–12 ("the Warden has had a family emergency"); *with* Ex. 1, Hearing Transcript, Sept. 10, 2019, at 85:20–86:4 (denying it was a family emergency). TDCJ executives certainly knew they were not going to be at an ACA trade show after it had ended. *Compare* Doc. 1459-49, Hearing Transcript, August 7, 2019, at 12:20–24 ("All of the high-level executive officials at TDCJ are out of the state attended the ACA conference") *with* Ex. 1, Hearing Transcript, Sept. 10, 2019, at 87:9–15 (explaining Ms. Davis would not have attended the tour regardless) *and* Docs. 1459-44, 1459-45 (publicly available

4

ACA materials showing the show ended August 6). TDCJ has admitted the representations were false. Doc. 1472, p. 2. The Court can certainly infer these misrepresentations were intended to mislead under the circumstances, where both misrepresentations originated just after TDCJ executives confirmed that they were violating the settlement. Early on August 6, 2019, TDCJ still agreed to an inspection. Doc. 1459-48, p. 2. But, suddenly, after an afternoon temperature reading undeniably confirmed the agency was violating the Court order, Doc. 1472-23, the next morning, TDCJ withdrew its agreement. Doc. 1459-51, p. 3. The only reasons TDCJ has offered for this change in position are the false representations; under these circumstances, the Court can infer that these fictions were created *so that* the inspection would be rescheduled.

Third, the entire purpose of those communications was to be disclosed to Class Counsel and the Court, and TDCJ has further put those communications at issue by arguing that they were somehow made in good faith or due to a mistake of counsel, so TDCJ has waived privilege with respect to those communications. FED. R. EVID. 502(a).

"[T]he [attorney-client communication] privilege may be waived if the privilege holder makes factual assertions the truth of which can only be assessed by examination of the privileged communication." *Adam Friedman Associates LLC v. Media G3, Inc.,* 2012 WL 1563942 (S.D.N.Y. May 1, 2012); *see also Starsight Telecast, Inc. v. Gemstar Development Corp.*, 158 F.R.D. 650 (N.D.Cal.1994) (affirmative representations by party and counsel regarding their communications about prior art are more than mere denial, and thus privilege was waived); *Mushroom Associates v. Monterey Mushrooms*, 25 U.S.P.Q.2d 1304, 1992 WL 056397 (N.D.Cal.1992) (privilege waived because party claiming privilege had submitted attorney's declaration with its summary judgment papers); *General Electric Co. v. Hoechst Celanese Corp.*, 15 U.S.P.Q.2d 1673, 1990 WL 154218 (D.Del.1990) (party claiming privilege offered testimony

5

regarding lack of intent, which was more than mere denial and therefore waived privilege); *Smith v. Alyeska Pipeline Service Co.*, 538 F.Supp. 977 (D.Del.1982) (privilege waived when attorney, acting on behalf of client, voluntarily sent information to opposing party), *aff'd*, 758 F.2d 668 (Fed. Cir. 1984).

TDCJ admits to the misrepresentations, but testified that they reported to their counsel accurately. As to the warden's availability, TDCJ testified they told counsel that it was merely "a medical appointment for his daughter, not a family emergency." Hearing Transcript, Sept. 10, 2019, at 86:15–21. TDCJ's counsel likewise attempted to protect their client, explaining, "I may have been the one to characterize it as an emergency." *Id.* at 88:20–21. Even at the September 10, 2019 hearing, TDCJ had not yet admitted to the misrepresentation as to the ACA trade show, but testified, "the person in the general counsel's office communicating with the Attorney General's office was making assumptions that the warden and/or Ms. David need to be there. … when our general counsel came to me and told me about the attempt to postpone, I said, 'Why? Stop. Let them come. Let's go.'" Ex. 1, Hearing Transcript, Sept. 10, 2019, at 93:6–15. TDCJ is attempting to blame its attorneys—either the general counsel's office or the Attorney General's Office[1]—for these misrepresentations. The Court should not permit TDCJ to cherry-pick which part of this subject matter it discloses under the veil of attorney-client privilege.

In this case, there is obviously prima facie evidence of waiver and a fraud. The Court should overrule the assertion of privilege and compel TDCJ to respond to the questions.

---

[1] Based on the representations of Assistant Attorney General Darren McCarty, the Deputy Attorney General for Civil Litigation, Class Counsel at this time (without the benefit of discovery) believes that the client, not the lawyer, fabricated this information.

## V.     CONCLUSION

TDCJ is abusing the attorney-client privilege in order to escape the consequences of lying to Class Counsel and the Court. Permitting TDCJ to do so will jeopardize the settlement, because the same individuals could continue to obfuscate future efforts to enforce the settlement. The Court should overrule TDCJ's assertions of privilege and compel Director Collier to answer the questions posed to him.

Dated: November 1, 2019.

        Respectfully submitted,

        EDWARDS LAW
        The Haehnel Building
        1101 East 11th Street
        Austin, Texas 78702
            Tel.   (512) 623-7727
            Fax.  (512) 623-7729

        By: /s/ *Jeff Edwards*
        JEFF EDWARDS
        State Bar No. 24014406
        Attorney-in-Charge
        Scott Medlock
        State Bar No. 24044783
        Michael Singley
        Texas Bar No. 00794642
        David James
        State Bar No. 24092572
        Federal ID No. 2496580

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

     By my signature below, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Southern District of Texas.

        /s/ *Jeff Edwards*
        Jeff Edwards

**CERTIFICATE OF CONFERENCE**

     The matters raised in this motion were argued before the Court on September 10, 2019. I further conferred with counsel by email, and opposing counsel stated that Defendants are opposed.

        /s/ *Jeff Edwards*
        Jeff Edwards