United States District Court
Southern District of Texas
**ENTERED**
December 11, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH COLE, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-1698 |
| | § | |
| BRYAN COLLIER, *et al*, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM & ORDER**

Pending before this Court is Plaintiffs' Motion for Contempt, to Show Cause, and for Sanctions. (Doc. No. 1459). Plaintiffs allege that Defendants have repeatedly violated the settlement agreement (Doc. No. 989-4) and this Court's orders this past summer by allowing temperatures in units housing class members to exceed 88°F, failing to notify Class Counsel of those excessively hot temperatures, and then misrepresenting conditions and preventing Class Counsel from discovering such violations of the agreement. Defendants have conceded that they violated the terms of the settlement agreement by allowing the temperatures to exceed 88°F for a period of time in July and August 2019 in the LeBlanc Unit and then by failing to notify Class Counsel of those temperatures. They also concede that certain misrepresentations were made to Class Counsel and the Court regarding the temperatures in the LeBlanc Unit, the availability of thermostat temperature readings in the LeBlanc Unit, and the availability of the LeBlanc warden and executive administration officials during a scheduled inspection of the LeBlanc Unit.

For Defendants' violations of the settlement agreement and misrepresentations to both Class Counsel and this Court, Plaintiffs request that the Court find Defendants in contempt, order a show cause hearing, and order various sanctions against Defendants, including fines, discovery,

1

and attorneys' fees. After careful consideration of all filings, evidence presented at the hearings held on this Motion, and applicable law, the Court hereby **GRANTS in part** Plaintiffs' Motion as it relates to attorneys' fees, discovery, and a show cause hearing. The Court **DEFERS** ruling on Plaintiffs' request for a finding of contempt and **DENIES** Plaintiffs' requests for sanctions in the form of fines.

## I.  BACKGROUND

Much has been written about the course of this litigation; the Court will not recount the full facts here. The events that are most relevant to the present Motion occurred in July and August of 2019. In mid-July 2019, Class Counsel began receiving complaints from class members about temperatures in both the Stiles Unit and the LeBlanc Unit. (Doc. No. 1459, at 10–11). Defendants later admitted that the Stiles Unit was having mechanical issues with its chillers beginning in June 2019, and that a temporary rental chiller was not put in place until July 24, 2019. (Doc. No. 1472, at 6–7). However, Defendants failed to report the high temperatures to Class Counsel, as they are required to do by the settlement agreement. (Doc. No. 1459, at 11).

The primary focus of this Motion, however, is on the events that occurred in July and August 2019 in the LeBlanc Unit. In mid-July, Class Counsel reported to Defendants' counsel that class members were complaining of high temperatures in the LeBlanc Unit dorms. (Doc. No. 1459-41, at 2). Defendants represented through their attorneys that temperatures had been maintained at acceptable levels, and that, although there had been a mechanical issue in mid-July, the air conditioning had been repaired immediately. (Doc. No. 1459-41, at 2; Doc. No. 1459-46, at 2). Defendants also provided a document that purported to list all air conditioning work and maintenance issues at the LeBlanc Unit in July 2019, all of which were resolved immediately. (Doc. No. 1459-47, at 3). However, Defendants later revealed that this document was not

comprehensive, and that there were in fact long-standing problems with cooling in the LeBlanc Unit. (Doc. No. 1488, at 8–9). It remains unknown who at the Texas Department of Criminal Justice (TDCJ) made this document. *Id.* at 7.

Class Counsel continued to receive complaints from class members, so they requested a site inspection, and one was scheduled for August 8. (Doc. No. 1459-51, at 7). However, on the morning of August 7, Defendants' counsel notified Class Counsel that, due to a family emergency, the warden would not be able to attend the inspection. *Id.* at 3. In addition, Defendants' counsel stated that senior TDCJ officials were out of town for an American Correctional Association conference. *Id.* Defendants' counsel represented that, for those two reasons, the inspection had to be moved to August 12. *Id.* However, Defendants later admitted that previous representations that the warden had a family emergency, or that the warden and senior TDCJ officials were required to be present for an inspection to take place were false. (Doc. No. 1472, at 2; Doc. No. 1472-19, at 84:16–89:15).

Upon the Court's order, the inspection took place as originally scheduled, on August 8. (Minute Entry 8/7/2019). At the inspection, Class Counsel discovered temperatures that far exceeded the 88°F heat index maximum required by the settlement agreement. (Doc. No. 1472, at 2; Doc. No. 1459, at 14). Class Counsel also discovered that, although Defendants' counsel had stated that LeBlanc Unit staff had been regularly monitoring temperatures, the only thermostats in the Unit were mounted inside the air conditioning components, and thus, were not visible to staff members without assistance from maintenance staff. (Doc. No. 1472, at 2). Defendants have since admitted that the LeBlanc Unit air conditioning system was malfunctioning since at least early August and, despite maintenance conducted throughout the summer, the LeBlanc Unit was not cooled to appropriate temperatures. (Doc. No. 1472, at 2, 8; Doc. No. 1472-23). Defendants also

failed to notify Class Counsel about the air conditioning malfunction or elevated temperatures, in violation of the terms of the settlement agreement. (Doc. No. 1472, at 2).

Defendants have since moved all class members out of the LeBlanc Unit. *Id.* at 8. Defendants have also moved all class members who can live in the Pack Unit back to the Pack Unit, and consolidated the remaining class members into as few units as possible. *Id.* at 10–11. All housing areas where class members reside now have Kestrel thermometers mounted permanently on the walls.[1] *Id.* at 11. These thermometers measure heat indices automatically and download the data onto smart phones via an app. *Id.* Defendants provided Class Counsel with heat index readings from all housing areas with class members on a weekly basis through October 15, 2019. *Id.* at 12. Defendants have also set out various policy changes that will govern the processing of heat-related grievances by class members, housing reassignments of class members, and notification of elevated temperatures in units housing class members. *Id.* at 11–12. However, Defendants have still failed to explain who was responsible for the many misrepresentations made to this Court and to Class Counsel. (Doc. No. 1488, at 11–12, 13–14). They have also failed to reveal how long LeBlanc Unit was out of compliance and how it remained out of compliance for so long without any action on the part of TDCJ. *Id.* at 15–16.

In addition to Defendants' violations in the Stiles and LeBlanc Units, Plaintiffs also allege that Defendants have violated the terms of the settlement agreement by repeatedly transporting class members in buses that are not air conditioned and by failing to provide parole-voted programs for class members in air-conditioned facilities. (Doc. No. 1459, at 17–18). Defendants admit to one instance of using an un-air-conditioned bus to transport class members. (Doc. No. 1472, at 8–

---

[1] Although there are class members at Hospital Galveston, no permanent devices have been installed there because TDCJ does not own the facility. However, temperature and heat index readings are being taken using a handheld device. (Doc. No. 1472, at 11).

9). They claim that the delay in provision of parole-voted programs was due to personnel resignation, not class members' status as class members in this litigation. *Id.* at 10.

## II. LEGAL STANDARD

Federal courts possess inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962). That power includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). Such conduct includes "disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial." *Id.* at 44 (quoting *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987)). Courts must use their inherent power to sanction "with restraint and discretion." *Id.* For example, where a court orders payment of attorneys' fees as a sanction against a party that acted in bad faith, the fees must be compensatory, and not punitive. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). However, courts have the discretion to impose even particularly severe sanctions, where necessary. *See Chambers*, 501 U.S. at 44; *see also Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1412 (5th Cir. 1993) ("The ultimate touchstone of inherent powers is necessity.").

## III. ANALYSIS

There is no dispute that Defendants violated the terms of the settlement agreement, which is enforceable as an order by this Court. Defendants have themselves admitted that they failed to maintain indoor heat index temperatures below 88°F in both the Stiles and LeBlanc Units, failed to notify Class Counsel when temperatures exceeded 88°F, and transported class members on non-air-conditioned buses on at least one occasion. Additionally, Defendants have also admitted that they had previously made several serious misrepresentations to both Class Counsel and this Court.

Defendants' actions not only put class members' lives in danger, but also prevented discovery of these dangerous conditions.

The Court is heartened that Defendants are, finally, being candid and are taking steps to remedy the shortcomings of their internal systems. However, the Court agrees with Plaintiffs that Defendants have yet again violated the clear terms of an agreement that Defendants themselves helped craft. This repeated pattern of violations has serious consequences for individuals in TDCJ's custody. Thus, Defendants' failure to stymie these violations over two years after the Court's initial preliminary injunction and over one year after the Court approved the settlement agreement is of particular concern to the Court, and Defendants' promises that they will do better without intervention by this Court fall flat.

The Court is reluctant to impose fines, as the money used to pay those fines would be that of the taxpayers, not of the individuals who have the power to act. However, the Court does agree with Plaintiffs that further discovery is necessary. Despite numerous hearings, during which multiple witnesses testified, it is still unclear who is responsible for Defendants' failure to abide by the settlement agreement. None of Defendants' witnesses were able to say who was responsible for the misrepresentations and misleading documents that were sent to Class Counsel. Responsibility was too easily pushed to unnamed mid-level TDCJ officials. The Court is not convinced that Defendants will be able to change institutional behavior if they do not first identify why previous violations occurred in the first place. Thus, the Court grants Plaintiffs' request for further discovery on the violations of the settlement agreement that occurred in July and August of 2019. Class Counsel may take five depositions of TDCJ officials of Class Counsel's choosing to assess the extent of the violations from this previous summer and examine the basis of misrepresentations made to Class Counsel and the Court. Class Counsel may also make reasonable

6

written discovery requests that relate to the violations of the settlement agreement in July and August of 2019, and the related misrepresentations made by Defendants to Class Counsel and the Court. The Court also grants Plaintiffs' request for a show cause hearing, which will be scheduled upon motion by Plaintiffs.

In addition, the Court finds that Class Counsel's request for attorneys' fees and expenses is reasonable. Given Class Counsel's unforeseen labor required to unearth Defendants' violations, as well as the additional work now required by added discovery and future monitoring, Class Counsel is expending much more time and effort than expected at the time the settlement agreement was drafted. The Court thus orders that Defendants compensate Class Counsel at market-based rates for activities related to investigating conditions at TDCJ units housing class members during July and August of 2019, activities associated with bringing the present Motion for Sanctions, and activities associated with any discovery and monitoring that this Court orders based on the present Motion. Because that amount is not yet set, the Court orders that Class Counsel submit any requests for attorneys' fees and expenses after the conclusion of discovery stemming from the present Order.

The Court declines to decide whether to hold Defendants in contempt of court and defers its decision until a later date.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** Plaintiffs' Motion for Sanctions as to sanctions in the form of discovery and attorneys' fees. Class Counsel may take up to five depositions of TDCJ officials of their choosing. Class Counsel may also serve written discovery requests relating to Defendants' violations of the settlement agreement that took place during July and August 2019, and the ensuing misrepresentations made to Class Counsel and this Court. Class

Counsel may also file their requests for attorneys' fees and expenses after the close of discovery. The Court **GRANTS** Plaintiffs' Motion for Show Cause Hearing, the date of which is to be set upon motion by Plaintiffs. The Court **DEFERS** decision on Plaintiffs' Motion for Contempt. The Court **DENIES** all other requests for sanctions.

    **IT IS SO ORDERED.**

    **SIGNED** at Houston, Texas, on this the 11th day of December, 2019.

*[signature]*

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE