United States District Court
Southern District of Texas
**ENTERED**
May 29, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH COLE, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-1698 |
| | § | |
| BRYAN COLLIER, *et al*, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM AND ORDER</u>

Pending before the Court are Plaintiffs' Motion to Compel Responses to Requests for Production and Interrogatories (Doc. No. 1546) and Defendants' Motion for Protective Order (Doc. No. 1560). After considering the Motions and all applicable law, the Court determines that both Motions must be **GRANTED in part and DENIED in part**.

## I.    <u>BACKGROUND</u>

In 2018, the Court approved a final class settlement agreement in this case (Doc. No. 989-4). Under the terms of the agreement, Defendants must keep all class members in housing areas where the heat index does not exceed 88 degrees Fahrenheit during the summer months, between April 15 and October 15. *Id.* at 9. In the event that the air conditioning equipment malfunctions such that it cannot maintain cool enough temperatures for longer than twenty-four hours, TDCJ must notify Class Counsel on the next business day. *Id.* Additionally, subclass members must be transported in air-conditioned vehicles whenever they leave Pack Unit. *Id.* at 12.

In the summer of 2019, Class Counsel discovered that Defendants were violating the terms of the agreement. As discussed in more detail in the Court's December 11, 2019 Order (Doc. No. 1504), Defendants had failed to maintain cool enough temperatures in housing areas that housed

class members in both the Stiles and LeBlanc Units in the summer of 2019. *Id.* at 2. Defendants also transported subclass members on non-air-conditioned buses on at least one occasion that summer. *Id.* at 4. Defendants failed to notify Class Counsel about any of these violations, despite their duty to do so under the agreement. *Id.* In fact, Defendants, through their counsel, made multiple misrepresentations about their compliance with the agreement and their reasons for attempting to delay Class Counsel's inspection to both Class Counsel and this Court. *Id.* at 2–3. None of these facts are contested; Defendants have conceded these facts on the record. *Id.*

On November 6, 2019, at a hearing, the Court granted Plaintiffs' Motion to Compel Responses (Doc. No. 1489) from the bench. (Minute Entry 11/6/2019). Plaintiffs sought responses from Defendants' witnesses about the misrepresentations and cover-ups at LeBlanc Unit and before this Court. Defendants had argued that these responses were protected by attorney-client privilege. The Court rejected Defendants' arguments about attorney-client privilege.

On December 11, 2019, the Court issued a Memorandum and Order, granting Plaintiffs' requests for attorneys' fees, discovery, and a show cause hearing. (Doc. No. 1504). The Court granted Class Counsel "up to five depositions of TDCJ officials of their choosing," and "written discovery requests relating to Defendants' violations of the settlement agreement that took place during July and August 2019, and the ensuing misrepresentations made to Class Counsel and this Court." *Id.* at 7.

On December 20, 2019, Plaintiffs sent written requests for production to Defendants. (Doc. No. 1546, at 7). On December 31, 2019, Plaintiffs sent additional requests for production and interrogatories. *Id.* In response, Defendants disclosed over 18,000 pages of responsive material. (Doc. No. 1559, at 6). Defendants withheld 382 documents and redacted 7 documents as privileged.

*Id.* Defendants supplemented their production and provided a complete privilege log on May 1, 2020. (Doc. No. 1562, at 2).

Plaintiffs filed their Motion to Compel on April 10, 2020, seeking complete responses from Defendants. (Doc. No. 1546). Defendants filed a Motion for Protective Order with their Response brief. (Doc. No. 1560). In their Motion for Protective Order, Defendants seek protection from discovery of personnel files, and of matters that happened before the relevant time period and outside the scope of the Court's order.

## II.   ANALYSIS

Plaintiffs seek to compel discovery of documents that Defendants claim fall within two categories: (1) documents that are privileged, and (2) documents that fall outside the scope of discovery ordered by the Court. The Court will discuss each of these categories in turn. Because Defendants' Motion for Protective Order does not raise arguments distinct from those raised in briefing for Plaintiffs' Motion to Compel, the Court will discuss both motions together.

### A. Privileged Material

Plaintiffs argue that Defendants are withholding responsive documents based on improper assertions of privilege. Plaintiffs seek to compel either production or, at minimum, *in camera* review of the withheld documents.

#### 1. Attorney-Client Privilege

Defendants have argued that a certain portion of documents responsive to Plaintiffs' requests are protected from discovery by attorney-client privilege. In order to assert attorney-client privilege, a party must establish "(1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir.

2017) (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)). The question of whether privilege applies is a "'highly fact-specific' inquiry, and the party asserting the privilege bears the burden of proof." *Id.* (quoting *Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009)). Once the privilege is established, then "the burden shifts to the other party to prove any applicable exceptions." *Id.* (quoting *Perkins v. Gregg Cty.*, 891 F. Supp. 361, 363 (E.D. Tex. 1995)). Because the attorney-client privilege withholds relevant information, it is "interpreted narrowly." *Id.* Courts do not presume that communications with counsel are privileged and parties asserting the privilege must describe the interaction as more than just "legal" or "legal advice" to properly establish the application of the privilege. *See id.* at 696.

Defendants have provided a privilege log for documents they have withheld as privileged. (Doc. No. 1559-1). For those documents withheld as privileged attorney-client communications, each entry contains the same boilerplate description: "Communication made for the purpose of obtaining and providing legal advice and assistance in Cole v. Collier litigation." Most entries also contain a general description; for example, that an email was about "the Pack Unit," "inspection of the LeBlanc Unit," or "temperatures logs." Some entries also note that the withheld email included discussions about "legal advice and litigation strategy."

The Court finds that there is not enough information in Defendants' privilege log descriptions to determine whether Defendants are correctly applying the attorney-client privilege. "[A] privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to 'test[] the merits of' the privilege claim." *BDO USA*, 876 F.3d at 697 (quoting *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982)). Defendants' descriptions are vague. Given that Defendants have conceded that their attorneys were involved in the misdirection and misrepresentations of the past summer, the Court notes that the

4

line between privileged and nonprivileged information is finer than in the average case. For example, the Court previously found that privilege did not protect witnesses from testifying about who misrepresented to Class Counsel and the Court that LeBlanc's warden had a family medical emergency that necessitated postponement of the August 8, 2019 inspection. (Doc. No. 1546-10, at 6, 16). While such a mispresentation was made during a conversation with counsel about this litigation, the Court found that a conversation between TDCJ officials and counsel about the scheduling of the inspection was not privileged—such a conversation is neither legal advice, nor is it intended to be confidential. *Id.* at 6. However, Defendants' privilege log, which would describe such conversations as about "inspection of the LeBlanc Unit," does not provide enough detail for the Court to determine whether withheld documents are actually privileged, or were merely conversations with counsel about the litigation.

Defendants' counsel argued at the hearing that they could not provide any more detail in their privilege log without revealing potentially privileged information. This may very well be true. However, this favors *in camera* review of the documents at issue. If Defendants are unable to express through their privilege log whether documents are privileged or not, then this Court finds *in camera* review to be the best method to adjudicate privilege without inadvertently revealing privileged information to Plaintiffs. *See United States v. Zolin*, 491 U.S. 554, 568–69 (1989) ("[T]his Court has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for *in camera* inspection and the practice is well established in the federal courts."). Therefore, this Court **ORDERS** *in camera* review of documents that Defendants have withheld as privileged under the attorney-client privilege.

## 2. Work Product

Defendants have also withheld documents as attorney work product. The work product doctrine protects the interest of clients and attorneys "by shielding the lawyer's mental processes from his adversary." *In re Grand Jury Subpoena*, 419 F.3d 329, 339 (5th Cir. 2005) (quoting *In re Grand Jury Subpoena*, 220 F.3d 406, 408 (5th Cir. 2000)). The doctrine extends to "documents prepared in anticipation of litigation." *In re EEOC*, 207 F. App'x 426, 432 (5th Cir. 2006) (citing *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000)); Fed. R. Civ. P. 26(b)(3). While Defendants' privilege log is not much more detailed in describing documents withheld as work product as it was for documents withheld as attorney-client communications, the Court finds that there is enough information to determine that these documents are protected as work product. Because these documents were created for this litigation, and many are drafts or otherwise contain mental impressions of Defendants' attorneys, they are protected by the work product doctrine.

At the hearing, Plaintiffs argued that the withheld attorneys' notes could contain notes from one of the discussions relating to the misrepresentations made by TDCJ about LeBlanc Unit. However, given that the misrepresentations in question were based in communications between attorneys and their clients, not attorney work product, the Court finds Plaintiffs' inference too attenuated to use as a basis for interfering with Defendants' attorney work product. Without a stronger basis for asserting that the documents that Defendants' attorneys created contain notes from such conversations, the Court is unwilling to assume such notes exist. The Court thus **DENIES** Plaintiffs' Motion as to Defendants' documents withheld as attorney work product. The Court does not foreclose reconsideration in the future if Plaintiffs were to discover new information that suggest that the notes that Defendants' attorneys took should not be protected by the work product doctrine.

### 3. Crime-Fraud Exception

Plaintiffs argue that, even if there are communications that are properly protected by privilege, many of those documents fall within the crime-fraud exception. Attorney-client privilege can be overcome "where communication or work product is intended to further continuing or future criminal or fraudulent activity." *In re Grand Jury Subpoena*, 419 F.3d 329, 335 (5th Cir. 2005) (quoting *United States v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002)). Where privilege has already been established, Plaintiffs bear "the burden of establishing a prima facie case that the attorney-client relationship was intended to further criminal or fraudulent activity." *Id.* The crime-fraud exception also applies to the work product doctrine. *Id.* (citing *In re Burlington N., Inc.*, 822 F.2d 518, 524–25 (5th Cir. 1987)).

The Court has already determined it needs to review documents withheld by Defendants under the attorney-client privilege *in camera* to determine if they are in fact privileged. In order to conduct *in camera* review of privileged documents to determine the applicability of the crime-fraud exception, the party opposing privilege "must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability." *Zolin*, 491 U.S. at 574–75. The Court finds that Plaintiffs have presented sufficient evidence to meet the standard for *in camera* review of documents deemed privileged attorney-client communications. Defendants have already conceded in prior hearings that TDCJ employees and/or their attorneys knowingly made misrepresentations to Class Counsel and this Court relating to their noncompliance with the settlement agreement and Class Counsel's subsequent inspection. After initial discovery, Plaintiffs provide additional proof that, prior to the inspection, maintenance staff at LeBlanc Unit knew that the air conditioning system needed maintenance, and that certain components were visibly damaged. (Doc. No. 1546, at 17). Given Defendants' concessions and

the timing of its many misrepresentations prior to Class Counsel's inspection, the Court finds there is sufficient evidence to support a reasonable belief that emails discussing LeBlanc Unit and Class Counsel's inspection may yield evidence that would establish the crime-fraud exception to privilege. Thus, the Court **ORDERS** *in camera* review of documents about LeBlanc Unit and Class Counsel's inspection that are found to be privileged attorney-client communications for applicability of the crime-fraud exception.

While the crime-fraud exception also applies to documents withheld under the work product privilege, Plaintiffs have not provided sufficient evidence that the work product documents contain evidence that establishes the crime-fraud exception's applicability. The Court thus **DENIES** *in camera* review of documents withheld by Defendants under the work product doctrine. Again, the Court does not foreclose reconsideration if Plaintiffs later discover evidence that would meet the standard to allow *in camera* review of these documents.

### 4. Waiver

Plaintiffs also argue that Defendants have waived their attorney-client privilege in a few instances because they made "factual assertions the truth of which can only be assessed by examination of the privileged communication." (Doc. No. 1546, at 19 (quoting *Adam Friedman Assocs. LLC v. Media G3, Inc.*, No. 10 Civ. 5350, 2012 WL 1563942, at *4 (S.D.N.Y. May 1, 2012)). Attorney-client privilege "is waived when a litigant place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) (quotation omitted). "The attorney-client privilege was intended as a shield, not a sword." *Id.* (quotation omitted).

Plaintiffs argue that Defendants put their own privileged communications at issue on two occasions. First, after Executive Director Bryan Collier testified that the warden accurately reported his daughter's medical appointment as such, Defendants' counsel noted that she "may have been the one to characterize [the medical appointment] as an emergency." (Doc. No. 1546, at 20). Second, Director Collier testified that there was no policy that required the inspection to be moved because executive officials were out of town. Rather, he noted that "the person in the general counsel's office communicating with the Attorney General's office was making assumptions that the warden and/or Ms. Davis need to be [present for the inspection. . . . [W]hen our general counsel came to me and told me about the attempt to postpone, I said, 'Why? Stop. Let them come. Let's go.'" (Doc. No. 1546-8, at 93:6–15). Because Defendants assert that their attorneys are the ones making the misrepresentations, they have placed these communications at issue. The only way to discover what actually happened is to see the communications that Defendants point to in their testimony; there is no other source for this information. *Cf. Conkling*, 883 F.2d at 435 (concluding that party seeking to overcome privilege can obtain all relevant information through other sources). Thus, the Court hereby **ORDERS** *in camera* review of withheld documents that contain communications between (1) the LeBlanc warden, Director Collier, and the Attorney General's office about the warden's daughter's medical appointment or family emergency, and (2) Director Collier, TDCJ's office of general counsel, and the Attorney General's office about whether the warden and/or TDCJ executive officials could be or needed to be present for the August 8, 2019 inspection to occur, to determine whether they fall within Defendants' waiver of the attorney-client privilege.

### B. Improper Scope

In its December 11, 2019 Order, the Court granted Plaintiffs discovery "relating to Defendants' violations of the settlement agreement that took place during July and August 2019, and the ensuing misrepresentations made to Class Counsel and this Court." (Doc. No. 1504, at 7). Parties now disagree on the scope of discovery allowed. The Court therefore clarifies that discovery is limited to potential violations at the Stiles, LeBlanc, and Duncan Units, as well as during transportation of subclass members in non-air-conditioned vehicles. Discovery is also limited to dates between May 15, 2019 and December 31, 2019. These limitations on the scope of time and content of discovery will allow for Plaintiffs to gather information on the violations for which Class Counsel received complaints during the summer of 2019, including information on Defendants' actions preceding and following the violations, while limiting discovery to documents related to those violations specifically.

With this clarification of scope of discovery in mind, the Court addresses the specific complaints Plaintiffs have raised with Defendants' discovery responses.

### 1. Personnel Files for TDCJ Employees

Plaintiffs requested the complete personnel files of ten current and former TDCJ employees, as well as anyone else identified by Defendants in response to Interrogatories 1, 2, 3, and 6. (Doc. No. 1559, at 17–18). The Court finds this request to be unnecessarily broad, and may require Defendants to divulge unnecessarily private information. At the hearing, Plaintiffs agreed to limit their request to only disciplinary files relating to air conditioning. Thus, the Court **ORDERS** Defendants to supplement their response to the extent that they have not produced documents within the relevant employees' personnel files that concern disciplinary files or proceedings relating to air conditioning.

2. *Unspecified Disciplinary Case Files Related to the Settlement and Class Counsel's Allegations of Violations*

Plaintiffs seek "all documents concerning discipline, or the decision not to discipline" the same group of individuals for matters related to the settlement agreement. (Doc. No. 1559, at 19). Defendants objected to the scope of this request and only produced documents that fell within their interpretation of the scope of discovery allowed by the Court's order. The Court **ORDERS** Defendants to supplement their response with any responsive documents not previously produced that fall within the scope of discovery, as clarified by the Court in this Order.

3. *Communications Prior to July 1, 2019 Concerning Compliance with the Settlement by Those Involved in 2019 Violations*

Plaintiffs seek communications concerning compliance with the settlement agreement from June 8, 2018 to present. (Doc. No. 1559, at 20). This scope is too broad, but Plaintiffs may seek additional documents pursuant to the Court's clarification of the scope of discovery. The Court **ORDERS** Defendants to supplement their response with any responsive documents not previously produced that fall within the scope of discovery, as clarified by the Court in this Order.

4. *Records About Air Conditioning or Heat Complaints by Non-Class Members Housed at LeBlanc, Stiles, and Duncan During July and August 2019, but Not Housed with Class Members*

Plaintiffs seek records of complaints by non-class members who were living in LeBlanc, Stiles, and Duncan, but were not housed in the same areas as class members. Plaintiffs argue that, where a malfunctioning air conditioner affects one housing area, it probably affects other housing areas in the same unit. (Doc. No. 1546, at 25). They also argue that Defendants withheld complaints by non-class members who were living with class members, but were then moved before they filed a grievance. *Id.* Defendants argue that they already produced many documents relevant to this category of documents, including complaints by non-class members who were

housed in the same areas as class members. (Doc. No. 1559, at 21–22). Defendants argue this would create a huge burden for them, while producing very little additional relevant information. *Id.* at 22. Given that Defendants have already produced complaints by non-class members who were housed in the same areas as class members, the Court finds that these additional documents are likely cumulative information, and thus, the burden on Defendants outweighs the benefits of the additional documents. The Court therefore **DENIES** Plaintiffs' Motion as to this category of documents.

> *5. Unspecified Investigation Records Concerning Subclass Members Being Transported Without Air Conditioning*

Plaintiffs seek investigation records regarding allegations that subclass members were transported on buses without air conditioning. Defendants only produced documents within July and August 2019. The Court **ORDERS** Defendants to supplement their response with any responsive documents not previously produced that fall within the scope of discovery, as clarified by the Court in this Order.

> *6. Unspecified Documents Relating to Class Counsel's Allegations that TDCJ Violated the Settlement Agreement*

Plaintiffs seek "all communications regarding Class Counsel's allegations that TDCJ was not complying with any terms of the settlement agreement." (Doc. No. 1559, at 23). The Court finds this request to lack clarity. At the hearing, Plaintiffs pointed to actions stemming from Class Counsel's July letter to Defendants' counsel alleging violations of the agreement at LeBlanc Unit. If Plaintiffs are seeking communications discussing this letter and its allegations, it may amend its request to clarify. However, as written, the Court finds that this request is too vague and thus **DENIES** Plaintiffs' Motion as to this request for discovery.

*7. Maintenance and Investigation Records Concerning Bus Rides to Estelle that Allegedly Violated the Settlement*

Plaintiffs requested "the owner's manual, all maintenance records, and documents relating to the trip from the Pack Unit to the Estelle Unit on June 27, 2019." (Doc. No. 1559, at 24). Defendants argue this does not relate to violations of the agreement in July and August 2019. *Id.* The Court **ORDERS** Defendants to supplement their response with any responsive documents not previously produced that fall within the scope of discovery, as clarified by the Court in this Order.

*8. Documents Obtained by TDCJ's Settlement Compliance Monitor*

Plaintiffs requested "all documents . . . provided to Oscar Mendoza in his role as . . . settlement compliance monitor." (Doc. No. 1559, at 25). Defendants argue that, because Mendoza did not assume his position as compliance monitor until after August 2019, there are no responsive documents in this category. *Id.* Defendants also argue that there needs to be an end date; otherwise, Mendoza would be forced to continually produce documents as he receives more. *Id.* Because the Court ordered that Plaintiffs may seek documents *relating to* the violations of July and August 2019, it does not matter that Mendoza did not become settlement compliance monitor until after August 2019. The Court has also now set an end date to the scope of discovery. Thus, the Court **ORDERS** Defendants to supplement their response with any responsive documents not previously produced that fall within the scope of discovery, as clarified by the Court in this Order.

*9. Interrogatory 1*

In Interrogatory 1, Plaintiffs requested that Defendants list all investigations into alleged violations of the settlement agreement. For each investigation, Plaintiffs requested information about the investigation—when it was conducted, who performed it, who was interviewed, what documents were examined, whether temperature measurements were taken, and what corrective action was recommended, if any. Plaintiffs argue that Defendants failed to substantively respond.

(Doc. No. 1546, at 9). Defendants did respond, albeit only with regards to LeBlanc Unit. (Doc. No. 1546-22, at 5–6).

The Court therefore **ORDERS** Defendants to supplement their response to Interrogatory 1 to the extent that they omitted relevant information that falls the scope of discovery, as clarified by the Court in this Order. To the extent that Plaintiffs challenge Defendants' invocation of privilege, the Court finds that Defendants have not explicitly withheld information from its answer because of privilege. If Plaintiffs find Defendants' supplemented answer improperly withholds information on the basis of privilege, they may raise that concern with the Court at that time.

### C. Rule 34(b)(2)(C)

Rule 34(b)(2)(C) requires that objections to discovery requests "must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). Plaintiffs argue that Defendants have not stated whether they are withholding documents based on each objection, and yet, many documents appear to be missing. (Doc. No. 1546, at 27–29). To the extent that Defendants have not stated that they are withholding documents based on objections when they were withholding documents, the Court hereby **ORDERS** Defendants to supplement their responses to clarify.

## III.   <u>CONCLUSION</u>

For the reasons stated above, and as detailed above, the Court hereby **GRANTS in part and DENIES in part** Plaintiffs' Motion to Compel. The Court **ORDERS** Defendants to produce the privileged documents discussed in this Order to the Court for *in camera* review. The Court also **ORDERS** Defendants to supplement their responses and productions as required by this Order.

The Court **GRANTS in part** Defendants' Motion for Protective Order, as to personnel files (except documents contained therein that relate to disciplinary files or proceedings concerning

air conditions) and as to discovery from before May 15, 2019 and after December 31, 2019. The

Court **DENIES in part** Defendants' Motion as to all other parts.

      **IT IS SO ORDERED.**

      **SIGNED** at Houston, Texas on this the 28th day of May, 2020.


                                          KEITH P. ELLISON
                                          UNITED STATES DISTRICT JUDGE