UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH COLE, *et al.*, § | | |
| § | | |
| Plaintiffs, § | | |
| § | CIVIL ACTION NO. | |
| v. § | | |
| § | | |
| BRYAN COLLIER, *et al.*, § | 4:14-CV-1698 | |
| § | | |
| Defendants. § | | |

**PLAINTIFFS' STATUS REPORT**

Counsel respectfully submits this status report pursuant to the Court's February 7, 2022 order. Doc. 1861.

In accordance with the Court's order, on February 17, 2022, TDCJ provided class counsel information from the Kestrel device as well as training records.

Based on the sworn business records provided by TDCJ, TDCJ accurately summarized the indoor temperature measurements from the Kestrel device. If TDCJ's data is accurate, then only about 2% of the time did indoor temperatures fall below 64 degrees, only about 9% of the time did temperatures fall below 65 degrees, and the indoor temperatures never dropped below 63 degrees during the period November 1 to February 7, 2022.[1] In contrast, outdoor temperatures during this period fell below 60 degrees on 41 of the 61 nights during November and December 2021, and every night from January through February 7, 2022.[2] This appears to counsel to be consistent with

---

[1] *See* Ex. 1 & Ex 2, Kestrel data.
[2] Ex. 3, Huntsville Weather Summary. This data is available from the National Climatic Data Center: https://www.ncdc.noaa.gov/cdo-web/datasets/GHCND/stations/GHCND:USW00053903/detail

1

the heating system operating during cold weather periods—albeit with temperatures that are colder than most people would expect to endure in a public building.

Notably, in the ten-day period following class counsel's original request for temperature records (on January 27, 2022, *see* Doc. 1859-2, p. 15), the Kestrel data reflects a significant change. This ten-day period includes the highest indoor temperatures during the entire previous three months—a maximum of 73.7 before the complaint compared to 76.2 degrees after the complaint, despite similarly low outdoor temperatures during that period.[3] Similarly, the minimum temperature is three degrees higher during those ten days—66.4 degrees, rather than 63.3 degrees. Thus, the Estelle heating system appears to have been turned up—to appropriate levels—only after class counsel reported its concerns to TDCJ. Unfortunately, this fact was not raised by TDCJ at any point, including during the hearing, and class counsel respectfully believes TDCJ should provide an explanation for the marked improvement in temperatures.

Based on TDCJ's response, the agency's training affirmatively alerts unit-level supervisors that the settlement only affects operations during the summer months. Oscar Mendoza attested to the content of the training under penalty of perjury and the agency provided its policy and training documents about the class settlement.[4] These documents corroborate the agency's explanation that unit-level staff should be aware that the settlement only applies during the summer months (and this is also consistent with the agency's general heat preparedness policies, which are limited to the summer). While these materials do not directly refute the allegations class counsel reported to the Court, TDCJ's materials reflect that if any staff refused to adjust the heating system at Estelle based on the settlement, then they were acting contrary to explicit TDCJ policy.

---

[3] *Compare* Ex. 2, Kestrel data from January and February, pp. 5–6 *with* Ex. 1, Kestrel data from November through January, *and* Ex. 3, Huntsville Weather Summary, p. 4.
[4] Ex. 4, Oscar Mendoza Declaration.

In light of the agency's training materials—together with the fact that the heating system at Estelle appears to have been operating continuously, albeit at sometimes uncomfortably low temperatures—class counsel is not able to corroborate, via the documents provided, the thrust of the allegations reported to the Court in counsel's motion. Notably, as class counsel does not have the ability to directly question the accused actors, class counsel is not in a position to assess the credibility of the inmate's allegations. It remains possible that unit-level staff chose to defy their TDCJ training and caused or failed to correct the uncomfortably low temperatures due to the settlement. However, there does not appear to class counsel to be any further method of investigating this type of misconduct solely based upon "objective information in Defendants' possession." Doc. 1861, p. 2.

Accordingly, class counsel sees no ability to substantiate the inmates' claims of retaliation related to the settlement based upon TDCJ's production. Should the Court wish class counsel to investigate further, such as with limited depositions, class counsel is ready and willing to do so. Otherwise, class counsel does not intend to present to the Court any substantiated claims of retaliation directly related to the settlement at this time. If further information requires counsel to revisit this conclusion, then class counsel will promptly alert the Court.

Dated: March 7, 2022.

Respectfully submitted,

By: /s/ Jeff Edwards           .
JEFF EDWARDS
State Bar No. 24014406
DAVID JAMES
State Bar No. 24092572
**EDWARDS LAW**
603 W 17th St.
Austin, TX 78701
Tel.  512-623-7727
Fax.  512-623-7729
jeff@edwards-law.com
david@edwards-law.com

**ATTORNEYS FOR PLAINTIFFS**

CERTIFICATE OF SERVICE

By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Southern District of Texas.

By     /s/ Jeff Edwards              
JEFF EDWARDS