UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **KEITH COLE, et al.,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:14-cv-1698** |
| | § | |
| **BRYAN COLLIER, et al.,** | § | |
| *Defendants.* | § | |

**DEFENDANTS' UNOPPOSED MOTION TO TERMINATE SANCTIONS
AND CONTEMPT PROCEEDINGS AND PROPOSED ORDER
AWARDING RELIEF AND ATTORNEYS' FEES**

TO THE HONORABLE KEITH ELLISON:

Defendants Bryan Collier and Robert Herrera, in their official capacities, and the Texas
Department of Criminal Justice file this Unopposed Motion to Terminate Sanctions and Contempt
Proceedings and Proposed Order Awarding Relief and Attorneys' Fees.

**I.      Introduction and Procedural Background**

*Settlement Agreement*

After more than four years of litigation, the parties in this case signed a settlement
agreement (ECF 989-4) that was approved by the Court on June 8, 2018 (ECF 1188, Final Order
and Judgment Approving Class Action Settlement and Attorneys' Fees, hereafter "Final Order
and Judgment").

*Events at the LeBlanc Unit in July and August 2019*

Approximately one year later, on or about July 18, 2019, Plaintiffs' counsel received a
complaint from an inmate's wife about heat conditions at the LeBlanc Unit.  Based on that
complaint Plaintiffs' counsel raised with Defendants concerns that Defendants were not in

compliance with the settlement agreement, because they were housing Class members in areas in which conditions exceeded an 88-degree heat index.  After discourse between the parties and a court hearing, the Court ordered an inspection to occur at the LeBlanc Unit on August 8, 2019. During that inspection it was confirmed that temperatures in the areas housing Class members at the LeBlanc Unit exceeded an 88-degree heat index.  The Court ordered the Defendants to transfer the 37 Class members who were housed at the LeBlanc Unit to a unit that had housing capable of complying with the 88-degree heat index requirement, with the transfers to occur before noon on August 10, 2019 (ECF 1449).

*Plaintiffs' Motion for Contempt, to Show Cause, and for Sanctions*

On September 5, 2019, Plaintiffs' counsel filed a Motion for Contempt, to Show Cause, and for Sanctions.  (ECF 1459).  The Court held several hearings, including on September 6, September 10, and November 6, 2019.  The Court entered an order on December 11, 2019, granting in part Plaintiffs' motion for sanctions as to discovery and attorneys' fees, while denying all other requests for sanctions and deferring any decision on Plaintiffs' motion for contempt pending completion of discovery and Plaintiffs' motion to schedule a show cause hearing (ECF 1504).

Plaintiffs served discovery requests on Defendants on December 20 and 31, 2019. Defendants have responded to Plaintiffs' written discovery requests and produced over 30,000 pages of records.  Defendants submitted documents to the Court for in camera review and produced to Plaintiffs' counsel all documents the Court determined not to be privileged, and Defendants have supplemented their discovery responses.  Plaintiffs' counsel deposed TDCJ Warden James Danheim on July 7, 2021, and TDCJ Facilities Director of Maintenance Operations Paul Glass on September 30, 2021.

As the discovery has moved forward, it has become clear that the detected and established failure to maintain 88-degree heat index at the LeBlanc Unit resulted from TDCJ's failure to advise leadership at the LeBlanc Unit and other TDCJ personnel of the provisions of the Final Order and Judgment requiring Class members to be housed "in air-conditioned environments with heat indices at or below 88 degrees Fahrenheit at any other prison where TDCJ may incarcerate a Class member for the duration of the Class member's present term of incarceration" (ECF 1188 at 5-6.) TDCJ was thus not in compliance with the Final Order and Judgment at the LeBlanc Unit in July and August 2019, and it was a direct result of the follow-up on complaints received by Plaintiffs' counsel that the issue was detected and efforts were taken to resolve the non-compliance.

## II.    Steps Taken by TDCJ Following the Discovered Non-Compliance

After the events at the LeBlanc Unit in the summer of 2019, TDCJ took several steps to avoid future incidents of non-compliance with the Final Order and Judgment.

First, TDCJ complied with the Court's order to transfer the 37 Class members housed at the LeBlanc Unit to a unit with housing that could maintain conditions below the 88-degree heat index requirements.  TDCJ has since housed all Class members at the Pack Unit or other facilities that have not only air-conditioned housing but also Kestrel® devices that monitor both temperature and heat index.  For the past two years, TDCJ has also reported these heat index readings to the Court and Plaintiffs' counsel.  None of these readings during the past two years has exceeded the 88-degree heat index requirement.

TDCJ also appointed Deputy Executive Director Oscar Mendoza to oversee compliance with the requirements in the Final Order and Judgment.  In that role, Mr. Mendoza has had direct contact with unit wardens and administrators whose facilities were housing Class members.  As

part of these compliance efforts, TDCJ installed Kestrel® devices to monitor and log the temperature and heat indices in all areas of the units where Class members are assigned. During the heat index monitoring period of April 15 to October 15, as provided in the Final Order and Judgment, unit wardens or their designated administrator are required to obtain heat index measurements multiple times a day (10 a.m., 1 p.m., and 4 p.m.) from the Kestrel® devices in each area of the units where Class members are housed and report those measurements to Mr. Mendoza. In addition, if the heat index reaches 83 degrees Fahrenheit or higher, unit personnel are required to notify Mr. Mendoza immediately. Unit personnel are also required to notify Mr. Mendoza immediately if an air conditioning unit or air conditioning on a vehicle used to transport Class members malfunctions, and Mr. Mendoza is responsible for resolving any issue promptly and having the issue and resolution documented. Since the transfer of Class members from the LeBlanc Unit in August 2019 as indicated above, the temperature and heat index readings taken from areas of the units where Class members are housed have not required any such intervention. As requested by Plaintiffs' counsel, TDCJ will keep the process described in this paragraph in place while Class members are housed in TDCJ facilities.

Mr. Mendoza holds monthly meetings during the months of April through October with the wardens assigned to the units where class members are housed, and he meets individually with each new warden and administrator assigned to these units. These wardens must also notify Mr. Mendoza if a Class member files a grievance related to heat, and Mr. Mendoza must review the response before the grievance is returned to the inmate.

Mr. Mendoza later established an Office of Quality Assurance (OQA), supervised by Mr. Mendoza, to help him with the above compliance monitoring efforts. TDCJ will keep the OQA

process in place while Class members are housed in TDCJ facilities.

TDCJ also adopted Administrative Directive 03.05, "Inmates Identified as Pack Unit Class Members," as a more formal method of communicating and enforcing the requirements of the Final Order and Judgment to all TDCJ staff and personnel.  A copy of the current version of the administrative directive is attached as Exhibit A.

With respect to transportation of Class members, TDCJ has retrofitted 25 buses in TDCJ's existing fleet with air conditioning and added 70 more air-conditioned buses to the TDCJ fleet. Mr. Mendoza and the OQA staff receive and review monthly maintenance reports to monitor buses for non-working air conditioning.  Class members are also identified by a yellow tag on the inmate count room board and must have a yellow travel card when being transported, and TDCJ has reiterated to appropriate staff the contractual requirement under the settlement agreement and the Final Order and Judgment for Class members to be transported in air-conditioned vehicles.

## III.    Additional Steps Taken Through Discussions with Plaintiffs' Counsel

Defendants have engaged in productive discussions with Plaintiffs' counsel to reach a resolution to the pending contempt and sanction proceedings.  In the course of those discussions Defendants have received input from Plaintiffs' counsel on compliance efforts outlined above and the Administrative Directive 03.05 attached as Exhibit A.

In addition, at the request of Plaintiffs' counsel, Defendants have agreed to the following:

TDCJ has agreed to create and provide additional written and video training materials used to educate unit staff on the requirements of the settlement agreement and the Final Order and Judgment.  TDCJ has implemented this additional training, and will include this training on an annual basis.

TDCJ has agreed to maintain the temperature and heat index measurements taken from the Pack Unit and other units housing Class members from April 15, 2018 forward, and associated notations by OQA of any repairs or resolutions to the air conditioning systems in light of such reported heat index measurements for applicable document retention periods, and to make those measurements and any associated notations publicly available through a public information request made through the TDCJ website.  TDCJ agrees that such information is public information obtainable through the Texas Public Information Act, without cost to the requestor.

TDCJ has agreed, subject to the Court's entry of the proposed order filed with this unopposed motion, to provide funding to allow for an independent inspection of the air-conditioning system installed at the Pack Unit to verify that air conditioning has been installed in accordance with the parties' settlement agreement and the Final Order and Judgment.  TDCJ in coordination with Plaintiffs' counsel would propose Mr. JJ Huffhines, P.E. to conduct this independent inspection.  Mr. Huffhine's CV is attached as Exhibit B to this motion.  TDCJ has also agreed, subject to the Court's entry of the proposed order filed with this unopposed motion, to pay for the cost of independent inspections by Mr. Huffhines of the air conditioning systems at the Pack Unit, the Estelle Unit, and the Stiles Unit,[1] so that Plaintiffs through their counsel may verify that the existing conditioning is functioning and capable of maintaining a heat index below 88 degrees Fahrenheit on a consistent basis over summer months.  TDCJ will pay for these additional independent annual inspections during the summer months of the years 2022-2025.[2] The results of these annual inspections will be available through Public Information Act requests

---

[1]The Estelle Unit and Stiles Unit are among the other TDCJ units to which Pack Class members have been assigned.

[2]Payments to Mr. Huffhines will be made by TDCJ in accordance with state law, according to the terms and conditions set out in Exhibit C.

to TDCJ.

In light of the efforts of Plaintiffs' counsel to bring the non-compliance to light, and to offer constructive input to ensure future compliance with the Final Order and Judgment, TDCJ has agreed, subject to the Court's entry of the proposed order filed with this unopposed motion, to compensate Plaintiffs' counsel for attorneys' fees and expenses in the amount of $370,247.10, which is to compensate Plaintiffs' counsel for fees and expenses incurred in connection with the sanctions and contempt proceedings and future attendance at the air conditioning inspections discussed above.  As part of this motion and proposed order, Defendants request that the Court order payment of this amount of attorneys' fees and expenses to Plaintiffs' counsel.  Defendants agree that these attorneys' fees and expenses are reasonably and necessarily incurred.

Defendants fully understand the importance of complying with the settlement agreement and the Final Order and Judgment, and apologize both to the Court and the affected Class members for the non-compliance at the LeBlanc Unit.  Defendants also believe that Plaintiffs' counsel have played a productive role in both resolving the non-compliance and in making positive suggestions to avoid any further reoccurrence of non-compliance.

## IV.     Conclusion and Prayer

Based on the foregoing, Defendants request that the Court enter the attached order resolving the sanctions and contempt motion and awarding the attorneys' fees and expenses in the amount listed above.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN COWLES**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Division Chief, Law Enforcement Defense Division

*/s/ Ted A. Ross*
**TED A. ROSS**
State Bar No. 24008890
Assistant Attorney General

CHARLES K. ELDRED
State Bar No. 00793681
Assistant Attorney General

BENJAMIN DOWER
State Bar No. 24082931
Assistant Attorney General

JEANINE COGGESHALL
State Bar No. 24083162
Assistant Attorney General

Office of the Attorney General of Texas
P. O. Box 12548, Capitol Station
Austin, Texas 78711
P: (512) 475-4191
F: (512) 457-4674
Ted.Ross@oag.texas.gov
Charles.Eldred@oag.texas.gov
Benjamin.Dower@oag.texas.gov
Jeanine.Coggeshall@oag.texas.gov

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF CONFERENCE</u>

I, **Ted A. Ross**, Assistant Attorney General of Texas, certify that I conferred with counsel

for Plaintiffs, Jeff Edwards, on May 24, 2022, regarding this motion. Plaintiffs are unopposed to

the relief sought.

*/s/ Ted A. Ross*
TED A. ROSS
Assistant Attorney General

## <u>CERTIFICATE OF SERVICE</u>

I, **Ted A. Ross**, Assistant Attorney General of Texas, certify that a true and correct copy

of the foregoing has been served to all attorneys of record by electronic notice in accordance with

Rule 5(b)(2) of the Federal Rules of Civil Procedure on May 27. 2022.

*/s/ Ted A. Ross*
TED A. ROSS
Assistant Attorney General