UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH COLE, *et al.*, | § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. |
| v. | § § | |
| BRYAN COLLIER, *et al.*, | § § | 4:14-CV-1698 |
| Defendants. | § § | |

**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS AND
REQUEST FOR HEARING**

Plaintiffs write in response to the motion to dismiss. Doc. 2130. While Plaintiffs do not oppose eventual dismissal of the case as contemplated by the settlement agreement, there are several issues that the parties have not been able to resolve and remain pending. Accordingly, Plaintiffs respectfully ask that the Court hold a hearing on three outstanding issues.

**I.   SUMMARY OF THE ARGUMENT**

Although Plaintiffs do not oppose eventual dismissal, Plaintiffs ask that the Court convene a hearing to consider three issues in conjunction with dismissal.

First, the Court should resolve an outstanding dispute about the safety of air-conditioned transportation and whether the lack thereof is retaliation under the agreement prior to terminating Class counsel's duties to monitor the settlement.

Second, the Court should decide whether the Court is the appropriate contact for potential opt outs to direct their inquiries, as Defendants propose.

Finally, the Court should decide whether the Court is the appropriate contact for allegations of settlement violations and retaliation, as Defendants appear to propose.

1

Accordingly, while Plaintiffs are not opposed to dismissal, Class counsel believes entry of dismissal would be premature until these issues are resolved and therefore request a hearing on these issues first.

## II. NATURE AND STAGE OF THE PROCEEDING

This is a settled class action case which sought and obtained air conditioning for the inmates living at the TDCJ Wallace Pack Unit in Navasota Texas. Doc. 1188, p. 1. The Court approved the settlement on June 8, 2018. Doc. 1188, p. 34.

As the Court is well aware, following a motion for sanctions, Doc. 1494, and reopening of discovery, Doc. 1504, on May 31, 2022, the Court ordered TDCJ to, among other things, adopt specific training on the settlement agreement and have an independent engineering expert ensure that air conditioning was functioning, could satisfy the terms of the settlement agreement, and complied with the Court's orders. Doc. 1989. These inspections are to be completed annually during the summer months of 2022 through 2025; they have been completed for calendar year 2022. Doc. 1989.

Defendants moved to dismiss the case on December 29, 2022. Doc. 2130.

## III. ARGUMENT

Pursuant to the settlement agreement in this case, "[u]pon the permanent installation of air conditioning, the Parties shall notify the Court and ask for the case to be dismissed with prejudice." Doc. 989-4, p. 22. Accordingly, Class counsel do not oppose dismissal. However, Class counsel do request and believe a hearing is necessary on three outstanding issues that should be addressed by the Court prior to dismissal.

**A. Forcing class members to ride in dangerous, but air-conditioned, vehicles is retaliation that violates the settlement agreement.**

Because Class counsel's monitoring and reporting duties will be concluded upon entry of dismissal, Doc. 989-4, p. 17, Class counsel requests that the Court first address an ongoing allegation of retaliation: that TDCJ is choosing to provide class members their right to air-conditioned transportation to off-site medical care by putting those who do not need a wheelchair in small, dangerous "cargo vans" without seat belts.

   *1. Non-wheelchair bound class members are put in danger when they exercise their right to air-conditioned transportation.*

All class members are entitled to air-conditioned transportation, such as for off-site medical care, under the settlement. *See* Doc. 989-4, p. 12, B.3.

When non-wheelchair class members need transport, TDCJ typically puts them on air-conditioned "cargo vans" with no seat belts or other safety harnesses for inmate passengers.[1] The "cargo vans" can realistically fit six inmate passengers on side-facing benches, although TDCJ sometimes overfills them with up to ten.[2] As a result, the small cargo vans are unsafe, and cause inmates to painfully bounce and slide up and down the benches throughout their trips.[3] The inmate passengers—who are often elderly, and always chronically ill or sick, on these medical transports—are further limited in their ability to protect themselves because their hands and feet are bound.[4] As the vans do not have a step or ladder, inmates with mobility issues have significant

---

[1] Ex. 3, Valentine Declaration, ¶¶ 7–9; Ex. 4, Smith Declaration, ¶¶ 7–8; Ex. 5, Enson Declaration, ¶¶ 7–8. Class counsel can collect many more declarations if the volume of the complainants is relevant to the Court's resolution of this issue, as over a dozen more inmates (thus far) are concerned enough that they indicated their willingness to submit declarations.
[2] Ex. 3, Valentine Declaration, ¶¶ 10, 12–13; Ex. 4, Smith Declaration, ¶¶ 9, 11–12; Ex. 5, Enson Declaration, ¶¶ 9, 11–12.
[3] Ex. 3, Valentine Declaration, ¶¶ 11, 17–18; Ex. 4, Smith Declaration, ¶¶ 10, 15–17; Ex. 5, Enson Declaration, ¶¶ 10, 15–17.
[4] Ex. 3, Valentine Declaration, ¶ 16; Ex. 4, Smith Declaration, ¶ 15; Ex. 5, Enson Declaration, ¶ 15.

difficulty entering the vans.[5] Several class members have begun to simply refuse any off-site medical care because they have been injured by the jostling of the vans—and they believe they are at risk of further harm from riding in these vehicles.[6]

In contrast, air-conditioned vehicles with wheelchair accessibility do have seat belts,[7] while non-air-conditioned buses—used by Defendants to transport non-wheelchair bound inmates who are not class members—are significantly larger and therefore have a more stable ride.[8] Defendants have not identified the make, model, or other specifications for these "cargo vans," nor have they agreed to an inspection of any exemplars, but counsel for Defendants did confirm the inmates' allegations by agreeing during a telephone conference that non-wheelchair-bound class members are sometimes transported in vans that have air conditioning but do not have seat belts or any other safety restraint for inmate passengers.[9]

> 2. *The unsafe transportation constitutes retaliation in violation of the settlement agreement.*

Class members are only being put into these unsafe cargo "vans," rather than safer alternatives used for non-class members, because of their entitlement under the settlement to air-

---

[5] Ex. 3, Valentine Declaration, ¶ 19; Ex. 4, Smith Declaration, ¶ 18; Ex. 5, Enson Declaration, ¶ 18.
[6] Ex. 3, Valentine Declaration, ¶ 20; Ex. 4, Smith Declaration, ¶ 19; Ex. 5, Enson Declaration, ¶ 19.
[7] Ex. 1, Email from TDCJ's counsel (Dec. 14, 2022).
[8] Ex. 3, Valentine Declaration, ¶¶ 4–6; Ex. 4, Smith Declaration, ¶¶ 4–6; Ex. 5, Enson Declaration, ¶¶ 4–6. Public information, although either anecdotal or significantly outdated, is consistent with the inmates' reports that vans and large buses are both used for inmate transportation. *See* Ex. 8 TDCJ Vehicle Fleet (April 2013), *available at* https://www.lbb.texas.gov/Documents/Publications/Issue_Briefs/785_TDCJ_Vehicle_Fleet.pdf/ (noting that most transport is accomplished with 120 buses, which are defined as carrying 16 or more inmates); Ex. 9, TDCJ: Prison transports to resume with new security measures in place (KHOU 11 June 10, 2022) *available at* https://www.khou.com/article/news/local/texas/tdcj-transport-inmates/285-9dc5a7f5-f484-4a08-b921-f84afb931f74 (depicting a large TDCJ bus); Ex. 10, Transportation of Texas prison inmates to resume Monday: TDCJ (ABC 25 June 10, 2022) *available at* https://www.kxxv.com/news/hunt-for-texas-cartel-killer/transportation-of-texas-prison-inmates-to-resume-monday-tdcj (reporting 16 inmates were on board a TDCJ bus); Ex. 7, TDCJ Executive Summary, Serious Incident Review, p. 3 (16 inmates were on board, with 15 remaining after one escaped).
[9] *See* Ex. 2, Letter from Class counsel (Dec. 21, 2022).

conditioned transportation. *See* Doc. 989-4, p. 12, B.3. Before the settlement, the same inmates were transported on buses, not vans, which were safer with respect to the danger of traumatic injuries.[10] This detriment encumbers the class's entitlement to air-conditioned transportation and constitutes retaliation that is within this Court's jurisdiction to address.

The Court has continuing jurisdiction over "substantiated claims of retaliation that are directly related to the Settlement and raised by Class Counsel." Doc. 1188, p. 20. "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008). The evidence available thus far satisfies these elements.

First, the affected rights are constitutional rights. The Court already found that the settlement's provisions were necessary to remedy an ongoing constitutional violation. Doc. 1188, p. 11. Defendants agreed to this finding. Doc. 989-4, p. 21. But even aside from this fact, bringing this suit and obtaining this relief were an exercise of the class's well-established right of access to the Courts. *See, e.g.*, *Johnson v. Avery*, 393 U.S. 483, 488 (1969); *Woods v. Smith*, 60 F.3d 1161, 1163 (5th Cir. 1995) (prison staff engaged in retaliation against inmate who had written a letter to a court during pendent conditions of confinement litigation).

---

[10] Ex. 3, Valentine Declaration, ¶¶ 4–6; Ex. 4, Smith Declaration, ¶¶ 4–6; Ex. 5, Enson Declaration, ¶¶ 4–6. Public information, although either anecdotal or significantly outdated, is consistent with the inmates' reports that vans and large buses are both used for inmate transportation. *See* Ex. 8 TDCJ Vehicle Fleet (April 2013), *available at* https://www.lbb.texas.gov/Documents/Publications/Issue_Briefs/785_TDCJ_Vehicle_Fleet.pdf/ (noting that most transport is accomplished with 120 buses, which are defined as carrying 16 or more inmates); Ex. 9, TDCJ: Prison transports to resume with new security measures in place (KHOU 11 June 10, 2022) *available at* https://www.khou.com/article/news/local/texas/tdcj-transport-inmates/285-9dc5a7f5-f484-4a08-b921-f84afb931f74 (depicting a large TDCJ bus); Ex. 10, Transportation of Texas prison inmates to resume Monday: TDCJ (ABC 25 June 10, 2022) *available at* https://www.kxxv.com/news/hunt-for-texas-cartel-killer/transportation-of-texas-prison-inmates-to-resume-monday-tdcj (reporting 16 inmates were on board a TDCJ bus); Ex. 7, TDCJ Executive Summary, Serious Incident Review, p. 3 (16 inmates were on board, with 15 remaining after one escaped).

Second, Defendants intend to impose a detrimental cost on class members for obtaining this relief. In contrast to non-class members, class members do not have transportation that is safe from the risk of traumatic injuries either from bouncing during normal operation of the vehicle or protection from a crash. Although the larger buses that non-class members typically ride also lack seat belts, a sufficiently large vehicle does not need seat belts to be safe because "bus passengers experience much less crash force than those in passenger cars, light trucks and vans."[11] Legal requirements are crafted based on this reality: Federal regulations generally do not require seat belts on buses with sufficient mass. *See generally* 49 C.F.R. § 571.208. Likewise, Texas law does not penalize people who do not use their seat belts if they are in a vehicle designed to hold more than 15 people. *See* TEX. TRANS. CODE §§ 545.412(f)(2), 545.413(h). Thus, the available evidence indicates that class members are placed in danger from a vehicle collision compared to non-class members. In addition, the same principle regarding mass also applies to the stability experienced by passengers, corroborating the inmates' experience that riding in these vans is more painful than their prior experience in non-air-conditioned buses. Despite knowing about the consequences of this choice,[12] Defendants persist and refuse to change their conduct.

Third, placing class members in danger in the vans is an adverse act. In this case, Defendants are intentionally physically harming the inmate passengers and placing them at a substantial risk from a motor vehicle collision that is higher than contemporary standards of decency permit. Thus, the conduct here far exceeds the threshold for an adverse act; a retaliatory act need not itself violate the Constitution. *Bibbs v. Early*, 541 F.3d 267, 272 (5th Cir. 2008) (four nights of 20-degree temperatures); *Morris v. Powell*, 449 F.3d 682, 687 (5th Cir. 2006) (transfer

---

[11] Ex. 6, National Highway Transportation Safety Administration, *School Bus Safety*, available at https://www.nhtsa.gov/road-safety/school-bus-safety.
[12] Defendants know of the danger from the aforementioned regulations, the fact that seat belts are in the common experience so the risk of harm is obvious, and Class counsel raising this issue to opposing counsel.

to a more dangerous prison); *Ford v. Jones*, 149 Fed. Appx. 316, 317 (5th Cir. 2005) (denying inmate use of jacket outdoors); *Woods*, 60 F.3d at 1163 (disciplining inmate).

Finally, Defendants are directly harming class members with their ongoing adverse conduct. Several class members are completely forgoing off-site medical care, as that is their only way to avoid injuries and the danger from riding in the vans.[13] Those who have not refused transportation are battered and bruised by the unsafe vehicles, and will be at greater risk if their van is involved in a collision compared to a vehicle equipped with seat belts.[14] "Wearing a seat belt is the most effective way to prevent death and serious injury in a crash."[15] This harm is caused by the retaliation, as it flows directly from the class members' right to air conditioned transportation—and Defendants' choice to implement that right with unsafe vehicles.

Accordingly, the available evidence already demonstrates retaliation.

3. *Appropriate relief for the unsafe transportation.*

Because Defendants do not agree that this issue relates to the settlement, the most expedient resolution of these allegations will be for the Court to first advise the parties on whether these allegations, if substantiated, state a claim for retaliation within the meaning of the Court's order. Doc. 1188, p. 20. This should hopefully prompt the parties to resolve the issue without further Court involvement. Otherwise, if the Court agrees these facts state a claim for retaliation within

---

[13] Ex. 3, Valentine Declaration, ¶ 20; Ex. 4, Smith Declaration, ¶ 19; Ex. 5, Enson Declaration, ¶ 19.
[14] Ex. 3, Valentine Declaration, ¶¶ 11, 17–18; Ex. 4, Smith Declaration, ¶¶ 10, 15–17; Ex. 5, Enson Declaration, ¶¶ 10, 15–17. Although 90% of adults use seat belts in the United States, more than half of adults who die from car crashes were not wearing a seat belt. Ex. 11, *Seat Belts: Get the Facts* (CDC ret. Jan. 19, 2023), *available at* https://www.cdc.gov/transportationsafety/seatbelts/facts.html; Ex. 12, *Seat Belt Use in 2021* (NHTSA Dec. 2021), *available at* https://crashstats.nhtsa.dot.gov/Api/Public/Publication/813241; Ex. 13, *Seat Belts* (NHTSA re. Jan. 19, 2023), *available at* https://www.nhtsa.gov/risky-driving/seat-belts. Thus, seat belts save thousands of lives each yeear. Ex. 14, *Lives Saved in 2017 by Restraint Use and Minimum-Driking-Age Laws* (NHTSA Mar. 2019), *available at* https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/812683.
[15] Ex. 15, *Policy Impact: Seat Belts* (CDC Jan. 3, 2011), *available at* https://www.cdc.gov/transportationsafety/seatbeltbrief/index.html.

the meaning of the final judgment but the parties still cannot resolve the dispute by agreement, then Class counsel intends to request limited discovery:

1) An inspection of examples of the cargo vans that lack seat belts to evaluate and document in further depth whether they are unsafe for passenger transportation;
2) Written discovery on the composition of TDCJ's vehicle fleet, as this should reveal what feasible alternative vehicles are available to TDCJ to comply with the settlement; and
3) A Rule 30(b)(6) deposition of TDCJ on those topics.

Based on Defendants' representations and the inmates' experience, safe alternatives are already available to TDCJ to safely transport class members in air-conditioned vehicles. Thus, if the evidence bears that out and supports the inmates' allegations about the danger, then Class counsel expects they would ask the Court to order that class members be transported in safe, air-conditioned vehicles to ensure compliance with the settlement agreement and the Court's orders.

### B. The Court should consider whether the changed opt-out procedure is appropriate.

Defendants also propose a change to the opt-out procedure which increases the Court's direct supervision of the process, as the settlement requires that all of Class counsel's duties be concluded once dismissal is granted. Doc. 989-4, p. 17. Plaintiffs do not oppose this modification, but only wish to highlight that Defendants' proposal would seem to require the Court's ruling as the settlement does not specify what happens to opt outs after the termination of Class counsel's duties. This change in procedure would place a potential burden on the Court which the parties did not appreciate or anticipate in the settlement agreement. 63 class members have sent opt out requests throughout this litigation, but no class member has requested to opt out in nearly two years.[16]

---

[16] The involvement of a neutral third party in the opt out process remains important to deter any potential coercion and to ensure any decision to opt out of the settlements benefits is done knowingly.

**C. The Court should consider whether additional information should be provided to class members about contacting the Court for settlement violations.**

Although Defendants do not address the issue directly, the Court's continuing jurisdiction is not limited to opt outs: the Court will also retain jurisdiction to enforce the settlement and address "substantiated claims of retaliation that are directly related to the Settlement and raised by Class Counsel." Doc. 1188, p. 20; *see also* Doc. 989-4, pp. 13, 21. Defendants therefore appear to wish for the Court to handle claimed violations without Class counsel's participation. Class counsel are not at liberty to oppose their extrication from the process, because the parties agreed in the settlement that Class counsel's duties would terminate at dismissal. Nonetheless, Class counsel highlights this issue because the transition may place a burden on the Court and may also potentially confuse class members unless further notice is provided about this change in procedure. Class counsel therefore suggest that the new opt out form be accompanied by a similar update to the settlement notice flier.

If the Court dismisses the claims, then this will terminate Class counsel's duties and abilities to monitor, so for the foregoing reasons Class counsel recommends that the Court convene a hearing to consider these issues together with or prior to the motion to dismiss.

**IV.   CONCLUSION**

For the foregoing reasons, although Plaintiffs are not opposed to the ultimate relief requested, Class counsel first request a hearing on the outstanding issues in this case and Defendants' motion. Defendants indicated through counsel that they oppose a hearing on these issues.

Dated: January 19, 2023.

9

Respectfully submitted,

By: /s/ Jeff Edwards          .
JEFF EDWARDS
State Bar No. 24014406
DAVID JAMES
State Bar No. 24092572
**EDWARDS LAW**
603 W 17th St.
Austin, TX 78701
Tel.  512-623-7727
Fax.  512-623-7729
jeff@edwards-law.com
david@edwards-law.com

**ATTORNEYS FOR PLAINTIFFS**

CERTIFICATE OF SERVICE

By my signature above, I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Southern District of Texas.

By      /s/ Jeff Edwards              
JEFF EDWARDS

CERTIFICATE OF CONFERENCE

By my signature above, I certify that I conferred with opposing counsel by telephone and they oppose Plaintiffs' request for a hearing.

By      /s/ Jeff Edwards              
JEFF EDWARDS