United States District Court
Southern District of Texas
**ENTERED**
February 13, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **KEITH COLE**, *et al.*, § | |
| § | |
| **Plaintiffs,** § | |
| § | |
| VS. § | **CIVIL ACTION NO. 4:14-CV-01698** |
| § | |
| **BRYAN COLLIER**, *et al.*, § | |
| § | |
| **Defendants.** § | |

## ORDER

Currently pending before the Court is Defendants' Motion to Dismiss. (Doc. 2130.) While unopposed to the Motion, Plaintiffs raise an issue of potential retaliation against class members. Specifically, Plaintiffs allege that Defendants have provided unsafe air-conditioned transport to non-wheelchair-bound class members compared to non-class peers.

For the reasons discussed below, the Court **DIRECTS** parties to conduct limited discovery on the issue: an inspection of cargo vans, written discovery on the composition of Texas Department of Criminal Justice (TDCJ)'s vehicle fleet, and a Rule 30(b)(6) deposition of TDCJ on the topic.

I.       **RELEVANT BACKGROUND**

Considering the extensive history of this litigation, the Court summarizes only the facts most relevant to the present issue. In June 2018, parties entered into a Court-approved settlement agreement providing for the installation of permanent air conditioning in the Pack Unit. (Docs. 989-4; 1188.) As part of the Court's approval of the settlement, the Court retained jurisdiction over "substantiated claims of retaliation that are directly related to the Settlement and raised by Class

Counsel." (Doc. 1188 at 20.) In the subsequent years, Plaintiffs' counsel has brought issues of Defendants' continuing non-compliance with the settlement agreement. In 2019, the Court granted Plaintiffs' request to reopen discovery and for attorney fees in light of allegations that Defendants had repeatedly violated the settlement agreement and misrepresented conditions. (Docs. 1459, 1504.) In May 2022, in response to the ongoing non-compliance issues, the Court ordered Defendants to adopt specific training on the settlement agreement and have an independent engineering expert ensure that air conditioning was functioning. (Doc. 1989.)

Plaintiffs now allege that Defendants are retaliating against non-wheelchair-bound class members by providing unsafe transport. (Docs. 2131 at 3-8.) When non-wheelchair class members need transport, Defendants typically put them in air-conditioned cargo vans with no seatbelts or other safety harnesses. According to Plaintiffs, the vans cause class members to bounce and slide around painfully; because their hands and feet are bound, they cannot hold on or protect themselves. *Id.* at 3. Several class members state that they have begun to refuse any off-site medical care because they have been injured by the jostling of the vans and believe they are at risk of further harm from riding in these vehicles. (Doc. 2131 at 4.) Plaintiffs provide signed declarations from three class members as evidence for their claims. (Docs. 2131-3; 2131-4; 2131-5.)

Plaintiffs further assert that non-class members and class members requiring wheelchair-accessible transport do not face similar conditions. (Doc. 2131 at 4.) Air-conditioned vehicles with wheelchair accessibility have seat belts. Non-air-conditioned buses—used by Defendants to transport non-wheelchair bound inmates who are not class members—are significantly larger and therefore have a more stable ride. *Id.* at 4, 6. Federal and state seatbelt regulations differentiate between vehicles based on mass, reflecting the increased dangers passengers in smaller vehicles

face. *Id.* at 6. Meanwhile, Defendants deny any allegations that class members are treated differently from others. (Doc. 2131-1 at 2.)

**II.   ANALYSIS**

The Court has continuing jurisdiction over "substantiated claims of retaliation that are directly related to the Settlement and raised by Class Counsel." (Doc. 1188 at 20.) "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008).

Plaintiffs viably plead a potentially retaliatory action. Plaintiffs easily allege the first and third *Bibbs* elements. The first element is the exercise of a specific constitutional right. The Court has already established that the settlement's provisions, including the guarantee of air-conditioned transport, are necessary to remedy constitutional violations. (Docs. 787 at 83-91; 1188 at 11, 17.)

Concerning the third element—an adverse action—Plaintiffs provide evidence to suggest that the form of transport places class members in danger and hinders them from accessing medical care. (Doc. 2131 at 6.) Defendants argue that transportation vehicle safety is "unrelated to heat risk and mitigation" and therefore "is neither an allegation of, nor evidence for" retaliation. (Doc. 2132 at 2.) This Court disagrees. A retaliatory act does not need to take the same form as the initial constitutional violation. Retaliation for the exercise of a constitutional right can come in many forms, so long as the moving parties establish that they suffered an adverse action because they asserted a constitutional right.

Nor does a retaliatory act need to be a viable claim under § 1983 itself. *Bibbs*, 541 F.3d at 272 (citing *Morris v. Powell*, 449 F.3d 682, 685 (5th Cir. 2006)). Rather, retaliatory acts are those that "threaten[] to inhibit exercise of the protected right." *Crawford–El v. Britton*, 523 U.S. 574,

588 n.10 (1998). The Fifth Circuit has found that actions that subject incarcerated individuals to "serious health risks" and physical danger rise to the level of adverse action. *See, e.g.*, *Bibbs*, 541 F.3d at 272 (subjecting to four nights of 20-degree temperatures); *Morris*, 449 F.3d at 687 (transferring to more dangerous prison); *Ford v. Jones*, 149 Fed. App'x. 316, 317 (5th Cir. 2005) (denying use of jacket outdoors). Plaintiffs' assertions that class members painfully bounce and slide down benches, are unable to protect themselves, and are at higher risk of injury from a motor vehicle collision—as well as their allegations that several class members have begun to refuse medical care as a result—is sufficient to demonstrate that the alleged retaliation subjects class members to serious physical danger.

The second and fourth elements—an intent to retaliate and a causal link between the motive and action—require additional inquiry. A moving party can allege retaliatory intent directly or through "a chronology of events from which retaliation may plausibly be inferred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). And, causation requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Id.*

Plaintiffs seek to establish a timeline and causal link by alleging that Defendants transported class members in safer vehicles before implementing the settlement agreement and that non-class members continue to have safer transport options. (Doc. 2131 at 6.) A timeline of retaliation may provide more substantial evidence in some cases than in others. In *Woods*, for instance, the plaintiff reported a threat he had received from a correctional official to a warden and judge. Shortly thereafter, officials issued a disciplinary charge against the plaintiff. *Woods*, 60 F.3d at 1163. This timeline established evidence of retaliatory intent.

In contrast, in the present case, Plaintiff's proposed chronology of events aligns with an alternative intention to comply with the Court's settlement agreement and ensure class members

have access to air-conditioned vehicles. Nevertheless, Defendant's choice of vehicle can be intentionally retaliatory while simultaneously complying with the air conditioning requirements. Without discovery, it would be difficult for Plaintiffs to prove these requisite intent or causation requirements. It is also unnecessary for them to do so at this stage. Defendants cite two cases for the proposition that Plaintiffs fail to establish retaliatory animus. (Doc. 2132 at 3.) But these cases—and most landmark Fifth Circuit authorities on retaliation claims—consider the issue after parties had access to discovery. *See Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997) (reviewing magistrate's findings after bench trial); *Woods*, 60 F.3d 1161 (affirming in part denial of summary judgment); *see also Bibbs*, 541 F.3d 267 (reversing summary judgment); *Morris*, 449 F.3d 682 (affirming summary judgment in part); *McDonald v. Steward*, 132 F.3d 225 (5th Cir. 1998) (affirming summary judgment).

Plaintiffs' allegations of a change in conditions, combined with their assertion that other similarly-situated groups are not subject to the same, is constitutionally sufficient, mindful of the Fifth Circuit's caution that "[m]ere conclusionary allegations of retaliation will not be enough." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). These pleadings are enough to create a plausible case at this stage.

### III.   CONCLUSION

The Court recognizes this is a longstanding case and that Defendants' Motion to Dismiss is pending. Plaintiffs have outlined narrow discovery that this Court believes can be completed without unduly delaying the Court's adjudication of Defendants' Motion to Dismiss. Accordingly, the Court **DIRECTS** parties to cooperate on limited discovery requests: an inspection of cargo vans, written discovery on the composition of TDCJ's vehicle fleet, and a Rule 30(b)(6) deposition of TDCJ on the topic. This discovery is to be completed by April 17, 2023.

**IT IS SO ORDERED**.

Signed at Houston, Texas on February 10, 2023.

_____
Keith P. Ellison
United States District Judge