United States District Court
Southern District of Texas
**ENTERED**
March 27, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **KEITH COLE, et al.,** | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:14-cv-1698** |
| | § | |
| **BRYAN COLLIER, et al.,** | § | |
| *Defendants*. | § | |

## ORDER OF DISMISSAL WITH PREJUDICE

Following this Court's approval of the class action settlement on June 18, 2018 (Doc. No. 1188), Defendants moved for final dismissal of this suit (Doc. No. 2130) because permanent air-conditioning was installed in the Wallace Pack Unit (Doc No. 1567) as confirmed by Plaintiffs' expert. (Doc. Nos. 2130 & 2130-1.) Plaintiffs responded stating that they did "not oppose eventual dismissal of the case as contemplated by the settlement agreement," but asked the Court to hold a hearing to consider a few issues in conjunction with dismissal. (Doc. No. 2131 at 1.) More specifically, Plaintiffs asked the Court to (1) "resolve an outstanding dispute about the safety of air-conditioned transportation and whether the lack thereof is retaliation under the agreement prior to terminating Class counsel's duties to monitor the settlement;" (2) "decide whether the Court is the appropriate contact for potential opt outs to direct their inquiries, as Defendants propose;" and (3) consider whether Class Members ought to be informed of the change in procedures after the termination of Class counsel's duties. (Doc. No. 2131 at 1, 8, 9.) For the reasons discussed below, the Court finds that the parties have resolved all outstanding issues and final dismissal and judgment is appropriate.

## **DISCUSSION**

On February 7, 2023, the Court conducted a status conference to discuss the issues raised by Plaintiffs' response. (*See* Doc. No. 2134 (notice of setting)). Thereafter, on the first issue, the Court found that Plaintiffs' retaliation claim was potentially meritorious and ordered the parties to cooperate on limited discovery requests regarding the transportation of Class Members[1] in vehicles without seatbelts. (*See* Doc. No. 2136 at 5.) On the second issue, Defendants submitted an unopposed proposal for a new opt-out procedure that would apply post-dismissal. (*See* Doc. No. 2135.) But the Court advised the parties that it could not "approve a procedure that directs Class Members to make filing with the Office of U.S. District Court Clerk" and the Court directed the parties to propose another procedure for post-dismissal opt-outs. (Doc. No. 2149.) On the third issue, Plaintiffs suggested that the Class Members be updated regarding the termination of Class counsel's duties at dismissal, similar to the settlement notice flier. (Doc. No. 2131 at 9.)

During a status conference held on April 4, 2023, the Parties informed the Court that they were working towards an agreement on all three issues. The Parties have now represented that they have resolved all outstanding issues and agree that dismissal is appropriate. Having reviewed the evidence presented throughout this matter, the arguments of counsel, the Parties' representations and agreements, the Court finds and concludes the Parties' resolution of the outstanding matters is appropriate and finds and concludes as follows:

**TRANSPORTATION ISSUE**

Regarding the transportation safety issue, the Parties represent that they have resolved the safety issue involving air-conditioned transportation to their mutual satisfaction and therefore does not need to reach the issue of Plaintiffs' allegations of retaliation.

---

[1] For the purposes of this order, all references to Class Members include members of the Subclass.

The Court finds that the Texas Department of Criminal Justice (TDCJ) has completed the installation of seat belts in the air-conditioned vans used to transport Class Members. (*See* Doc. No. 2155 (advisory filed by Defendants regarding their installation of seat belts)); (Doc. No. 2156 (affidavit and photographs supporting Defendants' advisory, filed separately and under seal.)) The Court further finds and orders that TDCJ must transport Class Members in air-conditioned vans with seat belts (or equivalent safety restraints) for each Class Member or in an air-conditioned bus designed to hold more than 15 passengers whenever they leave the Pack Unit for medical appointments or other travel within the TDCJ system. This finding does not apply to situations in which an objective emergency, including objectively exigent circumstances, requires transportation of a Class Member without such seat belts or equivalent safety restraints. This requirement also does not apply if a Class Member refuses to wear the seat belt or equivalent safety restraint.

Based on these findings and conclusions, the Court ORDERS that, from the date of this order and subject to the specific exceptions delineated in this order, whenever TDCJ transports a Class Member, it shall do so using air-conditioned vehicles that are equipped with a seat belt or equivalent safety restraint for each Class Member. This requirement does not apply to an air-conditioned bus that is designed to hold more than 15 passengers. This requirement also does not apply when an objective emergency, including objectively exigent circumstances, requires transportation of a Class Member without a seat belt or equivalent safety restraint. Such objective emergencies, including objectively exigent circumstances, may include, but are not limited to, inmate urgent care (emergent life or limb threatening conditions such as heart attacks or wounds requiring treatment beyond first aid), natural or man-made disasters (such as fires, floods, hurricanes, explosions, or chemical spills that require the immediate evacuation of a prison), or

other circumstances objectively requiring immediate action, including security issues that endanger the inmates, TDCJ employees, or members of the public. An objective emergency or an objectively exigent circumstance does not include any situation in which adhering to the requirement that Class Members be transported in air-conditioned vehicles with seat belts or equivalent safety restraints would be a mere inconvenience to TDCJ. This requirement also does not apply if the Class Member refuses to wear the seat belt or equivalent safety restraint; in other words, nothing in this order compels TDCJ to force an inmate to wear a seat belt or equivalent safety restraint against his express wishes. Any such refusal will be contemporaneously documented by TDCJ.

In light of the Court's findings, the prospective requirements, and the Parties' representations, the Court finds that its February 10, 2023, order that the Parties engage in discovery (Doc. No. 2136) and its April 17, 2023, order extending the time for discovery are no longer necessary (Doc. No. 2213). Defendants are not required to engage in the discovery ordered on February 10, 2023 (and extended on April 17, 2023) regarding Plaintiffs' allegations of retaliation.

**OPT-OUT ISSUE**

Regarding the opt-out issue, the Parties represent that they have resolved the opt-out issue to their mutual satisfaction and that dismissal is now appropriate.

The Court's final order and judgment approving the class action settlement states that Class members "may voluntarily opt out of the Class . . . by submitting an agreed opt-out form to Class Counsel," and contemplated that opt-out requests might occur after final approval of the settlement agreement by the Court. (*See* Doc. No. 1188 at 7, 35.) According to the terms of the settlement, "[a]n inmate's choice to exclude himself from the Class and/or Subclass, once approved by the Court, shall be irrevocable." (Doc. No. 989-4 at 18.) While Class Counsel has been directly

involved in the opt-out process in the past, the settlement agreement also provides that Class counsel's duties "shall be concluded upon entry of Final Judgment." (Doc. No. 989-4 at 17). The Court further finds that requests to opt-out of the Class have become less frequent in the five years since the Court approved the settlement agreement in 2018; indeed, it has been more than two years since a Class Member sought approval to opt-out of the Class. (Doc. No. 1625; Doc. No. 1627.) Nevertheless, the Court appreciates that a Class member may wish to opt-out of the Class to access optional programming in an un-airconditioned unit even after the case is dismissed. (*See* Doc. No. 1188 (order approving settlement, noting that the settlement does not require provision of air-conditioned facilities for optional programming)).

With this backdrop in mind, the Parties have represented to the Court that they have reached an agreement that contemplates post-dismissal opt outs and addresses both (1) the Court's concern about adopting a policy that requires Class Members to file directly with the Office of U.S. District Court Clerk and (2) Class counsel's concern about the potential of coercion on Class Members to make the irrevocable decision to opt-out of the Class. In particular, TDCJ has represented to Class counsel and to this Court that, and the Court ORDERS that, from the date of the order of dismissal onwards, those Class Members who are in TDCJ custody on the date this order of dismissal is signed shall have the right to voluntarily opt out of the Class while retaining the ability to revoke their opt-out, thereby allowing them to rejoin the Class, subject to the following eligibility criteria:

1) The option to "opt back in" to the Class applies only to those current Class Members who are in TDCJ custody on the date this order of dismissal is signed; it does not apply to persons who have already opted out of the Class; and it does not permit new persons to join the Class for the first time.[2]

---

[2] Within three business days of receiving the signed order, TDCJ shall file with the Court a verified list of Class Members in the custody of TDCJ on the date this order is signed.

2) If a current Class Member chooses to opt out of the Class, TDCJ may assign that inmate to any unit that meets his safety, security, medical, and rehabilitation needs, and TDCJ may deny the opt out request if such denial is deemed necessary by TDCJ to meet the inmate's safety, security, medical, or rehabilitation needs.

3) If an inmate who opts out chooses to opt back in, that inmate's housing assignment is subject to TDCJ's discretion—subject to the requirements of the settlement agreement. Stated differently, an inmate who chooses to opt back into the Class will be entitled to reside in air-conditioned housing per the settlement agreement, but that inmate does not get to choose which unit he will be housed at when choosing to opt back in.

4) Consistent with the settlement agreement, the option to "opt back in" does not apply to any Class Member who is or was released from TDCJ custody on parole or after sentence discharge. Stated differently, if a Class Member returns to TDCJ custody for any reason after being released on parole or discharging the inmate's sentence, there is no option to "opt back in."

TDCJ has further represented to the Court that, to effectuate this new procedure going forward, TDCJ will maintain a list of current Class Members as well as a list of former Class members whose decision to opt-out is subject to revocation by the inmate. The Parties agree that this process will only apply prospectively from the date this order of dismissal is signed and only applies to those Class Members who are in TDCJ custody on the date this order of dismissal is signed and meet the eligibility criteria. Because the voluntary opt-out may be revoked by the former Class Member who meets the eligibility criteria, the Court finds that a revokable opt out process adopted and maintained after entry of final judgment will reduce concerns about possible coercion and, therefore, will not require the involvement of either Class counsel or the Court. The Court agrees and finds that the adoption of a revocable opt-out process is a reasonable resolution of the issue of post-dismissal opt-outs that avoids burdening Office of U.S. District Court Clerk.

It is therefore ORDERED that following the entry of this order, Class Members who are in TDCJ custody on the date this order of dismissal is signed and meet the eligibility criteria described in this order have the right to opt out of the Class and subsequently opt back into the Class. The Court further ORDERS that this revocable opt out procedure shall be administered fairly and in a

manner consistent with the eligibility criteria discussed herein. To the extent the revocable opt-out procedure set forth in this order is determined to be inconsistent with the irrevocable opt out procedure set forth in the Court's Final Order and Judgment Approving Class Action Settlement and Attorneys' Fees (Doc. No. 1188), the Parties agree and the Court ORDERS that the irrevocable opt out procedure is superseded henceforward by this order.

### RAISING ALLEGATIONS OF SETTLEMENT OR COURT ORDER VIOLATIONS POST-DISMISSAL

According to the terms of the settlement, Class counsel's duties "conclude[] upon entry of Final Judgment." (Doc. No. 989-4 at 17.) Among the duties that terminate are "monitoring [] compliance with [the Settlement]." (Doc. No. 989-4 at 16.) After entry of Final Judgment, this Court retains jurisdiction to resolve any disputes regarding any alleged violations of its orders in this matter, including allegations that Defendants are violating the Settlement Agreement. Class Members are encouraged, but not required, to use the procedures outlined below before raising such allegations with the Court.

The Parties have agreed that when a Class Member has a good faith belief that Defendants have (1) violated the Settlement Agreement, (2) violated a court order issued in this case that imposes an ongoing obligation on Defendants, or (3) engaged in retaliation for a Class Member having filed, joined, or otherwise participated in this suit, the Class Member may elect to file a grievance in accordance with TDCJ's established grievance process, or submit a complaint presenting such allegation to the Texas Board of Criminal Justice, Office of Independent Ombudsman ("the Ombudsman"). The Class Member may choose which procedure to use. Complaint forms to be used by Class Members to submit a complaint to the Ombudsman shall be made available in the law libraries at those units where Class Members are housed.

Class Members with a complaint that meets one of the foregoing three criteria should refrain from submitting a complaint directly to the Court. Should a Class Member contact the Court

directly with allegations that the Court determines to be within its exclusive jurisdiction (i.e, alleged violations of the Settlement Agreement or the Court's orders in this matter), the Court may refer such allegations to the Ombudsman for investigation.

Upon receipt of a complaint from a current Class Member that meets one of the foregoing three criteria, the Ombudsman shall investigate the complaint. Any and all investigations conducted by the Ombudsman shall be conducted pursuant to any and all applicable TBCJ Policies.

If the complaint alleges that air conditioning is not functioning or that indoor heat exceeds 85 degrees Fahrenheit or 88 degrees heat index or that indoor heat is otherwise negatively impacting the health of a class member during the summer (April 15 through October 15), the Ombudsman shall promptly investigate. For such a complaint, the Ombudsman shall respond to the Class Member in writing within seven (7) days of receipt of the complaint. For all other complaints, the Ombudsman shall investigate and respond to the Class Member in writing within thirty (30) days of receipt of the complaint. In both instances, the Ombudsman's written response shall include a report summarizing the Ombudsman's findings and proposed remedy (if any). If the Ombudsman's investigation validates the Class Member's complaint, the Ombudsman shall promptly notify the Board of Criminal Justice (through its Presiding Officer) of its findings and proposed remedy (if any) and simultaneously transmit a report to the Office of the Attorney General to be filed with the Court within three (3) business days of receipt by the Office of the Attorney General that describes the Class Member's allegation, the Ombudsman's investigation and findings, and proposed remedy (if any).

Pursuant to any such Ombudsman investigation relating to this order, the Ombudsman shall have the power and access authorized for general investigations relating to TDCJ. TDCJ shall provide any documents not covered by attorney-client or attorney-work product privilege

requested by the Ombudsman during its investigations. TDCJ shall provide the Ombudsman physical access to any prison facility upon the Ombudsman's request. TDCJ shall provide the Ombudsman access to interview unit-level staff and inmates upon the Ombudsman's request. The Ombudsman's investigations, including any documents the Ombudsman generates or collects, relating to this order will not be privileged, unless authorized by the Court. The Ombudsman shall be available to answer questions from the Court concerning investigations and complaints made relating to this order. Any issues of failing to cooperate with the Ombudsman's Office shall be brought to the attention of the Court and the Texas Board of Criminal Justice. TDCJ agrees to make leadership available to the Court should the Court require their presence.

Class Members may have concerns (for instance, regarding conditions of confinement or alleged mistreatment) that are not directly related to this case and do not meet one of the three criteria outlined above. Class Members seeking relief for allegations that fall outside the scope of this case shall comply with TDCJ's grievance procedures, and, if appropriate, file a separate action with a court of proper jurisdiction. (*See* Doc. No. 1188 at 20).

### NOTICE TO CLASS MEMBERS

Considering the Parties' agreed resolution of the both the transportation and opt-out issues and the new policies and practices that have resulted from those agreements, as well as the termination of Class counsel's duties at dismissal, the Court finds that Class Members should be apprised of the contents of this order and will receive a copy of this order. Defendants will deliver a copy of this order to all Class Members who were in TDCJ custody on the date this order was signed and remain in TDCJ custody and file proof of delivery with the Court when delivery is complete.

## **DISMISSAL WITH PREJUDICE**

In light of the Court's findings, and having determined that all conditions precedent to dismissal have been met, the Court **ORDERS** that this case is hereby **DISMISSED WITH PREJUDICE.**

The Court will enter Final Judgment following receipt of a verified notice from TDCJ that a copy of this order has been delivered to all Class Members who were in TDCJ custody on the date this order was signed and remain in TDCJ custody.

The Court retains exclusive jurisdiction to resolve any disputes relating to or arising out of the administration, enforcement, implementation, consummation, or interpretation of the Settlement. (Doc. No. 1188 at ¶ 7) (Final Order and Judgment Approving Class Action Settlement and Attorneys' Fees); (*see also* Doc. No. 989-4 at ¶ 7.6) (Settlement Agreement and Release). The Court also retains exclusive jurisdiction to enforce, implement, administer, or interpret its orders in this case or to address any alleged violation of those orders.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 27th day of March, 2024.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE